CITY OF OAKLAND
BARBARA J. PARKER, State Bar #069722
City Attorney
MARIA BEE, State Bar #167716
Special Counsel
ERIN BERNSTEIN, State Bar #231539
Senior Deputy City Attorney
MALIA MCPHERSON, State Bar #313918
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for The People of the State of California*

CITY AND COUNTY OF SAN FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for The People of the State of California*

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Oakland City Attorney BARBARA J. PARKER, <br><br> Plaintiff and Real Party in Interest, <br><br> v. <br><br> BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS COMPANY, a Delaware corporation, EXXONMOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10, <br><br> Defendants. | Case No.: 3:17-cv-06011-WHA <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT; MEMORANDUM OF POINTS AND AUTHORITIES** |

THE PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through the San
Francisco City Attorney DENNIS J. HERRERA,

    Plaintiff and Real Party in Interest,

    v.

BP P.L.C., a public limited company of England
and Wales, CHEVRON CORPORATION, a
Delaware corporation, CONOCOPHILLIPS
COMPANY, a Delaware corporation, EXXON
MOBIL CORPORATION, a New Jersey
corporation, ROYAL DUTCH SHELL PLC, a
public limited company of England and Wales,
and DOES 1 through 10,

    Defendants.

Case No.: 3:17-cv-06012-WHA

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION TO REMAND TO
STATE COURT; MEMORANDUM OF
POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT .................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

INTRODUCTION ............................................................................... 2

ISSUES TO BE DECIDED ........................................................................ 4

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 5

LEGAL STANDARDS FOR REMOVAL ........................................................... 6

ARGUMENT ................................................................................... 7

    I.   Defendants' removal of these cases under federal question jurisdiction is improper ................................................................. 7

        A.  These actions do not arise under federal common law ......................................... 7

            1.   Federal common law cannot "govern" the People's nuisance claim, because federal common law does not extend to sellers of products. ........ 8

            2.   Kivalina did not federalize state law claims related to global warming ... 10

            3.   Defendants rely upon cases that do not address or support removal jurisdiction. ......................................................................... 14

        B.  The People's state-law public nuisance claims do not "necessarily raise" a "substantial" and "disputed" federal issue. ................................................................................ 16

            1.   The People's California-law nuisance claim does not raise any federal issue. ...................................................................... 16

            2.   The People's California-law public nuisance claim does not create any dispute over the federal laws defendants raise. ......................................... 20

            3.   Exercising federal jurisdiction would disrupt the federal-state balance ... 20

        C.  The Clean Air Act provisions authorizing review of EPA actions do not completely preempt a state-law public nuisance claim. ................................................................................... 21

    II.  OCSLA jurisdiction is lacking even under the out-of-circuit law defendants invoke. ................................................................. 24

III.    Defendants are not acting under a federal officer merely by complying with federal regulations. ........................................................... 27

IV.     There is no enclave jurisdiction because the People's actions expressly exclude relief for injuries to federal lands. ............................... 30

V.      Actions to protect public rights are expressly exempted from bankruptcy removal. ...................................................................... 32

CONCLUSION ...................................................................................................... 35

FEDERAL CASES

*Am. Elec. Power Co., Inc. v. Connecticut*,
564 U.S. 410 (2011) ............................................................... 12, 13, 14

*Andrews v. Pride Indus.*,
2015 WL 1014133 (E.D. Cal. Mar. 6, 2015) ................................... 30

*Ange v. Templer*,
418 F. Supp. 2d 1169 (N.D. Cal. 2006) ........................................ 18

*ANR Pipeline Co. v. Conoco, Inc.*,
646 F. Supp. 439 (W.D. Mich. 1986) ........................................... 26

*Ansley v. Ameriquest Mortg. Co.*,
340 F.3d 858 (9th Cir. 2003) ................................................. 21, 22

*ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality*,
213 F.3d 1108 (9th Cir. 2000) .................................................. 24

*Bader Farms, Inc. v. Monsanto Co.*,
2017 WL 633815 (E.D. Mo. Feb. 16, 2017) ................................... 17

*Ballard v. Ameron Int'l Corp.*,
2016 WL 6216194 (N.D. Cal. Oct. 25, 2016) ............................. 31, 32

*Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*,
850 F.3d 714 (5th Cir. 2017) .................................................. 17

*Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*,
29 F. Supp. 3d 808 (E.D. La. 2014) ........................................... 26

*Bell v. Arvin Meritor, Inc.*,
2012 WL 1110001 (N.D. Cal. Apr. 2, 2012) ................................... 32

*Bell v. Cheswick Generating Station*,
734 F.3d 188 (3d Cir. 2013) ................................................. 23, 32

*Beneficial Nat'l Bank v. Anderson*,
539 U.S. 1 (2003) .......................................................... 21, 22

*Bennett v. Sw. Airlines*,
484 F.3d 907 (7th Cir. 2007) .................................................. 17

*Bethesda Boys Ranch v. Atl. Richfield Co.*,
208 B.R. 980 (N.D. Okla. 1997) ............................................... 35

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ......................................................................................................... 14

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ......................................................................................................... 17

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
  797 F.3d 720 (9th Cir. 2015) ................................................................................. 27, 29, 30

*Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*,
  636 F.3d 538 (9th Cir. 2011) ................................................................................. 16, 17, 18

*California v. Purdue Pharma, L.P.*,
  2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) .............................................................. 21

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ........................................................................................................... 7

*Cerny v. Marathon Oil Corp.*,
  2013 WL 5560483 (W.D. Tex. Oct. 7, 2013) .............................................................. 23

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ......................................................................................................... 18

*City & County of San Francisco. v. PG&E Corp.*,
  433 F.3d 1115 (9th Cir. 2006) ......................................................................................... 33

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981) ................................................................................................... 11, 14

*Dennis v. Hart*,
  724 F.3d 1249 (9th Cir. 2013) ......................................................................................... 24

*Durham v. Lockheed Martin Corp.*,
  445 F.3d 1247 (9th Cir. 2006) ................................................................................... 14, 30

*Eguia v. Arc Imperial Valley*,
  2012 WL 6061323 (S.D. Cal. Dec. 6, 2012) ................................................................ 31

*Empire Healthchoice Assur., Inc. v. McVeigh*,
  396 F.3d 136 (2d Cir. 2005) ....................................................................... 14, 16, 17, 20

*Empire Healthchoice Assur., Inc. v. McVeigh*,
  547 U.S. 677 (2006) ................................................................................................. *passim*

*Fed. Nat'l Mortg. Ass'n v. Bravo*,
  2013 WL 812705 (C.D. Cal. Mar. 5, 2013) .................................................................. 18

*Firstenberg v. City of Santa Fe, N.M.*,
  696 F.3d 1018 (10th Cir. 2012) ...................................................................................... 18

*Fung v. Abex Corp.*,
    816 F. Supp. 569 (N.D. Cal. 1992) ............................................................................... 31

*People ex rel. Gallo v. Acuna*,
    14 Cal. 4th 1090 (1997) ............................................................................................... 33

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) ................................................................................... 6, 10

*Georgia v. Tenn. Copper Co.*,
    206 U.S. 230 (1907) ....................................................................................................... 9

*Goepel v. Nat'l Postal Mail Handlers Union*,
    36 F.3d 306 (3d Cir. 1994) .......................................................................................... 14

*Goncalves v. Rady Children's Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ................................................................................ 27, 28

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) .............................................................................................. *passim*

*Gunn v. Minton*,
    568 U.S. 251 (2013) .......................................................................................... 16, 17, 20

*Gutierrez v. Mobil Oil Corp.*,
    798 F. Supp. 1280 (W.D. Tex. 1992) ........................................................................... 23

*Hanan v. Ford Motor Co.*,
    2003 U.S. Dist. LEXIS 14038 (N.D. Cal. Aug. 4, 2003) ............................................ 21

*Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*,
    874 F.2d 332 (6th Cir. 1989) ........................................................................... 11, 14, 23

*In re McCarthy*,
    230 B.R. 414 (9th Cir. BAP 1999) .......................................................................... 34, 35

*In re Circular Thermostat Antitrust Litig.*,
    2005 WL 2043022 (N.D. Cal. Aug. 24, 2005) ............................................................ 17

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ....................................................................................... 25

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ...................................................................... 32

*In re Int'l Mfg. Grp., Inc.*,
    2017 WL 3332219 (Bankr. E.D. Cal. Aug. 3, 2017) .................................................... 34

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    247 F.R.D. 420 (S.D.N.Y. 2007) ................................................................................. 23

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) .................................................................................. 18, 20, 23, 33

*In re Nat'l Sec. Agency Telecomms. Records Litig.*,
    483 F. Supp. 2d 934 (N.D. Cal. 2007).................................................................... 17, 18, 19

*In re Pegasus Gold Corp.*,
    394 F.3d 1189 (9th Cir. 2005) .......................................................................................... 34

*In re Ray*,
    624 F.3d 1124 (9th Cir. 2010) .......................................................................................... 34

*In re Schwartz*,
    2012 WL 899331 (N.D. Cal. Mar. 15, 2012) ................................................................... 35

*Hopkins v. Plant Insulation Co.*,
    349 B.R. 805 (N.D. Cal. 2006) ........................................................................................ 35

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) ............................................................................................ 6

*Ilczyszyn v. Sw. Airlines Co.*,
    2015 WL 5157372 (N.D. Cal. Sept. 1, 2015) .................................................................. 18

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ...................................................................................... 8, 20

*Illinois v. City of Milwaukee*,
    406 U.S. 91 (1972) ............................................................................................................ 9

*International Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ................................................................................................*passim*

*K2 Am. Corp. v. Roland Oil & Gas*,
    653 F.3d 1024 (9th Cir. 2011) ........................................................................................ 20

*Keltner v. SunCoke Energy, Inc.*,
    2015 WL 3400234 (S.D. Ill. May 26, 2015) ................................................................... 23

*Oregon ex rel. Kroger v. Johnson & Johnson*,
    832 F. Supp. 2d 1250 (D. Or. 2011) ........................................................................... 18, 20

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ........................................................................ 28, 29, 30, 31

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ........................................................................................ 33

*Marin Gen. Hosp. v. Modesto & Empire Traction*,
    581 F.3d 941 (9th Cir. 2009) ..................................................................................... 21, 24

*Mercado v. Regents of the Univ. of Cal.*,
    2014 WL 5305472 (N.D. Cal. Oct. 16, 2014) ...................................................... 18

*Merrell Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986) ........................................................................................ 7, 20

*Missouri v. Illinois*,
    180 U.S. 208 (1901) ............................................................................................... 9

*Moore-Thomas v. Alaska Airlines, Inc.*,
    553 F.3d 1241 (9th Cir. 2009) ............................................................................... 7

*Morrison v. Drummond Co.*,
    2015 WL 1345721 (N.D. Ala. Mar. 23, 2015) .................................................... 23

*National Audubon Soc'y v. Dep't of Water*,
    869 F.2d 1196 (9th Cir. 1988) .................................................................... 9, 10, 15

*National Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
    471 U.S. 845 (1985) ............................................................................................. 14

*Native Village of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009) ................................................................. 12

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ......................................................................... *passim*

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ......................................................................... *passim*

*New Jersey v. New York City*,
    283 U.S. 473 (1931) ............................................................................................... 9

*North Carolina v. Tenn. Valley Authority*,
    615 F.3d 291 (4th Cir. 2010) ............................................................................... 24

*North Dakota v. Minnesota*,
    263 U.S. 365 (1923) ............................................................................................... 9

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994) ................................................................................................. 9

*Patrickson v. Dole Food Co., Inc.*
    251 F.3d 795 (9th Cir. 2001) ........................................................................... 7, 15

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ............................................................................... 17

*Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co., LLC*,
    46 F. Supp. 3d 701 (S.D. Tex. 2014) ................................................................... 25

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*,
  582 F.3d 1083 (9th Cir. 2009).................................................................. 6, 15, 18

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
  768 F.3d 938 (9th Cir. 2014)................................................................................ 21

*Rocky Mt. Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013).............................................................................. 10

*Segura v. Griffcon, Inc.*,
  2017 WL 4271206 (C.D. Cal. Sept. 25, 2017)...................................................... 31

*Shanks v. Dressel*,
  540 F.3d 1082 (9th Cir. 2008).............................................................................. 20

*Ohio ex rel. Skaggs v. Brunner*,
  549 F.3d 468 (6th Cir. 2008)................................................................................ 18

*Smith v. Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921).............................................................................................. 17

*State of Washington v. Monsanto Co.*,
  2017 WL 3492132 (W.D. Wash. July 28, 2017).................................................. 31

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................................ 15

*Stutes v. Gulfport Energy Corp.*,
  2017 WL 4286846 (W.D. La. June 30, 2017)...................................................... 26

*Sullivan v. First Affiliated Secs., Inc.*,
  813 F.2d 1368 (9th Cir. 1987)........................................................................ 11, 24

*Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*,
  87 F.3d 150 (5th Cir. 1996).................................................................................. 25

*Totah v. Bies*,
  2011 WL 1324471 (N.D. Cal. Apr. 6, 2011)........................................................ 30

*Township of Long Beach v. City of New York*,
  445 F. Supp. 1203 (D.N.J. 1978)............................................................................ 9

*Treasurer of N.J. v. U.S. Dep't of Treasury*,
  684 F.3d 382 (3d Cir. 2012).................................................................................. 18

*United States v. Standard Oil Co. of Cal.*,
  545 F.2d 624 (9th Cir. 1976)................................................................................ 29

*United States v. Stoeco Homes*,
  498 F.2d (3d Cir. 1974).......................................................................................... 9

*US Bank Nat'l Ass'n v. Lasoff,*
   2013 WL 12114611 (C.D. Cal. Mar. 18, 2013) .......................................................... 18

*Watson v. Philip Morris Cos.,*
   551 U.S. 142 (2007) ......................................................................................... 27, 28, 29

*Wayne v. DHL Worldwide Express,*
   294 F.3d 1179 (9th Cir. 2002) ............................................................................... 15

*Wells Fargo v. Cabazon Band,*
   2012 WL 4718879 (C.D. Cal. Oct. 3, 2012) .......................................................... 18

*West Virginia ex rel. McGraw v. Eli Lilly & Co.,*
   476 F. Supp. 2d 230 (E.D.N.Y. 2007) .................................................................... 17

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold &*
   *Easement,*
   524 F.3d 1090 (9th Cir. 2008) ............................................................................... 18

*Zuniga v. Chugach Maint. Servs.,*
   2006 WL 769317 (E.D. Cal. Mar. 24, 2006) ..................................................... 30, 31

### STATE CASES

*City of Modesto Redevelopment Agency v. Superior Court,*
   119 Cal. App. 4th 28 (1st Dist. 2004) ...................................................................... 8

*County of Santa Clara v. Atl.Richfield Co.,*
   137 Cal. App. 4th 292 (6th Dist. 2006) ............................................................... 8, 24

*People v. ConAgra Grocery Prods.,*
   2017 WL 5437485 (Cal. Ct. App. 6th Dist. Nov. 14, 2017) ............................. 2, 8, 26

*Wilson v. S. Cal. Edison Co.,*
   234 Cal. App. 4th 123 (2d Dist. 2015) .................................................................... 19

### FEDERAL STATUTES

11 U.S.C. § 101(27)........................................................................................................ 33

28 U.S.C. § 1334(b)........................................................................................................ 34

28 U.S.C. § 1442(a)(1)............................................................................................ 4, 15, 27, 29

28 U.S.C. § 1452(a) & (b).......................................................................................... 4, 33, 34

42 U.S.C. § 7401 ............................................................................................................ 22

42 U.S.C. § 7416 ........................................................................................................ 22

42 U.S.C. § 7602(e) ................................................................................................... 22

42 U.S.C. § 7604 ................................................................................................. 22, 23

42 U.S.C. § 7607(b) ................................................................................................... 22

Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331-1356 ................................... 24

**STATE STATUTES**

Cal. Civ. Code § 3479 ............................................................................................... 19

Cal. Civ. Code § 3480 ............................................................................................... 33

California's Global Warming Solutions Act, Cal. Health &
    Safety Code §§ 38501- 38599 ....................................................................... 10

**OTHER AUTHORITIES**

*Restatement (Second) of Torts* § 821B .................................................................... 33

*Restatement (Second) of Torts* § 829A cmt. b ....................................................... 19

1            **NOTICE OF MOTION AND MOTION TO REMAND TO STATE COURT**

2        TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that plaintiffs, the People of the State of California, acting by and

4 through Oakland City Attorney Barbara J. Parker in Case No. 3:17-cv-06011-WHA, and by and

5 through San Francisco City Attorney Dennis J. Herrera in Case No. 3:17-cv-06012-WHA, hereby

6 move the Court pursuant to 28 U.S.C. § 1447(c) for an order to remand their cases to the state courts

7 from which they were removed. The cases do not satisfy any of the grounds for removal cited in

8 defendants' Notices of Removal, including 28 U.S.C. §§ 1331, 1334, 1441(a), 1442, and 1452, or 43

9 U.S.C. § 1349(b). This motion is based on this notice of motion and motion, the accompanying

10 memorandum of points and authorities, the evidence and records on file in this action, and any other

11 written or oral evidence or argument that may be presented at or before the time this motion is

12 decided.

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

These cases are not removable from state court and should be remanded. Barbara J. Parker and Dennis J. Herrera, the city attorneys of Oakland and San Francisco, respectively, plead a public nuisance claim under California law on behalf of the People of California (the "People"). The defendants are Chevron Corp., Exxon Mobil Corp., BP p.l.c., ConocoPhillips Co., and Royal Dutch Shell plc – the five largest shareholder-owned producers of fossil fuels in the world. The People allege in their state law public nuisance claim that defendants produced, and heavily promoted and sold, massive amounts of fossil fuels. Defendants' promotion of fossil fuels included a tobacco-like campaign of deception and denial. Defendants continued to promote massive fossil fuel use even as they knew that this would cause, and later had caused, dangerous global warming. Defendants' conduct has substantially contributed to global warming and thus to dangerously rising sea levels that are inundating and eroding coastal property in Oakland and San Francisco. This global warming-induced sea level rise threatens these cities with catastrophe. The People seek an abatement fund to pay for seawalls and other infrastructure in Oakland and San Francisco that is critically needed to protect the People from ongoing and future sea level rise.

The People's claim here – public nuisance against a producer that has engaged in improper promotion – is a recognized claim under California law, as a state appellate court affirmed just last week. *People v. ConAgra Grocery Prods.*, 2017 WL 5437485, at *18 (Cal. Ct. App. 6th Dist. Nov. 14, 2017) (affirming public nuisance judgment against lead paint producers). There is nothing, however, in the People's complaints that raises any federal issue. Defendants nonetheless have filed kitchen-sink notices of removal seeking to deprive the People of their chosen forum. But none of defendants' removal theories, creative as they may be, have any merit.

These cases patently do not arise under federal law. Defendants' primary argument – that federal common law automatically federalizes the People's California public nuisance claim – must be rejected. Defendants rely on decisions recognizing federal common law to hold polluters liable for their direct *emissions* of interstate pollution. But the People are *not* seeking to hold defendants liable for emissions; the complaints expressly disavow such a basis of liability. Instead, liability is

based on defendants' production and improper promotion of fossil fuels in massive quantities – a basis of liability cognizable under state law but wholly foreign to federal common law. Defendants badly err in contending that the Ninth Circuit in *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), held that federal common law governs all tort claims related to global warming. In fact, in *Kivalina* (where the plaintiffs expressly pleaded a federal common law claim on the face of their complaint), the court held that the federal common law doctrine defendants seek to invoke here is displaced by the Clean Air Act ("CAA") and permitted the plaintiffs' supplemental state law claims to be refiled in state court. Any other outcome in *Kivalina* would have contradicted *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987), which permits state nuisance law to apply to interstate pollution claims. Defendants' argument cannot be squared with this controlling law, even assuming for the sake of argument that the People's claim against producers of fossil fuels is tantamount to a claim against dischargers of interstate pollution.

Defendants' other federal question arguments are even more strained. Defendants incorrectly contend that the complaints "necessarily raise" a "substantial and disputed" federal issue. But the People's affirmative claim to relief does not require construction of any of the litany of federal laws raised by defendants. These laws are defenses at best, and defenses do not create federal jurisdiction. Nor does the CAA "completely preempt" a state common law public nuisance claim, as all courts to have considered the question have held. Indeed, it is bizarre to suggest, as defendants do, that the People's tort claim against fossil fuel producers is within the scope of an administrative appeal against the United States Environmental Protection Agency ("EPA").

Defendants fare no better with their other jurisdictional arguments, which are based mainly on the fact that some unspecified portion of their oil and gas production occurs on federal land. Defendants fail to satisfy the but-for test they proffer for jurisdiction under the Outer Continental Shelf Lands Act, *i.e.*, they have not shown that the public nuisance claims asserted here would not exist in the absence of their fossil fuel production on the outer continental shelf. Nor can defendants be acting under a federal officer merely by complying with federal regulations – no matter how pervasive those regulations may be – when they drill for oil on federal property. These cases do not arise on a "federal enclave" because the People's claim "arises" for enclave purposes only where

their injury occurs, and the complaints here expressly disavow liability for injuries occurring on federal property. Finally, no bankruptcy jurisdiction exists because the bankruptcy removal statute expressly provides that a government's case to protect public safety and welfare cannot be removed.

This improper detour into federal court should be short-lived. Removal is improper.

## ISSUES TO BE DECIDED

1. Whether removal is proper where the plaintiff has pleaded a state-law claim against producers of fossil fuels for global warming injuries and the defendant asserts that the federal common law of interstate pollution has both been displaced by statute and exclusively governs.

2. Whether removal is proper under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), where the plaintiff pleads a state law public nuisance claim for global warming injuries and the defendant invokes federal laws that are not necessarily raised or actually disputed by the plaintiff's claim.

3. Whether removal of a public nuisance claim against fossil fuel producers is proper under the complete preemption doctrine where the Clean Air Act does not provide an exclusive federal remedy.

4. Whether removal is proper under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349(b), where tort liability is predicated on fossil fuel production and promotion generally.

5. Whether removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), where defendants merely comply with government regulations in drilling for oil on federal property.

6. Whether removal is proper under federal enclave jurisdiction where the plaintiff's complaint expressly disavows basing liability on any injuries occurring on federal property.

7. Whether removal is proper under the bankruptcy removal statute, 28 U.S.C. § 1452(a), where an exception to federal jurisdiction exists for a government seeking to protect public safety and welfare and a government has brought a public nuisance claim in the name of the People.

The People of the State of California, acting by and through San Francisco City Attorney Dennis J. Herrera and Oakland City Attorney Barbara J. Parker, sued the five largest investor-owned fossil fuel producers in the world in California state court for their contributions to the People's global warming injuries. Case No. 3:17-cv-06012-WHA, ECF No. 1-2 at 17-66 ("SF Compl."); Case No. 3:17-cv-06011-WHA, ECF No. 1-2 at 4-47 ("Oak. Compl.") (collectively, "Compls."). The People in each case assert a single claim for public nuisance under California state law. SF Compl., ¶¶ 94-99; Oakland Compl., ¶¶ 93-98. The People seek an abatement fund to pay for seawalls and other infrastructure needed to mitigate and prevent flooding, erosion, and other severe harms from global warming-induced sea level rise. Compls., Relief Requested, ¶ 2.

Global warming-induced sea level rise is causing severe harms to the People through flooding of low-lying areas, increased shoreline erosion, and salt water impacts to water treatment systems. SF Compl., ¶¶ 1, 31, 78, 86, 91, 96-97; Oak. Compl., ¶ 1, 31, 77, 85, 90, 95-97. The "rapidly rising sea level along the Pacific coast and in San Francisco Bay" also poses an "imminent threat of catastrophic storm surge flooding because any storm would be superimposed on a higher sea level." Compls., ¶ 1. The People "must take abatement action now to protect public and private property from this looming threat by building seawalls and other sea level rise adaptation infrastructure." *Id.* The complaints allege that this "egregious state of affairs is no accident," but rather is an "unlawful public nuisance of the first order." *Id.*, ¶ 2.

Defendants "produced massive amounts of fossil fuels for many years," despite "knowing – since at least the late 1970s and early 1980s if not earlier – that massive fossil fuel usage would cause dangerous global warming." SF Compl., ¶¶ 2, 53-56; Oak. Compl., ¶¶ 2, 52-55. Each defendant, "directly and through its subsidiaries, substantially participates in the process by which raw crude oil is extracted from the ground, refined into fossil fuel products and delivered, marketed, and sold to California residents for use." Compls., ¶ 32. Defendants "did not simply produce fossil fuels" (*id.*, ¶ 5), but instead "engaged in large-scale, sophisticated advertising and public relations campaigns to promote pervasive fossil fuel usage and to portray fossil fuels as environmentally responsible and essential to human well-being." SF Compl., ¶¶ 5, 78-84; Oak. Compl., ¶¶ 5, 77-83.

1  Defendants' "promotion of fossil fuels has also entailed denying mainstream climate science or

2  downplaying the risks of global warming." SF Compl., ¶¶ 6, 63-77; Oak. Compl., ¶¶ 6, 62-76.  The

3  "purpose of all this promotion of fossil fuels and efforts to undermine mainstream climate science

4  was, like all marketing, to increase sales and protect market share.  It succeeded."  Compls., ¶ 7.

5       The People allege that "Defendants' production and promotion of massive quantities of fossil

6  fuels" has caused a public nuisance by substantially and unreasonably interfering with "public rights

7  to health, safety and welfare" of San Francisco and Oakland residents "whose safety and lives are at

8  risk" from global warming-induced sea level rise.  SF Compl., ¶¶ 8-11, 94-99; Oak. Compl., ¶¶ 8-11,

9  93-98.  The People seek an abatement fund to pay for the billions of dollars of infrastructure

10 necessary to protect human safety and public and private property.  SF Compl., ¶¶ 8-11, 99; Oak.

11 Compl., ¶¶ 8-11, 98.  The People "do *not* seek to impose liability on Defendants for their direct

12 emissions of greenhouse gases and do *not* seek to restrain Defendants from engaging in their

13 business operations."  Compls., ¶ 11.  The People also "do not seek abatement with respect to any

14 federal land."  SF Compl., ¶ 99 n.108; Oak. Compl., ¶ 98 n.39.

15      On October 20, 2017, defendants removed the People's cases to this District, where they

16 were subsequently related in this Court by stipulation and order.  ECF No. 32.

17                    **LEGAL STANDARDS FOR REMOVAL**

18      The removal statute is "strictly construed against removal jurisdiction." *Provincial Gov't of

19 Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).  It is "presumed that a cause

20 lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the

21 contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039,

22 1042 (9th Cir. 2009) (internal quotation marks omitted).  The "strong presumption against removal

23 jurisdiction means that the defendant always has the burden of establishing that removal is proper,

24 and that the court resolves all ambiguity in favor of remand to state court." *Id.* (internal quotation

25 marks omitted).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal

26 in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

27      When a state brings a case in state court to enforce state law, the "claim of sovereign

28 protection from removal arises in its most powerful form." *Nevada v. Bank of Am. Corp.*, 672 F.3d

661, 676 (9th Cir. 2012) (internal quotation marks omitted). "Considerations of comity make federal courts reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Id.* (quotation and brackets omitted). "Removing a state's action from its own courts must serve[] an overriding federal interest." *Id.* (internal quotation marks omitted).

## ARGUMENT

## I. Defendants' removal of these cases under federal question jurisdiction is improper.

The People have pleaded only a state-law claim. Under the well-pleaded complaint rule, the plaintiff "is master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A claim arises under federal law "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (internal quotation marks omitted). Put another way, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). "This venerable 'well-pleaded complaint' rule keeps us from becoming entangled in state law controversies on the conjecture that federal law may come into play at some point during the litigation; it also ensures that Congress retains control over the size of federal court dockets." *Patrickson v. Dole Food Co Inc.*, 251 F.3d 795, 799 (9th Cir. 2001), *aff'd on other grounds*, 538 U.S. 468 (2003). It is black-letter law that a federal defense, such as ordinary preemption, is not an exception to the well-pleaded complaint rule. *See, e.g.*, *Caterpillar*, 482 U.S. at 398; *Moore-Thomas*, 553 F.3d at 1244. Defendants' attempts to evade the well-pleaded complaint rule all fail.

### A. These actions do not arise under federal common law.

Defendants' argument that under *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), federal common law "governs" the People's state law nuisance claim, and therefore that the claim arises under federal common law, is wrong for three reasons. *First*, the federal common law of interstate pollution has narrowly and universally involved cases against direct *dischargers* of transboundary pollution (or other harmful substances). By contrast, the People's nuisance claim here is brought not against *dischargers*, but against sellers of a *product*. Liability for product manufacture and promotion is an area where state law traditionally governs, and

where the "uniquely federal interest" required to create new federal common law is absent. **Second**, assuming that these cases against producers are tantamount to a traditional interstate pollution case against dischargers of pollution, these cases still would not arise under federal because, as defendants admit, the particular species of federal common law they invoke has been displaced by the CAA; the controlling law provides that, where federal common law is displaced, state law applies to interstate pollution. **Third**, the cases cited by defendants do not support removal under federal question jurisdiction because they were based upon diversity or upon a federal common law claim that the plaintiff expressly pleaded on the face of its complaint; none of these cases federalized a well-pleaded state-law claim as a basis for removal.

### 1. Federal common law cannot "govern" the People's nuisance claim, because federal common law does not extend to sellers of products.

The People's cases rely on established California law in seeking to hold defendants liable for improperly producing, promoting, marketing, and selling fossil fuels in massive quantities. Both complaints here plead a single claim under California public nuisance law based upon defendants' improper promotion, production, and sale of fossil fuels. The complaints do not assert liability based upon defendants' direct emissions of greenhouse gases and in fact expressly *disclaim* any such liability. Compls., ¶ 11.

The People's theory of liability presents a cognizable claim under California law, which authorizes nuisance claims against manufacturers who have promoted their products for dangerous uses. *See, e.g.*, *Ileto v. Glock Inc.*, 349 F.3d 1191, 1197-98 (9th Cir. 2003) (nuisance claim against gun makers); *ConAgra*, 2017 WL 5437485, at *18 (affirming public nuisance judgment against lead paint producers who promoted lead paint for interior use despite knowledge of airborne lead hazards); *County of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 306-10 (6th Dist. 2006) (holding, in same case, that the People stated a proper public nuisance claim); *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 40-41 (1st Dist. 2004). Under this state law, the People may seek to establish an abatement fund, *i.e.*, a monetary recovery. *E.g.*, *ConAgra*, 2017 WL 5437485, at *45-47. This recognized form of relief is the sole remedy the People seek in these actions.

This kind of claim has never been treated as one of federal common law. The instances where courts have fashioned federal common law are "few and restricted, limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (quotations and citations omitted). And it is not just the permissibility, "but also the scope of judicial displacement of state rules" that "turns upon such a conflict." *Id.* at 87-88. Since its inception, the federal common law of public nuisance has been applied exclusively to claims against parties that are directly discharging pollutants or other harmful substances (and that flow over a state border), never to claims against product sellers.[1] The justification for creating such federal common law was to enable a state to enjoin the direct harmful discharges that emanate from outside its borders: an upstream or upwind state sending direct discharges of pollutants over its borders was considered to be engaging in a "*casus belli* for a State lower down," *i.e.*, an act that justifies war, "unless removed." *Milwaukee I*, 406 U.S. at 104, 107 (quoting *Missouri v. Illinois*, 200 U.S. 496, 520-21 (1906)). Thus, "'[w]hen the States by their union made the forcible abatement of outside nuisances impossible to each, they did not thereby agree to submit to whatever might be done . . . the alternative to force is a suit in this court.'" *Id.* (quoting *Tenn. Copper Co.*, 206 U.S. at 237)). As the Ninth Circuit has stated, "true interstate disputes" are ones that "involve a state suing *sources* outside of its own territory because they are causing pollution within the state." *National Audubon Soc'y v. Dep't of Water*, 869 F.2d 1196, 1205 (9th Cir. 1988) (emphasis added) (plaintiff failed to state a federal common law claim where defendant had diverted water flowing into an interstate or navigable lake, causing airborne dust pollution from desiccated lake bed). Applying federal common law to producer-based cases would extend the scope of federal nuisance law well beyond its original justification.

---

[1] *See, e.g. Illinois v. City of Milwaukee*, 406 U.S. 91, 93 (1972) ("*Milwaukee I*") (sewage discharges into Lake Michigan); *New Jersey v. City of New York*, 283 U.S. 473, 476 (1931) (garbage dumping into ocean); *North Dakota v. Minnesota*, 263 U.S. 365, 371 (1923) (flooding from construction of ditches); *Georgia v. Tenn. Copper Co.*, 206 U.S. 230, 236 (1907) (discharges of sulfurous gas); *Missouri v. Illinois*, 180 U.S. 208, 214 (1901) (sewage discharges); *Township of Long Beach v. City of New York*, 445 F. Supp. 1203, 1206 (D.N.J. 1978) (dumping of garbage and sludge); *see also United States v. Stoeco Homes, Inc.*, 498 F.2d 597, 611 (3d Cir. 1974) (case by United States against defendant dredging navigable waters).

1       In order to justify expanding this "restricted category" of federal common law, defendants

2    must identify a "uniquely federal interest." *Id.* at 1202.  Indeed, there must be a "clear rule" and an

3    "overriding federal interest" to justify removal of an action brought initially by a state in its own

4    courts.  *Nevada*, 672 F.3d at 676 (internal quotation marks omitted).  Yet defendants fail, in their

5    detailed and extensive Notices of Removal (collectively "NOR"), to cite any authority or rationale

6    for extending federal common law to producers.  Defendants have not met their burden of persuasion

7    and "any doubts" are resolved in favor of remand.  *Gaus*, 980 F.2d at 566.  There is a long tradition

8    of state-law claims (*e.g.*, product liability, negligence, consumer fraud) based on products made in

9    other places and sold nationally; whatever friction this may arguably cause between states has never

10   sufficed to justify the creation of a new species of federal common law imposing liability on sellers

11   of products.[2]

12       For this reason alone, federal common law does not "govern" the People's claim, and

13   provides no basis for removal jurisdiction.

14           **2.  Kivalina did not federalize state law claims related to global warming.**

15       Even if, for the sake of argument, these cases were traditional interstate pollution cases

16   against dischargers, federal common law still could not govern here.  In *International Paper*, 479

17   U.S. at 488-89, the court held that, where the relevant federal common law of interstate pollution has

18   been displaced by Congress, state nuisance law applies.  Similarly, in *Kivalina*, where a Native

19   American tribe and municipality sued emitters of greenhouse gases, the Court held that any arguable

20   federal common law claim was displaced by the CAA and affirmed a judgment allowing the

21   plaintiffs' supplemental state law claims to be refiled in state court.  Defendants concede here that

22   the federal common law applicable to dischargers of interstate air pollution has now been displaced

23   by the CAA.  NOR, ¶ 13.  Their argument that this nonexistent federal common law somehow

24

25

26       [2] There is also no uniquely federal interest in global warming policy or greenhouse gas
     emissions; on the contrary, there is a robust tradition of state global warming action, including

27   California's Global Warming Solutions Act ("GWSA").  *See* Cal. Health & Safety Code §§ 38501-
     38599; *see also Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1079 (9th Cir. 2013)

28   (upholding California regulations under GWSA governing carbon content of fuels against dormant
     Commerce Clause challenge).

"governs" a state law claim is at odds with the controlling law, as well as common sense, and provides no basis for removal.

In *International Paper*, Vermont citizens sued a paper mill in New York for polluting a lake bounded by both states; the defendant removed under diversity jurisdiction. In earlier cases, the Supreme Court had held initially that federal common law applied to interstate water pollution, and, after subsequent amendments to the Clean Water Act ("CWA"), that such federal common law had been displaced by Congress. *See* 479 U.S. at 488-89 (discussing *Milwaukee I* and *City of Milwaukee v. Illinois*, 451 U.S. 304, 310 n.4 (1981) ("*Milwaukee II*")). Thus, at the time *International Paper* was decided, the relevant federal common law no longer existed, and the plaintiffs in *International Paper* filed suit under state nuisance law. The Supreme Court, treating the case expressly as an interstate pollution case in the mold of *Milwaukee I* and *II*, held that the plaintiffs could proceed under state public nuisance law. *International Paper*, 479 U.S. at 498-99. To be sure, the Court limited the plaintiffs' claims there to the law of the source state (*i.e.*, New York law) because application of Vermont law would have conflicted with the CWA as a matter of *ordinary* preemption (*id.* at 497).[3] But there was no hint in *International Paper* that federal common law should have "governed" or somehow federalized either a Vermont or New York state-law nuisance claim.

If state law could not be used in interstate pollution cases as defendants contend, *International Paper* would be utterly inexplicable. And as the Sixth Circuit has ruled, *International Paper* means that it is improper to remove, as a federal question, an interstate, and even international, pollution case that pleads only a state law claim. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 343-44 (6th Cir. 1989) (remanding international air pollution case by foreign province against U.S. source of air pollution under state nuisance law). Removal under a displaced federal common law would also violate the rule that, if "federal law provides no remedy, the state claim cannot be recharacterized as federal, as no federal claim exists . . . and removal is improper." *Sullivan v. First Affiliated Secs., Inc.*, 813 F.2d 1368, 1372 (9th Cir. 1987).

---

[3] On remand, defendants will have their day in court to argue that, under *International Paper's* ordinary preemption ruling, the CAA preempts California law nuisance claims not just against stationary source dischargers of interstate pollution but also claims against producers of products.

The cases against greenhouse gas polluters, *Kivalina* and *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410 (2011) ("*AEP*"), faithfully adhere to *International Paper*. In both cases, the plaintiffs expressly pleaded a federal common law claim on the face of their complaint, along with supplemental state law claims. As in *International Paper*, in both cases the courts held that a federal statute (*i.e.*, the federal CAA) displaced the federal common law claim. And in both cases the courts left open the supplemental state law claims to be addressed in a subsequent proceeding – an outcome that is fundamentally at odds with defendants' argument that state law cannot apply.

In *Kivalina*, after dismissing the federal common law claim, the district court declined to exercise supplemental jurisdiction over state-law nuisance claims, and expressly ruled that dismissal of these claims was "without prejudice to their presentation in a state court action." *Native Village of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 882-83 (N.D. Cal. 2009). When the case was appealed, the Ninth Circuit not only affirmed the district court, but a concurring opinion pointed out that the state law claims could proceed in state court, subject to an ordinary preemption defense under the CAA:

> Once federal common law is displaced, state nuisance law becomes an available option to the extent it is not preempted by federal law. *AEP*, 131 S.Ct. at 2540 ("In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, *inter alia*, on the preemptive effect of the federal Act."). The district court below dismissed Kivalina's state law nuisance claim without prejudice to refiling it in state court, and Kivalina may pursue whatever remedies it may have under state law to the extent their claims are not preempted.

*Kivalina*, 696 F.3d at 866 (Pro, J., concurring). This disposition of the state law claims in *Kivalina* cannot be squared with defendants' argument that the court held federal common law "governs" all global warming-related tort claims to the exclusion of state law.

Similarly, in *AEP*, after the Court held that the CAA displaced the plaintiffs' federal common law claim, the Court made clear that the availability *vel non* of state law claims against greenhouse gas polluters is a matter of ordinary preemption:

> In light of our holding that the Clean Air Act displaces federal common law, *the availability vel non of a state lawsuit depends, inter alia, on the preemptive effect of the federal Act.* None of the parties have briefed preemption or otherwise addressed the availability of a claim under state nuisance law. We therefore leave the matter open for consideration on remand.

*AEP*, 564 U.S. at 429 (emphasis added).

In other words, once federal common law is displaced by statute, the sole surviving species of federal law is the federal statute. Because the only federal-law issue then remaining is whether the statute affords an ordinary preemption defense to the state claim, there is no basis for removal. Here, the relevant federal common law that defendants say governs is the very federal common law that *Kivalina* held no longer exists – which in turn means that the People must still have a state-law nuisance claim, subject only to an ordinary preemption defense under the CAA, just as the plaintiffs did in *Kivalina*, *AEP*, and *International Paper*.

Finally, defendants' very premise – that *Kivalina* "held" that federal common law governs all global warming-related tort claims – is not supported by the court's opinion. The Ninth Circuit merely found that "federal common law *can apply* to transboundary pollution suits," *Kivalina*, 696 F.3d at 855 (emphasis added), and proceeded directly from there to the displacement issue. After addressing displacement, the Ninth Circuit declared: "[w]e need not, and do not, reach any other issue urged by the parties." *Id*. at 858. *Kivalina*, moreover, was applying the same analysis as *AEP*, which held that a displacement ruling moots the question of whether federal common law applies:

> We need not address the parties' dispute in this regard. For it is an academic question whether, in the absence of the Clean Air Act and the EPA actions the Act authorizes, the plaintiffs could state a federal common law claim for the curtailment of greenhouse gas emissions because of their contribution to global warming. Any such claim would be displaced by the federal legislation authorizing EPA to regulate carbon-dioxide emissions.

*AEP*, 564 U.S. at 423.

In short, the non-existent federal common law on which defendants rely does not reach out from the grave in some kind of zombie-like fashion, devouring in its path all state law claims relating to interstate pollution. Nor did *Kivalina* hold that all global warming-related tort cases are governed

by federal common law, even where plaintiffs target the promotion and sale of products. And it most certainly did not find that federal common law provides a basis for removal jurisdiction where plaintiffs ground their cases in state public nuisance law.

### 3. Defendants rely upon cases that do not address or support removal jurisdiction.

At bottom, defendants' federal common law argument boils down to an invitation to ignore the well-pleaded complaint rule. The complaints here plead only a single state law claim. In their analysis of federal common law, defendants do not identify any exception to the rule.

As noted above, the Sixth Circuit has directly confronted this issue and held that a state law claim dealing with interstate and international pollution is not removable. *Her Majesty the Queen*, 874 F.2d at 343-44. Thus, even if, for the sake of argument, the People's cases were traditional interstate pollution cases against dischargers of pollution, which they are not, the People's well-pleaded state law claims are not removable.

The cases in defendants' NOR are not on point. Defendants repeatedly invoke *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) (*see* NOR, ¶¶ 5, 14), but that case, which involved the federal common law applicable to federal contractors, was a diversity case filed originally in federal court and thus did not address federal-question jurisdiction, much less removal. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 142 (2d Cir. 2005) (Sotomayor, J.) ("satisfaction of the two-prong *Boyle* test does not necessarily create federal jurisdiction under 28 U.S.C. § 1331"), *aff'd*, 547 U.S. 677, 693 (2006) (*Boyle* test not satisfied and thus "there is no cause to displace state law, much less to lodge this case in federal court."); *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 314 (3d Cir. 1994) ("*Boyle* . . . did not involve the removal of what purports to be a state law claim from state court to federal court on the basis of federal question jurisdiction."). *Boyle* dealt instead with what the Supreme Court has since described as a "vertical choice-of-law issue," *Empire*, 547 U.S. at 691-92, *i.e.*, a choice between state and federal law. Thus, cases relying on *Boyle* have required another basis for removal. *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006).

The other cases relied upon by defendants, including *AEP*, *Kivalina*, *Milwaukee II*, and *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985) (NOR ¶¶ 5, 13,

14), were all cases in which the plaintiffs expressly pleaded a federal common law claim, and filed their actions in federal court.[4] When a plaintiff so pleads, federal question jurisdiction is proper as long as the purported federal claim is not "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks omitted). That is, in effect, the opposite of the standard applicable here, where defendants seek to remove complaints pleaded purely under state law.

Defendants cite no case where federal question jurisdiction was created by applying federal common law to a state-law claim. In fact, the Ninth Circuit has rejected similar attempts to use federal common law (*i.e.*, the act of state doctrine) as a basis to remove when the plaintiff has pleaded purely non-federal tort claims. *See Patrickson*, 251 F.3d at 800 (remanding tort case because "the case -- at least as framed by plaintiffs -- does not require us to evaluate any act of state or apply any principle of international law."), *aff'd on other grounds*, 538 U.S. 468 (2003); *Marinduque*, 582 F.3d at 1089 (remanding to state court a claim by foreign province pleading foreign law notwithstanding federal common law act of state doctrine). The only even arguable exception that the People can find is *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002), where the court assumed that if the federal common law applicable to lost or damaged goods shipped in interstate commerce applied to a claim pleaded under state law, the claim could be removed. But this part of *Wayne* was dicta: the court ordered the case remanded to state court because it did not involve a claim of lost or stolen goods and thus federal common law did not apply at all. *Id*. at 1185.

Here, the People's public nuisance claim expressly pleads a state law claim and defendants have raised a federal issue as a defense. Removal is improper under the well-pleaded complaint rule.

---

[4] The discussion of federal common law in *National Audubon* (NOR, ¶14), also sheds no light on the federal question removal issue here because in that case the plaintiff amended its complaint to assert a federal common law claim only after the case was removed to federal court by the United States pursuant to 28 U.S.C. § 1442(a)(1). *See* 869 F.2d at 1199.

**B.** **The People's state-law public nuisance claims do not "necessarily raise" a "substantial" and "disputed" federal issue.**

Defendants' argument that the People's nuisance claim arises under federal law because the claim supposedly conflicts with various federal executive orders, leases, and statutes that authorize fossil fuel production, and with federal constitutional limits on state regulation, misses the mark. Defendants incorrectly contend that these alleged conflicts create "disputed and substantial" federal issues sufficient to confer jurisdiction under *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). NOR, ¶¶ 23-25. But these federal laws are, at most, defenses that do not create *Grable* jurisdiction.

Under *Grable*, jurisdiction exists only if the federal law is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The *Grable* rule is a "special and small category" of federal question jurisdiction, and is usually found where the plaintiff's claim turns entirely on a pure issue of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh* ("*Empire*"), 547 U.S. 677, 699 (2006). For example, in *Grable* itself, the plaintiff brought a quiet-title action in state court that challenged the defendant's ownership on the basis that the IRS's mailing of a tax sale notice to the plaintiff did not comply with the federal notification statute; this question of whether a federal agency complied with federal law was thus part of the plaintiff's affirmative case to prove title to the property (and was the only issue in the case). 545 U.S. at 315. As the Court stated in *Grable*, the federal government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* The situation is entirely different here.

**1. The People's California-law nuisance claim does not raise any federal issue.**

Defendants fail to meet the first *Grable* requirement. The Ninth Circuit has repeatedly emphasized that "*Grable* did not implicitly overturn the well-pleaded complaint rule," and that there is no federal issue "necessarily raised" by the complaint if the federal issue is not part of the affirmative case laid out in the complaint. *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011). For example, in *California Shock Trauma*, federal law was (as

the complaint openly admitted) central to determining the viability of an inevitable defense to the plaintiff's state-law claim. *Id.* at 542-43. But it was not part of the plaintiff's affirmative case, so there was no federal court jurisdiction. *Id.*; *see also In re Circular Thermostat Antitrust Litig.*, 2005 WL 2043022, at *5 (N.D. Cal. Aug. 24, 2005) ("[t]he key word is 'necessary'"; rejecting federal jurisdiction where federal issue "will no doubt be a large part of the proceedings in these actions," but was not "a *necessary* element of plaintiffs' state claims"). Similarly, all the Supreme Court decisions finding *Grable*-type jurisdiction have focused on whether federal law was part of the affirmative case as pleaded by the plaintiff.[5]

Defendants' NOR is packed with citations, but scarcely address this key point. They cite no Ninth Circuit case on *Grable*, and the cases they do cite (with one exception) either involved federal law in the plaintiff's affirmative case,[6] or rejected jurisdiction.[7] NOR, ¶¶ 28-29. The one exception is *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 483 F. Supp. 2d 934 (N.D. Cal. 2007) ("*NSA Telecomms.*"), which considered whether federal state-secrets law forbade disclosure of phone records to the National Security Agency. Because of the national security implications of the case, and because the federal issue could not be "neatly" categorized as a defense but instead went to the

---

[5] *See Gunn*, 568 U.S. at 259 ("causation element" required plaintiff to establish patent infringement under federal law but holding other elements of *Grable* not satisfied); *Grable*, 545 U.S. at 315 (federal-law issue was "essential element of [plaintiff's] quiet title claim"); *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201-02 (1921) (plaintiff's affirmative case required proof that bond issuance violated federal constitution); *cf. Empire*, 547 U.S. at 677 (considering whether federal law was a "necessary element" of plaintiff's claim) (internal quotation marks omitted).

[6] *See Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 850 F.3d 714, 722-23 (5th Cir. 2017) (federal law, which the plaintiff expressly pleaded on the face of its complaint, was "the exclusive basis for holding Defendants liable for some of their actions" and there was a total "absence of any state law grounding" for the legal duty giving rise to liability); *Pet Quarters, Inc v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (claim explicitly attacked the entire "*existence*" of a federal program regulating the sales of securities under the Securities Exchange Act) (quoting the complaint, emphasis added by court); *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007) (plaintiff's affirmative case depended on the construction of federal Medicaid law); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017) (plaintiff's claim required it to prove whether federal law required Monsanto to disclose certain information to federal regulators, and whether federal law would have imposed additional restrictions on Monsanto had the information been disclosed). Finally, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) is not about federal jurisdiction at all.

[7] *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) (rejecting jurisdiction; "federal defenses do not justify removal, even if the federal issue is the only one in dispute") (citation omitted).

justiciability of the claim, the court found *Grable* jurisdiction. *Id.* at 942. But the court emphasized the case was "unique," *id.*, and the decision has never been cited by any court for its interpretation of *Grable*. Four years later, *California Shock Trauma* reaffirmed that *Grable* is not an exception to the well-pleaded complaint rule, and this is only one of several recent Ninth Circuit decisions rejecting attempts to use federal defenses to create *Grable* jurisdiction.[8] District courts in this circuit routinely reject *Grable* jurisdiction that is rooted in defenses,[9] including in lawsuits over products thoroughly regulated by federal law.[10] The rule is clear: *Grable* removal is proper only where the complaint pleads a federal issue as part of the plaintiff's affirmative case.

This should end the inquiry because Plaintiffs have pleaded no such federal issues. Defendants nonetheless contend that the People's nuisance claim "calls into question," "supplants and undermines" or "implicates" federal law. *See* NOR, ¶¶ 23-24, 29-30, 32. These allegations are insufficient. *See Cal. Shock Trauma*, 636 F.3d at 542 (no *Grable* jurisdiction where claim allegedly "implicates significant federal issues") (brackets omitted); *Ange v. Templer*, 418 F. Supp. 2d 1169, 1173 (N.D. Cal. 2006) (no *Grable* jurisdiction where plaintiff's claim supposedly "implicate[d]" federal cybersquatting law: the "Internet is not a talisman bestowing federal jurisdiction").

---

[8] *See Nevada*, 672 F.3d at 675 (rejecting *Grable* jurisdiction where federal law was not "a necessary element of the claim") (internal quotation marks omitted*); Marinduque*, 582 F.3d at 1092 (rejecting *Grable* jurisdiction because federal law was merely a defense); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1102 (9th Cir. 2008) (federal law not an "essential element" of plaintiff's claim, no *Grable* jurisdiction); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988) (federal-law defense does not create jurisdiction "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case") (internal quotation marks omitted); *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1028 (10th Cir. 2012) (no *Grable* jurisdiction where federal issue is a defense); *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 403 (3d Cir. 2012) (similar, dicta); *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 478-79 (6th Cir. 2008) (similar).

[9] *Ilczyszyn v. Sw. Airlines Co.*, 2015 WL 5157372, at *2 (N.D. Cal. Sept. 1, 2015); *Mercado v. Regents of the Univ. of Cal.*, 2014 WL 5305472, at *3 (N.D. Cal. Oct. 16, 2014); *US Bank Nat'l Ass'n v. Lasoff*, 2013 WL 12114611, at *2 (C.D. Cal. Mar. 18, 2013); *Fed. Nat'l Mortg. Ass'n v. Bravo*, 2013 WL 812705, at *2 (C.D. Cal. Mar. 5, 2013); *Wells Fargo v. Cabazon Band of Mission Indians*, 2012 WL 4718879, at *3 (C.D. Cal. Oct. 3, 2012).

[10] *See Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1255-56 (D. Or. 2011) (extensive federal regulation of drugs does not suffice to show that federal law was part of plaintiff's claim against drug maker); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 135 (2d Cir. 2007) (in litigation over chemical added to gasoline pursuant to CAA, not enough that federal law provides a defense or lurks in the background; *Grable* jurisdiction denied).

1    Defendants fail to show that federal law is pleaded in the complaints, or that it is part of the People's

2    affirmative claim, or even that it creates the kind of justiciability issues present in *NSA Telecomms*.

3            An examination of the People's complaints illustrates the point. The People claim that

4    defendants' production and promotion of fossil fuels contributed to a nuisance, which includes

5    anything "injurious to health . . . or an obstruction to the free use of property, so as to interfere with

6    the comfortable enjoyment of life or property." Cal. Civ. Code § 3479. No federal law is part of this

7    claim – not Executive Orders requiring cost-benefit analyses of regulation (NOR, ¶ 27), not laws

8    authorizing or regulating energy production or greenhouse gas emissions (NOR, ¶¶ 26-27, 29), not

9    constitutional defenses (NOR, ¶ 32), and not foreign affairs (NOR, ¶ 33). Nor do the complaints

10   allege (notwithstanding defendants' assertions to the contrary (*see* NOR, ¶ 31)), that federal

11   regulation of fossil fuels would have been different absent defendants' conduct. There is thus no

12   federal issue that is part of the People's affirmative claim.

13           Defendants try to manufacture a conflict with federal law by mischaracterizing the

14   "unreasonableness" element of public nuisance. NOR, ¶ 26. Defendants argue that proving

15   unreasonableness requires weighing the gravity of the harm against the social utility of the

16   defendant's conduct – a balancing that defendants say is reserved to federal law alone. *Id.* But the

17   premise underlying defendants' argument is incorrect: although nuisance liability *can* be grounded

18   on a weighing of the gravity of the harm against the utility of the actor's conduct, there are "alternate

19   tests to determine when an intentional invasion is unreasonable," including a test that is satisfied

20   when the harm is "'severe and greater than the [plaintiff] should be required to bear without

21   compensation.'" *Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123, 162 (2d Dist. 2015) (quoting

22   *Restatement (Second) of Torts* § 829A). Under this approach, liability is imposed "regardless of the

23   utility of the [defendant's] conduct." *Restatement* § 829A cmt. b. The complaints embrace this

24   approach; the People allege harms that are "severe," including massive destruction of public and

25   private property. SF Compl. ¶¶ 31, 78, 86, 91, 96-97; Oak. Compl. ¶¶ 1, 31, 77, 85, 90, 95-97. And

26   even if *arguendo* state law did require a balancing test, this would not provide a basis for removal.

27   Any alleged conflict between state public nuisance law and federal law is just a defense of ordinary

28

preemption that can be raised in state court, not an inevitable part of the People's affirmative cases and certainly not any part of the People's well-pleaded state law complaints.

In sum, the People's affirmative claim does not raise any federal issue. On this basis alone, defendants' *Grable* argument should be rejected.

### 2. The People's California-law public nuisance claim does not create any dispute over the federal laws defendants raise.

*Grable* jurisdiction further requires that there be a "real and substantial" dispute about the "construction and effect" of a federal law. *Grable*, 545 U.S. at 316 (internal quotation marks omitted). But the People have no quarrel with any of the federal statutes or executive orders that defendants cite. Defendants talk vaguely about federal law being "implicated"( NOR, ¶¶ 30, 32), or "undermined" (NOR, ¶¶ 23-24, 28, 34, but this does not carry their burden to identify a true dispute embedded in the People's public nuisance claim about the construction and effect of federal law. *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008) (no *Grable* jurisdiction where federal law issue was "not controverted"); *K2 Am. Corp. v. Roland Oil & Gas*, 653 F.3d 1024, 1032 (9th Cir. 2011) (where plaintiff sued over award to defendant of federal oil and gas lease, there was no *Grable* jurisdiction where the terms of the lease were not disputed). Moreover, even if there were a dispute about federal law here, defendants do not attempt to carry their burden of showing that such a dispute would be "substantial." *See, e.g.*, *Empire*, 547 U.S. at 701.

### 3. Exercising federal jurisdiction would disrupt the federal-state balance.

*Grable* jurisdiction also requires defendants to show that federal jurisdiction would not disrupt "the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Under this rule, courts often reject *Grable* jurisdiction over traditional state torts, even in cases where the dispute is over a product regulated by federal law. *See Kroger*, 832 F. Supp. 2d at 1258 (rejecting *Grable* jurisdiction because claim was traditional state lawsuit over defective drug, notwithstanding extensive federal regulation); *see also Merrell Dow*, 478 U.S. at 810-11 (similar, pre-*Grable* case). Nuisance liability is precisely such a traditional tort. *Santa Clara*, 137 Cal. App. 4th at 308-09 (lead paint nuisance claim); *Ileto*, 349 F.3d at 1197-98 (nuisance claim against gun makers); *In re MTBE*, 488 F.3d at 135 (remanding claims based on gasoline additive regulated by federal law). The

potential for disrupting the "federal-state balance" is higher still when a state is the plaintiff, *Nevada*, 672 F.3d at 676, which is the case here. *California v. Purdue Pharma L.P.*, 2014 WL 6065907, at *3-4 (C.D. Cal. Nov. 12, 2014) (in public nuisance actions brought by a city on the People's behalf, the real party in interest is the state). There is no *Grable* jurisdiction.

### C. The Clean Air Act provisions authorizing review of EPA actions do not completely preempt a state-law public nuisance claim.

Defendants argue that the People's claim arises under federal law because it is "completely preempted" by the CAA – specifically by provisions authorizing petitions for review of EPA administrative action and for rulemaking. NOR, ¶ 46. Not so. The People's claim is fundamentally different from a petition for administrative review, and (as far as the People are aware) every court that has ever considered the question has held that the CAA does not completely preempt state-law causes of action.

Complete preemption applies only where Congress clearly intends for a federal statute to provide "the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *Hanan v. Ford Motor Co.*, 2003 U.S. Dist. LEXIS 14038, at *9 (N.D. Cal. Aug. 4, 2003) ("for federal-question jurisdiction to exist, Congress must have clearly intended *complete* preemption of state law by a federal scheme"). This "arises only in extraordinary situations," *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 862 (9th Cir. 2003) (internal quotation marks omitted), and requires a finding that "Congress has clearly manifested an intent to make causes of action within the scope [of the federal cause of action] removable to federal court." *Beneficial Nat'l Bank*, 539 U.S. at 15-16. Unlike ordinary preemption (*e.g.*, conflict or field preemption), which does not create federal jurisdiction, complete preemption is a narrow exception to the usual rule forbidding removal where the complaint "does not, on its face, affirmatively allege a federal claim." *Marin Gen. Hosp. v. Modesto & Empire Traction*, 581 F.3d 941, 945 (9th Cir. 2009); *see also Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 (9th Cir. 2014) (jurisdictional doctrine of complete preemption and defensive doctrine of field preemption "should be kept clear and separate

in our minds"). The Supreme Court has found the necessary clear intent in only three statutes, none of which is relevant here. *See Ansley*, 340 F.3d at 862.

Defendants purport to locate the necessary clear manifestation of a congressional intent to federalize the People's state-law claims in CAA sections 304(a) and 307(b), 42 U.S.C. §§ 7604(a), 7607(b). *See* NOR, ¶ 43. Section 304(a) provides that any person may bring suit against emitters who violate emissions standards or permit requirements, against persons who construct facilities without permits, and against the EPA Administrator for failing to perform a mandatory duty. It is the last category of suits against the Administrator (CAA § 304(a)(2)) that defendants apparently contend accomplishes complete preemption. *See* NOR, ¶ 39 (describing CAA § 304 as authorizing the People "to petition the EPA to undertake new rulemakings"). Section 307(b)(1) provides, in relevant part, that "a petition for review of action of the Administrator in promulgating" emissions standards or nationally-applicable regulations must be filed in the D.C. Circuit whereas local or regionally-applicable regulations must be filed in the federal appellate court for the appropriate region. Here, the People are not seeking anything of the Administrator – these actions would not require the Administrator to perform any duty or to obtain review of any action by EPA, nor would they seek emissions limits from anyone. These actions are instead seeking abatement costs from fossil fuel producers, solely in the form of funding for seawalls and other infrastructure needed to adapt to rising sea levels. The People's nuisance claim is not remotely covered by the plain language of either provision. And far from manifesting "an intent to convert state law claims into federal-question claims," *Ansley*, 340 F.3d at 862, the purpose of section 304(a)(2) is simply to authorize citizen suits against EPA while the purpose of section 307(b) is to direct challenges to certain EPA decisions into particular federal appellate courts.

Even if the People *had* brought a state-law claim against emitters (which they have not), the CAA does not provide "the exclusive cause of action" for air pollution. *Beneficial Nat. Bank*, 539 U.S. at 8. Instead, the CAA expressly preserves state law.[11] These CAA savings provisions are

_____

[11] *See* 42 U.S.C. § 7604(a) & (e) (citizens suit provisions in section 304(a) do not restrict the rights of any "person" to "to seek any other relief," including under "common law."); 42 U.S.C. § 7602(e) (defining "person" to include a "State, municipality [or] political subdivision of a State"); 42 U.S.C. § 7416 (preserving states' right to enforce "abatement of air pollution"); 42 U.S.C. § 7401

impossible to square with any argument that the right to sue the Administrator is the "exclusive cause

of action" for public nuisance claims – all the more so with respect to section 304(a)(2), because one

of the savings clauses explicitly states that "[n]othing in this section," *i.e.*, in section 304, "shall

restrict" any rights under statutory or common law.  42 U.S.C. § 7604(e).

Not surprisingly, every court (of which the People are aware) to have considered the question

has held that the CAA does *not* completely preempt state-law claims.  For example, in *Her Majesty

The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 341 (6th Cir. 1989),

Ontario brought a state-law claim under a Michigan statute authorizing the courts to develop

"common law" standards to protect the environment.  Ontario used this state law to challenge the

construction of a waste generation facility, even though the facility had already received a permit

under the CAA.  But the Sixth Circuit rejected complete preemption, because the savings clauses

"clearly indicate[d] that Congress did not wish to abolish state control," and because *International

Paper* had rejected the idea that similar savings clauses in the Clean Water Act "'left no room'" for

state law.  *Id.* at 342 (quoting *International Paper*, 479 U.S. at 492).  In *In re MTBE*, 488 F.3d at

135, the Second Circuit considered a claim similar to the People's claim here: a public nuisance

claim for abatement brought by a California municipality on behalf of the People against producers

of gasoline, seeking (among other things) abatement of groundwater pollution caused by a fuel that

was authorized under the CAA.[12]  The Second Circuit held that the CAA did not completely preempt

the claim.[13]

---

[12] The relief sought by the People was described in a subsequent decision involving parties whose claims were not remanded.  *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 247 F.R.D. 420, 423 (S.D.N.Y. 2007) (describing California's claim for an order "to abate the public nuisance").

[13]  Other cases rejecting complete preemption under the CAA include: *Keltner v. SunCoke Energy, Inc.*, 2015 WL 3400234, at *5 (S.D. Ill. May 26, 2015) (nuisance claims against emitter not completely preempted by CAA); *Morrison v. Drummond Co.*, 2015 WL 1345721 (N.D. Ala. Mar. 23, 2015) (personal injury claims from exposure to air pollution not completely preempted by CAA); *Cerny v. Marathon Oil Corp.*, 2013 WL 5560483, at *8 (W.D. Tex. Oct. 7, 2013) (nuisance claims from emissions not preempted by CAA); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1285 (W.D. Tex. 1992) (rejecting complete preemption argument and remanding state law nuisance and trespass claims because "the Clean Air Act does not create federal court jurisdiction"); *cf. Bell v. Cheswick Generating Station*, 734 F.3d 188, 198 (3d Cir. 2013) (rejecting conflict preemption of

(congressional findings that "air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments").

1   Even if CAA sections 304(a)(2) and 307(b)(1) did "clearly manifest" the necessary

2   congressional intent for exclusive federal jurisdiction, the People's claim *still* would not be

3   completely preempted unless it were "within the scope" of the causes of action created by these parts

4   of the CAA. *Dennis v. Hart*, 724 F.3d 1249, 1254-55 (9th Cir. 2013) (brackets and internal

5   quotation marks omitted). This occurs only if (1) the plaintiff "could have brought [its] claim" under

6   the federal statute, and (2) there is "no other independent legal duty" under state law that the

7   defendant violated. *Marin*, 581 F.3d at 946.

8   Neither condition is met here. The People could not have brought their actions as a petition

9   for review of EPA action under either sections 304(a)(2) or 307(b): neither statute makes even

10  *emitters* liable to pollution victims for CAA violations, to say nothing of creating liability (as

11  California law does) for *producers* based on their production and promotional conduct; the sole

12  remedy either provision offers is against EPA. And California law creates an independent duty: it

13  requires companies not to create nuisances through improper promotion and sale of a product, as in

14  *Santa Clara*, 137 Cal. App. 4th at 308-09, which is very different from EPA's duty under sections

15  304(a)(2) and 307(b) to set emissions limits in conformity with the CAA. For this reason, it is

16  nothing short of bizarre to contend that the People's nuisance claim for an abatement fund against

17  fossil fuel producers is completely preempted by the availability of an administrative lawsuit against

18  EPA for emissions limits or rulemakings. *See Sullivan*, 813 F.2d at 1372 (if "federal law provides no

19  remedy, the state claim cannot be recharacterized as federal, as no federal claim exists . . . and

20  removal is improper"). The CAA does not completely preempt the People's nuisance claim.

21  **II.     OCSLA jurisdiction is lacking even under the out-of-circuit law defendants invoke.**

22  Defendants' contention that the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.

23  §§ 1331-1356, provides a basis for removal is unavailing. Defendants tout the expansive substantive

---

24  state tort claim against emitter: "If Congress intended to eliminate such private causes of action, its
    failure even to hint at this result would be spectacularly odd." (internal quotation marks omitted);
25  *see also ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1114 (9th
    Cir. 2000) (holding that the Comprehensive Environmental Response, Compensation, and Liability
26  Act does not completely preempt state-law claims because savings clauses are an "express"
    declaration of congressional intent). Defendants rely on *North Carolina ex. rel. Cooper v. Tenn.*
27  *Valley Auth.*, 615 F.3d 291, 304 (4th Cir. 2010), but that involved ordinary preemption, not complete
    preemption. *See id.* at 302 ("We need not hold flatly that Congress has entirely preempted the field
28  of emissions regulation.").

1    reach of OCSLA jurisdiction applied in the Fifth Circuit (NOR, ¶ 49), but even that reach is "not

2    limitless." *Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co., LLC*, 46 F. Supp. 3d 701, 704-05 (S.D.

3    Tex. 2014).[14]  In the Fifth Circuit, a party seeking OCSLA removal must satisfy two elements: the

4    activities that caused the injury must constitute an operation conducted on the Outer Continental

5    Shelf ("OCS") that involved the exploration and production of minerals *and* the case must arise out

6    of, or in connection with, the operation.  *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir.

7    2014).  Neither element is satisfied here.

8        These are not cases like *Deepwater Horizon*, involving injuries caused by a single

9    catastrophic oil spill from a blowout on a platform on the OCS.  Because the People's state-law

10   claim alleges injuries caused by substantial fossil fuel production and promotion activities having

11   nothing to do with the OCS, the Fifth Circuit's first element for OCSLA jurisdiction is not satisfied.

12       The second element of OCSLA, jurisdiction, is not met here either because these are not

13   cases "arising out of, or in connection with," an operation on the OCS.  *Id.*  Courts in the Fifth

14   Circuit apply a "but-for" test when assessing this element.  *Id.*; *see also Tennessee Gas Pipeline v.*

15   *Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996); *Plains Gas Sols.*, 46 F. Supp. 3d at 703.

16   Defendants must demonstrate that the People would have suffered no global warming injury, and

17   that the People would have no corresponding public nuisance claim, in the absence of defendants'

18   operations on the OCS.  *See Tenn. Gas Pipeline*, 87 F.3d at 155.  Defendants have not carried their

19   burden to show that the People's state-law public nuisance claim would not have arisen "but for"

20   defendants' OCS operations.  The complaints allege that defendants have produced massive amounts

21   of fossil fuels and engaged in large-scale advertising and public relations campaigns to "promote

22   pervasive fossil fuel usage and to portray fossil fuels as environmentally responsible"; and that they

23   have downplayed the risks of global warming, causing severe injuries to the People.  Compls., ¶¶ 2,

24   5, 6, 8.  The People's claim is not dependent on any one subset of defendants' fossil fuel production

25   activities, such as extraction on the OCS.  Nor is the People's claim limited to defendants' fossil fuel

26   production activities, since defendants' *promotion* of fossil fuels for widespread consumption is an

27       [14] Plaintiffs do not concede that the Ninth Circuit would follow the Fifth Circuit test as to the
     outer limits of OCSLA jurisdiction but address Fifth Circuit law here because defendants rely almost
28   exclusively on it.

equally important component of the People's public nuisance claim. *See ConAgra*, 2017 WL 5437485, at *18-25.

Courts typically remand state-law claims for lack of OCSLA jurisdiction where some of the fossil fuels at issue originate on the OCS but there is substantial off-OCS activity at issue in the case. *See Stutes v. Gulfport Energy Corp.*, 2017 WL 4286846, at *12 (W.D. La. June 30, 2017) ("To subscribe to the argument that OCSLA jurisdiction is triggered by any claim concerning a pipe that transports minerals originating from the OCS would open the floodgates to cases that could invoke OCSLA jurisdiction far beyond its intended purpose."), *report and recommendation adopted*, 2017 WL 4274353 (W.D. La. Sept. 26, 2017); *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 837 (E.D. La. 2014) (rejecting OCSLA jurisdiction even where "some of the dredging and pipelines at issue facilitate oil and gas production on the OCS" because plaintiff's case is dependent on activities undertaken outside OCS); *ANR Pipeline Co. v. Conoco, Inc.*, 646 F. Supp. 439, 443-44 (W.D. Mich. 1986). In *ANR Pipeline*, the plaintiff brought state-law claims alleging that events constituting *force majeure* excused its compliance with seven offshore and eight onshore gas purchase contracts. 646 F. Supp. at 440. The court rejected defendant's argument that "any contract which is connected in *any* way with the 'exploration, development, or production of the minerals' created OCSLA jurisdiction" and remanded the case. *Id.* at 443-44. The court concluded that "production must be read in the context of its two counterparts: exploration and development; not with its complement *sales* and *consumption*." *Id.* at 445. There, as here, defendants' overly broad interpretation of OCSLA would have extended federal court jurisdiction to "any contract that even remotely relates to the selling or reselling of natural gas that comes from offshore wells" (*id.* at 444), and would open federal courts to all kinds of cases having any connection at all to fossil fuels that originated from production on the OCS.

In sum, the People's injuries are caused by defendants' massive fossil fuel production and widespread promotion of fossil fuel products. Defendants have not shown that the People's public nuisance claim would not have arisen but for those OCS activities. OCSLA does not create federal jurisdiction here, even under the expansive Fifth Circuit test.

**III.    Defendants are not acting under a federal officer merely by complying with federal regulations.**

Defendants also err in contending that their voluntary contractual agreements with the federal government to produce fossil fuels on federal lands provides a basis for removal under 28 U.S.C. § 1442(a)(1).  This statute permits removal of a civil action against "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof" for actions taken "under color of such office."  At most, defendants' fossil fuel production on federal lands has been subject to a form of government regulation that – even if detailed and complex – does not suffice to bring defendants within the scope of the federal officer removal statute.  *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007) (rejecting tobacco companies' argument, in unfair business practices case, that they were acting under federal officers because "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone").

The federal officer removal statute requires a defendant to demonstrate that (1) it is a person within the meaning of the statute; (2) that there is a causal nexus between the plaintiff's claims and the actions the defendant took pursuant to a federal officer's directions; and (3) it has a colorable defense to the plaintiff's claims.  *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 727 (9th Cir. 2015).  Once a plaintiff challenges the factual basis for any of these elements, the defendant carries the burden of proving by a preponderance of the evidence that removal jurisdiction is appropriate.  *Id.* at 728, 732 n.6.  The People agree that a corporation is a "person."  But defendants cannot carry their burden on the second prong, which is itself composed of two parts: defendants must show that they were "acting under" an officer of the United States and that those actions are causally connected to the People's state-law claim for public nuisance.  *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

Defendants have produced no "competent proof" of having "act[ed] under" a federal officer in the course of their fossil fuel production activities.  *See Cabalce*, 797 F.3d at 732 n.6 (quoting *Leite Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)).  Defendants point only to blank "form" leases purportedly used by federal regulators for OCS leasing as support that they have acted under a

1    federal official in exploring for and producing oil and gas.  NOR, ¶¶ 58-59; ECF No. 1-1, ¶¶ 8-9.

2    These blank forms do not establish that any defendant has engaged in any particular conduct.

3         Even if the OCS leasing forms were actual agreements between defendants and a federal

4    agency, they still would not be sufficient to carry defendants' burden.  For purposes of the federal

5    officer removal statute, a "private person's 'acting under' must involve an effort to *assist*, or to help

6    *carry out*, the duties or tasks of the federal superior."  *Watson*, 551 U.S. at 152 (emphases in

7    original).  Removal is not appropriate when a private firm is merely complying with the law or

8    acquiescing in a government order, even where the "private firm's activities are highly supervised

9    and monitored."  *Id.* at 152-53.  Here, the OCS leasing forms only provide that OCS lessees are

10   subject to a variety of regulatory compliance obligations related to their use of – and private profit

11   from – offshore federal lands.  *See* NOR, ¶ 59 (noting requirement to "comply with all applicable

12   regulations, orders, written instructions, and the terms and conditions set forth in this lease"); ECF

13   No. 1-7, 2 (copy of blank form lease providing that lease is subject to certain statutes and

14   regulations); ECF No. 1-8, 2 (same).

15        These brief, form leases lack anything resembling the kind of detailed specifications or

16   commands to act that have entitled certain government contractors to remove under the federal

17   officer statute.  In *Leite*, 749 F.3d at 1117, cited by defendants, plaintiffs who worked at a naval

18   shipyard sued manufacturers of asbestos-containing products under a failure to warn theory and the

19   defendant demonstrated that the Navy had *prohibited* them from issuing any warnings other than

20   those specified by the Navy.  In *Goncalves*, 865 F.3d at 1237, medical insurers who cover federal

21   employees under a federal statute that requires the insurers to bring subrogation claims and entitles

22   the federal government to the proceeds of such claims were held to be acting under a federal

23   agency's direction when bringing a subrogation claim.

24        Here, the proffered OCS leases are evidence, at most, of a mutually beneficial commercial

25   transaction in which a private lessee voluntarily agrees to comply with terms and conditions set by a

26   regulatory agency in exchange for the right to profitably use land owned by the government.  It is

27   unsurprising that entering into a lease to use government land would subject a lessee to agency

28   oversight.  Indeed, it would be unusual to see any commercial lease *not* conditioned on a lessee's

adherence to specific terms. Any profit-generating private conduct by defendants under such leases is not an effort to "assist" or "help carry out" the "duties or tasks of [a] federal superior," *Watson*, 551 U.S. at 152, and no matter how great the "degree of regulatory detail or supervision," defendants' mere "regulatory compliance" is not enough (*id*. at 157). Producing fossil fuels from federal lands for profit, in compliance with federal law, is not "acting under" a federal officer.

Even assuming that defendants' alleged offshore fossil fuel production was "acting under" a federal officer, defendants still cannot remove these cases under 42 U.S.C. § 1442(a)(1) because they have not proven a sufficient causal link between that activity and the People's state-law public nuisance claim. *Cabalce*, 797 F.3d at 728, 732 n.6. The People's public nuisance claim alleges injuries caused by defendants' massive fossil fuel production and widespread promotion of fossil fuel products to consumers – conduct that includes far more than simply defendants' production of oil and gas from the OCS. Defendants have not offered proof that the People's global warming claim would not have arisen in the absence of defendants' OCS activity.

Nor can defendants remove these cases due to the historical activities of Chevron's predecessor (Standard Oil) on the Elk Hills oil field in California. *See* NOR, ¶ 60. Chevron's Elk Hills operations were under voluntary contract with the government, and involved the extraction of oil from its own privately-held land. *See United States v. Standard Oil Co. of Cal.*, 545 F.2d 624, 626-27 (9th Cir. 1976). Standard Oil's contract with the government was "a common arrangement in the petroleum industry where two or more owners have interests in a common pool." *Id.* at 27. Such a standard, voluntary agreement among landowners is a far cry from carrying out a government function.

Even if its Elk Hills activities could somehow be characterized as "acting under" a federal officer, the very nature of Standard Oil's "unit plan" agreement with the government precludes Chevron from establishing a causal link between an act "under color" of a federal office and plaintiff's public nuisance claim under California state law. *See Cabalce*, 797 F.3d at 728, 732 n.6 (quoting *Leite*, 749 F.3d at 1122). Standard Oil received compensation in exchange for *curtailing* oil production from its own property. *Standard Oil*, 545 F.2d at 627. In other words, the act performed by Standard Oil allegedly "under color" of a federal officer was the *reduction* of fossil fuel

production, which is not causally linked to plaintiff's public nuisance claim founded on defendants' *excessive* production and promotion of fossil fuels at unsafe levels.

Finally, even if defendants had shown that they were "acting under" an officer of the United States and that those actions are causally connected to the People's claim, there is no evidence that removal is predicated on a colorable federal defense (third prong). Defendants simply assert that they "intend to raise numerous meritorious federal defenses" that are "more than colorable." NOR, ¶ 62. But a simple recitation of supposed defenses does not "prov[e] by a preponderance of the evidence that the colorable federal defense . . . requirement[] for removal jurisdiction ha[s] been met." *Cabalce*, 797 F.3d at 728 (quoting *Leite*, 749 F.3d at 1122)).

## IV. There is no enclave jurisdiction because the People's actions expressly exclude relief for injuries to federal lands.

Federal enclave jurisdiction only exists over claims that arise on certain federal lands that are determined to be "enclaves." No detour is necessary here into the law of which federal lands constitute "enclaves." The People's claim "arises" for enclave purposes only where its injury occurs, and the complaints here expressly state that the People "do not seek abatement with respect to any federal land." SF Compl., ¶ 99 n.108; Oak. Compl., ¶ 98 n.39. The Court should reject defendants' attempt to manufacture enclave jurisdiction.

Federal enclave jurisdiction may exist "over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). A court determines whether federal enclave jurisdiction exists "from the face of the plaintiff's complaint." *See Zuniga v. Chugach Maint. Servs.*, 2006 WL 769317, at *6 n.1 (E.D. Cal. Mar. 24, 2006); *see also Andrews v. Pride Indus.*, 2015 WL 1014133, at *3 (E.D. Cal. Mar. 6, 2015) (same). The "key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury." *Zuniga*, 2006 WL 769317, at *6; *see also Totah v. Bies*, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011); NOR, ¶ 63. In *Totah*, the court held that a defamation claim arose on an enclave only because such a claim arises in "the place of publication," *i.e.*, where the injury occurs, which is "the last event necessary to render the tortfeasor liable." 2011 WL 1324471, at *2 (internal quotation marks omitted).

Defendants argue first that the injury here occurred on federal enclaves. However, the "key factor" test demonstrates that no federal enclave jurisdiction exists here because the complaints expressly state that the People are *not* seeking abatement for federal lands. SF Compl., ¶ 99 n.108; Oak. Compl., ¶ 98 n.39. Rather, the People's injuries occurred in San Francisco and Oakland, respectively. SF Compl., ¶¶ 85-93, 97; Oak. Compl., ¶¶ 84-92, 95. The People's allegations here are dispositive. *See Segura v. Griffcon, Inc.*, 2017 WL 4271206, at *3 (C.D. Cal. Sept. 25, 2017) (remanding where plaintiffs had not "expressed any desire to assert any claims for any work performed on federal enclaves"); *State of Washington v. Monsanto Co.*, 2017 WL 3492132, at *5 (W.D. Wash. July 28, 2017) ("because Washington avowedly does not seek relief for contamination of federal territories, none of its claims arise on federal enclaves"); *Eguia v. Arc Imperial Valley*, 2012 WL 6061323, at *4 (S.D. Cal. Dec. 6, 2012) (remanding where complaint allegations "do not suggest federal enclave status"). Defendants' reliance on *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992), is unavailing because the complaint there alleged injuries occurring on "naval vessels." As another court recognized, enclave jurisdiction actually was "apparent from the face of the complaint." *Eguia*, 2012 WL 6061323, at *4. And, even if the *Fung* court did look beyond the face of the complaint, if the Court were to do so here it would not find injuries to federal land.

Defendants' second argument is that enclave jurisdiction exists because, "on information and belief," *defendants* have maintained oil and gas *operations* on largely unnamed federal enclaves at unspecified times. NOR, ¶ 66.[15] But this vague contention does not create federal enclave jurisdiction either, for two reasons. First, as noted above, the "key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury" (*Zuniga*, 2006 WL 769317, at *6), and the People have disclaimed relief for injuries to federal land. Second, defendants do not establish that the conduct giving rise to liability has occurred exclusively or even primarily on federal enclaves. The defendants' burden to demonstrate enclave jurisdiction is "heavier" where events "occur partially inside and partially outside the boundaries of an enclave," because the "state's interest increases proportionally, while the federal interest decreases." *Ballard v. Ameron*

---

[15] The complaints here do not allege that defendants' production of fossil fuels occurred on federal lands or that defendants promoted fossil fuels on federal lands.

1    *Int'l Corp.*, 2016 WL 6216194, at \*3 (N.D. Cal. Oct. 25, 2016) (internal quotation marks omitted).

2    The *Ballard* court rejected enclave jurisdiction over a state-law personal injury asbestos case because

3    the plaintiff's alleged exposure to asbestos at a single federal base "is just a small portion of the total

4    exposure: one of 17 locations and during six months of the years-long exposure period." *Id.*; *see*

5    *also In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (rejecting

6    argument that "federal enclave doctrine applies as long as some of the alleged events occurred on the

7    federal enclave"). The People's complaints allege that defendants intentionally produced massive

8    amounts of fossil fuels despite knowing that massive fossil fuel usage would cause dangerous global

9    warming, engaged in large-scale advertising and public relations campaigns to "promote pervasive

10   fossil fuel usage and to portray fossil fuels as environmentally responsible," and downplayed the

11   risks of global warming. Compls., ¶¶ 2, 5, 6, 8. But the People do not allege that any of this conduct

12   occurred on federal enclaves. Defendants' argument that *Bell v. Arvin Meritor, Inc.*, 2012 WL

13   1110001 (N.D. Cal. Apr. 2, 2012), nonetheless establishes that enclave jurisdiction is proper even if

14   only "some of the events or damages" occurred on an enclave (*see* NOR, ¶ 63), is unavailing. In *Bell*

15   the complaint expressly alleged that the plaintiff was injured "during his employment . . . with the

16   United States Army," and the complaint expressly listed numerous army bases where the injury

17   occurred. *Bell*, 2012 WL 1110001, at \*2. The court concluded that "at least some" of these

18   locations were enclaves (*id.*), but it was obvious that the claim was based in very large part on

19   injuries sustained on federal enclaves. There are no such enclave allegations here and this Court

20   should reject enclave jurisdiction.

21   **V.    Actions to protect public rights are expressly exempted from bankruptcy removal.**

22         In a last-ditch effort, defendants allege jurisdiction under the bankruptcy removal statute

23   based upon the 30-year old bankruptcy of a single Chevron subsidiary, Texaco Inc. NOR, ¶ 69.

24   Plaintiff has not sued Texaco nor any debtor-defendants. Bankruptcy removal is improper for three

25   independent reasons: (1) the bankruptcy removal statute prohibits removal of suits by governmental

26   units protecting public safety and welfare; (2) the People's claim is not "related to" Texaco's 1987

27   bankruptcy; and (3) the case should be remanded on equitable grounds.

28

*First*, the bankruptcy removal statute provides that a government's lawsuit to protect public safety and welfare cannot be removed.  28 U.S.C. § 1452(a).  The People clearly are a governmental unit.  *See* 11 U.S.C. § 101(27).  Remand is required under this exception if either of "two alternative tests" – "pecuniary purpose" and "public purpose" – are satisfied.  *City & County of San Francisco. v. PG&E Corp.*, 433 F.3d 1115, 1123-24 (9th Cir. 2006).  The pecuniary purpose test is satisfied, and removal is improper, if the lawsuit "primarily seeks to protect the public safety and welfare," rather than primarily seeking to "protect the government's pecuniary interest."  *Id.* at 1124.  Under the "public purpose" test, a government's lawsuit seeking to "effectuate public policy," *i.e.*, to protect a "broader segment of the public" rather than "adjudicate private rights," is not removable.  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (internal quotation marks omitted).

The People's public nuisance claim unquestionably satisfies both tests.  The People satisfy the pecuniary purpose test because they primarily seek to protect the "public rights to health, safety and welfare" of their residents "whose safety and lives are at risk" from accelerated sea level rise impacts caused by defendants.  SF Compl., ¶¶ 11, 96-97; Oak. Compl., ¶¶ 11, 95-96.  The People satisfy the public purpose test because they seek to protect such rights on behalf of the public-at-large.  A public nuisance, by definition, is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons."  Cal. Civ. Code § 3480.  "[P]ublic nuisances are offenses against, or interferences with, the exercise of *rights common to the public*."  *Santa Clara*, 137 Cal. App. 4th at 305 (emphasis in original; internal quotation marks omitted).  "Public rights" include the "public health, the public safety, the public peace, the public comfort or the public convenience."  *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1104 (1997) (quoting *Restatement (Second) of Torts* § 821B).

The Second Circuit, applying Ninth Circuit law, rejected an almost identical removal argument based upon the same Texaco bankruptcy in a groundwater contamination case by the People against these same defendants (or their subsidiaries).  *In re MTBE*, 488 F.3d at 133.  The court held that the pecuniary and public purpose tests were satisfied because the People's lawsuit related "primarily to matters of public health and welfare" and its "clear goal" was to "remedy and prevent environmental damage with potentially serious consequences for public health, a significant

area of state policy." *Id.*; *see also Lockyer*, 398 F.3d at 1109 (public purpose test satisfied where state attorney general brought suit to "protect the interest of all electricity consumers in northern California"). The removal exception applies here.

*Second*, even assuming that the governmental exception did not apply here, bankruptcy removal also is improper because the People's claim is not "related to" Texaco's 30-year old bankruptcy. *See* NOR, ¶ 67 (invoking only "related to" prong of bankruptcy jurisdiction). The bankruptcy removal statute allows removal where the court has jurisdiction of the claim under section 1334. 28 U.S.C. § 1452(a). Section 1334 in turn provides that district courts have "original but not exclusive jurisdiction" of all civil proceedings "related to" chapter 11 bankruptcy cases. 28 U.S.C. § 1334(b). "Related to" jurisdiction for a post-confirmation bankruptcy – Texaco's was confirmed in 1988 – is "necessarily more limited" than that for a pre-confirmation bankruptcy. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). Such post-confirmation bankruptcy jurisdiction only exists if the claim has a "close nexus" to the bankruptcy plan or proceeding. *In re Ray*, 624 F.3d 1124, 1134 (9th Cir. 2010). There is no "close nexus" where the claim "could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law." *Id.* at 1135. Only matters involving the "interpretation, implementation, consummation, execution, or administration of the confirmed plan" will typically have a close nexus. *Pegasus*, 394 F.3d at 1194 (internal quotation marks omitted). There is no "close nexus" here because the People's state law public nuisance claim exists "entirely apart from the bankruptcy proceeding" and does not depend upon a "substantial question of bankruptcy law." *See In re Ray*, 624 F.3d at 1135; *see also In re Int'l Mfg. Grp., Inc.*, 2017 WL 3332219, at *3 (Bankr. E.D. Cal. Aug. 3, 2017) (no "close nexus" jurisdiction where "one group of nondebtor parties suing another group of non-debtor parties on claims that were not property of the bankruptcy estate").

*Third*, even if there were bankruptcy removal jurisdiction here, the Court can remand the cases on "any equitable ground." 28 U.S.C. § 1452(b). This is an "unusually broad grant of authority" that "subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes." *In re McCarthy*, 230 B.R. 414, 417 (9th Cir. BAP 1999). Courts typically apply seven factors in exercising this equitable authority: "(1) the effect of the action on the administration

of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal. *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 813 (N.D. Cal. 2006). The factors weigh heavily in favor of remand here. In *McCarthy*, the court remanded on equitable grounds plaintiff's case against a debtor and nondebtor involving four state law claims. 230 B.R. at 416, 418. Here, as in *McCarthy*, equitable remand is an "easy" decision because the plaintiff alleges a single state law claim which "do[es] not commonly arise in bankruptcy." *See id.* at 418; *see also In re Schwartz*, 2012 WL 899331, at *2 (N.D. Cal. Mar. 15, 2012) (remanding case where "state law issues clearly predominate" for "reasons of comity and pragmatism"); *Hopkins*, 349 B.R. at 813 (remanding because of "overwhelming predominance of state law questions"); *Bethesda Boys Ranch v. Atl. Richfield Co.*, 208 B.R. 980, 984 (N.D. Okla. 1997) (equitable remand of exclusively state-law claim pollution case against Texaco and other joint tortfeasors). The argument for jurisdiction is "more attenuated," where, as here, the claim is against only non-debtors. *See McCarthy*, 230 B.R. at 418. Defendants have failed to demonstrate bankruptcy removal jurisdiction.

## CONCLUSION

For the foregoing reasons, the People request that these actions be remanded to the state courts from which they were removed.

Dated: November 20, 2017

Respectfully submitted,

** */s/ Erin Bernstein*
BARBARA J. PARKER (State Bar #069722)
City Attorney
MARIA BEE (State Bar #167716)
Special Counsel
ERIN BERNSTEIN (State Bar #231539)
Senior Deputy City Attorney
MALIA MCPHERSON (State Bar #313918)
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for The People*

** Pursuant to Civ. L.R. 5-1(i)(3), the electronic filer has obtained approval from this signatory.

** */s/ Matthew D. Goldberg*
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax.: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for The People*

** Pursuant to Civ. L.R. 5-1(i)(3), the electronic filer has obtained approval from this signatory.

*/s/ Steve W. Berman*
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, Washington 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Tel.: (510) 725-3000
Fax: (510) 725-3001

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Tel.: (617) 641-9550
Fax: (617) 641-9551

*Of Counsel Attorneys for The People*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2017, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

s/ Steve W. Berman<br>STEVE W. BERMAN