CITY OF OAKLAND
BARBARA J. PARKER, State Bar #069722
City Attorney
MARIA BEE, State Bar #167716
Special Counsel
ERIN BERNSTEIN, State Bar #231539
Senior Deputy City Attorney
MALIA MCPHERSON, State Bar #313918
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Facsimile: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for The People of the State of
California*

CITY AND COUNTY OF SAN FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar
#240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for The People of the State of
California*

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Oakland City Attorney BARBARA J. PARKER,<br><br>Plaintiff and Real Party in Interest,<br><br>v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS COMPANY, a Delaware corporation, EXXONMOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>Defendants. | Case No.: 3:17-cv-06011-WHA<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT**<br><br>HEARING DATE:<br><br>Date: February 8, 2018<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup<br>Location: Courtroom 12, 19th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through the San
Francisco City Attorney DENNIS J. HERRERA,

       Plaintiff and Real Party in Interest,

       v.

BP P.L.C., a public limited company of England
and Wales, CHEVRON CORPORATION, a
Delaware corporation, CONOCOPHILLIPS
COMPANY, a Delaware corporation, EXXON
MOBIL CORPORATION, a New Jersey
corporation, ROYAL DUTCH SHELL PLC, a
public limited company of England and Wales,
and DOES 1 through 10,

       Defendants.

Case No.: 3:17-cv-06012-WHA

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO REMAND TO STATE
COURT**

<u>HEARING DATE</u>:

Date:     February 8, 2018
Time:     8:00 a.m.
Judge:    Hon. William Alsup
Location: Courtroom 12, 19th Floor

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 3

    I.    Federal common law does not confer federal jurisdiction over the People's claim. .......................................................................................... 3

        A.  Federal common law does not apply to defendants' production and sales of fossil fuels. ................................................................ 3

        B.  Congress' displacement of federal common law leaves only an ordinary preemption of state law question, which cannot support removal ............................................................................... 7

        C.  *AEP* and *Kivalina* did not hold that federal common law governs all global warming-related tort claims ................................... 8

    II.   There is no *Grable* jurisdiction over the People's claim. ........................................ 10

        A.  There are no federal issues "necessarily raised" by the complaints. ................................................................................ 10

           1.  Conflicts with U.S. foreign policy do not create jurisdiction. ................ 10

           2.  Conflicts with "federal cost-benefit analyses" do not create jurisdiction. 11

           3.  The People's claim is not a "collateral attack" on a federal agency's decisions. ......................................................................... 14

           4.  The People's claim is not based on deceptions of federal regulators. ....... 16

        B.  Defendants do not satisfy the other *Grable* requirements. ............................... 17

    III.  The Clean Air Act does not "completely preempt" the People's nuisance claim. .................................................................................. 17

    IV.  OCSLA does not confer federal jurisdiction over the People's claim. ...................................................................................................... 20

    V.   No enclave jurisdiction exists; the People disavow relief for injuries to federal land. ...................................................................... 22

    VI.  Defendants have not "acted under" federal officers. .............................................. 24

    VII.  There is no bankruptcy jurisdiction. ....................................................................... 28

CONCLUSION .................................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
    542 U.S. 200 (2004) .................................................................................................. 18

*In re Agent Orange Product Liab. Litig.,*
    635 F.2d 987 (2d Cir. 1980) ................................................................................... 4, 5

*Am. Petroleum Inst. v. Costle,*
    665 F.2d 1176 (D.C. Cir. 1981) ........................................................................ 19, 20

*Am. Electric Power Co. v. Connecticut,*
    564 U.S. 410 (2011) ........................................................................................ *passim*

*Am. Insurance Ass'n v. Garamendi,*
    539 U.S. 396 (2003) .................................................................................................. 11

*Amoco Production Co. v. Sea Robin Pipeline Co.,*
    844 F.2d 1202 (5th Cir. 1988) ................................................................................ 22

*ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality of Mont.,*
    213 F.3d 1108 (9th Cir. 2000) ................................................................... 10, 13, 15

*Arness v. Boeing N. Am., Inc.,*
    997 F. Supp. 1268 (C.D. Cal. 1998) ................................................................ 25, 28

*In re Asbestos Litig.,*
    2002 WL 649400 (D. Or. Feb. 1, 2002) ................................................................ 29

*Azhocar v. Coastal Marine Servs., Inc.,*
    2013 WL 2177784 (S.D. Cal. May 20, 2013) ....................................................... 22

*Babcock Servs. v. CH2M Hill Plateau Remediation Co.,*
    2013 WL 5724465 (E.D. Wash. Oct. 21, 2013) ...................................................... 7

*Bader Farms v. Monsanto Co.,*
    2017 WL 633815 (E.D. Mo. Feb. 16, 2017) .......................................................... 15

*Ballard v. Ameron Int'l Corp.,*
    2016 WL 6216194 (N.D. Cal. Oct. 25, 2016) .................................................. 23, 24

*Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline,*
    29 F. Supp. 3d 808 (E.D. La. 2014) ................................................................. 21, 22

*Bell v. Cheswick Generating Station,*
    734 F.3d 188 (3d Cir. 2013) ..................................................................................... 9

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) ............................................................................................... 18

*Benson v. Russell's Cuthand Creek Ranch, Ltd.*,
    183 F. Supp. 3d 795 (E.D. Tex. 2016) ................................................................ 28

*Board of Commissioners v. Tennessee Gas Pipeline*,
    850 F.3d 714 (5th Cir. 2017) ................................................................... 13, 14, 15

*Botsford v. Blue Cross & Blue Shield of Mont., Inc.*,
    314 F.3d 390 (9th Cir. 2002) ............................................................................. 18

*Brown-Forman Corp. v. Miller*,
    528 S.W.3d 886 (Ky. 2017) ................................................................................. 9

*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*,
    797 F.3d 720 (9th Cir. 2015) ................................................................... 24, 27, 28

*California Dump Truck Owners Ass'n v. Nichols*,
    784 F.3d 500 (9th Cir. 2015) ............................................................................. 20

*California Shock Trauma Air Rescue v. State Comp. Ins. Fund*,
    636 F.3d 538 (9th Cir. 2011) ................................................................... 10, 13, 15

*Cent. Valley Chrysler-Jeep v. Goldstene*,
    529 F. Supp. 2d 1151 (E.D. Cal. 2008) ............................................................. 11

*Chevron U.S.A., Inc. v. United States*,
    110 Fed. Cl. 747 (2013) ..................................................................................... 26

*City of Harrisonville v. W. S. Dickey Clay Mfg.*,
    289 U.S. 334 (1933) ........................................................................................... 11

*City of Milwaukee v. Illinois*,
    451 U.S. 304 (1981) ..................................................................................... 3, 7, 8

*City of Modesto v. Dow Chem.*,
    2018 WL 317043 (Cal. Ct. App., 1st Dist. Jan. 8, 2018) .................................... 3

*Colorado v. Symes*,
    286 U.S. 510 (1932) ........................................................................................... 24

*North Carolina ex rel. Cooper v. Tennessee Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010) ............................................................................. 19

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ........................................................................................... 11

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ....................................................................... 20, 22

PLS.' REPLY ISO MOT. TO REMAND TO STATE COURT
Case Nos.: 3:17-cv-06011-WHA and 3:17-cv-06012-WHA
        -iii-

*Dennis v. Hart,*
    724 F.3d 1249 (9th Cir. 2013) .................................................................................. 18

*Durham v. Lockheed Martin Corp.,*
    445 F.3d 1247 (9th Cir. 2006) .................................................................................. 22

*Empire Healthchoice Assur. v. McVeigh,*
    547 U.S. 677 (2006) ........................................................................................... 7, 17

*Friends of H Street v. City of Sacramento,*
    20 Cal. App. 4th 152 (3d Dist. 1993) ..................................................................... 16

*Furrer v. Talent Irrigation Dist.,*
    258 Or. 494 (1970) ................................................................................................. 13

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego,*
    865 F.3d 1237 (9th Cir. 2017) .................................................................................. 27

*Greater Westchester Homeowners Assn. v. City of Los Angeles,*
    26 Cal. 3d 86 (1979) ............................................................................................... 16

*Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie,*
    508 F. Supp. 2d 295 (D. Vt. 2007) .......................................................................... 12

*Gunn v. Minton,*
    568 U.S. 251 (2013) ................................................................................................ 17

*Haining v. Boeing Co.,*
    2013 WL 4874975 (C.D. Cal. Sept. 11, 2013) ........................................................ 23

*Hassell v. San Francisco,*
    11 Cal. 2d 168 (1938) ............................................................................................. 16

*In re High-Tech Emp. Antitrust Litig.,*
    856 F. Supp. 2d 1103 (N.D. Cal. 2012) ................................................................... 24

*Hughes v. Emerald Mines Corp.,*
    450 A.2d 1 (Pa. Super. Ct. 1982) ........................................................................... 13

*Ileto v. Glock Inc.,*
    349 F.3d 1191 (9th Cir. 2003) .................................................................... 6, 12, 14, 16

*Jackson v. Johns-Manville Sales Corp.,*
    750 F.2d 1314 (5th Circ. 1985) ...................................................................... 3, 4, 5

*Jost v. Dairyland Power Coop.,*
    172 N.W.2d 647 (Wis. 1969) .................................................................................. 13

*Klausner v. Lucas Film Entm't Co., Ltd.,*
    2010 WL 1038228 (N.D. Cal. Mar. 19, 2010) ........................................................ 23

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*,
    805 F. Supp. 2d 932 (C.D. Cal. 2011) ............................................................ 7

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ................................................................... 28

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
    375 F.3d 831 (9th Cir. 2004) ..................................................................... 14

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ................................................................... 28

*Cal. ex rel. Lockyer v. Powerex Corp.*,
    2006 WL 997717 (E.D. Cal. Apr. 14, 2006) ............................................ 14

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
    581 F.3d 941 (9th Cir. 2009) ..................................................................... 18

*MBIA Ins. Corp. v. Indymac ABS, Inc.*,
    2009 WL 10675774 (C.D. Cal. Dec. 23, 2009) ....................................... 29

*McKay v. City & Cty. of San Francisco*,
    2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ......................................... 15

*Merrick v. Diageo Americas Supply, Inc.*,
    805 F.3d 685 (6th Cir. 2015) ....................................................................... 9

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    725 F.3d 65 (2d Cir. 2013) ............................................................... 4, 9, 28

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
    488 F.3d 112 (2d Cir. 2007) ......................................................... 15, 24, 28

*Nat'l Credit Reporting Ass'n, v. Experian Info. Sols*,
    2004 WL 1888769 (N.D. Cal. July 21, 2004) ........................................ 14

*Nat. Res. Def. Council, Inc. v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988) .................................................................. 27

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ............................................................ *passim*

*Nevada v. Bank of America*,
    672 F.3d 661 (9th Cir. 2012) ..................................................................... 17

*New England Legal Found. v. Costle*,
    666 F.2d 30 (2d Cir. 1981) ........................................................................ 19

*New SD, Inc. v. Rockwell Int'l Corp.*,
    79 F.3d 953 (9th Cir. 1996) ......................................................................... 7

*Parke v. Cardsystems Solutions, Inc.*,
  2006 WL 2917604 (N.D. Cal. Oct. 11, 2006) ........................................................ 30

*Patrickson v. Dole Food Co.*,
  251 F.3d 795 (2001) ...................................................................... 11, 17, 19

*Pendergrast v. Aiken*,
  293 N.C. 201 (1977) ........................................................................... 13

*People of State of California v. Gen. Motors Corp.*,
  2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) ......................................................... 7

*People v. Gold Run Ditch & Mining Co.*,
  66 Cal. 138 (1884) ............................................................................ 17

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*,
  559 F.3d 772 (8th Cir. 2009) .................................................................. 15

*Pinole Point Props., Inc. v. Bethlehem Steel Corp.*,
  596 F. Supp. 283 (N.D. Cal. 1984) ............................................................. 23

*Plains Gas Sols. v. Tenn. Gas Pipeline*,
  46 F. Supp. 3d 701 (S.D. Tex. 2014) ....................................................... 15, 20

*Provincial Gov't of Marinduque v. Placer Dome*,
  582 F.3d 1083 (9th Cir. 2009) ................................................................. 11

*Raytheon Co. v. Alliant Techsystems, Inc.*,
  2014 WL 29106 (D. Ariz. Jan. 3, 2014) ......................................................... 7

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*,
  768 F.3d 938 (9th Cir. 2014) .................................................................. 20

*Rivet v. Regions Bank of Louisiana*,
  522 U.S. 470 (1998) ........................................................................... 14

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) .................................................................. 4

*Ronquille v. Aminoil Inc.*,
  2014 WL 4387337 (E.D. La. Sept. 4, 2014) .................................................. 21, 22

*Rosseter v. Indus. Light & Magic*,
  2009 WL 210452 (N.D. Cal. Jan. 27, 2009) ..................................................... 23

*Ruppel v. CBS Corp.*,
  701 F.3d 1176 (7th Cir. 2012) .............................................................. 25, 28

*Sam L. Majors Jewelers v. ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997) ................................................................... 6

*In re Schwartz*,
    2012 WL 899331 (N.D. Cal. Mar. 15, 2012) ............................................................ 30

*Sederquist v. Court*,
    861 F.2d 554 (9th Cir. 1988) ............................................................................... 4

*Snow v. Bechtel Constr., Inc.*,
    647 F. Supp. 1514 (C.D. Cal. 1986) ....................................................................... 23

*Sprint Communications, Inc. v. Jacobs*,
    134 S. Ct. 584 (2013) ........................................................................................ 30

*State of New Hampshire v. Exxon Mobil Corp.*,
    126 A.3d 266 (N.H. 2015) ............................................................................... 5, 9

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................................... 8

*Stiefel v. Bechtel Corp.*,
    497 F. Supp. 2d 1138 (S.D. Cal. 2007) .................................................................... 23

*Stream Pollution Control Bd. v. United States Steel Corp.*,
    512 F.2d 1036 (7th Cir. 1975) ............................................................................. 8

*Stutes v. Gulfport Energy Corp.*,
    2017 WL 4286846 (W.D. La. June 30, 2017) ........................................................... 21

*Texas Industries v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ......................................................................................... 5

*United States v. Guillen-Cervantes*,
    748 F.3d 870 (9th Cir. 2014) ........................................................................ 3, 4, 8

*United States v. Standard Oil Co.*,
    332 U.S. 301 (1947) ......................................................................................... 5

*United States v. Standard Oil Co.*,
    545 F.2d 624 (9th Cir. 1976) ....................................................................... 25, 26

*Watson v. Philip Morris Cos., Inc.*,
    551 U.S. 142 (2007) .................................................................................. 24, 27

*Wayne v. DHL Worldwide Express*,
    294 F.3d 1179 (9th Cir. 2002) ............................................................................ 6

*Wigfall v. Hamlet*,
    2004 WL 1243897 (N.D Cal. May 26, 2004)........................................................... 13

*In re Wilshire Courtyard*,
    729 F.3d 1279 (9th Cir. 2013) ........................................................................... 29

*Wilson v. S. Cal. Edison Co.*,
    234 Cal. App. 4th 123 (2d Dist. 2015) .................................................................. 12, 13

*Zuniga v. Chugach Maint. Servs.*,
    2006 WL 769317 (E.D. Cal. Mar. 24, 2006) ................................................. 22, 23, 24

**Statutes**

10 U.S.C. § 7422 ................................................................................................................ 26

28 U.S.C. § 1442 ........................................................................................................... 24, 25

42 U.S.C. § 13384 ............................................................................................................ 13

42 U.S.C. § 7607 ............................................................................................................. 20

43 U.S.C. §§ 1331-1356 ................................................................................................... 20

**Other Authorities**

10 C.F.R. § 626.6 ............................................................................................................. 13

43 C.F.R. § 3162.1(a) ........................................................................................................ 13

# INTRODUCTION

These cases belong in state court. Defendants' creative and manifold attempts to manufacture federal jurisdiction are based upon mischaracterizations of the People's complaints, misstatements of California public nuisance law, and novel jurisdictional theories so overbroad that, if accepted, they would federalize vast areas of traditional state law.

The People have pleaded a purely state law claim of public nuisance that seeks as its *only* remedy an abatement fund, *i.e.,* to shift the costs of adapting to global warming-induced sea level rise from the public to five major fossil fuel companies that have contributed, and continue to contribute, to global warming through their production and promotion of fossil fuels in massive, dangerous quantities despite knowing that they were, and are, altering the atmosphere with potentially catastrophic consequences. The complaints do not seek to limit anyone's emissions. On the contrary, the complaints allege that high levels of fossil fuel production and greenhouse gas emissions are likely to continue, and that abatement will be necessary even if emissions were to cease immediately. Defendants' contention that their profit-making conduct as private companies somehow makes them instruments of "the Nation's longstanding economic and foreign policies" that this case would somehow "reshape," Opp. 1:4,[1] is pure hyperbole. These cases simply seek to make defendants pay to abate the harm they have caused and are continuing to cause.

Defendants' arguments that these cases arise under federal law all suffer from a fatal defect: they depend upon ordinary preemption doctrines, as evidenced by defendants' ever-repeated invocations of express, conflict, field, and foreign affairs preemption case law throughout their federal question arguments.[2] Defendants even *admit* that that they are relying on "field and conflict preemption principles." Opp. 29:6. Yet it is black letter law that ordinary preemption does not

---

[1] "Opp." refers to Defendants' Corrected Joint Opposition to Motion to Remand, filed Dec. 19, 2017.

[2] *See* Opp. 2:1; 10:8-21; 11 n.7; 12:28-13:2; 14:11-12; 15:15-28; 24:1-2; 23:22; 24:6-7; 25:19; 27:15-28.

permit removal. *ARCO Envtl. Remediation v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000). Each of these arguments also suffers additional defects.

Defendants' invocation of the federal common law of public nuisance is inapt. Unlike state nuisance law, which authorizes a public nuisance claim against a seller of products, *see People v. ConAgra Grocery Products*, 17 Cal.App.5th 51 (6th Dist. 2017), the federal common law of interstate pollution has only been applied to direct dischargers of transboundary pollution and the courts have declined to extend the doctrine to sellers of products. Even assuming for argument's sake that this case against product sellers were no different from a case against dischargers of interstate pollution, the Clean Air Act displaces the federal common law of interstate pollution. Defendants' argument that federal common law continues to govern even after Congress has displaced it cannot be reconciled with *International Paper Co. v. Ouellette*, 479 U.S. 481 (1987). The further question under *International Paper* of which state's law may apply in a transboundary pollution case is an issue of ordinary preemption and thus does not permit removal.

Defendants' argument for removal under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), wrongly asserts that California public nuisance law requires a balancing of the utility of defendants' conduct against the harm caused, and that this somehow conflicts with a litany of federal laws. On the contrary, California public nuisance law follows the Restatement (Second) of Torts in permitting a plaintiff to establish its claim without any such balancing. *E.g., Ileto v. Glock Inc.*, 349 F.3d 1191, 1210-11 (9th Cir. 2003). And any arguable conflict is, again, a matter of ordinary preemption. With respect to complete preemption, defendants' argument not only contradicts the case law uniformly rejecting complete preemption under the Clean Air Act, but it would federalize all tort cases against polluters in contradiction of decades of case law.

Defendants' other arguments for federal jurisdiction also fall short. They are based upon minor or even non-existent connections to alleged federal enclaves, to leases on the Outer Continental Shelf ("OCS"), to federal bankruptcy proceedings, and to contracts with federal officials. But defendants misstate key facts and, in any event, in each of these areas of federal jurisdiction, a variant of the same basic rule applies: minor connections between a state-law claim and a federal issue are not enough to confer federal jurisdiction. These cases should be remanded.

## ARGUMENT

**I.  Federal common law does not confer federal jurisdiction over the People's claim.**

   **A.  Federal common law does not apply to defendants' production and sales of fossil fuels.**

Defendants all but ignore the primary reason that federal common law does not govern here: this is a case against producers and sellers (hereinafter "sellers") of products, *i.e.*, fossil fuels. Federal common law is narrow; it has never been extended to sellers of products. By contrast, California public nuisance law applies to a product seller. *ConAgra, supra*; *see also City of Modesto v. Dow Chem.*, 2018 WL 317043, at *20-21 (Cal. Ct. App., 1st Dist. Jan. 8, 2018).

The appropriate instances for developing federal common law are "few and restricted." *United States v. Guillen-Cervantes*, 748 F.3d 870, 874 (9th Cir. 2014). There must be a "uniquely federal interest," *id*., as well as a "significant conflict" with such an interest and the application of state law, *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 (1981) ("*Milwaukee II*") (quotation omitted). Defendants satisfy neither element and in fact concede that they can offer "no federal common law precedent" for extending federal common law to sellers of products. Opp. 9:12.

No "uniquely federal interest." Courts have rejected similar attempts to expand federal common law to sellers of products even where there are clear national interests at stake. For example, in *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1323-25 (5th Circ. 1985) (*en banc*), the court held that state tort law, not federal common law, governed cases against manufacturers of asbestos. It did so even as it acknowledged the national interests at stake given the

tens of thousands of cases spread across the country, hundreds of thousands of additional potential claimants, state legal systems competing for limited funds with a series of jurisdiction-by-jurisdiction rulings, and billions of dollars of damages. "'[U]niquely federal interests' are not merely national interests, and the existence of national interests, no matter their significance, cannot by themselves give federal courts the authority to supersede state policy." *Id.* at 1324-25. Notably, the Ninth Circuit relied on *Jackson* in *Sederquist v. Court*, 861 F.2d 554, 556-57 (9th Cir. 1988), when it held that there was no basis to create federal common law (and thus no federal question jurisdiction) in a case seeking attorneys' fees based upon the substantial benefit doctrine because, "although there are a number of federal statutes that govern the award of attorneys' fees in various circumstances, the award of attorneys' fees is a task undertaken in both the state and federal courts." And in *Guillen-Cervantes*, the Ninth Circuit held that the extensive number of federal immigration statutes counseled *against* creation of a federal common law contribution claim by a party liable for forfeiture for alien smuggling. 748 F.3d at 874.

The Second Circuit, also relying on *Jackson*, held in *In re Agent Orange Product Liability Litigation*, 635 F.2d 987, 994 (2d Cir. 1980), that state law, not federal common law, governed a class action tort case against producers of Agent Orange seeking damages for millions of U.S. soldiers who had served in Vietnam. The court recognized the "obvious interests" of the United States in both the welfare of its veterans and in ensuring the supplies of war materiel, *id*. at 994-95, but held that state law, not federal common law, should nonetheless apply.

Here, the federal energy and environmental statutes defendants identify do not constitute a "uniquely federal interest." States have important interests in global warming generally and in fossil fuels sold in interstate commerce specifically. *See Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1079 (9th Cir. 2013) (upholding California global warming law regulating fossil fuels sold in interstate commerce). State tort cases against fossil fuel producers are legion. *E.g., In re*

*Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013)

(upholding verdict in one of hundreds of groundwater contamination cases against producers of

gasoline); *State of New Hampshire v. Exxon Mobil Corp.*, 126 A.3d 266, 285 (N.H. 2015) (same).

Nor is this the sort of "interstate" dispute, Opp. 5:21-7:14, that raises uniquely federal

interests: defendants' fossil fuel products, like the lead paint in *ConAgra* and the asbestos in

*Jackson*, are sold and consumed nationally. "Clearly, if federal courts are to remain courts of limited

powers as required under *Erie*, a dispute . . . cannot become 'interstate,' in the sense of requiring the

application of federal common law, merely because the conflict is not confined within the boundaries

of a single state." *Jackson,* 750 F.2d at 1324; *accord In re Agent Orange*, 635 F.2d at 994 ("The fact

that application of state law may produce a variety of results is of no moment. It is in the nature of a

federal system that different states will apply different rules of law . . . .").[3]

Defendants' "interstate" argument here heavily relies upon *American Electric Power Co. v.*

*Connecticut*, 564 U.S. 410 (2011) ("*AEP*"), and *Native Village of Kivalina v. ExxonMobil Corp.*, 696

F.3d 849 (9th Cir. 2012), but these were cases against direct dischargers of pollution, not product

sellers. Nowhere in either case did the Supreme Court or the Ninth Circuit purport to extend federal

common law to claims against sellers of fossil fuels (or any other product). Neither case even says

anything about any "uniquely federal interests." As set forth in the People's opening brief, the basic

justification underpinning the federal common law of interstate pollution is lacking where, rather

than upwind and downwind states, the case involves products that are sold and consumed nationally.

Plaintiffs' Motion to Remand to State Court ("Remand Br.") 9:6-22. Defendants offer no response.

---

[3] Defendants' reliance on *Texas Industries v. Radcliff Materials, Inc*., 451 U.S. 630 (1981), Opp. 12:22-23, is misplaced because that case *declined* to supplement an existing federal statutory remedy with a federal common law contribution claim. Nor does *United States v. Standard Oil Co*., 332 U.S. 301, 305 (1947), Opp. 3:4-6, 5:18-19, help defendants as that case turned on a uniquely federal interest not present here: "Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces." *Id*. at 305.

Defendants also make an inapt comparison of the People's claim here against product sellers to the conspiracy claim in *Kivalina*. Opp. 9:5-13. The plaintiffs in *Kivalina* pleaded their conspiracy claim under federal law because conspiracy requires an underlying claim, which, in that case, was a nuisance claim against direct dischargers of pollution that the plaintiffs expressly pleaded under federal common law. The fact that a conspiracy claim of joint liability against direct dischargers expressly pleaded under federal common law is contingent on its underlying claim sheds no light on the very different question of whether federal common law applies to sellers of products.

No "significant conflict." Applying state law also does not conflict with a federal interest. Defendants' contention that the "unreasonable" element of public nuisance law requires a global assessment of defendants' conduct that conflicts with the government's interests in energy, the environment and national security, Opp. 7-8, mischaracterizes California public nuisance law. In a public nuisance case that seeks to shift the costs of abating harm from the plaintiff to the defendant, as the abatement fund remedy here would do, the "unreasonable interference" with rights common to the general public is focused on the unreasonableness of the harm to the plaintiff. *See, e.g., Ileto*, 349 F.3d at 1210-11; *see also infra* at 11-14.[4]

Finally, defendants' reliance on cases interpreting the Airline Deregulation Act ("ADA") as authorizing removal, Opp. 11:16-12:17, is misplaced because, as those cases hold, Congress expressly preserved federal common law in the ADA. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1185 (9th Cir. 2002) ("We have construed the ADA's savings clause to apply this federal common law to claims for loss of or damage to goods by interstate carriers by air."); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928 (5th Cir. 1997) (same). By contrast, here, as defendants

---

[4] Defendants contend that *AEP* places the focus on the defendant's conduct, Opp. 8:3-5, but that case sought an injunction to restrain the defendants' conduct, which entails a different test. *See* Restatement (Second) of Torts § 821B cmt. i (1979) (in case seeking monetary relief "the court's task is to decide whether it is unreasonable to engage in the conduct without paying for the harm done. Although a general activity may have great utility it may still be unreasonable to inflict the harm without compensating for it. In an action for an injunction the question is whether the activity itself is so unreasonable that it must be stopped.").

concede, the CAA *displaces* the federal common law of interstate pollution. *AEP*, 564 U.S. at 425.[5]

Defendants are thus left without a single applicable case authorizing the use of federal common law to remove a case pleaded purely under state law.

In short, state law can, and must, apply to the public nuisance claim that the People have pleaded here, which means that there is no need for federal common law: "If state law can be applied, there is no need for federal common law." *Milwaukee II*, 451 U.S. at 313 n.7.

**B. Congress' displacement of federal common law leaves only an ordinary preemption of state law question, which cannot support removal.**

Defendants spill much ink on an argument that the federal common law of interstate pollution displaces state law, but such federal common law must itself "exist" in order to displace state law. *Milwaukee II*, 451 U.S. at 313 n.7. Yet defendants admit that Congress has displaced the very federal common law doctrine they seek to invoke. Opp. 12:19-20. Under *International Paper*, state law can and does apply where the federal common law of interstate pollution has been displaced by Congress. *AEP* and *Kivalina* follow this very framework in their treatment of the supplemental state law claims in those cases. *See* Remand Br. 12:9-13:5.[6] Thus, defendants' argument that *Kivalina requires* automatic displacement of state nuisance law cannot be squared with those decisions.

Defendants' response is to debate repeatedly an ordinary preemption issue, i.e., whether, under *International Paper* a state law claim against a direct discharger of interstate pollution is restricted to the law of the state where the discharges occur. Opp. 10:8-21; 11 n.7; 13:1-2 & n.9. But this aspect of *International Paper, i.e.,* determining which state's law may apply, is based upon

---

[5] Defendants cite *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996), Opp. 5:1-4, 12:11-13, but that case is of questionable continuing validity and deals with a narrow exception for national security. *See, e.g.*, *Babcock Servs. v. CH2M Hill Plateau Remediation Co.*, 2013 WL 5724465, at *5 (E.D. Wash. Oct. 21, 2013) ("Under *Grable* and *Empire*, [*New SD*'s] premise is no longer sound"); *Raytheon Co. v. Alliant Techsystems, Inc.*, 2014 WL 29106, at *5 (D. Ariz. Jan. 3, 2014) (same); *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 942 (C.D. Cal. 2011) (*New SD* "concerns matters of national security that are simply not present here").

[6] Defendants also cite *People of State of California v. General Motors Corp.*, 2007 WL 2726871 (N.D. Cal. Sept. 17, 2007), Opp. 2:20-21, but after dismissal of the federal common law claim there the court declined to exercise supplemental jurisdiction over state law claims. *See Gen. Motors Corp.*, 2007 WL 2726871 at *16.

the doctrine of conflict preemption, specifically the "obstacle" branch of conflict preemption. *See International Paper*, 479 U.S. at 493-94. This ordinary preemption doctrine cannot support removal.

Defendants are also incorrect in arguing that the existence of a federal statute on the subject matter necessarily counsels in favor of applying federal common law. Opp. 12:21-22 (contending the People's argument "would turn *Erie* on its head"). The Supreme Court's respect for state law evinced in *International Paper* is nothing more than a "return to normal," *i.e.*, under *Erie* it is state tort law that normally applies in our federal system. There is thus nothing improper about a federal statute that, by wiping away federal common law, effectively revives the state law that would normally apply. "[W]hen Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts *disappears*." *Milwaukee II*, 451 U.S. at 314 (emphasis added); *accord Guillen-Cervantes*, 748 F.3d at 874 ( "Federal governance of immigration and alien status is extensive and complex" under numerous statutes and thus "the expansion of federal common law into immigration law is hardly 'necessary to protect uniquely federal interests'"). Defendants have it exactly backwards.

As defendants admit, Congress has displaced the only federal common law doctrine they invoke (and even there, it is for a claim the People are not bringing).

### C. *AEP* and *Kivalina* did not hold that federal common law governs all global warming-related tort claims.

Finally, if it is even necessary to decide the question, *AEP* and *Kivalina* did not hold that lawsuits based on greenhouse gas emissions are governed by federal common law.

In both cases the plaintiffs pleaded federal common law claims on the face of their complaints and filed them in federal court. Subject matter jurisdiction was thus proper to reach the merits of the federal claim so long as it was not "completely devoid of merit." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted); *accord*, *Stream Pollution Control Bd. v. U.S. Steel Corp.*, 512 F.2d 1036, 1040 (7th Cir. 1975) (Stevens, J.) ("Surely enough has been alleged [regarding pollution of navigable water body] to give the district court jurisdiction to decide whether the Board is entitled to some relief as a matter of federal common law."). Under the governing standard of *Steel Co.*, the only federal common law finding needed in *AEP* and *Kivalina* to

reach the merits was merely that the federal claim was non-frivolous. The People previously pointed

out that defendants were overreading *Kivalina* and *AEP* in this way, Remand Br. 14:7-15:27;

defendants offer no response.

In their extensive and detailed notices of removal, defendants cited *AEP* but did not contend

that *AEP* held federal common law governs all (or any) global warming-related tort claims. This

newly discovered basis for their argument has no merit. In *AEP* the Court merely summarized the

parties' dueling positions on federal common law and declined to rule on an "academic" question.[7]

Defendants seize on the court's statement in *Kivalina* that, "'[p]ost-*Erie*, federal common law

includes the general subject of environmental law and specifically includes ambient or interstate air

pollution." Opp. 2:22-24 (quoting *Kivalina*, 696 F.3d at 855). But if this were meant to be a holding

that federal common law governs, rather than an introductory description of the subject, then literally

all environmental tort claims would be transformed into removable federal claims because they fall

within the "general subject of environmental law." This is an utterly absurd proposition

contradicting decades of law recognizing the primacy of state law, including tort law, in the

environmental field.[8] *Kivalina* merely recognized the truism that federal common law "*can apply* to

transboundary pollutions suits," 696 F.3d at 855 (emphasis added), but had no need to decide

whether such law applied to the case before it. Its decision to affirm a judgment that preserved

supplemental state law claims for re-filing in state court contradicts defendants' argument.

---

[7] Indeed, in *AEP* the Supreme Court implicitly questioned whether federal common law would apply to greenhouse gases. *AEP*, 564 U.S. at 422 ("Nor have we ever held that a State may sue [under federal common law] to abate any and all manner of pollution emanating from outside its borders."). The Court's statement that "borrowing the law of a particular State would be inappropriate," 564 U.S. at 422, was merely a recognition that *if* it were to apply federal common law in that case, where eight States sought to enjoin emissions from out-of-state power plants, it would not be appropriate simply to borrow a single state's law to define the content of federal law.

[8] *See, e.g., Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015) (state tort law claims apply in air pollution case); *In re MTBE*, 725 F.3d at 96 ("Imposing state tort law liability for negligence, trespass, public nuisance, and failure-to-warn—as the jury did here—falls well within the state's historic powers to protect the health, safety, and property rights of its citizens."); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 197 (3d Cir. 2013) (state tort law applies to air pollution claims); *Brown-Forman Corp. v. Miller*, 528 S.W.3d 886, 893 (Ky. 2017) (same); *State v. Exxon Mobil Corp.*, 126 A.3d 266, 285 (N.H. 2015) (upholding state tort law verdict for groundwater contamination).

**II.    There is no *Grable* jurisdiction over the People's claim.**

**A.  There are no federal issues "necessarily raised" by the complaints.**

*Grable* requires that a "federal issue" be "necessarily raised" by the complaint, which means that federal law must furnish an element of the People's claim.  *See California Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011).  Defendants do not dispute this basic requirement, yet they do not show that any of the federal laws they cite are elements of the People's claim.  Instead, defendants' argument boils down to an assertion that these federal rules conflict with the People's claim.  But "preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case." *ARCO*, 213 F.3d at 1114.  Defendants' many attempts to invoke *Grable* jurisdiction repeatedly violate this basic rule.

**1.  Conflicts with U.S. foreign policy do not create jurisdiction.**

Defendants' first *Grable* argument mischaracterizes the People's public nuisance claim by contending that it would impose the People's "own preferred foreign policy," Opp. 15:9, and incorrectly seeks to base jurisdiction on an alleged conflict with U.S. foreign policy.

*First*, nothing in these complaints would conflict with U.S. foreign policy.  The complaints do not request any emissions limits, and expressly state that they do not seek to restrain *any* of defendants' business activities.  Compls. ¶ 11 ("The People … do *not* seek to restrain Defendants from engaging in their business operations.").  In fact, the complaints allege that high levels of fossil fuel production and greenhouse gas emissions are likely to continue, *id.* ¶ 4, and the requested relief is limited to requiring defendants to pay into an abatement fund for infrastructure to protect the cities from the harm to which defendants have substantially contributed.  The People's claim is not an attempt to impose emissions limits on the United States or on any other country.[9]

*Second*, even if a conflict did exist between the claim here and U.S. foreign policy, such a conflict might furnish a preemption defense but does not create federal jurisdiction. *Patrickson v. Dole Food Co.*, 251 F.3d 795, 799, 801 (2001) (federal issue must be "an element … of the

---

[9] Monetary relief can be granted in nuisance on the very *premise* that it will not cause the defendant to change operations.  *City of Harrisonville v. W. S. Dickey Clay Mfg.*, 289 U.S. 334, 339 (1933).

plaintiff's cause of action" and thus alleged foreign affairs impacts are not "an exception … to the well-pleaded complaint rule,"), *aff'd in part on other grounds, cert. dismissed in part*, 538 U.S. 468 (2003); *Provincial Gov't of Marinduque v. Placer Dome*, 582 F.3d 1083, 1092 (9th Cir. 2009) (complicity of Philippine government in defendant's torts was a federal issue under the federal common law of foreign relations but was a "defense to the [plaintiff's] claim and as such cannot support removal jurisdiction."). Conflicts with foreign policy do not create federal jurisdiction.

Defendants appear to concede that, under *Patrickson* and *Marinduque*, federal defenses cannot create jurisdiction. *See* Opp. 11 n.8, 14 n.10. Yet defendants never explain why any conflicts between the People's claim and foreign policy are not such defenses. The two cases defendants rely on, *American Insurance Ass'n v. Garamendi*, 539 U.S. 396 (2003), and *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000), confirm this point. Both cases were originally filed in federal court, and the plaintiffs sought declarations that state law unconstitutionally conflicted with U.S. foreign policy. The Court did not consider jurisdiction, since in both cases the conflict with foreign policy was the central element of the plaintiff's claim and was an issue of ordinary preemption. But where, as here, the plaintiff's claim is based on state law and the defendant asserts a conflict with federal law, the purported conflict may create a defense but it does not create jurisdiction.

In short, the People's claim does not conflict with U.S. foreign policy, and –even if it did— any arguable conflict would not create jurisdiction.[10]

### 2. Conflicts with "federal cost-benefit analyses" do not create jurisdiction.

The story is the same with the alleged conflict between the People's claim and federal cost-benefit analyses: there is no conflict, and even if there were, it would merely be a defense.

*First,* there is no conflict. Defendants' argument depends entirely on an incorrect premise – namely, that to prove defendants' conduct was "unreasonable," the People must balance the harms of defendants' conduct against its utility for society. Such a balancing is one method of proving

---

[10] While the conflict preemption issue is for the state courts to decide on remand, it is notable that two courts have rejected alleged conflicts between U.S. foreign policy and state laws regulating products that emit greenhouse gases. *Cent. Valley Chrysler-Jeep v. Goldstene*, 529 F. Supp. 2d 1151, 1188 (E.D. Cal. 2008) (corrected decision); *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 396 (D. Vt. 2007); *see also* https://www.state.gov/r/pa/prs/ps/2017/08/273050.htm (U.S. State Department on Paris withdrawal: "We will continue to reduce our … emissions.").

unreasonableness, *see Restatement (Second) of Torts* § 826(a), but it is not required and there are many other methods that require no balancing at all.  For example, Section 821B of the *Restatement* sets out a series of alternative circumstances establishing "unreasonableness," none of which involves any balancing of harm against utility, and comment *e* states that "any one [of these findings] may warrant a holding of unreasonableness."  Another example is section 829A, which applies where the harm is "severe and greater than the other should be required to bear without compensation" – which again does not require any weighing of utility.  Defendants point out that a comment in section 826 of the *Restatement* describes sections 829 through 831 as "general rules … established for the guidance of trial courts and juries in weighing gravity against utility," Opp. 16 n.12 (*quoting Restatement* § 826 cmt. e).  But the comments to Section 829A itself could not be clearer: "certain types of harm may be so severe as to require a holding of unreasonableness as a matter of law, regardless of the utility of the conduct."  *Restatement* § 829A, cmt. b.  The People allege severe harm; Section 829A is right on point.[11]

These rules are part of California law.  *See Ileto*, 349 F.3d at 1210 (California law follows section 821B); *Wilson v. S. Cal. Edison Co.,* 234 Cal. App. 4th 123 (2d Dist. 2015) (same, section 829A).  Defendants argue that *Wilson* did not ultimately require the jury to be instructed on section 829A on remand, Opp. 16 n.12, but this was not because the court did not endorse section 829A.  In fact, *Wilson* expressly identified section 829A as an "alternate test" for imposing nuisance liability, and even faulted the trial court because its jury instruction "did not address any of these factors or alternate tests."  234 Cal. App. 4th at 162.  Although the court did not require an 829A jury instruction on remand, this was because the plaintiff in *Wilson* had merely suffered "emotional distress"; "severe harm" was out of the question.  *Id.* at 152.[12]  Defendants also contend that no court has "ever" applied the severe harm test, Opp. 16 n.12, but in fact many courts have done so and thus

---

[11] Sections 826 through 831 of the *Restatement* are included in the Private Nuisance Topic but also apply to public nuisance.  *See, e.g., Restatement* § 829A, cmt. a.

[12] Defendants' reliance on a California jury instruction, Opp. 16 n.12, is not determinative.  *Wigfall v. Hamlet*, 2004 WL 1243897, *8 (N.D Cal. May 26, 2004) ("A trial court is obligated to correctly state the law, but not use any particular jury instruction.")  Cal. R. Court 2.1050 (2018) (use of instructions is not mandatory and interpretation of law is for the courts).

dispensed with any weighing of the utility of a defendant's conduct.[13]  California nuisance law does not require the application of defendants' balancing test here.

  *Second,* even if there were a conflict with federal cost-benefit analyses, this would not create federal jurisdiction.  Defendants contend that a collection of federal laws constitutes an endorsement of their production and promotion of fossil fuel with which a state tort case would conflict.  Opp. 16:7-19:8.[14]  But under *ARCO* and *California Shock Trauma*, an alleged conflict with federal law is, once again, merely a defense that cannot confer jurisdiction.  Defendants rely on *Board of Commissioners v. Tennessee Gas Pipeline*, 850 F.3d 714, 723 (5th Cir. 2017), but that case is easily distinguished.  There, the complaint expressly cited federal law "as the exclusive basis" for holding the defendants liable for some of their actions.  *Id.* at 722.  Although the *Tennessee Gas* complaint cited some "similar" state laws as well, these state laws could not be used to impose tort liability, and so the "absence of any state law" basis of liability left only the federal law as a source of liability.  *Id.* at 722-23.  By contrast, the People's complaints do not cite any federal law, and California nuisance law authorizes claims against those who produce and promote products.  *See Ileto*, 349 F.3d at 1214-

_____

   [13] *See, e.g., Pendergrast v. Aiken*, 293 N.C. 201, 217-18 (1977) (nuisance liability can be imposed "if the resulting interference with another's use and enjoyment of land is greater than it is reasonable to require the other to bear under the circumstances without compensation"); *Jost v. Dairyland Power Coop.*, 172 N.W.2d 647, 653-54 (Wis. 1969) ("injuries caused by air pollution or other nuisance must be compensated irrespective of the utility of the offending conduct as compared to the injury."); *Furrer v. Talent Irrigation Dist.*, 258 Or. 494, 509-10 (1970) ("The requested instruction, in effect, would have told the jury that it could deny plaintiff recovery if it decided that the social value of operating the canal was sufficiently great.  This would clearly have constituted reversible error."); *Hughes v. Emerald Mines Corp.*, 450 A.2d 1, 7 (Pa. Super. Ct. 1982) (harm to plaintiffs "was undeniably 'severe' and we are inclined to agree with the finder of fact that the loss is 'greater than they should be required to bear without compensation' *regardless of the utility of the conduct*") (quoting *Restatement* § 829A).  Defendants are well aware of these cases as they were cited in the Ninth Circuit briefs in *Kivalina*.

   [14] For example, defendants rely on an order requiring a cost-benefit analysis before a new federal regulation is imposed, *see* Exec. Order No., 12,866, 58 Fed. Reg. 51,735 (Sept. 30, 1993); a 1992 law that required a report on emissions by the Department of Energy to Congress, *see* 42 U.S.C. § 13384; laws regulating federal leases, *see, e.g.,* 43 C.F.R. § 3162.1(a); and laws authorizing purchases for the Strategic Petroleum Reserve, *see* 10 C.F.R. § 626.6.  *See* Opp. 16:15-18:6.  Defendants also have a long footnote citing the broad purpose of statutes like the National Environmental Policy Act.  Opp. 17 n.13.  But defendants cite no law that required the defendants to engage in the conduct described in the complaints; still less is the People's claim based on any of these laws.

15; *ConAgra*, *supra*.[15]  Unlike *Tennessee Gas*, federal cost-benefit analyses are not part of the

People's claim, and cannot create jurisdiction.

Finally, defendants incorrectly contend that the People's complaints use "artful pleading" to

try to "obscure necessary federal questions raised by their claims."  Opp. 18:26-27.  The argument is

apparently that the People should have listed federal laws like the one establishing the Strategic

Petroleum Reserve in their complaints, *see* Opp. 16:7-18:8, and that doing so would have shown that

the People's claim in fact arises under federal law.  But federal issues – whether "artfully" omitted

from a complaint or expressly included – can create *Grable* jurisdiction only if these issues are

elements of the plaintiff's claim; the artful pleading cases do not change this basic rule.  *See Rivet v.

Regions Bank of La.*, 522 U.S. 470, 478 (1998) (no artful pleading where federal issue omitted from

complaint was a defense).  And in all the artful pleading cases cited by defendants, the "omitted"

federal issue was an element of the claim.[16]  The federal issues the People have supposedly omitted

are not elements of their claim.

In short, the People's claim does not require them to balance the costs and benefits of fossil

fuels, and even if a conflict with any federal balancing did exist, it would not create jurisdiction.

**3.  The People's claim is not a "collateral attack" on a federal agency's decisions.**

Defendants also argue that the People's claim is a "collateral attack" on federal decisions

(*i.e.*, the same federal laws they invoke in their cost-benefit argument), Opp. 19, but this is incorrect

on both the facts and the law.  First and foremost, it is incorrect factually, because the People do not

seek to impose emissions limits or change defendants' business decisions.  And it is incorrect legally,

because the People's claim does not require them to prove that the costs of fossil fuels outweigh the

---

[15] Defendants argue that the *ConAgra* nuisance was caused by a product that had no "interstate effects," Opp. 18:20-22, but this point is neither true, *ConAgra*, 2017 WL 5437485, at *23 (describing interstate promotion of lead paint).  nor relevant; *i.e.*, it is not a factor that shows that the People's claim really relies on federal rules as an essential element.

[16] *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 n.6 (9th Cir. 2004) ("the gravamen of the complaint" was defendants' "alleged violations of federal tariff obligations"); *Cal. ex rel. Lockyer v. Powerex Corp.*, 2006 WL 997717, at *3 (E.D. Cal. Apr. 14, 2006) (plaintiff's claim required it to prove that defendants' power was not "out of market" power under federal regulations, and/or that defendants had charged a rate in excess of the federal rate); *see also Nat'l Credit Reporting Ass'n, v. Experian Info. Sols*, 2004 WL 1888769, at *2 (N.D. Cal. July 21, 2004) (artful pleading applied where "[p]laintiff's claim is merely a naked attempt to enforce the Sherman Act").

benefits, <u>and</u> because "attacks" on federal rules are a repackaged version of "a conflict between federal and state law," which "does not confer federal jurisdiction." *ARCO*, 213 F.3d at 1114.

Defendants' cases (*see* Opp. 19:10-19) are not to the contrary. In *Tennessee Gas*, the "collateral attack" language is part of the finding on the *significance* of the federal issue; the court did *not* say that a complaint that attacks a federal rule is a complaint that "necessarily raises" a federal question. *Tennessee Gas*, 850 F.3d at 724. And in *Bader Farms v. Monsanto Co.*, 2017 WL 633815 (E.D. Mo. Feb. 16, 2017), the plaintiff's fraud claim required it to prove that federal regulators would have regulated Monsanto's seeds had they known the truth – which meant that the claim "necessarily depends on the interpretation and application" of federal regulations. *Id.* at *3. A construction of federal law was required to prove the claim in both *Tennessee Gas* and *Monsanto*, which is not the case here.

Defendants cite two other cases in a footnote, Opp. 20 n.15, but those cases were overt challenges to specific decisions by federal agencies.[17] Defendants have not identified any similar, overt attack on a federal agency decision in the People's complaints. Instead, defendants are content to wave vaguely at whole bodies of federal law that the People's nuisance claim supposedly "implicates" or "calls into question," Notices of Removal ("NORs") ¶¶ 28, 29, or that supposedly impose a "different balancing" of costs and benefits, Opp. 19:20. The People's claim does no such thing, but in any event, such vague talk of implicit conflicts is not enough to sustain jurisdiction. *See California Shock Trauma*, 636 F.3d at 542 ("*Grable* did not implicitly overturn the well-pleaded complaint rule … in favor of a new 'implicates significant federal issues' test); *In re MTBE Prod. Liab. Litig.*, 488 F.3d 112, 135 (2d Cir. 2007) (rejecting jurisdiction over claim based on federally regulated product).

Defendants also argue that federal law really *is* part of the People's claim – but that argument relies on two mischaracterizations of California law. Defendants argue first that section 3479 of the

---

[17] *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (complaint explicitly alleged that SEC's decision to create program on securities trading was unlawful); *McKay v. City & Cty. of S.F.*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (plaintiff's overt attempt to invalidate flight paths approved by FAA was "a challenge to the FAA's rulemaking" which by federal statute was required to be heard "exclusively" in federal court).

California Civil Code supposedly requires proving that defendants' conduct is "unlawful." *See* Opp. 20:6-10. Not so. Defendants have simply omitted the relevant portion of the statute, which prohibits obstructing the free use of property in a way that interferes with the comfortable enjoyment of life or property, without requiring unlawfulness.[18] Defendants also rely on California Civil Code section 3482, which says that "nothing done or maintained under the express authority of a statute can be deemed a nuisance." Opp. 20:10-12. But the California Supreme Court has repeatedly held that authority to engage in a business is not authority to do so in a way that causes a nuisance.[19] In any event, section 3482 is a defense, *see Friends of H Street v. City of Sacramento*, 20 Cal. App. 4th 152, 160 (3d Dist. 1993), and not an element of the People's claim. Any federal law it brings into the case cannot create jurisdiction. The People's claim is not an attack on any federal decision, and any implicit conflict would not create jurisdiction anyway.

### 4. The People's claim is not based on deceptions of federal regulators.

Defendants' final attempt to find an issue "necessarily raised" by the complaints once again mischaracterizes the complaints. Defendants say the complaints allege that defendants attempted "to fool federal agencies and avoid regulation" with their campaign of deception on global warming. Opp. 21:32-32:2. But the complaints do not make this allegation; instead they say that defendants deceived the public. *See* Compls. ¶ 7 ("[t]he purpose of … [the] efforts to undermine mainstream climate science, like all marketing, was to increase sales and protect market share"). The People pointed this out in their opening brief, Remand Br. 19:3-12, but defendants' only response is to keep repeating something that is not true. Defendants' final attempt to find a federal issue "necessarily raised" by the complaint fails. On this ground alone, defendants' *Grable* argument should be

---

[18] Section 3479 states in full: "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

[19] *Greater Westchester Homeowners Assn. v. City of Los Angeles*, 26 Cal. 3d 86, 101 (1979) (extensive regulation of aviation was not approval of noise); *Hassell v. San Francisco*, 11 Cal. 2d 168, 171 (1938) (even if the conduct at issue is generally authorized by law, that authority "may not be exercised in such manner as to create a nuisance"); *cf. Ileto*, 349 F.3d at 1214-15 (although gun sales are legal, "the distribution and marketing of guns in a way that creates and contributes to a danger to the public generally and to the plaintiffs in particular is not permitted under law").

1    rejected.

2        **B.  Defendants do not satisfy the other *Grable* requirements.**

3        *Grable* also requires that there be a "real and substantial" dispute about a federal law.

4    *Grable*, 545 U.S. at 316 (quotation marks omitted).  As the Supreme Court later emphasized, the

5    only dispute in *Grable* itself was about whether a federal statute required the government to serve a

6    tax notice deficiency by mail or by personal service – "a nearly pure issue of law, one that could be

7    settled once and for all and thereafter would govern numerous tax sale cases." *Empire Healthchoice*

8    *Assur. v. McVeigh*, 547 U.S. 677, 700–01 (2006) (no jurisdiction, federal issue was "fact-bound and

9    situation-specific") (quotation marks omitted).  Here, defendants merely make the vague argument

10   that the People's "entire pleading is a collateral attack on federal energy policy," Opp. 22:13-14,

11   without identifying which federal laws the complaints have misinterpreted, or how these

12   misinterpretations would affect other cases.  Defendants have not identified a substantial, disputed

13   question.

14       The final *Grable* requirement is that the removing defendant must show that deciding these

15   cases in federal court will not disrupt the balance between federal and state court systems.  *See Gunn*

16   *v. Minton*, 568 U.S. 251, 258 (2013).  But public nuisance claims have been tried in state courts for

17   many years, including cases against a subset of a large number of contributors to pollution,[20] and

18   federal courts are especially reluctant to remove claims brought by a state in its own courts.  *See*

19   *Nevada v. Bank of Am.*, 672 F.3d 661, 676 (9th Cir. 2012).  Defendants try to show that remanding

20   these cases to state court "would threaten the balance in federal-state relations," Opp. 23:18-19, but

21   their argument is merely that foreign affairs issues and Clean Air Act emissions limits are

22   traditionally litigated in federal court.  Opp. 23:11-25:11.  State courts are fully competent to resolve

23   these federal defenses.  *Patrickson*, 251 F.3d at 804.

24   **III.    The Clean Air Act does not "completely preempt" the People's nuisance claim.**

25       Complete preemption requires proving that federal law provides the "exclusive cause of

26   action." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 (2003).  Defendants' complete preemption

27

28       [20] *ConAgra*, *supra* (claim based on sale and promotion of lead paint causing indoor air pollution);
     *People v. Gold Run Ditch & Mining Co.*, 66 Cal. 138 (1884) (pollution of a river).

argument fails because (1) a nuisance claim against fossil fuel producers is completely different from a petition for EPA to set emissions limits under the CAA, and (2) courts routinely reject arguments that the CAA "completely preempts" nuisance claims.

*First,* the People's claim is not a "regulation of nationwide emissions." Opp. 26:10-11. As already noted, the only relief the People seek is an abatement fund, and the wrongful conduct is the production and promotion of fossil fuels; the complaints "do *not* seek to impose liability on Defendants for their direct emission of greenhouse gases and do *not* seek to restrain Defendants from engaging in their business operations." Compls. ¶ 11 (emphasis in original). According to defendants, the complaints require "immediate reductions" in emissions to stabilize carbon dioxide concentrations, Opp. 26:3-4 – but this was a paraphrase of a factual statement made by scientists in 1990, not an allegation that a court should reduce emissions as part of the remedy. Compls. ¶ 46. On the contrary, the complaints allege that high levels of fossil fuel production and greenhouse gas emissions are likely to continue. Oakland Compl. ¶¶ 4, 55; SF Compl. ¶¶ 4, 56. The People's claim is not an emissions regulation.

And for this reason (among others), the People's claim is not "within the scope" of the CAA provisions authorizing review of EPA emissions rules or other actions, as they must be for complete preemption to apply. *See Dennis v. Hart*, 724 F.3d 1249, 1254-55 (9th Cir. 2013); Opp. 28:8-11. The People's claim is "within the scope" only if defendants show that (1) the People "could have brought [their] claim" under the CAA, and (2) there is "no other independent legal duty" imposed by California nuisance law. *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009).[21] Defendants' only attempt to meet these tests is to assert that the People's claim falls "squarely within the scope of the CAA," Opp. 29 n.20, but this statement is not supported by any analysis. It is also plainly not true. The People "could not have brought [their] claim" under the

---

[21] Defendants contend that state law claims have been completely preempted even though they are based on independent state duties. Opp. 29 n.20. But this argument contradicts *Marin*, and is not supported by the cases defendants cite. *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (state law duties "do not arise independently" of exclusive federal scheme); *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 396 (9th Cir. 2002), *opinion amended on denial of reh'g*, 319 F.3d 1078 (9th Cir. 2003) (pre-*Marin* and pre-*Aetna* case, "dispute over benefits" was exclusively governed by Federal Employees Health Benefits).

CAA because the CAA merely authorizes administrative challenges to undo EPA action or inaction, and does not remotely authorize claims to fund abatement against oil and gas companies for their production and promotion of fossil fuels. Defendants also cannot meet the "no other independent legal duty" test, because California law imposes (among other things) a duty not to sell and promote products that cause a nuisance. *E.g.,* Cal. Civ. Code § 3479; *ConAgra*, *supra*. This state-law duty is different from any regulatory duties EPA imposes on defendants under the CAA.[22]

**Second,** the cases are clear that even nuisance claims that (unlike the People's claim) *are* against emitters are not "completely preempted." If defendants were correct that the CAA provides the only cause of action for injuries caused by interstate pollution, then the Supreme Court's ruling in *International Paper* would be inexplicable, because that case authorized state-law nuisance claims against interstate pollution sources.[23] Defendants attempt to distinguish the many cases that have rejected complete preemption based on the CAA, s*ee* Remand Br. 23:5-19 and n.13, as cases in which only the law of the source state was applied, Opp. 28:14-20. But there is nothing in the CAA's judicial review provisions or in the CAA's "comprehensive administrative scheme" that limits the statute to interstate pollution. *See Am. Petroleum Inst. v. Costle*, 665 F.2d 1176, 1181 (D.C. Cir. 1981) (CAA applies to "local sources of pollution."). Instead, the distinction between interstate and intrastate pollution is based solely on *conflict* preemption, *International Paper*, 479 U.S. at 493; it has never been grounded on the idea that the CAA "completely preempts" state law.

Defendants' other cases are not complete preemption cases either. The decisions in *North Carolina ex rel. Cooper v. Tennessee Valley Auth.*, 615 F.3d 291, 309 (4th Cir. 2010), and *New England Legal Foundation v. Costle*, 666 F.2d 30, 33 (2d Cir. 1981) were not jurisdictional rulings but rather *merits* decisions: *Cooper* was an ordinary preemption ruling requiring the use of the source state law in a case against direct dischargers, while *Costle* dealt with the availability of injunctive relief under *federal* common law to challenge an EPA decision. The only jurisdiction-related

---

[22] Defendants also say the "foreign affairs power" completely preempts the People's claim, Opp. 25:16-18, but *Patrickson* holds that foreign policy conflicts do not create jurisdiction. 251 F.3d at 803.

[23] *International Paper* was a water case, but its framework for dealing with direct discharges of interstate pollution applies to air cases as well. *See AEP*, 564 U.S. at 429; *Kivalina*, 696 F.3d at 866 (Pro, J., concurring). Defendants agree. *See* Opp. 10:14.

decision defendants cite is *California Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500 (9th Cir. 2015), which was a lawsuit by regulated parties against state officials implementing the CAA, and the sole claim was a challenge to a pollution equipment requirement approved by EPA under the CAA. The Ninth Circuit held that such a challenge was covered by the judicial review provisions of CAA, 42 U.S.C. § 7607, and therefore had to be brought in the federal courts of appeals rather than federal district court. *Nichols* is a telling counterpoint to this case, which is a tort claim against fossil fuel sellers, not a lawsuit against public officials for their actions implementing the CAA.

At bottom, defendants admit their argument comes down to "'field and conflict preemption principles,'" Opp. 29:5-8 (quoting *Cooper*, 615 F.3d at 303). But ordinary preemption rules do not confer jurisdiction. *See Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners*, 768 F.3d 938, 949 (9th Cir. 2014) (distinguishing jurisdictional doctrine of complete preemption from defensive doctrine of field preemption). The People's claim is not "completely preempted" by the CAA.

## IV. OCSLA does not confer federal jurisdiction over the People's claim.

It is undisputed that defendants' activities on the OCS are only a small subset of the overall fossil fuel production and promotion activities upon which the People's state-law public nuisance claim is based. *See* Opp. 30:6-7. For this reason, defendants cannot show the People's claim would not have arisen "but for" OCS activities. *See In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014). This failure dooms defendants' attempt to remove under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356.

Defendants cite no case law from the Ninth Circuit to support their OCSLA argument. But even under the Fifth Circuit test defendants rely on, there is no OCSLA jurisdiction here. *Cf. Plains Gas Sols. v. Tenn. Gas Pipeline*, 46 F. Supp. 3d 701, 704-05 (S.D. Tex. 2014) (rejecting "blind application" of OCSLA that would create jurisdiction over claims "even tangentially related to offshore oil production on the OCS."). Defendants cannot meet the first element of this test – that the activities that caused the People's injuries constitute an operation conducted on the OCS involving the exploration and production of minerals. *See* Opp. 29:19-30:3. It may be true that defendants' fossil fuel production has *in part* been conducted on the OCS. But by defendants' own accounting, their OCS activities constitute, at most, "in some years," less than a third of all *domestic*

oil and gas production. Opp. 30:6-7. This means the People's claim is based primarily on non-OCS conduct, including most domestic and all foreign production, as well as all of defendants' promotion of fossil fuels. Defendants rely on cases involving spills from OCS wellheads, accidents and injuries occurring on the OCS, or contractual disputes regarding the construction of OCS platforms or the sale of natural gas extracted from the OCS. *See* Opp. 30:17-22. Unlike those cases, the People's claim is primarily dependent on allegations regarding defendants' activities *off* the OCS. *See Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline*, 29 F. Supp. 3d 808, 837 (E.D. La. 2014) (rejecting OCSLA jurisdiction where plaintiff's claims were "factually dependent" on non-OCS conduct). Defendants' OCS conduct is not a but-for cause of the People's injuries.

Defendants also fail to satisfy the second element required by the Fifth Circuit – that the case must arise out of, or in connection with, OCS operations. Defendants erroneously peddle what amounts to a virtually limitless "partial causation" test, Opp. 30:23-31:23, under which OCSLA purportedly confers jurisdiction because "some portion of [the People's] injuries – *i.e.*, some amount of sea-level rise – is attributable to defendants' fossil-fuel extraction on the OCS." *Id.* 31:13-15. But this concedes that the People *would* have a claim even absent any OCS conduct, and, as such, it flagrantly violates the basic "but for" test. Defendants' argument would "open the floodgates to cases that could invoke OCSLA jurisdiction far beyond its intended purpose." *Stutes v. Gulfport Energy Corp.*, 2017 WL 4286846, at *12 (W.D. La. June 30, 2017), *adopted*, 2017 WL 4274353 (W.D. La. Sept. 26, 2017). Defendants attempt to ground their "partial causation" theory on an unpublished district court order in the Fifth Circuit. *See Ronquille v. Aminoil Inc.*, 2014 WL 4387337 (E.D. La. Sept. 4, 2014); Opp. 31:20-23. But *Ronquille* is not on point. It involved an asbestos exposure claim by an employee who worked on land, loading and unloading equipment used on rigs later deployed to the OCS. 2014 WL 4387337 at *2. The case was not about whether *enough* asbestos exposure occurred on the OCS, but whether exposure to asbestos on "structures and materials" *used* on the OCS but not located on the OCS at the relevant time counts at all as being sufficiently connected with the OCS. *Id.* Here is it undisputed that *most* of defendants' fossil fuel production and *all* of its promotional activities are totally unconnected to the OCS. These cases do not "arise out of" OCS operations.

Defendants also erroneously say that *Amoco Production Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir. 1988), creates an independent test for OCSLA jurisdiction under which removal is permitted in any dispute that may affect the total recovery of OCS minerals. Opp. 32:6-9. But the Fifth Circuit has since refined its interpretation of OCSLA into the two-part test applied in *Deepwater Horizon*, 745 F.3d at 163, including the but-for requirement described above. In any event, *Sea Robin* involved a dispute over contracts that "necessarily and physically ha[d] an immediate bearing on the production of [a] particular well . . . in the sense of the volume of gas actually produced." 844 F.2d at 1210; *see also Se. La. Flood Prot. Auth.*, 29 F. Supp. 3d at 837 (distinguishing *Sea Robin*). The People seek an abatement fund that would have no "immediate bearing" on the production of any particular OCS well. In fact, the People have expressly disclaimed any attempt to limit defendants' fossil fuel production activities.

## V. No enclave jurisdiction exists; the People disavow relief for injuries to federal land.

There is no federal enclave jurisdiction. Courts "strictly construe[]" federal enclave removal. *See Azhocar v. Coastal Marine Servs., Inc.*, 2013 WL 2177784, at *1 (S.D. Cal. May 20, 2013). Defendants cite *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) in arguing that courts "broadly construe" enclave jurisdiction, Opp. 5:5-6, but the court made no such holding and enclave removal was not at issue there. *Durham*, 445 F.3d at 1250-51.

Defendants' entire enclave argument depends on the incorrect premise – that the People's claim is based on "conduct and injuries suffered on federal enclaves." Opp. 33:2. The complaints contradict this premise by alleging injuries in San Francisco and Oakland, SF Compl., ¶¶ 85-93, 97; Oak. Compl., ¶¶ 84-92, 95, and expressly state that the People "do not seek abatement with respect to any federal land." SF Compl., ¶ 99 n.108; Oak. Compl., ¶ 98 n.39. Defendants completely ignore the People's primary arguments for why there is no federal enclave jurisdiction, which are dispositive here. *Compare* Remand Br. at 30:12-32:20, *with* Opp. 33:1-34:4. First, federal enclave jurisdiction is determined "from the face of the plaintiff's complaint." *See Zuniga v. Chugach Maint. Servs.*, 2006 WL 769317, at *6 n.1 (E.D. Cal. Mar. 24, 2006). Second, the "key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury," *id.* at *6, which here is in San Francisco and Oakland.

Defendants instead argue for an alternative test, *i.e.,* that as long as "pertinent events" on which liability is based occur on a federal enclave, there is enclave jurisdiction. *See* Opp. 33:16-17. But none of defendants' cases refute the principle that the "key factor" is the location of the injury.[24] Defendants rely on employment discrimination cases where removal was not at issue, and where the plaintiff conceded there was enclave jurisdiction, or where the conduct and injury clearly both occurred on an enclave. *See Klausner v. Lucas Film Entm't Co., Ltd.*, 2010 WL 1038228, at *1, 4 (N.D. Cal. Mar. 19, 2010) ("vast majority of the alleged acts of discrimination took place" on federal enclave); *Rosseter v. Indus. Light & Magic*, 2009 WL 210452, at *1-2 (N.D. Cal. Jan. 27, 2009) (plaintiff "admit[ted]" that "all acts of discrimination took place while he worked at the Presidio" and "concedes that the federal-enclave doctrine applies to private companies in the Presidio and to claims like his"); *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1144 (S.D. Cal. 2007) (plaintiff conceded he worked on federal enclave). In the employment context, a "plaintiff's place of employment is the significant factor in determining where the plaintiff's employment claims arose under the federal-enclave doctrine." *Haining v. Boeing Co.*, 2013 WL 4874975, at *3 (C.D. Cal. Sept. 11, 2013). In contrast, a public nuisance claim accrues upon injury, *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F. Supp. 283, 292 (N.D. Cal. 1984), and here the injuries occur in San Francisco and Oakland. And, defendants cannot even satisfy their own formulation of the test – they omit the key qualification that "all" pertinent events must occur on the enclave. *See Rosseter*, 2009 WL 210452, at *2; *Stiefel*, 497 F. Supp. 2d at 1144. Here, the People's injuries did not occur on enclaves.

Defendants also argue that enclave jurisdiction exists regardless of how much of the conduct occurs outside federal enclaves if the "'federal interest' in regulating the conduct at issue is high enough," Opp. 33:22-24 (quoting *Ballard v. Ameron Int'l Corp.*, 2016 WL 6216194, at *3 (N.D. Cal. Oct. 25, 2016)), and point to alleged federalism and foreign affairs interests, *id*. But *Ballard* expressly tied the "federal interest" to the proportion of conduct occurring on and off enclaves: "[w]hen exposures allegedly occur partially inside and partially outside the boundaries of an enclave,

_____

[24] The "all pertinent events" formulation is from dicta in a case in which removal was not at issue and plaintiff conceded that all pertinent events occurred on a federal enclave. *See Snow v. Bechtel Constr. Inc.*, 647 F. Supp. 1514, 1521 (C.D. Cal. 1986).

an argument would surface that the state's interest increases proportionally, while the federal interest decreases." 2016 WL 6216194, at *3 (quotation omitted); *see also In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (not enough that "some of the alleged events occurred on the federal enclave"). Here, the Complaints disavow any enclave injuries at all.

Finally, defendants have not established that each individual parcel of land on which they produce fossil fuels is a federal enclave. *See Ballard*, 2016 WL 6216194, at *3 ("mere conclusory statement that the [land] is a federal enclave does not meet [defendant's] burden to demonstrate that it is so for the purposes of removal"); *Zuniga*, 2006 WL 769317, at *6 & n.1 (assertions of federal enclave status "made without any evidentiary support" are insufficient). The People have not conceded that any such lands are federal enclaves, the issue is jurisdictional and defendants have not carried their burden. Defendants fail to establish enclave jurisdiction.

## VI. Defendants have not "acted under" federal officers.

The federal officer removal statute, 28 U.S.C. § 1442, also does not provide federal jurisdiction. Defendants have not shown that a "causal nexus" exists between the People's claim and actions defendants have taken pursuant to government "subjection, guidance, or control."[25] *See Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (reversing denial of remand); *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 730, 732 n.6 (9th Cir. 2015).

First, defendants have not satisfied the "causal nexus" requirement because the conduct allegedly directed by the government involves only a small portion of defendants' overall fossil fuel production and has nothing to do with defendants' promotion of fossil fuels. Indeed, although defendants assert that some of their fossil fuel production activities have been an effort to "assist the government," Opp. 36:18, they identify only two instances of such alleged "activities," *see id.* 34:24-36:4, and they cannot show that these isolated examples are the gravamen of the People's claim. In decades of producing and promoting fossil fuels, defendants can now say only that *some* of them

---

[25] Defendants point to the Supreme Court's statement against a "grudging interpretation" of the federal officer removal statute, Opp. 34:12, but the Supreme Court has cautioned that federal officer removal issues are "to be construed with highest regard for [the] equality" of state and federal interests, *Colorado v. Symes*, 286 U.S. 510, 518 (1932). Indeed, the federal officer removal statute was not intended "to be construed so broadly that it would federalize a broad spectrum of state-law tort claims against entities regulated by—though not acting under—officers or agencies of the United States." *In re MTBE*, 488 F.3d at 132.

were in *some* instances bound to comply with the terms and conditions of self-interested agreements with the government. That does not transform the vast landscape of defendants' collective fossil fuel businesses into an enterprise of national service.

The "critical question" is not whether one or more defendants have "acted under" a federal officer in *some* manner or at *some* point, but "to what extent [D]efendants acted under federal direction at the time they engaged in the conduct now being sued upon." *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1275 (C.D. Cal. 1998) (quoting *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 946 (E.D.N.Y. 1992)). This causal requirement for removal under 28 U.S.C. § 1442 is satisfied where a defendant's relationship to a plaintiff's alleged injuries is "derived solely from [the defendant's] official duties" for the government. *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)).

Here, neither defendants' compliance with OCS leases nor Standard Oil's adherence to terms in its Elk Hills contract, standing alone, constitutes the basis of the People's claim. That claim is based instead on defendants' promotional activities, none of which were directed by the government, as well as *all* of defendants' fossil fuel production, the vast majority of which is not associated with the OCS or Elk Hills. A few specific instances of fossil fuel production under contracts with the government do not suffice for federal officer jurisdiction. This is especially true where many terms and conditions in those contracts – such as the percentage of oil extracted from the OCS that must be sold to small refiners, *see* Opp. 36:12-13, or how Elk Hills oil was to be conserved – have little to do with the overall scope of defendants' production and promotion of fossil fuels or the overall basis for the People's public nuisance claim.[26] The People's injuries would be largely the same whether these particular federal agreements existed or not.

---

[26] Defendants dispute that the purpose of this contract was to conserve rather than to produce oil. Opp 36 n.25. But while it contemplated "the *eventual* receipt by Navy and Standard" of the "maximum *ultimate* recovery" of fossil fuels underlying their respective lands, NORs Ex. H, Recitals ¶ 6(d) (emphasis added), the contract's primary purpose was indisputably to "conserve in the ground all of Navy's share of the oil in the Reserve as well as a substantial portion of Standard's share . . . ." *Id.*; *see also United States v. Standard Oil Co.*, 545 F.2d 624, 627-28 (9th Cir. 1976) (contract designed to conserve the Navy's oil). To the extent Standard's activity increased in 1976, as defendants claim, Opp. 35:24-27, the increased activity was to Standard's benefit and at its own option, *see* Pub. L. No. 94-258, 90 Stat. 303 (1976) (codified as amended at 10 U.S.C. § 7422) (conditioning increased production upon Standard's agreement with the Navy; authorizing purchase of private lands by eminent domain if agreement not reached).

1    Second, defendants also fail to show that the two types government contracts they identify

2    actually involve their "subjection" to the government's complete "control." Both Standard Oil's Elk

3    Hills agreement and defendants' OCS leases involve mutually beneficial arrangements with the

4    government whereby certain defendants simply acquired or preserved the right to produce fossil

5    fuels. Defendants were primarily helping themselves, not the government, and it is irrelevant

6    whether these arrangements required certain defendants to comply with general contractual terms or

7    with federal laws and regulations more generally.

8        Defendants' first specific contract -- Standard Oil's historical unit plan contract with the

9    government for joint exploration and production on the Elk Hills oil field -- was a "common

10   arrangement" under which multiple owners of a single underground resource pool agreed to

11   coordinate their extraction efforts for mutual benefit. *See Standard Oil Co.*, 545 F.2d at 627; *see*

12   *also Chevron U.S.A., Inc. v. United States*, 110 Fed. Cl. 747, 752-53 (2013) (describing agreement

13   between Standard and Navy for "*joint* operation and production") (emphasis added).[27] Defendants

14   cite general language from the contract purporting to give the Navy "complete control" over

15   Standard's Elk Hills operations, *see* Opp. 35:7, but more specific contractual terms demonstrate that

16   operational control was divided equally between Standard and the Navy as partners, *see* NORs Ex.

17   H, § 3(b) (establishing two-person Operating Committee with equal representation). The contract

18   gave both parties an equal say in, among other things, (1) the number, location, and depth of all wells

19   drilled on the Reserve; (2) the rate of each well's production; (3) and "[i]nspect[ing] and

20   supervis[ing] all exploration, prospecting, development and producing operations on the Reserve."

21   *Id.* Because the contract established a structure of shared responsibility under which Standard

22   possessed equal control of most day-to-day operational and strategic decision-making, there is no

23   evidence that the government "substantially supervised" Standard's "day-to-day" operations at Elk

24   Hills. *See Cabalce*, 797 F.3d at 728-29 & n.3. Nor does the contract demonstrate an effort by

25   Standard "to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior." *See Watson*, 551

26

27       [27] Standard was "the owner in fee simple" of "lands and interests in lands lying within the
     boundaries" of the Elk Hills field, NORs Ex. H, Recitals ¶ 2. Standard and the Navy shared all fossil
28   fuels recovered at Elk Hills in proportion to their estimated individual ownership of those resources
     prior to execution of the contract. *Id.* § 2(4)(b); *see also Chevron*, 110 Fed. Cl. at 753.

U.S. at 152.  Standard's voluntary participation in such a contract is evidence, at most, of a joint

venture with the government.

Defendants' OCS leases also fail to justify removal.  The form leases demonstrate only that

defendants' right to produce fossil fuels from the OCS is conditioned on compliance with lease terms

and federal law.  *See* NORs, Ex. F § 1 (lease subject to federal statutes and regulations), Ex. G § 1

(same); *see also* Couvillion Decl., ¶ 1 (administration of OCS leases involves "ensur[ing]

compliance with . . . leases and regulations.").  The mere regulation of defendants' OCS activities

does not justify federal officer removal.  *See Watson*, 551 U.S. at 153.

Defendants also suggest that their OCS leases compel the production of oil and gas, Opp.

36:8-9, but the leases say no such thing.  Defendants cite a lease provision requiring only that they

"shall conduct all operations" in accordance with approved plans.  *See* NORs, Ex. F § 9, Ex. G. § 9.

That does not mean defendants have been conscripted into government service, or that defendants

must produce oil and gas they do not want to produce, but only that their profitable use of federal

lands is conditioned on adherence to a government-approved plan.

Finally, defendants' invocation of purported federal policy behind OCS leasing is irrelevant.

*See* Opp. 36:3-37:4.  The purpose of OCSLA is not just to expedite development but also to protect

"the human, marine, and coastal environments."  *See, e.g., Nat. Res. Def. Council, Inc. v. Hodel*, 865

F.2d 288, 292 (D.C. Cir. 1988).  If compliance with federal law meant that regulated parties were

helping to carry out general policy objectives like resource development and environmental

protection, *any* regulated party could remove *any* case that might touch upon its regulatory

compliance.  Thus, private parties must have assisted the government with far more discrete and

specific objectives, such as the manufacture of military equipment according to government

specifications.  *See, e.g., Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*,

865 F.3d 1237, 1245 (9th Cir. 2017) (subrogation lien filed at government's specific direction to

pursue subrogation).[28]  At most, defendants' production of fossil fuels under OCS leases is an

---

[28] Other cases cited by defendants are in accord.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1124
(9th Cir. 2014) (manufacture of military equipment pursuant to detailed specifications); *Ruppel v.
CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (private defendant "worked hand-in-hand with the
government, assisting [it] in building warships"); *Benson v. Russell's Cuthand Creek Ranch, Ltd.*,

activity that occurs under the "general auspices of federal direction," and that is not enough to support removal. *Cabalce*, 797 F.3d at 729; *see also Arness*, 997 F. Supp. at 1273, 1275.

## VII. There is no bankruptcy jurisdiction.

Defendants' assertion of bankruptcy jurisdiction should be rejected for three reasons.

***First***, these actions cannot be removed because they seek to protect public safety and welfare. A governmental lawsuit is exempt from bankruptcy removal if it meets either of two tests: (1) the "pecuniary purpose" test, which exempts suits to "protect public safety and welfare," or (2) the "public policy" test, which exempts suits on behalf of "some broader segment of the public," instead of "discrete and identifiable individuals or entities." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). Defendants ignore the People's actual claim here which seeks to protect "public safety and welfare" and a "broader segment of the public" from the grave threat of global warming-induced sea level rise. And defendants ignore entirely the People's leading case, *In re MTBE*, which applied Ninth Circuit law and held that claims seeking damages to clean up groundwater contamination were not removable under the governmental exception. 488 F.3d at133. Defendants' only argument on both tests is that these lawsuits seek "profits" and "money to pad local budgets rather than vindicate public rights," Opp. 39:27 and 40:6, and their only evidence is a confidential memo (obtained without authorization by unknown sources and published in a British tabloid) drafted almost three years ago by one of the People's lawyers about a different potential lawsuit and a different plaintiff.[29] Defendants falsely state the memo invites "putative plaintiffs" to sue for infrastructure projects "unrelated" to global warming, Opp. 40:8-9, but the memo actually says the exact opposite – that while "some portion of these [water infrastructure] costs may be unrelated to global warming, given the recognized impact of global warming in causing much of the underlying changes in water quantity and runoff timing that necessitate such infrastructure changes, it seems

---

183 F. Supp. 3d 795, 802 (E.D. Tex. 2016) (defendant "was a partner with . . . and in many ways stood fully in the place of the government" in restoring specific wetland habitat).

[29] Defendants rely on and falsely characterize this hacked memo even though it is clearly labeled "Privileged & Confidential" and "Attorney Work Product." *See* N.D. Cal. Guidelines for Professional Conduct at introduction & No. 18(c) (counsel should act "within highest bounds of professionalism," and should not "attribute to an opposing counsel a position not taken").

clear that global warming is causing the state billions of dollars of damages." Thomson Decl., Ex. 26 at 3. The People's actions to protect public safety and welfare are not removable.

*Second*, defendants cannot show that these actions are "related to" Texaco's 30-year old bankruptcy or the bankruptcies of Arch Coal and Peabody Energy. Opp. 38:23-39:22. All three companies – none of them defendants – have emerged from bankruptcy with a confirmed plan,[30] and so the "any conceivable effect" test that applies only to pre-confirmation bankruptcies is irrelevant. *See* Opp. 38:18. Instead, defendants must demonstrate a "close nexus" between the People's lawsuits and the bankruptcy plan, *i.e.*, that the actions would affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Wilshire Courtyard*, 729 F.3d 1279, 1288 (9th Cir. 2013) (quotation omitted). Defendants cannot meet this test. Texaco's bankruptcy plan was confirmed *30 years ago*. Defendants' new theory (absent from the notices of removal) is that they supposedly "possess claims for equitable indemnity" against fossil fuel producers Arch Coal and Peabody. Opp. 39:7-8. But the mere possibility that defendants have "hypothetical indemnity and contribution claims" against former debtors does not establish that the People's claim against *non*-bankrupt entities have a close nexus to a bankruptcy plan.[31] *See In re Asbestos Litig.*, 2002 WL 649400, at *4 (D. Or. Feb. 1, 2002).[32] And the other case defendants cite was decided under the broader "any conceivable effect" test for claims against pre-confirmation debtors, and it remanded on equitable grounds because of the "limited connection to a debtor's bankruptcy case." *Parke v. Cardsystems Sols., Inc.*, 2006 WL 2917604, at *3 (N.D. Cal. Oct. 11, 2006). There is no "related to" jurisdiction.

*Third*, even if there were bankruptcy jurisdiction, it is tenuous at best, and these cases should be remanded under equitable principles. Remand Br. 34:24-35:15. Defendants' only response is a

---

[30] *In re Arch Coal, Inc.*, No. 16-40120, Dkt. No. 1334 (Bankr. E.D. Mo. Sept. 15, 2016); *In re Peabody Energy Corp.*, 16-42529, Dkt. No. 2718 (Bankr. E.D. Mo. Mar. 15, 2017).

[31] Defendants point out that a Missouri bankruptcy court has enjoined prosecution of other climate change claims brought directly against Peabody. Opp. 39:15. But Peabody is not a party here, and the Executive Committee of this Court even denied the defendants' motion to relate these actions to the actions against Peabody. *See Cty. of San Mateo v. Chevron Corp.*, No. 17-cv-04929-VC (Nov. 8, 2017), ECF No. 71.

[32] *See also MBIA Ins. Corp. v. Indymac ABS, Inc.*, 2009 WL 10675774, at *2 (C.D. Cal. Dec. 23, 2009) ("hypothetical claims" against debtor not a sufficient nexus) (quotation omitted).

case addressing *Younger* abstention, not bankruptcy removal, *see Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013), and they fail to address the many cases cited by the People in which courts abstained from asserting bankruptcy jurisdiction because "state law issues clearly predominate." *See, e.g., In re Schwartz*, 2012 WL 899331, at *2 (N.D. Cal. Mar. 15, 2012).

## CONCLUSION

The People's remand motion should be granted.

Dated: January 15, 2018                     Respectfully submitted,

**\*\* */s/ Erin Bernstein*
BARBARA J. PARKER (State Bar #069722)
City Attorney
MARIA BEE (State Bar #167716)
Special Counsel
ERIN BERNSTEIN (State Bar #231539)
Senior Deputy City Attorney
MALIA MCPHERSON (State Bar #313918)
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Facsimile: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for The People*

           \*\* Pursuant to Civ. L.R. 5-1(i)(3), the electronic
           filer has obtained approval from this signatory.

**\*\* */s/ Matthew D. Goldberg*
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for The People*

** Pursuant to Civ. L.R. 5-1(i)(3), the electronic filer has obtained approval from this signatory.

*/s/ Steve W. Berman*
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Telephone: (617) 641-9550
Facsimile: (617) 641-9551

*Of Counsel Attorneys for The People*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

_s/ Steve W. Berman_<br>
STEVE W. BERMAN