UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH OAKLAND CITY ATTORNEY BARBARA J. PARKER, <br><br> PLAINTIFF AND REAL PARTY IN INTEREST, <br><br> VS. <br><br> BP P.L.C., A PUBLIC LIMITED COMPANY OF ENGLAND AND WALES, CHEVRON CORPORATION, A DELAWARE CORPORATION, CONOCOPHILLIPS COMPANY, A DELAWARE CORPORATION, EXXON MOBIL CORPORATION, A NEW JERSEY CORPORATION, ROYAL DUTCH SHELL PLC, A PUBLIC LIMITED COMPANY OF ENGLAND AND WALES, AND DOES 1THROUGH 10, <br><br> DEFENDANTS. | NO. 17-CV-6011-WHA <br><br><br><br><br><br><br><br> SAN FRANCISCO, CALIFORNIA THURSDAY FEBRUARY 8, 2018 |

(RELATED CASE DETAILED ON FOLLOWING PAGE)

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  1:58 P.M. - 2:46 P.M.**

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

```
THE PEOPLE OF THE STATE OF CALIFORNIA    )
ACTING BY AND THROUGH THE SAN FRANCISCO  )
CITY ATTORNEY DENNIS J. HERRERA,         )
                                         )
   PLAINTIFF AND REAL PARTY IN INTEREST, )
                                         )
VS.                                      ) NO. 17-CV-6012-WHA
                                         )
BP P.L.C., A PUBLIC LIMITED COMPANY OF   )
ENGLAND AND WALES, CHEVRON CORPORATION,  )
A DELAWARE CORPORATION, CONOCOPHILLIPS   )
COMPANY, A DELAWARE CORPORATION, EXXON   )
MOBIL CORPORATION, A NEW JERSEY          )
CORPORATION, ROYAL DUTCH SHELL PLC,      )
A PUBLIC LIMITED COMPANY OF ENGLAND      )
AND WALES, AND DOES 1THROUGH 10,         )
                                         )
              DEFENDANTS.                )
_____)
```

**APPEARANCES**

**FOR PLAINTIFFS**          HAGENS BERMAN SOBOL SHAPIRO LLP
                            1280 CENTRE STREET, SUITE 230
                            NEWTON, MASSACHUSETTS 02459
                    **BY:  MATTHEW F. PAWA, ESQUIRE**


                            HAGENS BERMAN SOBOL SHAPIRO LLP
                            1918 EIGHTH AVENUE, SUITE 3300
                            SEATTLE, WASHINGTON 98101
                    **BY:  STEVE W. BERMAN, ESQUIRE**

                            CITY & COUNTY OF SAN FRANCISCO
                            CITY ATTORNEY'S OFFICE
                            1390 MARKET STREET
                            SAN FRANCISCO, CALIFORNIA 94121
                    **BY:  MATTHEW D. GOLDBERG, ESQUIRE**
                          **ERIN BRIANNA BERNSTEIN, ESQUIRE**


(APPEARANCES CONTINUED ON FOLLOWING PAGES)

**APPEARANCES (CONTINUED):**

FOR PLAINTIFFS
        SF CITY ATTORNEY'S OFFICE
        1 DR. CARLTON B. GOODLETT PLACE
        SAN FRANCISCO, CALIFORNIA  94102
    BY:  **ROBB KAPLA, ESQUIRE**

        OAKLAND CITY ATTORNEY'S OFFICE
        ONE FRANK H. OGAWA PLAZA, 6TH FL.
        OAKLAND, CALIFORNIA 94612-1999
    BY:  **MALIA MCPHERSON, ESQUIRE**

FOR DEFENDANT
CHEVRON CORPORATION
        GIBSON DUNN & CRUTCHER LLP
        333 SOUTH GRAND AVENUE
        LOS ANGELES, CALIFORNIA 90071-3197
    BY:  **THEODORE J. BOUTROUS, JR., ESQUIRE**

FOR DEFENDANT
BP P.L.C.
        ARNOLD & PORTER LLP
        THREE EMBARCADERO CENTER
        10TH FLOOR
        SAN FRANCISCO, CALIFORNIA 94111-4024
    BY:  **JONATHAN W. HUGHES, ESQUIRE**

FOR DEFENDANT
EXXON MOBIL
        **PAUL WEISS RIFKIND WHARTON & GARRISON**
        1285 AVENUE OF THE AMERICAS
        NEW YORK, NEW YORK 10019-6064
    BY:  **THEODORE WELLS, ESQUIRE**
        **JAREN JANGHORBANI, ESQUIRE**

        O'MELVENY & MYERS LLP
        400 SOUTH HOPE STREET
        LOS ANGELES, CALIFORNIA 90071-2899
    BY:  **DAWN SESTITO, ESQUIRE**

FOR DEFENDANT
ROYAL DUTCH SHELL
        JEROME CARY ROTH
        MUNGER TOLLES & OLSON LLP
        560 MISSION STREET, 27TH FLOOR
        SAN FRANCISCO, CALIFORNIA 94105-2907
    BY:  **JEROME CARY ROTH, ESQUIRE**

**APPEARANCES (CONTINUED):**

**FOR DEFENDANT**      MUNGER TOLLES & OLSON LLP
**ROYAL DUTCH SHELL**    350 SOUTH GRAND AVENUE, 50TH FLOOR
                      LOS ANGELES, CALIFORNIA 90071-3426
         **BY:**  **DANIEL PAUL COLLINS ESQUIRE**


**FOR DEFENDANT**      KING & SPALDING LLP
**CONOCOPHILLIPS**     1100 LOUISIANA STREET, SUITE 4000
                      HOUSTON, TEXAS 77002
         **BY:**  **CAROL MARGARET WOOD, ESQUIRE**
              **TRACIE JO RENFROE, ESQUIRE**

1    THURSDAY, FEBRUARY 8, 2018                    1:58 P.M.

2    (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3    IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4    ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                            ---oOo---

6                         PROCEEDINGS

7            **THE CLERK:**  CALLING CIVIL ACTION 17-6011 AND 17-6012,

8    THE PEOPLE OF THE STATE OF CALIFORNIA VERSUS BP P.L.C., ET AL.

9            COUNSEL, PLEASE APPROACH THE PODIUM AND STATE YOUR

10   APPEARANCES FOR THE RECORD.

11           **MR. HUGHES:**  GOOD AFTERNOON, YOUR HONOR.

12   JONATHAN HUGHES OF ARNOLD & PORTER FOR BP.

13           **MR. BERMAN:**  GOOD AFTERNOON, YOUR HONOR.

14   STEVE BERMAN ON BEHALF OF THE PEOPLE.

15           **MR. PAWA:**  GOOD AFTERNOON, YOUR HONOR.

16   MATT PAWA ON BEHALF OF THE PEOPLE.

17           **MR. BOUTROUS:**  GOOD AFTERNOON, YOUR HONOR.

18   THEODORE J. BOUTROUS, JUNIOR, REPRESENTING CHEVRON.

19           **MR. GOLDBERG:**  GOOD AFTERNOON, YOUR HONOR.

20   MATT GOLDBERG ON BEHALF OF THE PEOPLE.

21           **MR. WELLS:**  ED WELLS, PAUL WEISS, ON BEHALF OF EXXON

22   MOBILE.

23           **MR. KAPLA:**  GOOD AFTERNOON, YOUR HONOR.

24   ROBB KAPLA ON BEHALF OF THE PEOPLE.

25           **MS. MCPHERSON:**  MALIA MCPHERSON ON BEHALF OF THE

1    PEOPLE.

2         **MR. ROTH:**  JERRY ROTH OF MUNGER TOLLES ON BEHALF OF

3    ROYAL DUTCH SHELL.

4         **MS. BERNSTEIN:**  GOOD AFTERNOON.

5         ERIN BERNSTEIN ON BEHALF OF THE PEOPLE.

6         **MS. WOOD:**  GOOD AFTERNOON, YOUR HONOR.

7         CAROL WOOD OF KING & SPALDING REPRESENTING

8    CONOCOPHILLIPS COMPANY.

9         **MS. RENFROE:**  GOOD AFTERNOON, YOUR HONOR.

10        TRACIE RENFROE, KING & SPALDING, REPRESENTING

11   CONOCOPHILLIPS COMPANY AND PHILLIPS 66.

12        **MR. JANGHORBANI:**  GOOD AFTERNOON, YOUR HONOR.

13        JAREN JANGHORBANI, PAUL WEISS OF BEHALF OF EXXON

14   MOBIL.

15        **MS. SESTITO:**  GOOD AFTERNOON, YOUR HONOR.

16        DAWN SESTITO, O'MELVENY MYERS ON BEHALF OF EXXON

17   MOBIL.

18        **THE COURT:**  ALL RIGHT.  THANK YOU.

19        **MR. COLLINS:**  GOOD AFTERNOON, YOUR HONOR.  DANIEL

20   COLLINS, MUNGER, TOLLES & OLSON, ALSO ON BEHALF OF ROYAL DUTCH

21   SHELL.

22        **THE COURT:**  ALL RIGHT.  THANK YOU.

23        THIS IS MOTION TO REMAND, CORRECT?

24        SO I THINK THE -- WE OUGHT TO START WITH THE PARTY

25   WHO REMOVED, BECAUSE YOU'RE THE ONE THAT HAS THE BURDEN OF

1    SHOWING THERE'S REMOVAL JURISDICTION.

2            SO I CAN'T -- I DON'T HAVE -- MY HEALTH IS SUFFERING

3    A LOT TODAY.  YOU CAN TELL FROM MY VOICE.  I DO WANT TO GIVE

4    YOU A CHANCE TO MAKE YOUR MAIN POINTS, BUT THIS WILL NOT,

5    UNFORTUNATELY, BE A LONG ARGUMENT.

6            ALL RIGHT.  SO WHO'S GOING TO ARGUE FOR YOUR SIDE?

7            **MR. BOUTROUS:**  I AM, YOUR HONOR.  THEODORE J.

8    BOUTROUS, JUNIOR, FOR CHEVRON.

9            **THE COURT:**  OKAY.  SO WHAT IS THE BEST ARGUMENT THAT

10   YOU'VE GOT FOR REMOVAL JURISDICTION?

11           **MR. BOUTROUS:**  YOUR HONOR, THE BEST ARGUMENT WE HAVE

12   IS THAT THIS CASE, EVEN THOUGH IT'S STYLED AS A STATE PUBLIC

13   NUISANCE CLAIM, IS GLOBAL, IT'S INTERSTATE, IT'S INTERNATIONAL,

14   AND IT REALLY IS A FEDERAL COMMON LAW CLAIM THAT -- IN

15   DISGUISE.  ACTUALLY, ON THE FACE OF THE COMPLAINT, IT'S A

16   FEDERAL COMMON LAW CLAIM BUT IT IS LABELED A STATE CLAIM.

17           THE *AEP* DECISION FROM THE SUPREME COURT SAID THAT

18   WHEN IT'S AN INTERSTATE OR INTERNATIONAL CLAIM, FEDERAL COMMON

19   LAW APPLIES BECAUSE THE STATES CANNOT APPLY THEIR OWN LAW TO

20   MATTERS THAT INVOLVE GLOBAL WARMING.

21           THE NINTH CIRCUIT IN *KIVALINA* SAID THE SAME THING,

22   WITH VERY SIMILAR PUBLIC NUISANCE CLAIMS, THAT FEDERAL COMMON

23   LAW APPLIES BECAUSE THE STATES CAN'T APPLY THEIR LAW TO THIS

24   GLOBAL ACTIVITY.  AND HERE THE CLAIM IS THAT THE OIL COMPANIES'

25   PRODUCTION OF OIL AROUND THE WORLD, AROUND THE GLOBE, AROUND

1    THE UNITED STATES, GOING BACK TO THE BEGINNING OF THE

2    INDUSTRIAL AGE, BASICALLY, HAS BEEN CONTRIBUTING TO GLOBAL

3    WARMING WHICH HAS CAUSED THE ICE CAPS IN ANTARCTICA AND

4    GREENLAND TO MELT AND HAVE THE SEA LEVELS RISE.

5         THAT'S THEIR ALLEGATION, AND THAT IS NOT SOMETHING A

6    STATE CAN REGULATE.  IT'S FEDERAL.

7         IN *AEP* THE SUPREME COURT SAID THAT THAT -- THE GLOBAL

8    WARMING ISSUES PRESENT NATIONAL AND INTERNATIONAL POLICY

9    DECISIONS THAT REQUIRE A COMPLEX BALANCING.

10        SO THE COMPLEX BALANCING THAT THE TORT HERE, THE

11   NUISANCE TORT, REQUIRES IS A FEDERAL QUESTION, AND THAT

12   PROVIDES ARISING UNDER JURISDICTION.  EVEN THOUGH THE CLAIM IS

13   LABELED STATE CLAIM, THE NINTH CIRCUIT'S *NEW SD* DECISION --

14   *VERSUS ROCKWELL* SAYS THAT --

15        **THE COURT:**  SAY THAT LAST ONE AGAIN.

16        **MR. BOUTROUS:**  IT'S *NEW*, N-E-W, *SD V. ROCKWELL*.  AND

17   THE RELATED --

18        **THE COURT:**  WHAT DID THE NINTH CIRCUIT HOLD IN THAT?

19        **MR. BOUTROUS:**  IN THAT CLAIM THERE WAS A CLAIM THAT

20   WAS LABELED A STATE LAW CLAIM, BUT THE COURT FOUND THAT BECAUSE

21   OF THE NATURE OF THE UNIQUELY FEDERAL INTEREST AND THE NATURE

22   OF THE CLAIM, IT WAS ACTUALLY A FEDERAL CLAIM, AND, THEREFORE,

23   REMOVAL JURISDICTION WAS APPROPRIATE.

24        THE RELATED ARGUMENT --

25        **THE COURT:**  EVEN THOUGH ON THE FACE OF THE COMPLAINT

1    THERE WAS NO REFERENCE TO FEDERAL CLAIMS?

2            **MR. BOUTROUS:**  EXACTLY, YOUR HONOR.

3            AND SO -- AND HERE THE RELATED ARGUMENT IS UNDER THE

4    SUPREME COURT'S *GRABLE* DECISION, AND *GRABLE* HOLDS THAT EVEN IF

5    THE CLAIM IS A STATE CLAIM, IF IT REQUIRES THE COURT TO RESOLVE

6    A FEDERAL QUESTION OR -- AS PART OF THE ANALYSIS, AND OTHER

7    FACTORS ARE MET, THEN THERE'S ALSO ARISING UNDER JURISDICTION

8    UNDER SECTION 1331.  ONE OF THE FACTORS THERE IS TO ENSURE

9    UNIFORMITY WHERE NATIONAL INTERESTS ARE INVOLVED.

10           HERE, AGAIN, AS THE SUPREME COURT SAID IN *AEP*, THE

11   FUNDAMENTAL INQUIRY IS A COMPLEX BALANCING OF OUR

12   ENVIRONMENTAL, ECONOMIC ISSUES, COMPETITIVENESS, NATIONAL

13   SECURITY, IN TERMS OF HOW TO REDUCE GLOBAL EMISSIONS AND

14   ADDRESS CLIMATE CHANGE ISSUES.  THAT'S A VERY COMPLEX ISSUE

15   THAT REQUIRES A BALANCING OF COST AND BENEFIT.

16           HERE, AS A MATTER OF STATE LAW, CALIFORNIA REQUIRES

17   THAT THE REASONABLENESS DETERMINATION BE MADE WHERE A

18   COST/BENEFIT ANALYSIS WOULD APPLY, AND AS ITS PLED ON ITS FACE,

19   PLAINTIFFS WOULD BE ASKING A STATE COURT JUDGE TO MAKE THE

20   FEDERAL BALANCING THAT THE FEDERAL CONGRESS HAS MADE, THE EPA

21   HAS MADE IN THE CLEAN AIR ACT CONTEXT, THEREFORE, THERE'S AN

22   IMPORTANT SUBSTANTIAL FEDERAL ISSUE EMBEDDED IN THE CLAIM.

23           AND THIS COURT IN THE *COUNTY OF SANTA CLARA* CASE

24   APPLIED THE *GRABLE* ANALYSIS, FOUND A FEDERAL ISSUE EMBEDDED,

25   FOUND IT WAS IMPORTANT BECAUSE IT WOULD HAVE AN EFFECT ON A

1    FEDERAL REGULATORY SCHEME.

2          AND THE OTHER ELEMENT OF *GRABLE* IS HOW DOES IT WORK

3    AS A FEDERALISM MATTER, AND HERE WOULD IT OFFEND FEDERALISM FOR

4    THIS COURT TO HEAR A STATE CLAIM IN FEDERAL COURT UNDER THESE

5    CIRCUMSTANCES.  AND WE RESPECTFULLY SUBMIT THE ANSWER --

6          **THE COURT:**  BUT IN THAT *COUNTY OF SANTA CLARA* CASE,

7    THE SUPREME COURT TOOK THAT CASE.  IT WAS *ASTRAZENECA*.  IS THAT

8    THE ONE YOU'RE TALKING ABOUT?

9          **MR. BOUTROUS:**  NO, THIS WAS THE REMOVAL CASE THIS

10   COURT DECIDED, AND IT WAS REMOVED, AND THERE WAS NO QUESTION ON

11   REMOVAL.  AND THERE THE COURT LOOKED AT THE FEDERALISM ISSUES.

12   AND HERE, BECAUSE THIS CASE HAS SO MANY FEDERAL ISSUES FLOWING

13   AROUND IT, THE FEDERAL GOVERNMENT, THE EPA REGULATES EMISSIONS.

14          AS I SAID, THE BALANCING ISSUE IS A FEDERAL ISSUE.

15   NO CALIFORNIA COURT HAS EVER FOUND THAT THE PUBLIC NUISANCE

16   TORT COULD BE APPLIED TO REGULATE GLOBAL WARMING AND INTERSTATE

17   OR INTERNATIONAL ACTIVITY LIKE THIS.  SO THERE WOULD BE NO REAL

18   INTRUSION ON CALIFORNIA'S PREROGATIVES.  AND, OF COURSE, THIS

19   COURT HEARS STATE CROSSCLAIMS FREQUENTLY AND RESPECTS STATE LAW

20   IN THOSE CIRCUMSTANCES.

21          THE OTHER TWO GROUNDS I'LL JUST BRIEFLY TOUCH ON

22   THEM -- MY MIC JUST WENT OUT.

23          **THE COURT:**  I HAVE NO IDEA WHY THAT -- BUT YOU'RE

24   BACK ON LINE.  GO AHEAD.

25          **MR. BOUTROUS:**  (INDISCERNIBLE).

1      **THE COURT:**  NO, NO.  TRY IT AGAIN.  I THINK SOMEHOW

2  WE -- DON'T GO AWAY.

3      **MR. BOUTROUS:**  OKAY.

4      **THE COURT:**  NOW IT SOUNDS LIKE YOU'RE COMING BACK.

5      **MR. BOUTROUS:**  I THINK I'M BACK.  THERE WE GO.

6      **THE COURT:**  ALL RIGHT.

7      **MR. BOUTROUS:**  I'LL FINISH UP WITH TWO QUICK POINTS,

8  YOUR HONOR.

9      THE CLEAN AIR ACT, AS THE COURT KNOWS FROM THE

10  SUPREME COURT'S *AEP* DECISION, THERE THE COURT FOUND THAT

11  CONGRESS, THROUGH THE CLEAN AIR ACT, REGULATES EMISSIONS OF

12  CARBON DIOXIDE AND THAT THAT IS -- FEDERAL COURTS CAN'T APPLY

13  FEDERAL COMMON LAW BECAUSE CONGRESS HAS LEGISLATED IN THAT

14  AREA, AND IT'S -- THAT ANALYSIS, WE BELIEVE, MEANS THAT A STATE

15  COURT CAN'T THEN APPLY STATE PUBLIC NUISANCE LAW, BOTH AS A

16  SUPREMACY CLAUSE MATTER, ALSO BECAUSE THE STATES WOULD BE

17  INTERFERING WITH THIS COMPREHENSIVE REGULATORY SCHEME THAT

18  CONGRESS HAS ENACTED AND THE EPA IS IMPLEMENTING.  SO THERE'S

19  COMPLETE PREEMPTION.  SO, AGAIN, FEDERAL QUESTION JURISDICTION.

20      AND THEN, FINALLY, THE PLAINTIFF'S CLAIMS HERE SWEEP

21  SO BROADLY, YOUR HONOR, THEY ENCOMPASS ALL OF THE PRODUCTION OF

22  OIL ON THE OUTER CONTINENTAL SHELF, REALLY GOING BACK TO THE

23  BEGINNING OF THE INDUSTRIAL AGE, AND THERE'S FEDERAL

24  JURISDICTIONAL STATUTE THAT SAYS IF A MATTER IS CONNECTED WITH

25  OR ARISES FROM OIL PRODUCTION ACTIVITY ON THE OUTER CONTINENTAL

1  SHELF, THERE'S FEDERAL JURISDICTION.

2          **THE COURT:**  READ TO ME FROM THE PLEADING, THE

3  COMPLAINT, THE MOST BROAD, CLEARCUT ALLEGATION THAT YOU THINK

4  IMPLICATES -- NECESSARILY IMPLICATES FEDERAL COMMON LAW.

5          **MR. BOUTROUS:**  I'LL JUST START WITH THE GIST OF THE

6  COMPLAINT, WHICH IS THIS IS WHY THE -- ON PAGE 1.  THE

7  COMPLAINT -- THIS IS NOT JUST A -- I'LL READ THE QUOTE AND

8  EXPLAIN IT.  THIS IS A QUOTE:

9                  "GLOBAL WARMING IS HERE AND IT'S

10             HARMING OAKLAND NOW."

11         **THE COURT:**  GLOBAL WARMING IS WHAT?

12         **MR. BOUTROUS:**  "...HERE AND IT IS HARMING OAKLAND

13             NOW.

14                  "GLOBAL WARMING CAUSES ACCELERATED

15             SEA LEVEL RISE THROUGH THERMAL EXPANSION OF

16             OCEAN WATER AND MELTING OF LAND-BASED ICE.

17             SEA LEVELS ARE RISING AT RATES UNPRECEDENTED

18             IN THE HISTORY OF HUMAN CIVILIZATION DUE TO

19             GLOBAL WARMING.  GLOBAL WARMING-INDUCED SEA

20             LEVEL RISE IS ALREADY CAUSING FLOODING OF

21             LOW-LYING AREAS."

22             AND THEN IT CONTINUES.

23             BACK IN PARAGRAPH 49, I BELIEVE, THE PLAINTIFFS SAY

24  THAT:

25                  "CARBON DIOXIDE FROM FOSSIL FUELS

1    HAS A CHEMICAL FINGERPRINT.  THIS IS A

2    CULPRIT."

3    AND SAYS:

4         "PRIMARILY DUE TO THE COMBUSTION OF

5    FOSSIL FUELS, IT'S HIGHER THAN ANY OTHER TIME

6    DURING HUMAN CIVILIZATION, LIKELY HIGHER THAN

7    ANY LEVEL IN MILLIONS OF YEARS.  THE RESULT

8    IS DRAMATIC PLANETARY WARMING."

9    AND THEN BACK IN PARAGRAPH 95 THEY SAY:

10        "DEFENDANTS' CONDUCT CONSTITUTES A

11   SUBSTANTIAL AND UNREASONABLE INTERFERENCE

12   WITH OBSTRUCTION OF PUBLIC RIGHTS AND

13   PROPERTY."

14   AND THAT UNREASONABLE INTERFERENCE -- THEY'RE SAYING

15   THAT THE GLOBAL ACTIVITY OF THESE COMPANIES, GOING BACK TO THE

16   BEGINNING OF CIVILIZATION, INCLUDING INTERSTATE AND

17   INTERNATIONALLY, IS UNREASONABLE, AND THAT IS THE FEDERAL

18   DECISION THAT THE FEDERAL GOVERNMENT HAS MADE THROUGH THE CLEAN

19   AIR ACT, THROUGH AN ARRAY OF FEDERAL STATUTES THAT WE'VE CITED,

20   AND IT'S THE EXACT COMPLEX BALANCING THAT THE SUPREME COURT

21   SAID IS ONE OF INTERNATIONAL AND NATIONAL POLICY.

22        SO I THINK PLAINTIFFS ARE GOING TO SAY THIS IS JUST A

23   SIMPLE NUISANCE CLAIM, THEY ARE JUST TALKING ABOUT SELLING A

24   PRODUCT.  THIS IS ALL ABOUT INTERSTATE AND TRANSBOUNDARY

25   ACTIVITY, AND THE SUPREME COURT IN A NUMBER OF CASES, INCLUDING

1 *TEXAS INDUSTRY*, HAS SAID WHERE THE INTERSTATE AND INTERNATIONAL

2 NATURE OF THE CLAIM MAKES IT SUCH THAT STATE LAW CAN'T APPLY,

3 STATE LAW CAN'T APPLY.  SO THAT'S WHY THIS IS A FEDERAL CASE

4 THAT BELONGS IN FEDERAL COURT.

5             **THE COURT:**  OKAY.

6             **MR. BOUTROUS:**  THANK YOU.

7             **THE COURT:**  I'LL GIVE YOU A REBUTTAL, BUT LET'S --

8 I'D LIKE TO HEAR WHAT THE OTHER SIDE SAYS.

9             **MR. BOUTROUS:**  THANK YOU, YOUR HONOR.

10            **THE COURT:**  GIVE ME YOUR NAME AGAIN, PLEASE.

11            **MR. PAWA:**  THANK YOU, AGAIN.  MATT PAWA FOR THE

12 PEOPLE, YOUR HONOR.

13            **THE COURT:**  ALL RIGHT.

14            **MR. PAWA:**  YOUR HONOR, FEDERAL COMMON LAW DOES NOT

15 APPLY HERE.  THE VERY CASE THAT THE DEFENDANTS HAVE CITED,

16 *AMERICAN ELECTRIC POWER* AND *KIVALINA*, HAD SUPPLEMENTAL STATE

17 LAW CLAIMS.  THE DISPOSITION IN BOTH *AEP* BY THE U.S. SUPREME

18 COURT AND *KIVALINA* IN THE NINTH CIRCUIT OF THOSE SUPPLEMENTAL

19 STATE LAW CLAIMS IS IRRECONCILABLE WITH THE ARGUMENT THAT YOU

20 JUST HEARD.  IN BOTH CASES THOSE SUPPLEMENTAL STATE LAW CLAIMS

21 WERE PRESERVED TO BE FOUGHT ANOTHER DAY.

22            HOW COULD STATE LAW CLAIMS BE AUTOMATICALLY

23 TRANSMUTED AND TRANSFORMED INTO FEDERAL LAW CLAIMS?  IF THAT

24 WAS THE OUTCOME IN *KIVALINA*.  IN FACT, JUDGE --

25            **THE COURT:**  TELL ME, DESCRIBE THE DETAILS OF THAT

1    CASE AND WHAT HAPPENED ON APPEAL.

2              **MR. PAWA:**  SURE.  THOSE WERE CASES AGAINST DIRECT

3    EMITTERS.  SO *AEP* WAS A SUIT BY EIGHT STATES AGAINST

4    OUT-OF-STATE EMITTERS SEEKING EMISSIONS CAPS.  WE'RE NOT

5    SEEKING ANYTHING OF THE SORT.  WE ARE NOT SEEKING TO ENJOIN

6    ANYONE'S BUSINESS.  WE SAY SO RIGHT IN PARAGRAPH 11 OF THE

7    COMPLAINT.

8              BUT *AEP* WAS A CASE THAT EXPRESSLY INVOKED FEDERAL

9    COMMON LAW ON THE FACE OF ITS COMPLAINT.  SO DID *KIVALINA.  AEP*

10   AND *KIVALINA* BOTH EXPRESSLY WERE FILED IN FEDERAL COURT AND

11   PLED UNDER THE WELL-PLEADED COMPLAINT RULE FEDERAL COMMON LAW.

12   THAT'S NOT OUR SITUATION.

13             AND IN BOTH CASES THE U.S. SUPREME COURT AND THE

14   NINTH CIRCUIT SAID THE SUPPLEMENTAL STATE LAW CLAIMS ARE FOR

15   ANOTHER DAY IF YOU LOOK AT JUDGE PRO'S CONCURRENCE IN *KIVALINA*,

16   HE TAKES IT STRAIGHT ON, AND, YOU KNOW, THEY AFFIRM JUDGE

17   ARMSTRONG'S JUDGMENT IN *KIVALINA* IN WHICH THE STATE LAW CLAIMS

18   WERE SAVED TO BE REFILED IN STATE COURT.  THAT WAS COMMANDED --

19   THOSE OUTCOMES WERE COMMANDED BY PRIOR U.S. SUPREME COURT CASE

20   LAW, *OUELLETTE VERSUS INTERNATIONAL PAPER*, AN INTERSTATE

21   POLLUTION CASE.

22             NOW, WE HAVEN'T FILED A TRADITIONAL TRANSBOUNDARY

23   INTERSTATE POLLUTION CASE, BUT ASSUMING WE HAD, ASSUMING WE

24   WERE JUST LIKE *INTERNATIONAL PAPER* AND THESE OTHER CASES THAT

25   THE DEFENDANTS HAD CITED*, INTERNATIONAL PAPER* SAYS STATE LAW

1    APPLIES.

2            **THE COURT:**  SAY THAT LAST SENTENCE.

3            **MR. PAWA:**  *INTERNATIONAL PAPER* SAYS STATE LAW

4    APPLIES.

5            NOW, THERE'S A SUBSEQUENT QUESTION IN *INTERNATIONAL*

6    *PAPER* ABOUT WHICH STATE LAW APPLIES, AND THAT'S A QUESTION OF

7    CONFLICT PREEMPTION.  THAT'S NOT A GROUND FOR REMOVAL.

8            BUT THEIR ENTIRE ARGUMENT, YOUR HONOR, ABOUT FEDERAL

9    COMMON LAW IS UTTERLY IRRECONCILABLE WITH THE OUTCOME IN

10   *INTERNATIONAL PAPER* IN WHICH THE U.S. SUPREME COURT SAID, WE'VE

11   GOT -- WE'VE GOT INTERSTATE POLLUTION, CONGRESS HAS DISPLACED

12   FEDERAL COMMON LAW -- AND, BY THE WAY, THE PARTIES AGREE HERE

13   THAT, AS IN *INTERNATIONAL PAPER*, FEDERAL COMMON LAW IS

14   DISPLACED.  THEY SAID SO IN THEIR NOTICE OF REMOVAL.

15           SO ASSUMING WE'RE ONE OF THESE TRANSBOUNDARY

16   POLLUTION CASES -- AND WE'RE NOT; WE'VE SUED MAKERS OF

17   PRODUCTS -- BUT ASSUMING WE ARE, THAT IS A SITUATION WHERE THE

18   U.S. SUPREME COURT HAS SAID IF FEDERAL COMMON LAW IS DISPLACED,

19   FEDERAL COMMON LAW IS TAKEN AWAY BY CONGRESS -- HERE THE CLEAN

20   AIR ACT AS WE AGREED -- STATE LAW COMES BACK INTO PLAY.

21           THAT IS THE ANSWER TO THEIR ARGUMENT, YOUR HONOR, AND

22   WE COULD STAY HERE ALL DAY TALKING ABOUT VARIOUS ITERATIONS OF

23   FEDERAL COMMON LAW, WHETHER IT APPLIES TO PRODUCTS AS OPPOSED

24   TO TRADITIONAL TRANSBOUNDARY NUISANCE CASES.  BUT THE BOTTOM

25   LINE HERE IS WHERE THE PARTIES HERE AGREE, THAT THE PARTICULAR

1    FEDERAL COMMON LAW DOCTRINE THAT THEY'RE INVOKING,

2    TRANSBOUNDARY POLLUTION, HAS BEEN DISPLACED BY CONGRESS.

3          *INTERNATIONAL PAPER* SAYS STATE COMMON LAW APPLIES,

4    AND THAT'S IT.  ANY FURTHER QUESTION ABOUT WHICH STATE LAW

5    APPLIES, WHETHER IT BE CALIFORNIA OR SOME OTHER LAW, IS

6    CONFLICT PREEMPTION AND DOES NOT GET INTO REMOVAL.

7          **THE COURT:**  WAIT A MINUTE.  SO YOU'RE -- LET'S GO

8    BACK THROUGH THOSE STEPS AGAIN.

9          **MR. PAWA:**  SURE.

10         **THE COURT:**  YOU'RE SAYING THAT CONGRESS ENACTED A

11   STATUTE THAT WOULD DISPLACE FEDERAL COMMON LAW?

12         **MR. PAWA:**  THE CLEAN AIR ACT, YES.

13         **THE COURT:**  ALL RIGHT.

14         AND THEN THE PART I'M MISSING IS, SO WHY DOES THAT

15   MEAN STATE LAW APPLIES, STATE COMMON LAW APPLIES?

16         **MR. PAWA:**  BECAUSE THAT'S THE BACKGROUND PRESUMPTION

17   OF THE ERIE DOCTRINE.  I MEAN, IT ALWAYS APPLIES UNLESS THERE'S

18   SOME VERY UNUSUAL CIRCUMSTANCES THAT WOULD REQUIRE FEDERAL

19   COMMON LAW TO APPLY.

20         AND, YOU KNOW, THE EASIEST WAY, I THINK, TO EXPLAIN

21   IT AND UNDERSTAND THIS, YOUR HONOR, IS TO LOOK AT *MILWAUKEE I,*

22   *MILWAUKEE II*, AND *INTERNATIONAL PAPER*.

23         IN *MILWAUKEE I*, WATER POLLUTION CASE, INTERSTATE

24   POLLUTION, THE U.S. -- FILED IN THE U.S. SUPREME COURT'S

25   ORIGINAL JURISDICTION, THE U.S. SUPREME COURT SAYS FEDERAL

1    COMMON LAW APPLIES; WE'VE GOT INTERSTATE POLLUTION.

2          CASE COMES BACK TO THE COURT EIGHT YEARS LATER AFTER

3    HAVING BEEN REFILED UNDER FEDERAL QUESTION JURISDICTION IN

4    FEDERAL COURT, AND THE U.S. SUPREME COURT SAYS, OH, THERE HAVE

5    BEEN AMENDMENTS TO THE CLEAN AIR ACT -- CLEAN WATER ACT, SORRY,

6    THE CLAIM THAT WE RECOGNIZED BEFORE IS DISPLACED.

7          SEVEN YEARS LATER, 1987, *INTERNATIONAL PAPER* COMES

8    ALONG.  IT'S CLEARLY AN INTERSTATE POLLUTION -- POLLUTION IS

9    COMING FROM NEW YORK INTO VERMONT, AND THE SUPREME COURT SAYS,

10   OKAY, WELL, WE'VE SAID BEFORE IN *MILWAUKEE II* THAT THE FEDERAL

11   COMMON LAW IS DISPLACED SO WHAT LAW APPLIES?  AND THE ANSWER

12   THERE WAS STATE LAW.  THAT'S THE --

13          **THE COURT:**  THAT'S WHAT THE SUPREME COURT SAID?

14          **MR. PAWA:**  THAT'S WHAT THE SUPREME COURT SAID.  AND

15   THAT IS THE ANSWER TO THEIR ARGUMENT, YOUR HONOR.

16          **THE COURT:**  OKAY.  WAIT.  HOLD THAT THOUGHT.  DON'T

17   GO AWAY.

18          LET'S HEAR FROM MR. BOUTROUS.  WHAT DO YOU SAY TO

19   THAT ARGUMENT?

20          **MR. BOUTROUS:**  YOUR HONOR, THAT'S NOT WHAT THE

21   SUPREME COURT SAID, AND, IN FACT, LET ME GO TO THE

22   *INTERNATIONAL PAPER VERSUS OUELLETTE* CASE BECAUSE WHAT COUNSEL

23   IS SAYING IS JUST WRONG.

24          THERE THE COURT SAID THAT IF A STATE LIKE CALIFORNIA

25   APPLIED ITS LAW TO MULTIPLE -- TO INTERSTATE ACTIVITY, THAT

1   WOULD CREATE CHAOS.  AND ALL *OUELLETTE* SAID WAS A STATE -- IF,

2   SAY, CALIFORNIA SUED NEVADA FOR SOMETHING -- POLLUTION THAT WAS

3   COMING FROM NEVADA, THAT NEVADA -- THEY COULD ARGUE THAT NEVADA

4   LAW APPLIED TO THE IN-SOURCE ACTIVITY.  IT SAYS ABSOLUTELY NOT

5   COULD A STATE APPLY ITS LAW TO INTERSTATE ACTIVITY.

6          *MILWAUKEE I*, THE DISPLACEMENT ISSUE, THE NINTH

7   CIRCUIT'S *NATIONAL AUDUBON* CASE THAT WE'VE CITED, IT DIRECTLY

8   ADDRESSES THIS POINT.  IT SAID FIRST THERE IT FOUND THAT THE

9   FEDERAL COMMON LAW HAD BEEN DISPLACED, BUT THEN IT NOTED THAT

10  IN SOME INSTANCES OUR FEDERAL SYSTEM, EVEN WHERE THERE'S

11  DISPLACEMENT, IT CAN'T BE THAT CONGRESS DISPLACES FEDERAL COURT

12  BECAUSE IT'S AN ISSUE OF NATIONAL/INTERNATIONAL POLICY AND THE

13  RESPONSE IS, OH, BUT A STATE COURT CAN HEAR IT.  THAT DOESN'T

14  MAKE ANY SENSE, AND THE COURTS HAVEN'T HELD THAT.  HERE'S WHAT

15  NATIONAL --

16          **THE COURT:**  WAIT, WAIT.

17          **MR. BOUTROUS:**  YES.

18          **THE COURT:**  COUNSEL SAID THAT THE SUPREME COURT SAID

19  BECAUSE THE CLEAN WATER ACT HAD BEEN AMENDED, THAT THAT

20  DISPLACED ANY FEDERAL COMMON LAW, AND, THEREFORE, THE SUPREME

21  COURT SAID, AS IT WAS JUST REPRESENTED TO ME, THAT SINCE

22  FEDERAL COMMON LAW NO LONGER APPLIES, IT MUST BE STATE LAW THAT

23  WE APPLY.

24          SO IS THAT THE WAY IT CAME DOWN OR NOT?

25          **MR. BOUTROUS:**  NO, THAT'S NOT THE WAY IT CAME DOWN.

1          **THE COURT:**  WELL, HOW -- ALL RIGHT.

2          **MR. BOUTROUS:**  THE COURT LEFT OPEN THE POSSIBILITY

3    THAT THERE MIGHT BE CERTAIN STATE LAW CLAIMS THAT DIDN'T

4    INVOKE -- THAT WERE NOT INTERSTATE AND DIDN'T CHALLENGE

5    INTERSTATE POLLUTION OR INTERSTATE ACTIVITIES THAT MIGHT BE

6    AVAILABLE UNDER THE -- UNDER STATE LAW.

7          THE COURT CERTAINLY DID NOT SAY THAT BECAUSE FEDERAL

8    LAW WAS DISPLACED IN TERMS OF REGULATING INTERSTATE AND

9    INTERSTATE ACTIVITIES, THEN STATE LAW COULD REGULATE THOSE

10   INTERSTATE ACTIVITIES.  AND *NATIONAL AUDUBON* SAID EVEN AFTER

11   FINDING DISPLACEMENT -- THIS GOES RIGHT TO THIS ISSUE -- SAID

12   THAT EVEN WHERE THERE'S DISPLACEMENT IN FEDERAL LAW, IN SOME

13   INSTANCES OUR FEDERAL SYSTEM DOES NOT PERMIT THE CONTROVERSY TO

14   BE RESOLVE UNDER STATE LAW, EITHER BECAUSE THE AUTHORITIES AND

15   THE DUTIES OF THE UNITED STATES AS SOVEREIGN ARE INTIMATELY

16   INVOLVED, OR BECAUSE THE INTERSTATE NATURE OF THE CONTROVERSY

17   MAKES IT INAPPROPRIATE FOR STATE LAW TO CONTROL.

18         AND THE *COOPER* CASE FROM THE FOURTH CIRCUIT THAT WE

19   CITED, YOUR HONOR, TALKS ABOUT IF ALL THE STATES COULD SUDDENLY

20   START REGULATING EVERYBODY'S SAME ACTIVITIES AROUND THE COUNTRY

21   AND AROUND THE GLOBE, IT WOULD BE CHAOTIC AND IRRATIONAL.

22         I GO BACK TO THE LEFT, THERE'S A VERY NARROW AREA

23   WHERE A STATE CAN REGULATE POLLUTION IN ITS OWN -- THE STATE

24   ITSELF, THE SOURCE.  THAT'S NOT WHAT THEY'RE TALKING ABOUT

25   HERE.

1        THEY'RE ASKING A COURT, A STATE COURT RIGHT NOW --

2   THEY'RE ASKING THIS COURT TO SEND THIS TO STATE COURT SO A

3   STATE COURT CAN DECIDE THAT OIL PRODUCTION ACTIVITIES AROUND

4   THE UNITED STATES IN EVERY STATE ON THE OUTER CONTINENTAL

5   SHELF, AROUND THE WORLD, THAT THEY CLAIM ARE MELTING THE

6   ANTARCTIC AND GREENLAND ICECAPS, THAT A STATE CAN REGULATE THAT

7   AND THE SUPREME COURT HAS NEVER SUGGESTED THAT.  IT'S JUST NOT

8   TRUE.

9        **THE COURT:**  BUT HAS THE SUPREME COURT EVER SAID NO?

10       **MR. BOUTROUS:**  FOR ALL INTENTS AND PURPOSES, THE

11  *OUELLETTE* DECISION SAYS THAT A STATE'S LIMITED TO APPLYING ITS

12  OWN LAW TO THINGS THAT HAPPENED IN THE STATE.  AND HERE,

13  BASICALLY, YOU KNOW, 95 PERCENT OF WHAT THEY'RE TALKING ABOUT

14  IS BEYOND CALIFORNIA'S BOUNDARIES.

15       **THE COURT:**  WHAT HAPPENED IN THE SUPREME COURT CASE,

16  THAT WAS NEW YORK AND VERMONT?

17       **MR. BOUTROUS:**  NEW YORK AND VERMONT, THAT'S THE *AEP*

18  CASE, AND THERE -- IF YOU LOOK, YOUR HONOR, THE PART I READ

19  ABOUT THE PUBLIC NUISANCE ALLEGATION IN THIS CASE --

20       **THE COURT:**  YEAH.

21       **MR. BOUTROUS:**  -- IT MIRRORS THE ALLEGATION IN THAT

22  CASE.

23       **THE COURT:**  BUT WHAT WAS THE RESULT OF THAT?

24       **MR. BOUTROUS:**  THE RESULT WAS THE SUPREME COURT,

25  JUSTICE GINSBURG'S OPINION FOR THE COURT FOUND THAT THE CLEAN

AIR ACT, CONGRESS SAID THE CLEAN AIR ACT REGULATES EMISSIONS
RELATING TO GLOBAL WARMING AND CLIMATE CHANGE, AND IT WAS AN
ELABORATE SCHEME THAT GOVERNED, AND, THEREFORE, FEDERAL COMMON
LAW, BECAUSE THOSE WERE ISSUES OF NATIONAL AND INTERNATIONAL
POLICY, HAD NO PLACE IN REGULATING THAT.  AND THE JUDGES -- IT
WAS SOMETHING THAT CONGRESS AND THE EPA SHOULD REGULATE.

      SO NOW THEY'RE SAYING, WELL, FEDERAL COURTS CAN'T
DECIDE IT BECAUSE IT'S A NATIONAL AND INTERNATIONAL ISSUE OF
POLICY BUT A STATE COURT CAN.  THAT'S WRONG.  IT'S THE SAME
ISSUE -- THEY'RE ASKING THE STATE COURT TO MAKE THIS FEDERAL
BALANCING TO DECIDE IS THE COST OF OIL PRODUCTION, DOES IT
OUTWEIGH THE BENEFITS AND SHOULD IT BE --

      **THE COURT:**  WHAT IS THE TEST UNDER CALIFORNIA LAW FOR
NUISANCE?

      **MR. BOUTROUS:**  THE TEST IS WHETHER THERE'S
UNREASONABLE -- THE ACTIVITIES THAT INTERFERE WITH PUBLIC
ENJOYMENT OF LANDS.  THAT'S ONE VERSION OF IT.

      **THE COURT:**  PUBLIC ENJOYMENT?

      **MR. BOUTROUS:**  AND USE OF LAND AND PROPERTY.

      **THE COURT:**  AND LAND.  ALL RIGHT.

      **MR. BOUTROUS:**  AND BAKED INTO THAT IN A RESTATEMENT
VERSION IN CALIFORNIA, THE *WILSON* CASE THEY CITE, LAYS IT OUT.
IT'S A COST/BENEFIT ANALYSIS.  AND HERE THERE'S, YOU KNOW,
ENORMOUS COSTS OR BENEFITS TO OIL PRODUCTION AND FOSSIL FUEL
USE.  IT'S HOW OUR CIVILIZATION HAS DEVELOPED TODAY.

1        AND THERE ARE ENVIRONMENTAL EFFECTS, NONE OF THE

2  OTHER ISSUES THAT NEED TO BE BALANCED THERE.  IT'S IMPORTANT

3  FOR OUR NATIONAL SECURITY.  IT'S IMPORTANT FOR ENERGY

4  INDEPENDENT.

5        UNDER THEIR THEORY, A STATE COURT WOULD HAVE TO LOOK

6  AT THOSE FEDERAL INTERESTS AND DETERMINE, NO, THAT'S

7  UNREASONABLE, AND WE'RE GOING TO MAKE IT A TORT, AND WE'RE

8  GOING TO IMPOSE BILLIONS OF DOLLARS BASED ON THIS AMORPHOUS

9  PUBLIC NUISANCE TORT.  THE SUPREME COURT HAS BASICALLY SAID YOU

10  CANNOT DO THAT.

11        **THE COURT:**  OKAY.  LET ME HEAR FROM THE OTHER SIDE A

12  MINUTE.

13        WHAT DO YOU SAY TO THE -- I HAVE A CONCERN.  THAT IS,

14  IF WE ALLOW THIS CASE TO GO TO STATE COURT, THEN ALL 50 STATES

15  COULD HAVE THEIR OWN VERSION OF THIS CASE, AND THE RESULTS

16  MIGHT BE DIFFERENT FROM STATE TO STATE DEPENDING ON HOW THEIR

17  LAW IS WRITTEN FOR NUISANCE.  AND IN SOME STATES THE DEFENDANTS

18  MIGHT WIN, OTHER STATES YOU MIGHT WIN, BUT IT WOULDN'T BE -- IT

19  WOULD NOT BE UNIFORM IS WHAT I'M TRYING TO GET AT.  SO, I'M

20  TROUBLED BY THAT --

21        **MR. PAWA:**  YOUR HONOR?

22        **THE COURT:**  -- PROSPECT.

23        **MR. PAWA:**  THAT WOULD BE -- THAT WOULD BE TRUE IN ANY

24  CASE DEALING WITH ANY KIND OF A PRODUCT THAT'S ALLEGED TO CAUSE

25  TORTIOUS HARM.  AND THE FIFTH CIRCUIT ACTUALLY DIRECTLY

1   ADDRESSED THIS IN A CASE CALLED *JACKSON VERSUS JOHNS MANVILLE*

2   FROM 1985, AN EN-BANC DECISION DEALING WITH ASBESTOS.  AND THEY

3   SAID, WE'VE GOT TENS OF THOUSANDS OF ASBESTOS CASES FILED,

4   HUNDREDS OF THOUSANDS OF MORE CLAIMS ON THE WAY; WE'RE BEING

5   ASKED TO APPLY FEDERAL COMMON LAW BECAUSE THERE WOULD BE TOO

6   MANY DIFFERENT RULINGS IN TOO MANY DIFFERENT STATES, AND WE

7   WOULD HAVE -- WE WOULD HAVE A HODGEPODGE OF LAWS.  AND THE

8   FIFTH CIRCUIT IN THAT CASE SAID THAT IS NOT A, QUOTE, UNIQUELY

9   FEDERAL INTEREST.

10          THE FACT THAT THE STATES MIGHT TREAT CASES AGAINST

11  MANUFACTURERS OF PRODUCTS DIFFERENTLY DOES NOT CREATE THE

12  UNIQUELY FEDERAL INTEREST THAT GIVES RISE TO FEDERAL COMMON

13  LAW.  AND THE SECOND CIRCUIT IN THE *IN RE: AGENT ORANGE* CASE

14  ALSO REACHED THE SAME DECISION.

15          AND THE NINTH CIRCUIT HAS RELIED ON THE *JACKSON*

16  *VERSUS JOHNS MANVILLE* CASE IN A CASE CALLED *SETTERQUIST* VERSUS

17  (INDISCERNIBLE) ALSO REJECTING FEDERAL COMMON LAW.

18          IT'S SIMPLY INHERENT IN THE ERIE DOCTRINE IN OUR

19  SYSTEM THAT WHEN THERE ARE SIGNIFICANT TORTS THAT INJURE

20  SIGNIFICANT NUMBERS OF PEOPLE IN DIFFERENT PARTS OF THE

21  COUNTRY, THE FEDERALISM ISSUES POINT TOWARDS THE STATES, NOT

22  AGAINST THE STATES.

23          AND, IN FACT, THE *BANK OF AMERICA -- NEVADA VERSUS*

24  *BANK OF AMERICA* CASE SAYS IN NO UNCERTAIN TERMS WHEN A STATE

25  HAS SUED IN ITS OWN COURTS ON BEHALF OF THE PEOPLE, THE RIGHT

1  TO RESIST REMOVAL ARISES IN ITS MOST POWERFUL FORM.  AND, YES,

2  THERE COULD BE UNFAIR COMPETITION CLAIMS OR TORT CLAIMS OF ALL

3  KINDS AGAINST BANK OF AMERICA OR DEFENDANTS ALL OVER THE

4  COUNTRY.  THAT IS NOT A, QUOTE, UNIQUELY FEDERAL INTEREST.

5          **THE COURT:**  BUT HERE'S --

6          **MR. PAWA:**  YES.

7          **THE COURT:**  HERE WE HAVE, UNDER YOUR THEORY -- I KNOW

8  THAT IN CALIFORNIA THERE ARE OPERATIONS THAT -- BUT LET'S SAY

9  YOU HAD A STATE WHERE THERE WAS NO OIL OPERATIONS AT ALL, NO

10 OIL OPERATIONS, BUT BECAUSE OF GLOBAL WARMING IT'S ONLY -- IT'S

11 BEING FLOODED OUT ON ACCOUNT OF THE THINGS YOU DESCRIBED IN

12 YOUR COMPLAINT.

13         SO, I THINK YOUR THEORY WOULD HAVE TO BE THAT EVEN IN

14 THAT SCENARIO, THAT PARTICULAR STATE COULD SUE FOR THE DAMAGE

15 OR SET UP A FUND THAT FLOWS FROM THE POLAR ICECAPS MELTING,

16 RIGHT?  I MEAN, ISN'T THAT -- SO YOUR THEORY IS NOT ACTUALLY

17 TIED TO OPERATIONS IN CALIFORNIA.  IT'S TIED TO GLOBAL EFFECTS

18 THAT IN TURN INJURE OAKLAND AND SAN FRANCISCO.

19         **MR. PAWA:**  WELL, BUT LET ME BE CLEAR THAT OUR CLAIM

20 IS ABOUT THE SELLING OF PRODUCTS AND THE IMPROPER PROMOTION OF

21 PRODUCTS WHICH OCCURS IN ALL 50 STATES.  SO THIS IS NOT SIMPLY

22 A QUESTION OF GREENHOUSE GAS EMISSIONS AND RISING SEA LEVELS.

23         UNDER CALIFORNIA LAW IN THE LEAD PAINT CASE, WE WERE

24 REQUIRED TO AND DID PLEAD THAT THERE WAS MORE THAN SIMPLY

25 SELLING PRODUCT HERE.  THIS WAS SELLING A PRODUCT WITH IMPROPER

1  COMMERCIAL PROMOTION, ADVERTISEMENTS AND MISLEADING STATEMENTS

2  ABOUT THE PRODUCT, AND THAT'S ACTIVITY THAT'S OCCURRED IN ALL

3  50 STATES, SO YES --

4      **THE COURT:**  OKAY.

5      SO WHAT COULD THEY HAVE DONE ON THE DEFENSE SIDE?

6  COULD THEY HAVE HAD IMPROVED ADVERTISING THAT --

7      **MR. PAWA:**  THEY COULD HAVE --

8      **THE COURT:**  WOULD IT -- WHAT WOULD HAVE SATISFIED YOU

9  THAT WOULD HAVE GOTTEN THEM OFF OF THIS HOOK?

10      **MR. PAWA:**  AS WE ALLEGE -- AND WE GO INTO SOME VERY

11  DETAILED KNOWLEDGE ABOUT THE DEFENDANTS' KNOWLEDGE FROM THE

12  EARLY 1980'S, EVEN THE LATE 1970'S, AND EVEN SOME DOCUMENTS WE

13  CITED FROM THE '60'S, THEY COULD HAVE, TO GET THEMSELVES OFF

14  THE HOOK, WHEN THEY BECAME KNOWLEDGEABLE ABOUT GLOBAL WARMING,

15  INSTEAD OF MISLEADING PEOPLE AND DOUBLING DOWN ON FOSSIL FUELS,

16  TO THE POINT THEY HAD BECOME USED AT DANGEROUS LEVELS, WHICH IS

17  WHAT WE HAVE ALLEGED IS TORTIOUS, THEY COULD HAVE USED THEM AT

18  LOWER LEVELS, AND THEY COULD HAVE NOT ENGAGED IN THIS

19  PROMOTIONAL CONDUCT THAT WAS DISHONEST AND MISLEADING.

20      **THE COURT:**  WHAT WAS THE -- GIVE ME THE -- SORRY.

21      GIVE ME AN EXAMPLE OF SOMETHING THAT WAS MISLEADING.

22      **MR. PAWA:**  WELL, FOR EXAMPLE, WE TALK IN THE

23  COMPLAINT, YOUR HONOR, ABOUT THE DEFENDANTS' FORMATION OF THE

24  GLOBAL CLIMATE SCIENCE TASK FORCE WHICH WAS THROUGH THE

25  AMERICAN PETROLEUM INSTITUTE WHICH SAID THAT, YOU KNOW, VICTORY

1    WOULD BE ACHIEVED WHEN THE AMERICAN PEOPLE, QUOTE,

2    UNDERSTAND -- THEY PUT THE WORD UNDERSTAND IN QUOTES -- THAT

3    THE SCIENCE IS, QUOTE, UNCERTAIN.  THEY STOLE A PAGE FROM THE

4    TOBACCO PLAYBOOK.  UNCERTAINTY BECAME THEIR MANTRA.  THEY TOOK

5    OUT ADS IN THE NEW YORK TIMES FLOUTING UNCERTAINTY, MOBIL DID,

6    WHICH IS PART OF EXXON NOW.

7            AND THEY -- THEY'RE STILL ADVERTISING, YOU KNOW, IN A

8    WAY THAT REPRESENTS THAT FOSSIL FUELS ARE ESSENTIAL FOR HUMAN

9    WELL BEING.  AND SO THEY HAVE BEEN AT THIS FOR A LONG TIME.

10   IT'S VERY SIMILAR TO WHAT HAPPENED IN TOBACCO.

11           IN FACT, TWO OF THE SAME SCIENTISTS THAT WERE USED TO

12   DENY TOBACCO WAS HARMFUL WERE HIRED BY AT LEAST SOME OF THE

13   DEFENDANTS TO DENY THAT FOSSIL FUELS WERE HARMFUL OR THAT

14   GLOBAL WARMING WAS A REAL PROBLEM.

15           SO THERE'S A LOT OF ACTIVITY GOING BACK OVER MANY

16   YEARS.  IT GOT VERY INTENSE DURING THE 1990'S AND THE EARLY

17   2000'S WITH THESE FALSE FRONT GROUPS AND THESE ARTIFICIAL TURF

18   GROUPS, AND, YOU KNOW, TRYING TO CONVINCE CONSUMERS THAT FOSSIL

19   FUELS ARE OKAY, FOSSIL FUELS ARE GOOD FOR YOU, AND DON'T WORRY

20   ABOUT GLOBAL WARMING.

21           AND THIS WAS RIGHT AFTER, YOUR HONOR, RIGHT AFTER

22   THEIR OWN INTERNAL SCIENTISTS, AS WE'VE ALLEGED IN THE

23   COMPLAINT, WARNED THEM THAT, QUOTE, CATASTROPHIC HARM COULD BE

24   COMING FROM GLOBAL WARMING.

25           SO THERE'S A LOT THEY COULD HAVE DONE AT THE TIME

1   THEY GOT THE WARNINGS.

2           IF I MAY RESPOND TO A FEW THINGS, UNLESS YOU WOULD

3   LIKE ME TO CONTINUE IN THIS VEIN?

4           **THE COURT:**  I'M JUST THINKING ABOUT WHAT YOU'RE

5   SAYING.  THIS IS A VERY SWEEPING PROPOSITION YOU HAVE.  HAS ANY

6   OTHER COURT APPROVED YOUR THEORY YET?

7           **MR. PAWA:**  WELL, THE SECOND -- THE SECOND CIRCUIT

8   APPROVED IT AS A MATTER OF FEDERAL COMMON LAW, BORROWING

9   LIBERALLY FROM STATE COMMON LAW AND THE (INDISCERNIBLE)

10  STATEMENT OF COURTS IN *AMERICAN ELECTRIC POWER*, THE *AEP* CASE.

11  THERE'S A 150-PAGE OPINION ENDORSING A THEORY SIMILAR TO OURS.

12  IT WAS AGAINST DIRECT EMITTERS OF GREENHOUSE GASSES, SO OURS IS

13  A LITTLE DIFFERENT.  BUT THAT WAS A CASE THAT WAS A HUNDRED

14  PAGES OF WHY IT'S REASONABLE AND POSSIBLE AND LOGICAL TO SUE

15  GREENHOUSE GAS EMITTERS.

16          ALSO THE LEAD PAINT CASE FROM CALIFORNIA, WHICH, YOU

17  KNOW, ON ITS FACE LOOKED LIKE A VERY SWEEPING CASE, INVOLVED

18  DECADES OF MUCH LONGER MISCONDUCT THAN OURS.  IT WENT BACK, I

19  BELIEVE, TO THE 1920'S OR SOMETHING, IN WHICH THE LEAD PAINT

20  PRODUCERS WERE NOT BEING HONEST ABOUT WHAT THEY KNEW, AND THEY

21  WERE SELLING A PRODUCT, AND THEY WERE PROMOTING IT FOR AN

22  IMPROPER PURPOSE, AND THAT INVOLVED, YOU KNOW, DEFENDANTS THAT

23  ENGAGED IN INTERSTATE COMMERCE IN PROBABLY ALL 50 STATES.  AND

24  THAT WAS A CASE THAT WAS JUST RECENTLY AFFIRMED BY A CALIFORNIA

25  COURT OF APPEALS JUST WITHIN THE LAST MONTH OR SO.

1    SO, YEAH, WE HAVE A HISTORY OF -- IN THIS COUNTRY OF

2    SIGNIFICANT TORTS, MASS TORTS, CLASS ACTIONS, WHAT HAVE YOU,

3    THAT GO FORWARD UNDER STATE LAW.  AND WE HAVE AT LEAST ONE

4    OPINION FROM THE SECOND CIRCUIT, ALBEIT UNDER FEDERAL COMMON

5    LAW, SAYING YOU CAN LITIGATE GLOBAL WARMING.

6        THERE'S ALSO A CASE NOT CITED IN THE BRIEFS CALLED

7    *COMER* THAT WAS OVERRULED ON ODD PROCEDURAL GROUNDS THAT ALLOWED

8    STATE COMMON LAW CLAIMS TO SURVIVE A MOTION TO DISMISS BECAUSE

9    OF GLOBAL WARMING AND THE INJURIES OCCURRED FROM HURRICANE

10   KATRINA.

11       **THE COURT:**  ALL RIGHT.  YOU WANTED TO ADD MORE.

12   PLEASE GO AHEAD AND DO THAT.

13       **MR. PAWA:**  YEAH, THEY CITE THE *NEW SD VERSUS ROCK ELL*

14   CASE, YOUR HONOR.  THAT WAS A CASE THAT DEALS WITH A NARROW

15   FEDERAL COMMON LAW EXCEPTION FOR NATIONAL SECURITY.  AND WE'VE

16   CITED IN OUR BRIEFS IN A FOOTNOTE A COUPLE OF CASES THAT SAY,

17   ONE, *NEW SD* IS NO LONGER GOOD LAW, AND, NUMBER TWO, IT DEALS

18   WITH A NARROW EXCEPTION FOR NATIONAL SECURITY.

19       SO ONE OF THOSE CASES WAS *BABCOCK VERSUS CH2M HILL*,

20   EASTERN DISTRICT OF CALIFORNIA, 2013.  AGAIN, IT'S IN A

21   FOOTNOTE IN OUR BRIEF.  BUT THAT *NEW SD* HAS BEEN HELD

22   REPEATEDLY BY THE LOWER COURTS TO BE A NARROW NATIONAL SECURITY

23   EXCEPTION.  THAT'S NOT OUR SITUATION.  SO THEY'RE LEFT WITH

24   REALLY NOTHING THAT ALLOWS THEM TO REMOVE A FEDERAL COMMON LAW

25   CASE.

1          IN FACT, ONE OF THE CASES THEY CITE FOR A DIFFERENT

2     PROPOSITION, THE *IN RE: NSA TELECOMS* CASE, REJECTS THEIR VERY

3     THEORY THAT FEDERAL COMMON LAW ALLOWS FOR REMOVAL.

4          ON *GRABLE*, YOUR HONOR, THEY SAY THAT THERE IS *GRABLE*

5     JURISDICTION HERE BECAUSE THERE'S FEDERAL QUESTIONS SILENTLY

6     PREGNANT THROUGHOUT OUR COMPLAINT, BUT THESE ARE ALL DEFENSES.

7     THEY ARE RAISING FEDERAL QUESTIONS AS DEFENSES.

8          WE DON'T HAVE TO PROVE ANYTHING ABOUT THE NATIONAL

9     ENVIRONMENTAL POLICY ACT NOT MENTIONED IN OUR COMPLAINT,

10    ANYTHING ABOUT THE STRATEGIC PETROLEUM RESERVE NOT MENTIONED IN

11    OUR COMPLAINT, ANYTHING ABOUT THE CLEAN AIR ACT NOT MENTIONED

12    IN OUR COMPLAINT, IN ORDER TO GET JUDGMENT.  WE HAVE TO PROVE

13    AN UNREASONABLE INTERFERENCE WITH RIGHTS OF THE GENERAL PUBLIC.

14    THAT'S A CLASSIC DEFINITION OF A PUBLIC NUISANCE.

15         THEY SAY, AH, WELL, YOU HAVE TO SHOW THAT THERE'S A

16    BALANCE -- YOU HAVE TO SHOW UNDER A BALANCING TEST THAT THE

17    UTILITY OF OUR CONDUCT IS OUTWEIGHED BY THE GRAVITY OF THE

18    HARM.  NOT SO.  THE RESTATEMENT HAS SEVERAL DIFFERENT

19    ALTERNATIVE TESTS.

20         AND THE CALIFORNIA COURT IN THE *WILSON* CASE WE CITED

21    IN OUR BRIEF EMBRACES ONE OF THOSE THAT SAYS, YOU DON'T NEED TO

22    ENGAGE IN BALANCING IF YOU HAVE, QUOTE, SEVERE HARM.

23         SO THE WHOLE IDEA THAT WE'RE TRYING TO TAKE OVER SOME

24    FEDERAL BALANCING TEST WITH A STATE LAW BALANCING TEST, FIRST

25    OF ALL, MISSTATES CALIFORNIA LAW, BUT IT ALSO MISSTATES FEDERAL

1   LAW, BECAUSE THERE'S NO GLOBAL BLESSING IN THE UNITED STATES

2   CODE FOR ENGAGING IN DANGEROUS GLOBAL WARMING CONDUCT, ENGAGING

3   IN MISLEADING CONDUCT AND SPEECH -- COMMERCIAL SPEECH REGARDING

4   THAT CONDUCT.  THERE'S NOTHING IN THE U.S. CODE THAT SAYS GO

5   AHEAD AND MELT THE ICEBERGS, AND THAT WE'VE BALANCED THE HARMS,

6   IT'S OKAY TO DO THIS.

7          I WANT TO BE CLEAR ABOUT ONE THING BECAUSE THE REST

8   OF THESE ARGUMENTS, I THINK, ARE SECONDARY.  I APOLOGIZE.  I'M

9   BACKING UP A LITTLE BIT.

10         YOU ASKED A QUESTION ABOUT, WHAT ABOUT THE NEW YORK

11  AND VERMONT CASE.  I'M SURE THIS WAS AN HONEST MISUNDERSTANDING

12  BY OPPOSING COUNSEL, BUT HE ANSWERED YOU ABOUT THE *AMERICAN*

13  *ELECTRIC POWER* CASE.  FEDERAL COMMON LAW CASE, PLED -- *AEP* WAS

14  PLED UNDER FEDERAL COMMON LAW ON THE FACE OF ITS COMPLAINT IN

15  FEDERAL COURT.  I KNOW.  I HELPED FILE IT.

16         BUT THE NEW YORK AND VERMONT CASE I WAS TALKING ABOUT

17  WAS *OUELLETTE VERSUS INTERNATIONAL PAPER*, AND THE OUTCOME IN

18  THAT CASE WAS THAT STATE LAW APPLIES.

19         NOW, THE DEFENDANTS ARE TRYING TO TAKE YOUR EYE OFF

20  THE BALL BY SAYING, AH, BUT NOT THE STATE LAW OF CALIFORNIA.

21  THAT WAS A SECOND QUESTION IN *OUELLETTE VERSUS INTERNATIONAL*

22  *PAPER*.  IT WAS A CONFLICT PREEMPTION ARGUMENT.  IT DOES NOT

23  GIVE RISE TO REMOVAL.

24         SO THE ONLY QUESTION YOU NEED TO KNOW, THE ONLY

25  ANSWER YOU NEED TO KNOW FROM THE NEW YORK AND VERMONT CASE,

1   *INTERNATIONAL PAPER*, IS THAT STATE LAW WAS APPLIED IN AN

2   INTERSTATE POLLUTION CASE.  THAT IS THE ANSWER ON FEDERAL

3   COMMON LAW.

4          AND THE QUESTION -- THEY TALK ABOUT THE *COOPER* CASE,

5   AND THEY'VE CITED ABOUT TEN CASES IN THEIR BRIEF THAT DEAL WITH

6   CONFLICT PREEMPTION, *NORTH CAROLINA VERSUS COOPER*, ET CETERA,

7   ET CETERA.  THAT IS NOT GROUNDS FOR REMOVAL.

8          **THE COURT:**  IS THERE AN MDL BEING GINNED UP?

9          **MR. PAWA:**  NOT THAT I KNOW OF.

10         **THE COURT:**  OKAY.

11         **MR. PAWA:**  NOT THAT I KNOW OF.

12         **THE COURT:**  OTHER THAN CALIFORNIA, ARE THERE OTHER

13  CASES ALONG THESE LINES ELSEWHERE --

14         **MR. PAWA:**  THE CITY OF NEW YORK FILED UNDER DIVERSITY

15  JURISDICTION BECAUSE IT CAN'T SUE IN THE NAME OF THE PEOPLE, OF

16  COURSE.  IT DOESN'T HAVE CALIFORNIA LAW.  SO NEW YORK CITY

17  FILED UNDER DIVERSITY JURISDICTION IN FEDERAL COURT IN JANUARY.

18         **THE COURT:**  OKAY.  LET ME GIVE SOME TIME TO THE OTHER

19  SIDE, AND THEN I'VE GOT TO BRING IT TO A CLOSE.

20         **MR. BOUTROUS:**  I REALLY APPRECIATE IT, YOUR HONOR.

21         LET ME START, I DID GET MY STATES MIXED UP WITH NEW

22  YORK AND VERMONT, BUT *OUELLETTE* DOES NOT HELP THE PLAINTIFFS

23  HERE.  WHAT *OUELLETTE* HELD WAS THAT NEW YORK -- THAT VERMONT

24  COULD NOT APPLY ITS NUISANCE LAW TO ACTIVITIES OUTSIDE OF

25  VERMONT THAT WERE HAPPENING IN NEW YORK, ONLY NEW YORK LAW

1    COULD APPLY, BECAUSE CHAOS WOULD OCCUR; EVEN IF ONE STATE WERE

2    TO APPLY ITS LAW, THE ACTIVITIES HAPPENING IN OTHER STATES

3    WOULD HAVE AN INTERSTATE EFFECT.

4         SO THINK ABOUT WHAT THEY'RE ASKING TO HAPPEN HERE.

5    THEY'RE ASKING THAT A CALIFORNIA STATE COURT COULD APPLY

6    CALIFORNIA NUISANCE LAW TO ACTIVITIES AND POLLUTION AND

7    EMISSIONS AROUND THE UNITED STATES AND AROUND THE WORLD.

8    *OUELLETTE* SAYS THAT WOULD BE IRRATIONAL AND CHAOTIC.  THAT WAS

9    THE CLEAN WATER ACT.  SAME RESULT UNDER THE CLEAN AIR ACT.  IT

10   IS CLEAR.

11        MR. PAWA HAS RELIED HEAVILY ON THE SECOND CIRCUIT'S

12   *AEP* DECISION, WHICH I DID DESCRIBE.  HE AVOIDED THE FACT --

13   MENTIONING THE FACT THAT IT WAS REVERSED BY THE SUPREME COURT.

14   THE SUPREME COURT HELD IT WAS IMPROPER TO APPLY NUISANCE LAW,

15   FEDERAL NUISANCE LAW, PRECISELY BECAUSE THESE GLOBAL WARMING

16   ISSUES ARE MATTERS OF GLOBAL AND INTERSTATE AND INTERNATIONAL

17   POLICY.

18        IF A FEDERAL COURT CAN'T DECIDE THOSE ISSUES -- THOSE

19   ARE FEDERAL ISSUES -- HOW DO WE AS A NATION BALANCE OUR ENERGY

20   NEEDS, WITH ENVIRONMENTAL CONCERNS, WITH OUR CONCERN FOR THE

21   ENVIRONMENT.  THOSE ARE FEDERAL ISSUES.  JUSTICE GINSBURG SAID

22   IT IN *AEP*, REVERSING THE ONLY DECISION MR. PAWA WAS ABLE TO

23   CITE ON THIS ISSUE.

24        THE NINTH CIRCUIT REVERSED THE *KIVALINA* CASE, WHICH,

25   AGAIN, HAD INVOKED FEDERAL COMMON LAW AND SAID THIS IS -- THE

1   FEDERAL COURT'S NUISANCE LAW DOES NOT FIT HERE, THE CLEAN AIR

2   ACT APPLIES.  AND SAID, ALSO, IF CONGRESS HAS DISPLACED FEDERAL

3   COMMON LAW, IT WOULD BE ANOMALOUS -- I'M PARAPHRASING --

4   ANOMALOUS TO SAY THE ISSUE COULD BE ADJUDICATED IN ANY OTHER

5   FORUM.

6           AND IF I COULD JUST BRIEFLY ADDRESS THIS PROMOTION

7   CLAIM ON SEVERAL FRONTS?

8           FIRST, YOU KNOW, WE STRONGLY DISAGREE WITH THAT

9   CHARACTERIZATION.  BUT AS THE COMPLAINT PLEADS IT, YOUR HONOR,

10  THIS ISN'T SOME NARROW CLAIM ABOUT MISSTATEMENTS.  THEY'RE

11  ARGUING THAT STATEMENTS AND PROMOTION OF FOSSIL FUELS AROUND

12  THE UNITED STATES, AROUND THE WORLD -- THIS IS A FEDERAL GLOBAL

13  SPEECH CASE, AND THEY'RE SAYING THAT CALIFORNIA COULD APPLY ITS

14  PUBLIC NUISANCE LAW TO REGULATE THAT SPEECH AROUND THE COUNTRY

15  GOING BACK DECADES.  AND, AGAIN, I EMPHASIZE WE DISAGREE WITH

16  THE CHARACTERIZATION.  THAT'S A FEDERAL ISSUE IF IT'S ANYTHING.

17          **THE COURT:**  WELL, BUT MAYBE ONLY DEFENSIVELY.

18          **MR. BOUTROUS:**  YES.  ON THAT -- I'M SORRY.

19          **THE COURT:**  GO AHEAD.

20          **MR. BOUTROUS:**  BUT IT -- BUT I JUST WANTED TO GET

21  ACROSS THAT THEY'RE -- EMBEDDED IN THEIR CLAIM -- AGAIN, THIS

22  GOES BACK TO THE FEDERAL COMMON LAW CLAIM, YOUR HONOR.  COUNSEL

23  SAID, WELL, THEY DON'T HAVE TO PROVE COST/BENEFIT ANALYSIS.

24  THE *WILSON* CASE THAT COUNSEL MENTIONED, IT REVERSED AND

25  REMANDED FOR A NEW TRIAL BECAUSE THE TRIAL COURT HADN'T GIVEN A

COST/BENEFIT ANALYSIS INSTRUCTION.  IT SAID GIVE THIS DETAILED
COST/BENEFIT ANALYSIS INSTRUCTION.

THE RESTATEMENT PROVISIONS, THEY ONLY SAY -- THE
CAPTIONS ARE ALL, YOU KNOW, COST/BENEFIT, RISK UTILITY.  THEY
SAY IN SOME CASES THE HARM IS SO SEVERE, A COURT MIGHT BE ABLE
TO RESOLVE THE COST/BENEFIT ANALYSIS, THE REASONABLE ANALYSIS,
AS A MATTER OF LAW.  THAT'S EVEN WORSE.

SO THEY'RE ARGUING THAT THEY'RE GOING TO GO TO A
STATE COURT AND HAVE A STATE COURT DEEM THE FEDERAL
GOVERNMENT'S COST/BENEFIT ANALYSIS ABOUT HOW TO BALANCE ENERGY
NEEDS AND NATIONAL SECURITY VERSUS ENVIRONMENTAL CONCERNS AS A
MATTER OF LAW, DEEM THAT UNREASONABLE AND THAT CONFORMANCE WITH
THAT IS UNREASONABLE AS A MATTER OF LAW.

**THE COURT:**  BUT SURELY FEDERAL LAW DOESN'T COMPEL THE
DEFENDANTS, IF THEY DID IT, TO MAKE MISREPRESENTATION IN THEIR
PROMOTIONAL LITERATURE.

**MR. BOUTROUS:**  THAT'S NOT WHAT I'M SAYING, YOUR
HONOR.  WHAT I'M SAYING IS THEY'RE SEEKING TO REGULATE NATIONAL
AND INTERNATIONAL SPEECH.  CALIFORNIA CANNOT DO THAT.  STATE
LAW CANNOT DO THAT.

AND THAT'S WHY FEDERAL COMMON LAW, IF ANYTHING, WOULD
GOVERN THE ALLEGED MISREPRESENTATIONS.  THEIR ARGUMENT IS --
AND, YOUR HONOR, YOU MENTIONED SWEEPING.  THEY'RE ARGUING THAT
THESE ALLEGED STATEMENTS CAUSED HUMAN BEINGS AROUND THE GLOBE
TO USE FOSSIL FUEL MORE.  AND I BET YOU MANY OF THE

1   PLAINTIFFS'-SIDE LAWYERS USED FOSSIL FUEL TO GET HERE WHEN THEY

2   ARRIVED, SO IT'S NOT SOME OFF-THE-TABLE, YOU KNOW, AS A MATTER

3   OF LAW NOT BENEFICIAL CONDUCT.

4            PRESIDENT OBAMA, PRESIDENT CLINTON, PRESIDENT BUSH --

5            **THE COURT:**  I'M SURE THEY TOOK MASS TRANSIT.

6            **MR. BOUTROUS:**  I THINK THEY'RE STILL BURNING SOME

7   FOSSIL FUEL SOMEHOW IN THERE, YOUR HONOR.  EVERYTHING WE DO --

8   THAT'S HOW WE DEVELOPED AS A CIVILIZATION.  IT'S A GLOBAL

9   ISSUE.

10           PRESIDENT OBAMA SAID IT AND WE QUOTED IT.  THERE'S

11  THE PARIS TREATY.  THERE'S THIS DEBATE ABOUT HOW WE GRAPPLE

12  WITH THIS GLOBAL ISSUE.  IT CAN'T BE DONE WITH DIFFERENT

13  STATES.

14           THE SAME CLAIM IN NEW YORK CHALLENGING THE SAME

15  ACTIVITIES.  IN *OUELLETTE*, WHICH IS MY FAVORITE CASE -- I URGE

16  YOU, YOU'LL COME DOWN ON MY SIDE, I THINK, IF YOU GO BACK AND

17  READ *OUELLETTE*.

18           **THE COURT:**  I'VE GOT TO DO SOME HOMEWORK.

19           **MR. BOUTROUS:**  I GREATLY --

20           **THE COURT:**  ALL RIGHT.  I NEED TO ASK YOU -- I WANT

21  TO CHANGE THE SUBJECT TO CASE MANAGEMENT --

22           **MR. BOUTROUS:**  YES.

23           **THE COURT:**  -- CONFERENCE NOW.

24           LET'S SAY WE STAY IN FEDERAL COURT.  THAT WOULD BE --

25  THEN IS IT YOUR PLAN TO MOVE TO DISMISS?

1           **MR. BOUTROUS:**  YES, YOUR HONOR.

2           **THE COURT:**  ALL RIGHT.  SO YOUR PLAN WOULD BE -- I'VE

3    SEEN THIS ENOUGH.  CONVINCE ME THAT IT'S FEDERAL COMMON LAW,

4    AND THEN YOU MOVE ON TO FEDERAL COMMON LAW AND SAY THERE'S NO

5    SUCH CAUSE OF ACTION.

6           **MR. BOUTROUS:**  THAT WOULD BE ONE --

7           **THE COURT:**  THAT'S WHAT YOU'RE GOING TO DO.

8           **MR. BOUTROUS:**  WELL, IN PART.  AND THE *STANDARD OIL*

9    DECISION -- AND *AEP* ESSENTIALLY DID THAT, YOUR HONOR.  THE

10   *STANDARD OIL* DECISION THAT'S CITED IN *AEP* WAS A CASE WHERE THE

11   SUPREME COURT SAID THE FIRST INQUIRY IS WHAT LAW GOVERNS, AND

12   THERE IT WAS WHETHER THE U.S. COULD GET INDEMNITY FOR INJURY IN

13   AN ACCIDENT TO A U.S. SOLDIER.  THE COURT SAID THAT'S A FEDERAL

14   LAW QUESTION.  THAT'S WHAT WE'RE HERE TODAY ARGUING.  THESE ARE

15   FEDERAL QUESTIONS.

16          THEN IT WENT TO THE SECOND ISSUE ON THE MERITS, AND

17   IT DETERMINED THERE'S NO FEDERAL CLAIM AND SO --

18          **THE COURT:**  THEN THEY'RE JUST OUT OF LUCK.  IN OTHER

19   WORDS, IT GOES FROM -- THE STATE LAW IS DISPLACED, AND THERE'S

20   NO FEDERAL CLAIM, THEREFORE, THEY LOSE.

21          **MR. BOUTROUS:**  WELL, THERE ARE OTHER REMEDIES, YOUR

22   HONOR, I MEAN, THROUGH THE EPA, PETITIONING THE EPA, AND

23   THROUGH ENFORCEMENT ACTIONS, AND THROUGH PUBLIC POLICY DEBATES,

24   AT LEAST IN TERMS OF GLOBAL WARMING.  WE RECOGNIZE THERE ARE

25   ISSUES HERE, YOUR HONOR, BUT THEY'RE NATIONAL, INTERNATIONAL

38

1    ISSUES.

2         ALSO -- I'LL JUST PREVIEW -- WE WOULD ARGUE -- IF THE

3    COURT REMOVED ON *GRABLE* GROUNDS AND THE STATE CLAIM WAS BEFORE

4    THE COURT, WE WOULD ARGUE, AGAIN, THAT, YOU KNOW, THAT THE

5    STATE CLAIM CAN'T GO FORWARD.  FOREIGN AFFAIRS DOCTRINE, STATE

6    LAW GROUNDS.  SO WE WOULD MOVE TO DISMISS.

7         BUT THAT IS VERY COMMON.  IN *AEP* THE SUPREME COURT'S

8    DECISION THAT I DESCRIBED BEFORE THAT REVERSED THE SECOND

9    CIRCUIT DECISION MR. PAWA MENTIONED, THE COURT FIRST SAID, WHAT

10   LAW GOVERNS?  AND THEY SAID IT'S AMBIENT -- IT'S INTERSTATE AIR

11   POLLUTION.  WE CAN'T BORROW STATE LAW BECAUSE THIS INVOLVES

12   THINGS HAPPENING ALL OVER THE UNITED STATES; SO WE LOOK AT THAT

13   ISSUE, BUT WE'RE NOT GOING TO EVEN DECIDE WHETHER THERE'S A

14   CLAIM BECAUSE IT'S DISPLACED.  SO THEY DID SAY FEDERAL LAW

15   APPLIES, AND NOW WE'RE GOING TO SAY THERE'S NO FEDERAL CLAIM.

16        SO I THINK, YOU KNOW, IT IS A COMMON APPROACH, AND WE

17   THINK THIS IS THE RIGHT COURT TO HEAR THESE ISSUES.  WE WOULD

18   MOVE QUICKLY.  I THINK WE COULD HAVE A STIPULATION ON FILE IN

19   30 DAYS.

20        **THE COURT:**  LET ME ASK YOU THIS.  WE WON'T TAKE TOO

21   MUCH MORE TIME.  BUT IF THE CASE STAYS HERE, WHEN DO YOU WANT

22   TO TRY THE CASE?  IN OTHER WORDS, A TRIAL.

23        **MR. BOUTROUS:**  IF YOU DENY OUR MOTIONS -- I THINK THE

24   PLAINTIFFS CAN SPEAK FOR THEMSELVES.  THEY'RE ASKING FOR, LIKE,

25   TWO YEARS OF DISCOVERY AND, YOU KNOW, THIS MASSIVE DISCOVERY.

1    I DON'T THINK THAT WOULD BE NECESSARY FOR A TRIAL LIKE THIS.  I

2    THINK IT WOULD BE A VERY DIFFICULT CASE, YOU KNOW, TO TRY, BUT

3    WE WOULD SAY TO YOUR HONOR, IF YOU WANT TO KEEP US HERE, GIVE

4    US A SHOT AT OUR MOTION TO DISMISS, AND IF YOU SAY, TRY THE

5    CASE, WE'LL TRY IT ON WHATEVER SCHEDULE YOU SAY.

6            **THE COURT:**  WHEN DO YOU WANT THE TRIAL?

7            **MR. PAWA:**  OUR CASE MANAGEMENT STATEMENT IS ATTACHED

8    AS EXHIBIT A.

9            **THE COURT:**  I APOLOGIZE.  I'VE BEEN VERY BUSY LATELY

10   IN ANOTHER CASE.

11           **MR. PAWA:**  (INDISCERNIBLE).

12           **THE COURT:**  I HAVE NOT DONE AS MUCH HOMEWORK AS I

13   NORMALLY WOULD.  BUT WHEN WOULD YOU LIKE TO TRY THE CASE?

14           **MR. PAWA:**  ABOUT 2-1/2 YEARS.

15           **THE COURT:**  OH, COME ON.  THAT'S CRAZY.  WHY WOULD

16   YOU TAKE SO LONG?

17           **MR. PAWA:**  WE HAVE FIVE DEFENDANTS.  WE HAVE DECADES

18   OF CONDUCT AND KNOWLEDGE TO PROBE.  SO WE THINK IT'S GOING TO

19   BE A FAIRLY HEAVY, INTENSIVE DEPOSITION AND DOCUMENT

20   (INDISCERNIBLE).

21           **THE COURT:**  MAYBE.  OKAY.

22           I WILL JUST FILL OUT THIS -- HAVE YOU DONE YOUR

23   INITIAL DISCLOSURES?

24           **MR. BOUTROUS:**  WE HAD AGREED THAT UNTIL THE COURT

25   RULED ON THE MOTION TO REMAND, WE WOULD NOT DO THEM.  SO WE'LL

1   BE READY TO GO IF THE COURT SAYS IT'S KEEPING THE CASE.

2           **THE COURT:**  ALL RIGHT.  I'M NOT GOING TO GO THROUGH

3   ALL THESE DATES BECAUSE WE HAVE SOME OTHER FISH TO FRY BEFORE.

4   SO -- BUT I MIGHT JUST GIVE YOU A TRIAL DATE IN THE CMO WHEN IT

5   COMES OUT.

6           IF I KEEP THE CASE HERE, WHEN ARE YOU GOING TO FILE

7   YOUR MOTION TO DISMISS?

8           **MR. BOUTROUS:**  THIRTY DAYS FROM THE DATE OF THE

9   COURT'S ORDER ON THE MOTION TO REMAND.

10          **THE COURT:**  WHY DO THEY ALWAYS SAY 30 DAYS?

11          **MR. BOUTROUS:**  TWENTY?

12          **THE COURT:**  IT'S GOT TO BE A MULTIPLE OF SEVEN.

13          **MR. BOUTROUS:**  TEN.  THAT'S TRUE.

14          **THE COURT:**  TEN AND THIRTY DON'T COUNT.

15          **MR. BOUTROUS:**  HOW ABOUT 21?

16          **THE COURT:**  TWENTY-ONE.  OKAY.  THAT'S GOOD.  THAT

17  WORKS.

18          **MR. BOUTROUS:**  I'LL TAKE 21.

19          **THE COURT:**  OTHERWISE IT WILL FALL ON THE WEEKEND.

20  THAT'S LIKE ASKING FOR A TRIAL IN DECEMBER.  YOU KNOW THE JUDGE

21  IS NOT GOING TO WANT TO DO THAT.

22          **MR. BOUTROUS:**  I AGREE.  I SHOULD HAVE FIGURED THAT

23  OUT DURING MY CAREER.  NOW I WILL FOLLOW THAT RULE FROM NOW ON.

24          **THE COURT:**  THERE YOU GO.  ALL RIGHT.

25          OKAY.  I WILL GIVE YOU ONE LAST WORD, AND THEN WE GOT

1  TO MOVE ON TO MY NEXT CASE.  DID YOU WANT TO SAY ANYTHING MORE

2  ON REMAND AND REMOVAL?

3          **MR. PAWA:**  I THINK WE SAID WHAT WE NEED TO SAY, YOUR

4  HONOR.

5          **THE COURT:**  ALL RIGHT.  MOST EXCELLENT.

6          THANK YOU, COUNSEL.

7          (PROCEEDINGS ADJOURNED AT 2:46 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        <u>**CERTIFICATE OF TRANSCRIBER**</u>

2

3        I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10    RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11    WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12    FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13    ACTION.

14

15

16                    JOAN MARIE COLUMBINI

17                    FEBRUARY 12, 2018

18

19

20

21

22

23

24

25