IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff,

  v.

BP P.L.C., *et al.*,

    Defendants.

No. C 17-06011 WHA
No. C 17-06012 WHA

**ORDER DENYING MOTIONS TO REMAND**

## INTRODUCTION

In these "global warming" actions asserting claims for public nuisance under state law, plaintiff municipalities move to remand. For the following reasons, the motions are **DENIED**.

## STATEMENT

Oakland and San Francisco brought these related actions in California Superior Court against defendants BP p.l.c, Chevron Corporation, ConocoPhillips Company, Exxon Mobil Corporation, and Royal Dutch Shell plc. Defendants are the first (Chevron), second (Exxon), fourth (BP), sixth (Shell) and ninth (ConocoPhillips) largest cumulative producers of fossil fuels worldwide (Compls. ¶ 10).

Burning fossil fuels adds carbon dioxide to that already naturally present in our atmosphere. Plaintiffs allege that the combustion (by others) of fossil fuels produced by defendants has increased atmospheric levels of carbon dioxide and, as a result, raised global

temperatures and melted glaciers to cause a rise in sea levels, and thus caused flooding in Oakland and San Francisco (Oakl. Compl. ¶¶ 38, 48, 50; SF Compl. ¶¶ 38, 49, 51).

The complaints do not seek to impose liability for direct emissions of carbon dioxide, which emissions flow from combustion in worldwide machinery that use such fuels, like automobiles, jets, ships, train engines, powerplants, heating systems, factories, and so on. Rather, plaintiffs' state law nuisance claims are premised on the theory that — despite long-knowing that their products posed severe risks to the global climate — defendants produced fossil fuels while simultaneously engaging in large scale advertising and public relations campaigns to discredit scientific research on global warming, to downplay the risks of global warming, and to portray fossil fuels as environmentally responsible and essential to human well-being (Oakl. Compl. ¶¶ 11, 62–83; SF Compl. ¶¶ 11, 63–84).

The complaints further allege that accelerated sea level rise has and will continue to inundate public and private property in Oakland and San Francisco. Although plaintiffs (and the federal government through the Army Corps of Engineers) have already taken action to abate the harm of sea level rise, the magnitude of such actions will continue to increase. The complaints stress that a severe storm surge, coupled with higher sea levels, could result in loss of life and extensive damage to public and private property (Oakl. Compl. ¶¶ 84–92; SF Compl. ¶¶ 85–93).

Based on these allegations, each complaint asserts a single cause of action under California public nuisance law. As relief, such complaints seek an abatement fund to pay for seawalls and other infrastructure needed to address rising sea levels (Oakl. Compl. ¶¶ 93–98; SF Compl. ¶¶ 94–99, Relief Requested ¶ 2).

Defendants removed these actions. Plaintiffs now move to remand to state court. This order follows full briefing and oral argument.[1]

---

[1] Six similar actions, filed by the County of San Mateo, City of Imperial Beach, County of Marin, County of Santa Cruz, City of Santa Cruz and City of Richmond, respectively, are pending in this district before Judge Vince Chhabria (Case Nos. 17-cv-4929, 17-cv-4934, 17-cv-4935, 18-cv-0450, 18-cv-0458, 18-cv-0732). In comparison to the instant cases, these actions assert additional claims (including product liability, negligence, and trespass) against additional defendants.

**ANALYSIS**

Plaintiffs' nuisance claims — which address the national and international geophysical phenomenon of global warming — are necessarily governed by federal common law. District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," including claims brought under federal common law. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (citing 28 U.S.C. § 1331). Federal jurisdiction over these actions is therefore proper.

Federal courts, unlike state courts, do not possess a general power to develop and apply their own rules of decision. *City of Milwaukee v. Illinois*, 451 U.S. 304, 312 (1981) ("*Milwaukee II*"). Federal common law is appropriately fashioned, however, where a federal rule of decision is "necessary to protect uniquely federal interests." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981). While not all federal interests fall into this category, uniquely federal interests exist in "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations." *Id.* at 641. In such disputes, the "nature of the controversy makes it inappropriate for state law to control." *Ibid.*

In *Illinois v. City of Milwaukee*, 406 U.S. 91, 107 n.9 (1972) ("*Milwaukee I*"), for example, the Supreme Court applied federal common law to an interstate nuisance claim, explaining that:

> Federal common law and not the varying common law of the individual States is, we think, entitled and necessary to be recognized as a basis for dealing in uniform standard with the environmental rights of a State against improper impairment by sources outside its domain. The more would this seem to be imperative in the present era of growing concern on the part of a State about its ecological conditions and impairments of them. In the outside sources of such impairment, more conflicting disputes, increasing assertions and proliferating contentions would seem to be inevitable. Until the field has been made the subject of comprehensive legislation or authorized administrative standards, only a federal common law basis can provide an adequate means for dealing with such claims as alleged federal rights.

The Supreme Court has continued to affirm that, post–*Erie*, federal common law includes the general subject of environmental law and specifically includes ambient or interstate air and water pollution. *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 421 (2011) ("*AEP*").

3

Both our court of appeals and the Supreme Court have addressed the viability of the federal common law of nuisance to address global warming. The parties sharply contest the import of these decisions.

The plaintiffs in *AEP* brought suit against five domestic emitters of carbon dioxide, alleging that by contributing to global warming, those defendants had violated the federal common law of interstate nuisance, or, in the alternative, state tort law. 564 U.S. at 418. The Supreme Court recognized that environmental protection "is undoubtedly an area within national legislative power, one in which federal courts may fill in statutory interstices, and, if necessary, even fashion federal law." *Id.* at 421 (internal quotes and citations omitted). It held, however, that because the Clean Air Act "[spoke] directly" to the issue of carbon-dioxide emissions from domestic power-plants, the Act displaced any federal common law right to seek an abatement of defendants' emissions. *Id.* at 424–25. *AEP* did not reach the plaintiffs' state law claims. Instead, Justice Ginsburg explained that "the availability *vel non* of a state lawsuit depend[ed], *inter alia*, on the preemptive effect of the federal Act," and left the matter open for consideration on remand. *Id.* at 429.

Our court of appeals addressed similar claims in *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012) ("*Kivalina*"). Citing to *AEP*, the appellate court held that the Clean Air Act also displaced federal common law nuisance claims for *damages* caused by global warming. *Id.* at 856. *Kivalina* underscored that "federal common law can apply to transboundary pollution suits," and that most often such suits are — as here — founded on a theory of public nuisance. *Id.* at 855. But *Kivalina* also failed to reach the plaintiffs' state law claims, which the district court had dismissed without prejudice to their re-filing in state court. *Id.* at 858; *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 882–83 (N.D. Cal. 2009) (Judge Saundra Brown Armstrong).

Here, as in *Milwaukee I*, *AEP*, and *Kivalina*, a uniform standard of decision is necessary to deal with the issues raised in plaintiffs' complaints. If ever a problem cried out for a uniform and comprehensive solution, it is the geophysical problem described by the complaints, a problem centuries in the making (and studying) with causes ranging from volcanoes, to wildfires,

4

to deforestation to stimulation of other greenhouse gases — and, most pertinent here, to the combustion of fossil fuels. The range of consequences is likewise universal — warmer weather in some places that may benefit agriculture but worse weather in others, *e.g.*, worse hurricanes, more drought, more crop failures and — as here specifically alleged — the melting of the ice caps, the rising of the oceans, and the inevitable flooding of coastal lands. Taking the complaints at face value, the scope of the worldwide predicament demands the most comprehensive view available, which in our American court system means our federal courts and our federal common law. A patchwork of fifty different answers to the same fundamental global issue would be unworkable. This is not to say that the ultimate answer under our federal common law will favor judicial relief. But it is to say that the extent of any judicial relief should be uniform across our nation.

Plaintiffs raise three primary arguments in seeking to avoid federal common law. None are persuasive.

*First*, plaintiffs argue that — in contrast to earlier transboundary pollution suits such as *AEP* and *Kivalina* — plaintiffs' nuisance claims are brought against *sellers* of a product rather than direct *dischargers* of interstate pollutants. Extending federal common law to the current dispute, plaintiffs caution, would extend the scope of federal nuisance law well beyond its original justification. To be sure, plaintiffs raise novel theories of liability. And it is also true, of course, that the development of federal common law is necessary only in a "few and restricted instances." *Milwaukee II*, 451 U.S. at 313. As explained above, however, the transboundary problem of global warming raises exactly the sort of federal interests that necessitate a uniform solution. This is no less true because plaintiffs assert a novel theory of liability, nor is it less true because plaintiffs' theory mirrors the sort of state-law claims that are traditionally applied to products made in other states and sold nationally.[2]

---

[2] Notably, in support of their theory of liability plaintiffs cite decisions where the alleged nuisance was caused by a product's use *in California*. In *People v. ConAgra Grocery Products Company*, 17 Cal. App. 5th 51 (2017), the plaintiffs sued producers and manufacturers of lead paint, arguing that the defendants deceptively minimized its dangers and promoted its use. The plaintiffs there, however, sought abatement only with respect to products used in California buildings. Similarly, the claims in *Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003), concerned the manufacture and marketing of firearms but stemmed from the shooting of six individuals

5

Plaintiffs' reliance on *National Audubon Society v. Department of Water*, 869 F.2d 1196 (9th Cir. 1988), is also misplaced. There, our court of appeals held that federal nuisance law did not extend to claims concerning a California agency's diversion of water from a lake wholly within the state. Although the water diversion may have led to air pollution in both California and Nevada, our court of appeals found that it was "essentially a domestic dispute" in which application of state law would not be inappropriate. *Id.* at 1204–05. The court underscored, however, that the Supreme Court does consider the application of state law inappropriate (and the application of federal law appropriate) in "those interstate controversies which involve a state suing sources outside of its own territory." *Id.* at 1205.

*Second*, plaintiffs contend that — even if their claims are tantamount to the interstate pollution claims raised in *AEP* and *Kivalina* — the Clean Air Act displaces such federal common law claims. Moreover, they argue, *International Paper Company v. Ouellette*, 479 U.S. 481 (1987), held that once federal common law is displaced, state law once again governs.

This order presumes that when congressional action displaces federal common law, state law becomes available to the extent it is not preempted by statute. *AEP*, 564 U.S. at 429. But while *AEP* and *Kivalina* left open the question of whether nuisance claims against *domestic emitters* of greenhouse gases could be brought under state law, they did not recognize the displacement of the federal common law claims raised here. Emissions from domestic sources are certainly regulated by the Clean Air Act, but plaintiffs here have fixated on an earlier moment in the train of industry, the earlier moment of production and sale of fossil fuels, not their combustion.

Through the Clean Air Act, Congress established a comprehensive state and federal scheme to control air pollution in the United States. 42 U.S.C. § 7401 *et seq.* The central elements of this comprehensive scheme are (1) the Act's provisions for uniform national standards of performance for new stationary sources of air pollution, § 7411, (2) the Act's provisions for uniform national emission standards for certain air pollutants, § 7412, (3) the

---

in Los Angeles. Plaintiffs' claims here, by contrast, are not localized to California and instead concern fossil fuel consumption worldwide.

Act's promulgation of primary and secondary national ambient air quality standards, §§ 7408–09, and (4) the development of national ambient air quality standards for motor vehicle emissions, § 7521. The Clean Air Act displaced the nuisance claims asserted in *Kivalina* and *AEP* because the Act "spoke directly" to the issues presented — *domestic* emissions of greenhouse gases. The same cannot be said here.

Plaintiffs' nuisance claims center on an alleged scheme to produce and sell fossil fuels while deceiving the public regarding the dangers of global warming and the benefits of fossil fuels. Plaintiffs do not bring claims against emitters, but rather bring claims against defendants for having put fossil fuels into the flow of international commerce. Importantly, unlike *AEP* and *Kivalina*, which sought only to reach domestic conduct, plaintiffs' claims here attack behavior worldwide. While some of the fuel produced by defendants is certainly consumed in the United States (emissions from which are regulated by the Clean Air Act), greenhouse gases emanating from overseas sources are equally guilty (perhaps more so) of causing plaintiffs' harm. Yet these foreign emissions are out of the EPA and Clean Air Act's reach.

For displacement to occur, "[t]he existence of laws generally applicable to the question is not sufficient; the applicability of displacement is an issue-specific inquiry." *Kivalina*, 696 F.3d at 856. In *Milwaukee I*, the Supreme Court considered multiple statutes potentially affecting the federal question but ultimately concluded that no statute directly addressed the question and accordingly held that the federal common law public nuisance claim had not been displaced. 406 U.S. at 101–03. Here, the Clean Air Act does not provide a sufficient legislative solution to the nuisance alleged to warrant a conclusion that this legislation has occupied the field to the exclusion of federal common law.

*Third*, the well-pleaded complaint rule does not bar removal of these actions. Federal jurisdiction exists in this case if the claims necessarily arise under federal common law. *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002). Plaintiffs concede that our court of appeals recognized this rule, but contend that it should be ignored as dicta. To the contrary, in support *Wayne* cited *Milwaukee I*, where the Supreme Court explained that a claim

"'arises under' federal law if the dispositive issues stated in the complaint require the application of federal common law." 406 U.S. at 100.[3]

Plaintiffs' claims for public nuisance, though pled as state-law claims, depend on a global complex of geophysical cause and effect involving all nations of the planet (and the oceans and atmosphere). It necessarily involves the relationships between the United States and all other nations. It demands to be governed by as universal a rule of apportioning responsibility as is available. This order does not address whether (or not) plaintiffs have stated claims for relief. But plaintiffs' claims, if any, are governed by federal common law. Federal jurisdiction is therefore proper.

The foregoing is sufficient to deny plaintiffs' motions for remand. It is worth noting, however, that other issues implicated by plaintiffs' claims also demonstrate the proprietary of federal common law jurisdiction. Importantly, the very instrumentality of plaintiffs' alleged injury — the flooding of coastal lands — is, by definition, the navigable waters of the United States. Plaintiffs' claims therefore necessarily implicate an area quintessentially within the province of the federal courts. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 772 (7th Cir. 2011). This issue was not waived, as defendants timely invoked federal common law as a grounds for removal.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motions for remand are **DENIED**.

**CERTIFICATION UNDER 28 U.S.C. § 1292(b)**

The district court hereby certifies for interlocutory appeal the issue of whether plaintiffs' nuisance claims are removable on the ground that such claims are governed by federal common law. This order finds that this is a controlling question of law as to which there is substantial

---

[3] Plaintiffs' remaining authorities on this point are inapposite. Contrary to plaintiffs, our court of appeals found that it lacked subject-matter jurisdiction over the state-law claims asserted in *Patrickson v. Dole Food Company* because it was merely possible that "the federal common law of foreign relations *might* arise as an issue." 251 F.3d 795, 803 (9th Cir. 2001) (emphasis added). Similarly, the complaint in *Provincial Government of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1090 (9th Cir. 2009), did not raise federal law on its face, but rather implicated it "only defensively."

ground for difference of opinion and that its resolution by the court of appeals will materially advance the litigation. (This certification, however, is not itself a stay of proceedings.)

**IT IS SO ORDERED.**

Dated: February 27, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE