M. Randall Oppenheimer (SBN 77649)
Dawn Sestito (SBN 214011)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-Mail: roppenheimer@omm.com
E-Mail: dsestito@omm.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jaren E. Janghorbani (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
E-Mail: twells@paulweiss.com
E-Mail: dtoal@paulweiss.com
E-Mail: jjanghorbani@paulweiss.com

*Attorneys for Defendant*
*Exxon Mobil Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Oakland City Attorney, BARBARA J. PARKER,<br><br>Plaintiff and Real Party in Interest,<br><br>v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXONMOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>Defendants. | First Filed Case: No. 3:17-cv-6011-WHA<br>Related Case: No. 3:17-cv-6012-WHA<br><br>**DEFENDANT EXXON MOBIL CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Case No. 3:17-cv-6011-WHA<br><br><u>HEARING</u><br><br>DATE: MAY 24, 2018<br><br>TIME: 8:00 A.M.<br><br>LOCATION: COURTROOM 12, 19TH FLOOR<br><br>THE HONORABLE WILLIAM H. ALSUP |

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA,<br><br>            Plaintiff and Real Party in Interest,<br><br>      v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXONMOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>            Defendants. | Case No. 3:17-cv-6012-WHA |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE COURT, THE CLERK, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on May 24, 2018, at 8:00 A.M., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 12 - 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William Alsup, Defendant ExxonMobil Corporation will and hereby does move this Court to dismiss these related actions for lack of personal jurisdiction.

These actions should be dismissed because Plaintiffs have failed to allege facts that would subject ExxonMobil to personal jurisdiction in this forum. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the Motion, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection, including insufficient process, or insufficient service of process.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 6

I.     APPLICABLE LEGAL STANDARD ................................................................................ 6

II.    THE DUE PROCESS CLAUSE PRECLUDES THE EXERCISE OF PERSONAL JURISDICTION OVER EXXONMOBIL IN CALIFORNIA. ................................................ 7

       A.     EXXONMOBIL IS NOT SUBJECT TO GENERAL JURISDICTION IN CALIFORNIA. ............................................................................................................ 8

       B.     EXXONMOBIL IS NOT SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA FOR THE CLAIMS ALLEGED IN THE COMPLAINTS. ................. 9

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AM Tr.* v. *UBS AG*,
    681 F. App'x 587 (9th Cir. 2017) ................................................................................................8, 9

*Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017)......................................................................................................6

*BNSF Ry. Co.* v. *Tyrrell*,
    137 S. Ct. 1549 (2017) .................................................................................................................9

*Bristol-Myers Squibb Co.* v. *Superior Court*,
    137 S. Ct. 1773 (2017) ......................................................................................................... passim

*Chan* v. *Soc'y Expeditions, Inc.*,
    123 F.3d 1287 (9th Cir. 1997)....................................................................................................11

*Daimler AG* v. *Bauman*,
    134 S. Ct. 746 (2014) ...............................................................................................................8, 9

*Elec. Frontier Found.* v. *Glob. Equity Mgmt. (SA) Pty Ltd.*,
    No. 17-CV-02053-JST, 2017 WL 5525835 (N.D. Cal. Nov. 17, 2017)..........................................10

*Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002).................................................................................................9, 12

*Hanwa Am. Corp.* v. *Telling Indus., LLC*,
    No. SACV 16-01995-CJC, 2017 WL 3082222 (C.D. Cal. Jan. 23, 2017) ......................................10

*Ivy Bridge Univ., LLC* v. *Higher Learning Comm'n*,
    No. 15-CV-02187-SC, 2015 WL 6555428 (N.D. Cal. Oct. 28, 2015) ............................................10

*Martinez* v. *Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014)......................................................................................................8

*Native Village of Kivalina* v. *ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th
    Cir. 2012) ...............................................................................................................................4, 11

*Poga Mgmt Partners LLC* v. *Medfiler*,
    No. C 12-06087 SBA, 2013 WL 5487343 (N.D. Cal. Sept. 30, 2013)...........................................10

*Ranza* v. *Nike*,
    793 F.3d 1059 (9th Cir. 2015)....................................................................................................11

*Univ. of Tex. S.W. Med. Ctr.* v. *Nassar*,
    133 S. Ct. 2517 (2013) ...............................................................................................................10

*Williams* v. *Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017)......................................................................................................6

**STATUTES**

Outer Continental Shelf Lands Act ................................................................................................... 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2) ........................................................................................................................ 1

Fourteenth Amendment's Due Process Clause ................................................................................. 7, 9

Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers*, *1854–2010*, 122 Climatic Change 229 (2014), https://link.springer.com/article/10.1007/s10584-013-0986-y ......................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Exxon Mobil Corporation ("ExxonMobil") respectfully submits this memorandum of points and authorities in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss it from this case for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

Frustrated by their inability to effectuate fundamental changes to worldwide energy policy within the confines of our federal system, the Cities of San Francisco and Oakland (together, the "Cities") ask the Court to wade into a political thicket and fundamentally reshape the energy industry as we know it. To achieve this goal, the Cities invite the Court to pass judgment on the social utility of the "use of fossil fuels – oil, natural gas and coal" from "the mid Nineteenth Century to present"— to weigh, with the benefit of hindsight, the relative costs and benefits of every business activity and decision ExxonMobil has undertaken in its 135-year history. (FAC ¶¶ 2, 94(b).)[1] Putting to one side the justiciability of these policy questions, and the hypocrisy in the Cities' continued reliance on fossil fuels while advancing such claims, the FACs suffer from defects that are simpler, but equally fatal: they were filed in the wrong forum.

The same federal system that prevents the Cities from making international energy policy also cabins the authority of tribunals in California to impose liability on out-of-state actors like ExxonMobil, a Texas-based company incorporated in New Jersey. Due process requires that if courts in California are to sit in judgment of ExxonMobil, the plaintiff seeking that judgment must be able to demonstrate that its injuries would not have occurred but for ExxonMobil's activities in California. That causal link is lacking where, as here, a complaint pleads scant connections to California while claiming injuries resulting from an undifferentiated global phenomenon "centuries in the making," and allegedly caused by "combustion in worldwide machinery that use [fossil fuels], like automobiles, jets, ships, train engines, powerplants, heating systems, factories, and so on." (Order Denying

---

[1] The Cities' two First Amended Complaints are virtually identical. Because the similarly numbered paragraphs in each First Amended Complaint contain similar allegations, this motion will simply cite to the "FAC."

Remand at 2, 4.)[2]  Indeed, as the Court has already discerned, the Cities' "theory is not actually tied to operations in California" at all, but rather "tied to global effects" that are alleged to impact the Cities—along with virtually every other location on the planet.  (Feb. 8, 2018 Hr'g Tr. (Sestito Decl. Ex. 1)[3] at 25:16-18.)  Compounding this pleading failure, in seeking remand to state court, the Cities have now *twice* argued that there is *not* a causal link between their claimed injuries and any Defendant's discrete activities at any particular place or time.  Having twice advanced a contrary position, the Cities cannot seriously contend that ExxonMobil's limited activities in California are a "but for" cause of their purported injuries.  Under these circumstances, the exercise of personal jurisdiction over ExxonMobil in connection with the Cities' claims would be improper, and would discard well-settled principles that prevent a corporation from being called to answer for *all* of its business activities wherever it conducts *any* of its business activities.  The Amended Complaints fail to plead sufficient contacts to require ExxonMobil to defend itself against such sweeping claims in this forum, and ExxonMobil therefore should be dismissed from these cases.

## BACKGROUND

The Cities seek to hold ExxonMobil and four other energy companies uniquely liable for virtually all of the alleged negative consequences of the energy system that humanity has developed and relied on "since the dawn of the Industrial Revolution"—that is, "from the mid Nineteenth Century to present."  (FAC ¶ 94(b).)  The Cities' original complaints made no effort to establish jurisdiction by pleading that the Cities' claimed injuries were caused by ExxonMobil's conduct anywhere in California, and, strikingly, the Amended Complaints remain devoid of any allegations that the Cities' injuries would not have occurred absent ExxonMobil's activities in California.  The current Complaints thus fare no better than the originals, despite adopting a kitchen sink approach that recites nearly every conceivable connection between ExxonMobil and California, no matter how unrelated to the

---

[2] References to the "Order Denying Remand" are to the Order Denying Plaintiffs' Motion to Remand, docketed at ECF No. 134 in the Oakland case (No. 3:17-cv-6011) and ECF No. 116 in the San Francisco case (No. 3:17-cv-6012).

[3] References to the "Sestito Decl." refer to the Declaration of Dawn Sestito In Support of Exxon Mobil Corporation's Motion to Dismiss for Lack of Personal Jurisdiction, filed herewith.

Cities' claims.  (FAC ¶¶ 56-59.)  Although the Amended Complaints claim not to take issue with carbon emissions directly, by the Amended Complaints' own telling, the consequences the Cities complain of are the result of the combustion of fossil fuels, which "release[s] greenhouse gases … which trap atmospheric heat and increase global temperatures." (FAC ¶ 74.)  This warming, the Amended Complaints claim, leads to "accelerated sea level rise through thermal expansion of ocean water and melting of land-based ice." (FAC ¶ 1.)

Although the Cities seek to lay *all* of the costs of responding to these phenomena at the feet of ExxonMobil and its four co-defendants jointly and severally (FAC ¶ 10), as the Court has recognized in denying remand, the Amended Complaints also implicate the conduct of innumerable third parties—anybody who may have used the "automobiles, jets, ships, train engines, powerplants, heating systems, [and] factories" to combust fossil fuels since the Industrial Revolution.  (Order Denying Remand at 2.)  Indeed, the Amended Complaints, as the complaints that preceded them, freely acknowledge that there are "other contributors" to the global warming phenomenon that the Cities identify as the basis for their claims. (FAC ¶ 94.)  In fact, the Amended Complaints provide additional detail about the *paucity* of ExxonMobil's purported contribution to global emissions, conceding that *all five* Defendants in this action are "*collectively* responsible, through their production, marketing, and sale of fossil fuels" for only 11% of emissions "since the dawn of the Industrial Revolution." (*Id.* (emphasis added).)   And the source the Amended Complaints cite for that proposition makes clear that 97% of emissions since the Industrial Revolution have no connection to ExxonMobil (or its predecessors or affiliates) at all.[4]

Notwithstanding the contribution of billions of third parties to the situation the Cities complain of, the Amended Complaints still make no effort to tie any particular climate-related injury—whether a storm surge or generalized sea level rise—to any particular carbon emissions.  Nor do the Amended Complaints plead any link between such emissions and any particular emitter or, as necessary for Plaintiffs' claims, to any conduct of the defendant fossil fuel producers or marketers.  And

---

[4] Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers*, *1854–2010*, 122 Climatic Change 229, 237 (2014), https://link.springer.com/article/10.1007/s10584-013-0986-y.

although the Cities' Amended Complaints in these cases do not admit that such attribution is impossible, in another case brought by the Cities' private attorney, Matthew Pawa, Judge Saundra Brown Armstrong ruled that "there is no realistic possibility of tracing any particular alleged effect of global warming to any particular emissions by any specific person, entity, or group at any particular point in time." *Native Village of Kivalina* v. *ExxonMobil Corp.*, 663 F. Supp. 2d 863, 880 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th Cir. 2012). Consistent with Judge Armstrong's reasoning, Mr. Pawa recently conceded as much in a parallel nuisance lawsuit filed against the same five defendants in New York. There, the plaintiff City of New York—in a filing signed by Mr. Pawa—admitted that the "[g]reenhouse gas molecules" purportedly causing New York City's claimed injuries "cannot be traced to their source" because they "quickly diffuse and comingle in the atmosphere." (Sestito Decl. Ex. 2 ¶ 75.)[5]

In stark contrast to the broad sweep of the Cities' claims, the Amended Complaints' allegations regarding ExxonMobil's connections to California are limited, even after the Cities elected to overhaul those allegations in their amended filings. The Amended Complaints allege a number of connections between ExxonMobil and California, none of which can plausibly be labeled a "but for" cause of the Cities' claimed injuries:

*First,* that ExxonMobil and two of its non-party subsidiaries are registered to do business in California and have designated agents for service of process here—facts that are irrelevant to the question of whether ExxonMobil can be compelled to answer *these* claims in California. (FAC ¶ 56.)

*Second*, that ExxonMobil "through its [non-party] subsidiaries, produces" some unspecified quantum of oil in California and "owns and/or operates port facilities in California for receipt of" some unspecified amount of crude oil. (FAC ¶ 57.) These allegations do not explain how the marketing, sale, or combustion of any such oil—wherever that may occur—has any causal relationship to

---

[5] In the New York City amended complaint, aside from conceding that 97% of emissions have no connection to ExxonMobil, Mr. Pawa also concedes that approximately 90% of the 3% of emissions that *may* have some link to ExxonMobil were emitted by unknown third parties, not ExxonMobil itself. (Sestito Decl. Ex. 2 ¶ 3.) ExxonMobil does not concede that greenhouse gases can be attributed to particular emitters as the New York City amended complaint suggests, nor does it concede the accuracy of the methodology used in the sources cited by the New York City amended complaint.

the Cities' claimed injuries.

*Third*, that ExxonMobil *previously* "owned and operated," through-third party subsidiaries "including Socony Mobil Oil Co. and Mobil Oil Corp.," two refineries in California where "crude oil was refined into finished fossil fuel products." (*Id.*) Plaintiffs further attempt to bolster their jurisdictional allegations by providing an approximate amount of crude oil produced by these refineries. (*Id.*) Crucially, however, the Amended Complaints fail to assert that the fossil fuels refined at these facilities were extracted by ExxonMobil, or that the finished fossil fuel products produced at these refineries caused the Cities' injuries.

*Fourth*, that ExxonMobil, "through its [non-party] subsidiaries" produces oil *in Alaska*, and that, on pure information and belief, some unspecified amount of such oil is transported to California. (FAC ¶ 58.) Again, the Amended Complaints fail to allege that the combustion of this oil which traverses California—but which concededly is produced elsewhere—caused the sea level rise or other injuries of which the Cities complain.

*Fifth*, that "Exxon-branded gasoline stations" exist in California. (*Id.*) In other words, the Amended Complaints allege that ExxonMobil's trademarks may be displayed at service stations in California. Although Plaintiffs assert that "Exxon exercises control over gasoline product quality and specifications" at these stations, there is no allegation that these service stations are owned or operated by ExxonMobil. (*Id.*) Nor is there any allegation that these stations sell fossil fuels extracted by ExxonMobil, and the Amended Complaints likewise fail to allege how the quantities of fossil fuels sold by such stations caused the Cities' claimed injuries.

*Sixth*, that "Exxon offers credit cards to consumers, through its interactive website, to promote sales of gasoline and other products at its branded gasoline stations" and "offer[s] consumers discounts" on gasoline at ExxonMobil-branded stations. (*Id.*) These allegations simply describe purported aspects of the nationwide retail gasoline business without any suggestion that these activities have any relation to the Cities' claimed injuries in this case.

*Seventh*, and finally, that "Exxon is responsible for the pre-merger conduct of Mobil Corporation with respect to all relevant issues herein, and the contact of Mobil are attributable to Exxon." (FAC ¶ 59.) But Plaintiffs' conclusory assertion fails to explain not only how Mobil Corporation's

5

contacts are sufficient for the Court to have personal jurisdiction over ExxonMobil, but, more significantly, what those contacts with California might be. Needless to say, Plaintiffs do not make any allegation that the Cities' claimed present and future injuries would not have occurred absent the operations of Mobil Corporation.

In sum, for all the new filler injected into the Amended Complaints, they retain the fatal flaw of the Cities' original pleadings: they fail to allege at all, much less plausibly, that the Cities' claimed climatic injuries would not have occurred absent ExxonMobil's activities in California. On this slim foundation, the Cities seek to hale out-of-state actor ExxonMobil into Court to answer for alleged climatic injuries supposedly caused by the sum total of its worldwide business operations, and those of all other producers and users of fossil fuels, spanning the company's entire 135-year history.

## ARGUMENT

The California contacts alleged in the Amended Complaints do not supply a basis to compel ExxonMobil to defend the entirety of its worldwide business activities in a foreign forum. As detailed below, to hold otherwise would be to abandon settled notions of due process and to instead endorse jurisdictional theories with no apparent limiting principle.

### I.  APPLICABLE LEGAL STANDARD

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). California authorizes its courts to exercise jurisdiction "to the full extent that such exercise comports with due process." *Id.* (citing Cal. Code Civ. Proc. § 410.10). Accordingly, "the jurisdictional analyses under [California] state law and federal due process are the same." *Axiom Foods, Inc.* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017) (quoting *Mavrix Photo, Inc.* v. *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)) (internal quotation marks omitted). To exercise jurisdiction consistent with due process, a plaintiff must, *inter alia*, demonstrate that its claim is "one which arises out of or relates to the defendant's forum-related activities." *Id.* at 1068 (quoting *Dole Food Co., Inc.* v. *Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted). As the party haling defendants into court, the "plaintiff bears the burden of satisfying" this requirement. *Id.* (quoting *Schwarzenegger* v. *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

6

2004)) (internal quotation marks omitted).

## II. THE DUE PROCESS CLAUSE PRECLUDES THE EXERCISE OF PERSONAL JURISDICTION OVER EXXONMOBIL IN CALIFORNIA.

"[R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'" *Bristol-Myers Squibb Co.* v. *Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Hanson* v. *Denckla*, 357 U.S. 235, 251 (1958)). Accordingly, as the Court in *Bristol-Myers Squibb* confirmed mere months ago:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

137 S. Ct. at 1780-81 (internal quotation marks omitted) (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 294 (1980)). In recognition of this bedrock principle of our federal system, the exercise of authority over an out-of-state defendant is "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause" because the "assertion of jurisdiction exposes defendants to the [forum] State's coercive power . . . ." *Id.* at 1779 (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 918 (2011)).

The Due Process Clause cabins the authority of courts in a particular forum to exercise coercive power on out-of-state defendants within "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id.* at 1780 (citing *Goodyear*, 564 U.S. at 919). A court properly imbued with general jurisdiction may hear any claim against a defendant, even if all the conduct underlying the claim occurred outside of the forum state. *Id.* But our federal system limits the exercise of general jurisdiction over corporations to forums where a defendant "is fairly regarded as at home." *Id.* (quoting *Goodyear*, 564 U.S. at 924). Specific jurisdiction, by contrast, may be proper where a defendant is not "at home," but

7

must be predicated on a substantial relationship between the forum and the discrete claim asserted—in other words, for a court "to exercise specific jurisdiction [over a particular defendant], 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)). Application of these well-settled principles demonstrates that out-of-state defendant ExxonMobil is not susceptible to jurisdiction under either theory, and must be dismissed from this case.

### A. EXXONMOBIL IS NOT SUBJECT TO GENERAL JURISDICTION IN CALIFORNIA.

ExxonMobil is not subject to "general" jurisdiction in California. Due process permits courts to exercise general jurisdiction over a defendant—and hear any and all claims against that defendant—only when that defendant can be deemed "at home" in the forum state. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. But a defendant is "at home" in a forum only when it: (1) is incorporated in the forum; (2) has its principal place of business in that forum; or (3), in an "exceptional case," has operations that are "so substantial and of such a nature as to render the corporation at home" in the forum. *Daimler*, 134 S. Ct. at 760-61, 761 n.19; *AM Tr.* v. *UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017).

None of the above considerations applies to ExxonMobil. The Amended Complaints themselves acknowledge that ExxonMobil is a New Jersey corporation with its "principal place of business" in Irving, Texas. (FAC ¶ 25.) The connections between ExxonMobil and California alleged in the Amended Complaints do not describe an "exceptional case" that would make ExxonMobil "at home" here. *See Daimler*, 134 S. Ct. at 761 n.19; *UBS AG*, 681 F. App'x at 588. To the contrary, ExxonMobil's contacts with California "are minor compared to its other worldwide contacts." *Martinez* v. *Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (affirming an order of this Court dismissing plaintiffs' claims for want of general jurisdiction). And those contacts are no more extensive than those of any other "multinational, vertically integrated" company (FAC ¶ 25) that has, at some point in the past, maintained some facilities here, conducted interstate commerce, and engaged in national advertising campaigns in major centers of trade. If ExxonMobil could be deemed "at home" in California based on the contacts described in the Amended Complaints, a plethora of large companies would constitute "exceptional" cases—and the exception would impermissibly swallow the rule. *See*

*Daimler*, 134 S. Ct. at 761-62, 761 n.19.

That is precisely what *Daimler* sought to avoid.  As Justice Ginsburg cautioned in *Daimler* and the Ninth Circuit observed in *UBS AG*, "[a] corporation that operates in many places can scarcely be deemed at home in all of them."  *UBS AG*, 681 F. App'x at 588 (quoting *Daimler*, 134 S. Ct. at 762 n.20).  The exercise of general jurisdiction over ExxonMobil in this case could be justified only by resort to a "doing business" theory that the law has "evolved" away from.  *Daimler*, 134 S. Ct. at 762 n.20.  A finding of general jurisdiction over ExxonMobil in California thus cannot be squared with controlling precedents that foreclose such a theory.  *See BNSF Ry. Co.* v. *Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017) (declining to find an "exceptional case" justifying general jurisdiction in Montana, where a Texas-based Delaware corporation maintained "over 2,000 miles of railroad track and more than 2,000 employees"); *see also UBS AG*, 681 F. App'x at 588-89 (rejecting "a rule that would subject a large bank to general personal jurisdiction in any state in which the bank maintains a branch").

B. **EXXONMOBIL IS NOT SUBJECT TO SPECIFIC JURISDICTION IN CALIFORNIA FOR THE CLAIMS ALLEGED IN THE COMPLAINTS.**

The Due Process Clause likewise does not permit the exercise of specific jurisdiction over ExxonMobil in connection with the claims asserted by the Cities, largely identical to those alleged in the original complaints.  The exercise of specific jurisdiction requires that a claim asserted by a plaintiff "aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (quoting *Daimler*, 134 S. Ct. at 754).  Yet as this Court has already observed during oral argument on the Cities' motion to remand, Plaintiffs' "theory is not actually tied to operations in California," and instead is "tied to global effects" that are claimed to impact the Cities—as well as essentially every other location on Earth.  (Sestito Decl. Ex. 1 at 25:16-18 No. 3:17-cv-6011 ECF No. 168-1, No. 3:17-cv-6012 ECF No. 149-1.).  That is fatal to the exercise of specific jurisdiction over ExxonMobil in this forum.

In this Circuit, to adequately allege that claims "arise out of" a defendant's forum contacts, the plaintiff must establish "but for" causation, *i.e.*, "that it would not have been injured 'but for' [the Defendant's] contacts with California."  *Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain*

*Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Doe* v. *Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (per curiam), *overruled on other grounds by Daimler*, 134 S. Ct. at 759-60).[6] And it is "textbook" law "that an action 'is not regarded as a cause of an event if the particular event would have occurred without it.'" *Univ. of Tex. S.W. Med. Ctr.* v. *Nassar*, 133 S. Ct. 2517, 2525 (2013) (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* 265 (5th ed. 1984)). The Cities' Amended Complaints do not even attempt to hurdle this bar and—consistent with the Court's prior observation—the Cities have, in fact, already conceded that their claims are not reliant on the Defendants' conduct in California or any other particular place.

Disregarding their burden to plead facts establishing jurisdiction, the Cities' Amended Complaints fail to even allege, let alone plausibly, that the climatic injuries the Cities claim to have suffered—which purportedly result from worldwide fossil fuel use from "the mid Nineteenth Century to present"—*would not have occurred* absent the limited contacts alleged between ExxonMobil and California: unspecified quantities of oil being produced or refined in, or transiting through, California, or Exxon branding and discounts at service stations in California. (FAC ¶¶ 57, 58, 94(b)); *Univ. of Texas S.W. Med. Ctr.*, 133 S. Ct. at 2525. Indeed, the Cities' Amended Complaints make no effort whatsoever to tie ExxonMobil's conduct in California to any particular emissions (in California or elsewhere), to any purported climate event supposedly caused by such emissions (in California or elsewhere), or to the specific injuries claimed by the Cities.

Though fatal, this omission is also likely intentional, since another member of this Court has already recognized the inherent impossibility of drawing a causal link between any particular emissions and discrete climatic impacts. As Judge Armstrong explained when dismissing a similar case

---

[6] *See also, e.g.*, *Elec. Frontier Found.* v. *Glob. Equity Mgmt. (SA) Pty Ltd.*, No. 17-CV-02053-JST, 2017 WL 5525835, at *9 (N.D. Cal. Nov. 17, 2017) (the arising out of requirement "is met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen"); *Hanwa Am. Corp.* v. *Telling Indus., LLC*, No. SACV 16-01995-CJC (JCGx), 2017 WL 3082222, at *4 (C.D. Cal. Jan. 23, 2017) ("The Ninth Circuit utilizes a 'but for' test to determine whether a particular claim arises out of forum-related activities."); *Ivy Bridge Univ., LLC* v. *Higher Learning Comm'n*, No. 15-CV-02187-SC, 2015 WL 6555428, at *5 (N.D. Cal. Oct. 28, 2015) ("The Ninth Circuit applies a 'but-for' test to determine whether a particular claim arises out of or is related to forum-related activities."(citation omitted)); *Poga Mgmt Partners LLC* v. *Medfiler*, No. C 12-06087 SBA, 2013 WL 5487343, at *7 (N.D. Cal. Sept. 30, 2013) (applying the "but for" test).

brought by Matthew Pawa, the Cities' private, for-profit attorney in this matter:

> [T]he undifferentiated nature of greenhouse gas emissions from all global sources and their worldwide accumulation over long periods of time . . . makes clear that there is no realistic possibility of tracing any particular alleged effect of global warming to any particular emissions by any specific person, entity, [or] group at any particular point in time.

*Native Vill. of Kivalina* v. *ExxonMobil Corp.*, 663 F. Supp. 2d 863, 880 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th Cir. 2012).  The Cities' Amended Complaints make no attempt to overcome the logic of *Kivalina*—and the Cities' attorney in this case in fact conceded the validity of Judge Armstrong's reasoning when, on behalf of the City of New York, he recently filed an amended complaint admitting that "[g]reenhouse gas molecules cannot be traced to their source."  (Sestito Decl. Ex. 2 ¶ 75.)  Thus, here, as in *Kivalina*, "it is not plausible to state which emissions—emitted by whom and at what time in the last several centuries and at what place in the world—'caused' [p]laintiffs' alleged global warming related injuries."  663 F. Supp. 2d at 881.[7]  Having failed to plausibly plead that any of ExxonMobil's *worldwide* conduct has caused their injuries, the Cities have, *a fortiori*, failed to plead that their injuries "arise out of" the small sliver of ExxonMobil's worldwide conduct that has occurred in California.[8]

Even more problematic than the Cities' failure to plead how ExxonMobil's California conduct caused their injuries, the Cities have *twice* taken the *opposite* position in prior briefing.

*First*, when seeking remand, the Cities contested Defendants' assertion that this Court has jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA").  According to the Cities' brief, (No. 3:17-cv-6011 ECF No. 81; No. 3:17-cv-6012 ECF No. 64), OCSLA jurisdiction would be

---

[7] *Cf. Bristol-Myers Squibb*, 137 S. Ct. at 1783 (finding that defendant's use of a California distributor could not justify specific jurisdiction in California because the plaintiffs "have adduced no evidence to show how or by whom the [drug] they took was distributed to the pharmacies that dispensed it to them," and observing that "[i]t is impossible to trace a particular pill" that injured a specific plaintiff to the California-based distributor).

[8] Moreover, Plaintiffs ignore corporate separateness and improperly aggregate the activities of ExxonMobil's subsidiaries and affiliates.  *See Ranza* v. *Nike*, 793 F.3d 1059, 1070-71, 1073-74 (9th Cir. 2015); *Chan* v. *Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997).  There is no personal jurisdiction in California whether the activities are improperly aggregated to Exxon Mobil Corporation or properly allocated to the various subsidiaries and affiliates.

proper only if Defendants' activities on the Outer Continental Shelf were a "but for" cause of the Cities' claimed "global warming injury." (*Id.* at 25.) But, crucially, the Cities expressly *disavowed* such a causal relationship, asserting that their claims are "not dependent on any one subset of defendants' fossil fuel production activities." (*Id.*) Having denied that their "global warming injury" can be causally linked to the substantial fossil fuel extraction activities on the Outer Continental Shelf—an area from which billions of barrels of oil and natural gas are produced (*see* ECF No. 1 ¶ 52)—the Cities cannot suggest in good faith that ExxonMobil's limited activities in California *are* a "but for" cause of their "global warming injury."

*Second*, while arguing for remand, the Cities also disputed the assertion that Defendants acted under the supervision of federal officers when producing substantial volumes of fossil fuel pursuant to agreements with, and at the direction of, the federal government. (No. 3:17-cv-6011 ECF No. 108 at 25; No. 3:17-cv-6012 ECF No. 91 at 25.) In attempting to downplay the significance of these connections to the federal government, the Cities made yet another concession that precludes personal jurisdiction: "The People's injuries would be largely the same whether these particular federal agreements existed or not"—in other words, "the People's injuries" are not contingent on any Defendant's activities in any particular place. (*Id.*) The Cities should not now be heard to advance the logically contrary position that their injuries nonetheless were dependent on ExxonMobil's limited contacts with California.

In sum, the Cities' Amended Complaints make no effort to tie ExxonMobil's conduct *in California* to any of their claimed injuries and, quite to the contrary, the Cities' own prior statements to the Court confirm the Court's intuition that the Cities' "theory is not actually tied to operations in California" at all. (Sestito Decl. Ex. 1 at 25:16–17, No. 3:17-cv-6011 ECF No. 168-1, No. 3:17-cv-6012 ECF No. 149-1.) Having failed to plead—and having in fact disputed the notion—that they would "not have been injured 'but for' [ExxonMobil's] contacts with California," the Cities cannot sue ExxonMobil in this forum. *Glencore*, 284 F.3d at 1123 (citing *Unocal*, 248 F.3d at 924). To hold otherwise—to find ExxonMobil subject to jurisdiction because it has engaged in some *other* business in California that does *not* give rise to the Cities' claims—would be to endorse the precise

sort of "loose and spurious form of general jurisdiction" that the Supreme Court in *Bristol-Myers Squibb* squarely rejected mere months ago. 137 S. Ct. at 1781.

## CONCLUSION

To find ExxonMobil subject to personal jurisdiction in California for the claims asserted in the Complaints would be an endorsement of discredited jurisdictional principles that extend well past the boundaries marked by the Supreme Court. The contacts between ExxonMobil and California alleged in the Complaints could describe those of any number of large corporations around the world. If, as the Cities urge, such a corporation can be forced to answer for *all* of its historical business activities wherever it has conducted *any* of its historical business activities, that would spell the end of the long-standing requirement that the injury would not have occurred but for the defendant's contacts with the forum. That is not, and should not be, the law. The Cities have thus pursued their claims in an improper forum, and ExxonMobil should be dismissed from these cases.

April 19, 2018

Respectfully submitted,

By: */s/ Dawn Sestito*

M. Randall Oppenheimer (SBN 77649)
Dawn Sestito (SBN 214011)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-Mail: roppenheimer@omm.com
E-Mail: dsestito@omm.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jaren E. Janghorbani (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
E-Mail: twells@paulweiss.com
E-Mail: dtoal@paulweiss.com
E-Mail: jjanghorbani@paulweiss.com

*Attorneys for Defendant*
*EXXON MOBIL CORPORATION*