1    Theodore J. Boutrous, Jr. (SBN 132099)
        tboutrous@gibsondunn.com
2    Andrea E. Neuman (SBN 149733)
        aneuman@gibsondunn.com
3    William E. Thomson (SBN 187912)
        wthomson@gibsondunn.com
4    Ethan D. Dettmer (SBN 196046)
        edettmer@gibsondunn.com
5    Joshua S. Lipshutz (SBN 242557)
        jlipshutz@gibsondunn.com
6    GIBSON, DUNN & CRUTCHER LLP
     333 South Grand Avenue
7    Los Angeles, CA 90071
     Telephone:  213.229.7000
8    Facsimile:  213.229.7520

9    Herbert J. Stern (*pro hac vice*)
        hstern@sgklaw.com
10   Joel M. Silverstein (*pro hac vice*)
        jsilverstein@sgklaw.com
11   STERN & KILCULLEN, LLC
     325 Columbia Turnpike, Suite 110
12   Florham Park, NJ 07932-0992
     Telephone:  973.535.1900
13   Facsimile:  973.535.9664

Neal S. Manne (SBN 94101)
    nmanne@susmangodfrey.com
Johnny W. Carter (*pro hac vice*)
    jcarter@susmangodfrey.com
Erica Harris (*pro hac vice* pending)
    eharris@susmangodfrey.com
Steven Shepard (*pro hac vice*)
    sshepard@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  713.651.9366
Facsimile:  713.654.6666

14   *Attorneys for Defendant Chevron Corporation*
     [*Additional Counsel Listed on Signature Page*]

15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                  **SAN FRANCISCO DIVISION**

18   CITY OF OAKLAND, a Municipal          First Filed Case:  No. 3:17-cv-6011-WHA
     Corporation, and THE PEOPLE OF THE    Related Case:      No. 3:17-cv-6012-WHA
19   STATE OF CALIFORNIA, acting by and
     through Oakland City Attorney,
20
                                           **DEFENDANTS' MOTION TO DISMISS**
21          Plaintiff and Real Party in    **FIRST AMENDED COMPLAINTS;**
            Interest,                       **MEMORANDUM OF POINTS AND**
22                                          **AUTHORITIES**
            v.
23                                          Case No. 3:17-cv-6011-WHA
     BP P.L.C., a public limited company of
24   England and Wales, CHEVRON            <u>HEARING</u>
     CORPORATION, a Delaware corporation,
25   CONOCOPHILLIPS, a Delaware corporation, DATE: MAY 24, 2018
     EXXON MOBIL CORPORATION, a New
26   Jersey corporation, ROYAL DUTCH SHELL TIME: 8:00 A.M.
     PLC, a public limited company of England and
27   Wales, and DOES 1 through 10,         LOCATION: COURTROOM 12, 19TH FLOOR

28          Defendants.                    THE HONORABLE WILLIAM H. ALSUP

| | |
|---|---|
| 1 | CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and |
| 2 | THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San |
| 3 | Francisco City Attorney DENNIS J. HERRERA, |
| 4 | |
| 5 | Plaintiff and Real Party in Interest, |
| 6 | v. |
| 7 | BP P.L.C., a public limited company of England and Wales, CHEVRON |
| 8 | CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, |
| 9 | EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL |
| 10 | PLC, a public limited company of England and Wales, and DOES 1 through 10, |
| 11 | |
| 12 | Defendants. |

Case No. 3:17-cv-6012-WHA

Gibson, Dunn & Crutcher LLP

# NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, THE CLERK, AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on May 24, 2018, in the United States District Court, Northern District of California, San Francisco Courthouse, Courtroom 12 - 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William Alsup, Defendants BP p.l.c., Chevron Corporation, ConocoPhillips, Exxon Mobil Corporation, and Royal Dutch Shell plc (collectively, "Defendants") will and hereby do move this Court to dismiss these related actions for failure to state a claim.[1]

These actions should be dismissed because Plaintiffs have failed to state a claim for relief under federal common law.  In addition, Plaintiffs' claims are barred by the foreign affairs doctrine, the Commerce Clause, the Due Process Clause, and the First Amendment; because Plaintiffs have failed to sufficiently allege causation; and for other reasons set forth below.  This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the Motion, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

This motion is submitted subject to and without waiver of any defense, affirmative defense, or objection, including personal jurisdiction, insufficient process, or insufficient service of process.

---

[1] Defendants BP p.l.c., ConocoPhillips, Exxon Mobil Corporation, and Royal Dutch Shell plc have simultaneously moved to dismiss the Complaints for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and/or insufficiency of service of process under Fed. R. Civ. P. 12(b)(5).  Their joinder in this motion is subject to, and without waiver of, those additional defenses.

April 19, 2018

Respectfully submitted,

By: **/s/ Jonathan W. Hughes

By: /s/ Theodore J. Boutrous

Jonathan W. Hughes (SBN 186829)
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
E-mail: jonathan.hughes@apks.com

Matthew T. Heartney (SBN 123516)
John D. Lombardo (SBN 187142)
ARNOLD & PORTER KAYE SCHOLER
LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
E-mail: matthew.heartney@apks.com
E-mail: john.lombardo@apks.com

Philip H. Curtis (pro hac vice)
Nancy Milburn (pro hac vice)
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8383
Facsimile: (212) 715-1399
E-mail: philip.curtis@apks.com
E-mail: nancy.milburn@apks.com

Attorneys for Defendant
BP P.L.C.

Theodore J. Boutrous, Jr. (SBN 132099)
Andrea E. Neuman (SBN 149733)
William E. Thomson (SBN 187912)
Ethan D. Dettmer (SBN 196046)
Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
E-mail: tboutrous@gibsondunn.com
E-mail: aneuman@gibsondunn.com
E-mail: wthomson@gibsondunn.com
E-mail: edettmer@gibsondunn.com
E-mail: jlipshutz@gibsondunn.com

Herbert J. Stern (pro hac vice)
Joel M. Silverstein (pro hac vice)
STERN & KILCULLEN, LLC
325 Columbia Turnpike, Suite 110
Florham Park, NJ 07932-0992
Telephone: (973) 535-1900
Facsimile: (973) 535-9664
E-mail: hstern@sgklaw.com
E-mail: jsilverstein@sgklaw.com

Neal S. Manne (SBN 94101)
Johnny W. Carter (pro hac vice)
Erica Harris (pro hac vice)
Steven Shepard (pro hac vice)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
E-mail: nmanne@susmangodfrey.com
E-mail: jcarter@susmangodfrey.com
E-mail: eharris@susmangodfrey.com
E-mail: sshepard@susmangodfrey.com

Attorneys for Defendant
CHEVRON CORPORATION

| | |
|---|---|
| By: **/s/ *Megan R. Nishikawa* | By: **/s/ *Dawn Sestito* |

Megan R. Nishikawa (SBN 271670)
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: mnishikawa@kslaw.com

George R. Morris (SBN 249930)
KING & SPALDING LLP
601 S. California Ave, Suite 100
Palo Alto, CA 94304
Telephone: (650) 422-6718
Facsimile: (650) 422-6800
Email: gmorris@kslaw.com

Tracie J. Renfroe (*pro hac vice*)
Carol M. Wood (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
Email: trenfroe@kslaw.com
Email: cwood@kslaw.com

Justin A. Torres (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Telephone: (202) 737 0500
Facsimile: (202) 626 3737
Email: jtorres@kslaw.com

*Attorneys for Defendant*
*CONOCOPHILLIPS*

M. Randall Oppenheimer (SBN 77649)
Dawn Sestito (SBN 214011)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-Mail: roppenheimer@omm.com
E-Mail: dsestito@omm.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jaren E. Janghorbani (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
E-Mail: twells@paulweiss.com
E-Mail: dtoal@paulweiss.com
E-Mail: jjanghorbani@paulweiss.com

*Attorneys for Defendant*
*EXXON MOBIL CORPORATION*

By: **/s/ Daniel P. Collins_____

Daniel P. Collins (SBN 139164)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
E-mail: daniel.collins@mto.com

Jerome C. Roth (SBN 159483)
Elizabeth A. Kim (SBN 295277)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
E-mail: jerome.roth@mto.com
E-mail: elizabeth.kim@mto.com

David C. Frederick (pro hac vice)
Brendan J. Crimmins (pro hac vice)
Kellogg, Hansen, Todd,
Figel & Frederick, PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
E-mail: dfrederick@kellogghansen.com
E-mail: bcrimmins@kellogghansen.com

*Attorneys for Defendant
ROYAL DUTCH SHELL PLC*

** Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 4

     A.     The Answers to the Court's Questions Highlight Significant Flaws in Plaintiffs' Claims ........................................................................................ 4

     B.     Plaintiffs' Federal Common Law Claims Have Either Been Displaced by Congress or Are Plainly Improper Under Federal Common Law Standards ................ 8

         1.     Plaintiffs' claims asserting injury based on domestic greenhouse-gas emissions are displaced by the Clean Air Act ................................................ 8

         2.     Plaintiffs' claims are not cognizable under federal common law to the extent they are based on foreign emissions ...................................... 11

         3.     Congress has displaced any conceivable federal common law nuisance claim based on the domestic production of fossil fuels ................................. 13

         4.     Plaintiffs have no conceivable federal common law nuisance claim based on "promotion" of lawful products .................................... 14

     C.     Plaintiffs Have Failed to Plead Viable Claims .......................................... 16

         1.     Defendants' conduct is authorized and encouraged by law and therefore cannot be a nuisance ...................................................... 16

         2.     Plaintiffs have not alleged that Defendants had sufficient control over the product allegedly causing the public nuisance .............................. 18

         3.     Plaintiffs cannot prove that Defendants' conduct caused their alleged injuries ................................................................................................ 19

         4.     The relief Plaintiffs seek is unavailable and would be unconstitutional ......... 22

     D.     Plaintiffs' Claims Violate the Separation of Powers ................................. 23

III.     CONCLUSION ................................................................................................. 25

Gibson, Dunn &
Crutcher LLP

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988) .................................................................................................6

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011) ........................................................................................ *passim*

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ...............................................................................................24

*Amigos Bravos v. U.S. Bureau of Land Mgmt.*,
    816 F. Supp. 2d 1118 (D.N.M. 2011) ...........................................................20, 22

*Benefiel v. Exxon Corp.*,
    959 F.2d 805 (9th Cir. 1992)...................................................................................21

*Benz v. Compania Naviera Hidalgo, S.A.*,
    353 U.S. 138 (1957) ...............................................................................................12

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996)..........................................................................................22, 25

*Boyle v. United Tech. Corp.*,
    487 U.S. 500 (1988) ...............................................................................................16

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ...................................................................................................15

*California v. Gen. Motors Corp.*,
    2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) ........................................5, 12, 24, 25

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3rd Cir. 2001) ............................................................................4, 18

*Citizens United v. FEC*,
    558 U.S. 310 (2010).................................................................................................15

*City of Chi. v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ..................................................................................20

*City of Chicago v. Am. Cyanamid Co.*,
    355. Ill. App. 3d 209 (2005)......................................................................................4

*City of Manchester v. Nat'l Gypsum Co.*,
    637 F. Supp. 646 (D.R.I. 1986)..............................................................................18

*City of Milwaukee v. Illinois*,
  451 U.S. 304 (1981) ........................................................................................8, 10

*City of Phila. v. Beretta U.S.A., Corp.*,
  126 F. Supp. 2d 882 (E.D. Pa. 2000) ..................................................................4

*City of San Jose v. Monsanto Co.*,
  231 F. Supp. 3d 357 (N.D. Cal. 2017) ...............................................................19

*Comer v. Murphy Oil USA, Inc.*,
  839 F. Supp. 2d 849 (S.D. Miss. 2012)......................................................5, 22, 24

*Commonwealth Edison Co. v. United States*,
  271 F.3d 1327 (Fed. Cir. 2001) .........................................................................17

*Connecticut v. Am. Elec. Power Co.*,
  582 F.3d 309 (2d Cir. 2009) ..............................................................................16

*N. Carolina, ex rel. Cooper v. Tenn. Valley Auth.*,
  615 F.3d 291 (4th Cir. 2010)................................................................16, 17, 18

*Corp. of Mercer Univ. v. Nat'l Gypsum Co.*,
  1986 WL 12447 (M.D. Ga. 1986) .......................................................................4

*County of Johnson, Tenn. v. U.S. Gypsum Co.*,
  580 F. Supp. 284 (E.D. Tenn. 1984) ..................................................................4

*County of San Mateo v. Chevron Corp.*,
  No. 17-cv-04929, ECF No. 223 (N.D. Cal. Mar. 16, 2018).................................2

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..........................................................................................23

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980) ..........................................................................................23

*Dina v. People ex rel. Dep't of Transp.*,
  151 Cal. App. 4th 1029 (2007) ..........................................................................17

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ............................................................................................6

*Eastern Enterprises v. Apfel*,
  524 U.S. 498 (1998) ..........................................................................................23

*In re Exxon Valdez*,
  270 F.3d 1215 (9th Cir. 2001) ...........................................................................19

*Farmers Ins. Exch. v. State of Cal.*,
  175 Cal. App. 3d 494 (1985) .............................................................................18

Gibson, Dunn & Crutcher LLP

*Foley Bros. v. Filardo*,
    336 U.S. 281 (1949) ................................................................................................12

*Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters*,
    61 F. Supp. 2d 740 (S.D. Ohio 1999) .....................................................................23

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ................................................................................16

*Int'l Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ..................................................................................10, 16, 24

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
    478 U.S. 221 (1986) ................................................................................................23

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013) ................................................................................................12

*Korsinsky v. U.S. E.P.A.*,
    2005 WL 2414744 (S.D.N.Y. Sept. 29, 2005) ..........................................................5

*Kurns v. R.R. Friction Prods. Corp.*,
    565 U.S. 625 (2012) ................................................................................................25

*La. Pub. Serv. Comm'n v. Tex. & N.O.R. Co.*,
    284 U.S. 125 (1931) ................................................................................................25

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007) ...........................................................................4, 5, 18, 22

*Maine Yankee Atomic Power Co. v. United States*,
    44 Fed. Cl. 372 (1999) ...........................................................................................23

*Manistee Town Ctr. v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000) ..................................................................................6

*McCulloch v. Sociedad Nacional de Marineros de Honduras*,
    372 U.S. 10 (1963) ..................................................................................................12

*In re Methyl Tertiary Butyl Ether* ("*MTBE*")
    *Prod. Liab. Litig.*, 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ......................................4

*Michigan v. U.S. Army Corps of Engineers*,
    667 F.3d 765 (7th Cir. 2011) ..................................................................................22

*Middlesex Cty. Sewerage Auth. v. Nat'l Ass'n Sea Clammers*,
    453 U.S. 1 (1981) ....................................................................................................22

*Missouri v. Illinois*,
    180 U.S. 208 (1901) ................................................................................................12

*Mobil Oil Corp. v. Higginbotham*,
    436 U.S. 618 (1978) ........................................................................................14

*Morrison v. Nat'l Australia Bank*,
    561 U.S. 247 (2010) ....................................................................................9, 12

*N.Y. Cent. R. Co. v. Chisholm*,
    268 U.S. 29 (1925) ..........................................................................................12

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ........................................................................................15

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ..........................................................................................7

*Nat'l Sea Clammers Ass'n v. City of New York*,
    616 F.2d 1222 (3d Cir. 1980) ..........................................................................16

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009) ..................................................... *passim*

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012) ................................................................. *passim*

*New W., L.P. v. City of Joliet*,
    491 F.3d 717 (7th Cir. 2007) ............................................................................6

*Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris Inc.*,
    185 F.3d 957 (9th Cir. 1999) ..........................................................................20

*Osborn v. Irwin Mem'l Blood Bank*,
    5 Cal. App. 4th 234 (1992) ..............................................................................19

*People v. ConAgra Groc. Prods. Co.*,
    17 Cal. App. 5th 51 (2017) .........................................................................4, 18

*Peterson v. Islamic Rep. of Iran*,
    758 F.3d 185 (2d Cir. 2014) ............................................................................23

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986) ........................................................................................15

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ........................................................................................15

*S.F. Chapter of A. Philip Randolph Inst. v. U.S. E.P.A.*,
    2008 WL 859985 (N.D. Cal. Mar. 28, 2008) ....................................................5

*Sale v. Haitian Ctrs. Council, Inc.*,
    509 U.S. 155 (1993) ........................................................................................12

*Schweiker v. Chilicky,*
    487 U.S. 412 (1988) ........................................................................................23

*Sierra Club v. Butz,*
    349 F.Supp. 934 (N.D. Cal. 1972) ................................................................6

*Sierra Club v. U.S. Def. Energy Support Ctr.,*
    2011 WL 3321296 (E.D. Va. July 29, 2011) .........................................20, 22

*Smith v. United States,*
    507 U.S. 197 (1993) ........................................................................................12

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ........................................................................................15

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004) ........................................................................................11

*Spitzer v. Sturm Ruger & Co., Inc.,*
    761 N.Y.S.2d 192 (N.Y. App. Div. 2003) ...............................................4, 21

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
    538 U.S. 408 (2003) ........................................................................................22

*State v. Lead Indus. Ass'n, Inc.,*
    951 A.2d 428 (R.I. 2008) .............................................................................4, 18

*Texas Indus., Inc. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981) .....................................................................................2, 10

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.,*
    984 F. 2d 915 (8th Cir. 1993) ......................................................................4, 18

*Tuosto v. Philip Morris USA Inc.,*
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...............................................6

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965) ..........................................................................................6

*United States v. Pink,*
    315 U.S. 203 (1942) ........................................................................................24

*United States v. Standard Oil Co.,*
    332 U.S. 301 (1947) ........................................................................................10

*Varjabedian v. City of Madera,*
    20 Cal. 3d 285 (1977) ....................................................................................17

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.,*
    858 F.2d 1075 (5th Cir. 1988) .........................................................................6

*Vieth v. Jubelirer,*
    541 U.S. 267 (2004) ........................................................................................................25

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ........................................................................................6

**Statutes**

15 U.S.C. § 45 ........................................................................................................................14

15 U.S.C. § 77a *et seq.* ..........................................................................................................15

15 U.S.C. § 78a *et seq* ...........................................................................................................15

15 U.S.C. § 717c-1 .................................................................................................................14

16 U.S.C. § 1451 ....................................................................................................................13

26 U.S.C. § 263 ......................................................................................................................13

26 U.S.C. § 613A ....................................................................................................................13

26 U.S.C. § 617 ......................................................................................................................13

30 U.S.C. § 21a ......................................................................................................................13

42 U.S.C. § 7411 ....................................................................................................................16

42 U.S.C. § 13401 ..............................................................................................................13, 16

42 U.S.C. § 13411 ..............................................................................................................13, 16

42 U.S.C. § 13412 ..............................................................................................................13, 16

42 U.S.C. § 13415 ..............................................................................................................13, 16

42 U.S.C. § 15903 ..............................................................................................................13, 16

42 U.S.C. § 15904 ..............................................................................................................13, 16

42 U.S.C. § 15909 ..............................................................................................................13, 16

42 U.S.C. § 15910 ..............................................................................................................13, 16

42 U.S.C. § 15927 ..................................................................................................................13

42 U.S.C. § 17301 ..................................................................................................................14

43 U.S.C. § 1701 ....................................................................................................................13

Cal. Bus. & Prof. Code § 13410 ..............................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

Cal. Bus. & Prof. Code § 13441 ........................................................................18

Cal. Pub. Res. Code § 3106 ............................................................................17

Cal. Pub. Res. Code § 6815.1 .........................................................................18

Cal. Pub. Util. Code § 785 ..............................................................................17

Cal. Sts. & High. Code § 2105 ........................................................................18

Clean Air Act ...................................................................................................25

Oakland Mun. Code § 9.32.030 ......................................................................18

Oakland Mun. Code § 17.10.470 ....................................................................18

San Francisco Plannning Code, art. 12 ...........................................................18

**Other Authorities**

*Energy Policy Act of 2005: Hearings Before the Subcomm. on Energy & Air Quality
of the H. Comm. on Energy & Commerce*, 109th Cong. (2005) ....................24

*Hearing Before the Subcomm. on Toxic Substances & Envtl. Oversight of the S.
Comm. on Env't & Pub. Works*, 99th Cong. 2 (1985) ...................................24

*Hearings Before the S. Comm. on Energy & Nat. Res.*, 102d Cong. 208 (1992) ..............................24

*Hearings Before the Subcomm. on Envtl. Pollution of the S. Comm. on Env't & Pub.
Works*, 99th Cong. (1986) ..............................................................................24

*National Climate Program Act: Hearing Before the Subcomm. on the Env't & the
Atmosphere of the H. Comm. on Sci. & Tech.*, 94th Cong. 29 (1976) ...........24

**Treatises**

Dan B. Dobbs et al., Dobbs' Law of Torts § 185 (2d ed.) ..............................19

Restatement (Second) of Torts § 431...........................................................19, 21

Restatement (Second) of Torts § 432............................................................3, 19

Restatement (Second) of Torts § 433................................................................21

Restatement (Second) of Torts § 821B ..................................................3, 16, 17, 22

Restatement (Second) of Torts § 821C ............................................................22

**Regulations**

16 C.F.R. § 260.4 .............................................................................................14

Gibson, Dunn &
Crutcher LLP

16 C.F.R. § 317.3 ...................................................................................................................14

17 C.F.R. § 240.10b-5 ............................................................................................................15

74 Fed. Reg. 66,496 (Dec. 15, 2009) ....................................................................................24

75 Fed. Reg. 25,324 (May 7, 2010) .......................................................................................24

76 Fed. Reg. 48,758 (Aug. 9, 2011) ......................................................................................24

Cal. Code Regs. tit. 14, § 1740.5 ...........................................................................................18

Cal. Code Regs. tit. 14, § 18621 ............................................................................................18

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs seek to hold five publicly traded energy companies liable for the impacts of "the national and international phenomenon of global warming," including "the melting of the ice caps, the rising of the oceans, and the inevitable flooding of coastal lands." No. 17-cv-06011, ECF No. 134 at 3, 5. Although Plaintiffs initially tried to label their claims as arising under state law, and although Plaintiffs' amended Complaint purports to assert claims under both state and federal law, this Court properly held that their claims necessarily arise—if at all—*only* under federal common law. This is so because "the scope of the worldwide predicament [of climate change] demands the most comprehensive view available," which here "means our federal courts and our federal common law." *Id.* at 5. The Court cautioned, however, that "[t]his is not to say that the ultimate answer under our federal common law will favor judicial relief." *Id.* In fact, Plaintiffs have not stated viable federal common law claims for public nuisance for several reasons.

*First*, there is no federal common law remedy for Plaintiffs' claims, both because Congress has eliminated any such remedy with respect to domestic activities by "speak[ing] directly to the question at issue," *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) ("*AEP*") (quotation marks and citation omitted), and because federal common law principles do not grant Plaintiffs a cause of action for foreign activities. There is no question that Plaintiffs' claims would be displaced if they were based solely and directly on domestic greenhouse gas emissions—the Supreme Court, Ninth Circuit, and this Court have all held so, and Plaintiffs have admitted as much. *See id.*; *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 856–57 (9th Cir. 2012); No. 17-cv-06011, ECF No. 134 at 7; ECF No. 108 at 2 (admitting that "the Clean Air Act displaces the federal common law of interstate pollution"). As this Court recognized, however, Plaintiffs seek to evade *AEP* and *Kivalina* by "fixat[ing] on an earlier moment in the train of industry, the earlier moment of production and sale of fossil fuels, not their combustion." ECF No. 134 at 6. As a result of such creative pleading, this Court expressed its view that "*AEP* and *Kivalina* . . . did not recognize the displacement of the federal common law claims raised here." *Id*.

But even though *AEP* and *Kivalina* may not have addressed the precise claims at issue here,

Plaintiffs' claims are nevertheless displaced because they ultimately turn on the alleged harm caused by domestic fossil fuel *emissions*.  After all, Plaintiffs do not assert that the mere extraction or sale of fossil fuels created the alleged nuisance (nor could they), but rather that the *combustion* of fossil fuels by third-party users—such as Plaintiffs themselves—causes global warming and rising seas.  The Court would thus need to find that greenhouse gas emissions are themselves a public nuisance—*i.e.*, that they unreasonably interfere with a public right—before it could assess the reasonableness of Defendants' alleged conduct.  But that is the precise determination that Congress has taken away from federal courts and given to the Environmental Protection Agency ("EPA").  *See AEP*, 564 U.S. at 428; *Kivalina*, 696 F.3d at 857; *see also County of San Mateo v. Chevron Corp.*, No. 17-cv-04929, ECF No. 223 at 2 (N.D. Cal. Mar. 16, 2018) ("[*AEP*] did not confine its holding about the displacement of federal common law to particular sources of emissions, and *Kivalina* did not apply [*AEP*] in such a limited way.").  In any event, even when Plaintiffs' claims are construed as targeting fossil fuel production and promotion, rather than emissions, they are still displaced by the many federal statutes that expressly regulate (and, in fact, encourage) such conduct.  In short, Plaintiffs cannot avoid the dispositive effects of *AEP* and *Kivalina* as to domestic activities.  As to Plaintiffs' claims based on foreign activities, federal common law principles do not support recognition of such an unprecedented cause of action, which would dramatically encroach upon policy judgments that are more appropriately made by Congress and the Executive.  And as to all claims, because the "nature of the controversy makes it inappropriate for state law to control," *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981), there is no remedy available for Plaintiffs' claims under federal or state law—leaving dismissal as the only option.

*Second*, Plaintiffs fail to plead the required elements of a federal common law claim for public nuisance in at least four respects.  (1) Plaintiffs have not alleged—and cannot allege—that Defendants' conduct was "unauthorized" by law.  To the contrary, the production of fossil fuels is specifically authorized and encouraged by numerous federal, state, and local laws.  (2) It is undisputed that Defendants did not control the fossil fuels at the time the alleged nuisance was created—*i.e.*, when the fuel was combusted—and thus cannot be held liable under black-letter nuisance law.  (3) The Amended Complaint itself makes plain that Defendants' alleged conduct is not the actual or

legal cause of Plaintiffs' purported injuries. Rather, Plaintiffs' claims depend on an attenuated causal chain including billions of intervening third parties—*i.e.*, fossil fuel users like Plaintiffs themselves—and complex environmental phenomena occurring worldwide over many decades. Because of the nature of the phenomena alleged, there is "no realistic possibility of tracing any particular alleged effect of global warming to any particular [action] by any specific person, entity, [or] group at any particular point in time." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 880 (N.D. Cal. 2009), *aff'd*, 696 F.3d 849 (9th Cir. 2012). Moreover, Plaintiffs do not (and cannot) allege that Defendants' actions, by themselves, were sufficient to cause the climate-related harms Plaintiffs assert here. Restatement (Second) of Torts § 432(1). (4) The "abatement fund" Plaintiffs request is simply damages by another name—*i.e.*, money they can spend on favored projects—and courts are permitted to award damages only for harm "actually incurred." Restatement § 821B, cmt. i. But Plaintiffs allege, at most, speculative future harms that may never occur. Plaintiffs' requested damages award would also violate Defendants' constitutional due process rights by imposing massive retroactive liability for conduct that was legal—in fact, encouraged—at the time it occurred (and still is today), as well as for protected First Amendment activities. In sum, Plaintiffs were correct when they conceded in their Motion to Remand that "[a]pplying federal common law to producer-based cases would extend the scope of federal nuisance law well beyond its original justification." ECF No. 64 at 9.

*Third*, even if Plaintiffs had managed to plead viable, non-displaced, federal common law claims (and they have not), judicial resolution would still be inappropriate because the relief Plaintiffs seek from this (or any other) Court would impermissibly invade the province of the federal Executive branch in conducting foreign affairs and intrude on the federal Legislative branch's constitutionally prescribed role in regulating interstate and foreign commerce, violating the U.S. Constitution's separation of powers. Plaintiffs' claims are thus inherently incapable of resolution by *any* court—federal or state—because there is no legal standard for adjudicating them.

At bottom, Plaintiffs seek to regulate the nationwide—indeed, worldwide—activity of companies that supply the fuels that enable production and innovation, literally keep the lights and heat on, power transportation, and form the basic materials for countless consumer products. Because such

claims contradict numerous federal statutes and raise myriad constitutional issues, they have been re-

peatedly rejected by U.S. courts.  The result here should be the same.

## II.    ARGUMENT

### A.    The Answers to the Court's Questions Highlight Significant Flaws in Plaintiffs' Claims

On March 27, 2018, this Court asked the parties to address four questions relevant to Defend-

ants' motion to dismiss for failure to state a claim.  ECF No. 192.  The answers to these questions

highlight Plaintiffs' failure to plead a viable nuisance claim—whether under federal or state law.

**1.** Defendants are not aware of *any* "state [or] federal court decisions sustaining a nuisance

theory of liability based on the otherwise lawful sale of a product where the seller financed and/or

sponsored research or advertising intended to cast doubt on studies showing that use of the product

would harm public health or the environment at large."  ECF No. 192 at 1.  Defendants have not

identified any cases squarely rejecting precisely such a theory of liability, but courts have rejected the

vast majority of cases where plaintiffs have alleged public nuisance claims based on the promotion

and sale of lawful products on various grounds.[2]  Moreover, *no court* has ever held that public nui-

sance claims based on the production or distribution of lawful products can proceed under federal

---

[2]  *See, e.g., Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539–540 (3d. Cir. 2001) (dismissing nuisance claim for lack of control and causation and holding "no New Jersey court has ever allowed a public nuisance claim against manufacturers for lawful products that are lawfully placed in the stream of commerce"); *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F. 2d 915, 920 (8th Cir. 1993) (dismissing nuisance claim and noting no "North Dakota case[] [has] extend[ed] the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance"); *City of Phila. v. Beretta U.S.A.*, Corp., 126 F. Supp. 2d 882, 909 (E.D. Pa. 2000) (holding that "products which function properly do not constitute a public nuisance"); *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 1986 WL 12447, *5–6 (M.D. Ga. 1986) (dismissing nuisance claim for lack of control); *County of Johnson, Tenn. v. U.S. Gypsum Co.*, 580 F. Supp. 284, 294 (E.D. Tenn. 1984) (same); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428,455–56 (R.I. 2008) (dismissing nuisance claim because defendants did not have "control over the product causing the alleged nuisance" at time of alleged injury and finding that "[t]he law of public nuisance never before has been applied to products, however harmful"); *In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) (dismissing nuisance claim for lack of control); *City of Chicago v. Am. Cyanamid Co.*, 355. Ill. App. 3d 209, 225 (2005) (dismissing nuisance claim for lack of proximate cause); *Spitzer v. Sturm Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 194-95 (N.Y. App. Div. 2003) ("The New York Court of Appeals has never recognized a common-law public nuisance cause of action based on allegations" of "manufacturing, distributing and marketing practices.").  *But see, In re Methyl Tertiary Butyl Ether* ("*MTBE*") *Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 628 (S.D.N.Y. 2001) (finding nuisance liability but not considering whether defendants financed or sponsored research to cast doubt on studies indicating that use of the lawful product might be harmful to public health or the environment); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51 (2017) (same).

common law. As this Court has recognized, Plaintiffs are seeking billions of dollars based on truly "novel theories of liability," ECF No. 134 at 5, and the Court should reject Plaintiffs' attempt to up-end hundreds of years of established nuisance law and "create a new and entirely unbounded tort antithetical to the meaning and inherent theoretical limitations of the tort of public nuisance." *In re Lead Paint Litig.*, 924 A.2d, 484, 494 (N.J. 2007).

2. This is not the first (or even the second or third) time a plaintiff has tried to plead global-warming-related nuisance claims. Similar claims have been considered, and dismissed, by courts around the country. The Supreme Court and the Ninth Circuit, for example, have both dismissed global-warming nuisance claims on the ground that the federal common law that would govern such claims has been displaced by the Clean Air Act. *See AEP*, 564 U.S. at 421–22; *Kivalina*, 696 F.3d at 855–57. A Mississippi district court dismissed similar global warming claims on multiple grounds, including that the claims were preempted by the Clean Air Act, that plaintiffs failed to plead proximate causation and lacked standing, and that the claims were nonjusticiable. *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 865 (S.D. Miss. 2012), *aff'd on other grounds*, 718 F.3d 460 (5th Cir. 2013). A decade ago, a judge in this District dismissed federal common law global-warming nuisance claims on the ground that the claims were not justiciable because adjudicating them would interfere with national environmental policy decisions. *California v. Gen. Motors Corp.*, 2007 WL 2726871, at *8, 15 (N.D. Cal. Sept. 17, 2007). This Court has also dismissed a nuisance claim in which the plaintiffs sought to enjoin a state agency from issuing a construction permit for power plants that would emit carbon dioxide, concluding that the claims were "unripe" and that "a nuisance claim cannot lie against a state agency that issues permits allowing the discharge of pollutants so long as the permits are issued pursuant to statutory authority." *S.F. Chapter of A. Philip Randolph Inst. v. U.S. E.P.A.*, 2008 WL 859985, at *2–5 (N.D. Cal. Mar. 28, 2008). Finally, a New York district court dismissed for lack of standing a nuisance claim alleging that the federal government was liable for failing to reduce carbon dioxide emissions causing global warming. *See Korsinsky v. U.S. E.P.A.*, 2005 WL 2414744, at *1–2 (S.D.N.Y. Sept. 29, 2005). In short, no global-warming-based nuisance claim has ever made it past the pleadings. This case should be no different.

3. The *Noerr-Pennington* doctrine, grounded in the First Amendment, immunizes lobbying

Gibson, Dunn & Crutcher LLP

activity from civil liability. *See E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965). Although the doctrine originated in the antitrust context, it is "no longer limited to . . . antitrust," *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000), and now "applies equally in all contexts," *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). *See also Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (applying doctrine to common-law tortious interference with contract claim); *Sierra Club v. Butz*, 349 F.Supp. 934, 938-39 (N.D. Cal. 1972) (applying *Noerr-Pennington* to a common-law contractual interference claim). The doctrine thus precludes liability based on "publicity campaign[s] directed at the general public, seeking legislation or executive action, . . . even when the campaign employs unethical and deceptive methods." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499–500 (1988); *see also Tuosto v. Philip Morris USA Inc.,* 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) ("*Noerr–Pennington* protection has been extended to all advocacy intended to influence government action, including to allegedly false statements"); *New W., L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) ("[T]he holding of *Noerr* is that lobbying is protected whether or not the lobbyist used deceit.").

Plaintiffs seek to hold Defendants liable for speech that is plainly immunized by *Noerr-Pennington*. For example, Plaintiffs allege that Defendants engaged in "large-scale, sophisticated advertising and communications campaigns . . . to portray fossil fuels as environmentally responsible and essential to human well-being." Oak. FAC ¶ 5. Plaintiffs also allege that Defendants have "sponsored communications campaigns . . . to deny and discredit the mainstream scientific consensus on global warming, downplay the risks of global warming, and even to launch unfounded attacks on the integrity of leading climate scientists." *Id.* ¶ 6; *see id.* ¶ 104. Although Plaintiffs assert that the "purpose" of these communication campaigns was simply "to increase sales and protect market share," *id.* ¶ 7, the alleged conduct—taken as true—describes an attempt to forestall regulation that would hinder fossil fuel production. Indeed, Plaintiffs allege that "[t]he campaign's purpose and effect has been to help Defendants *continue to produce fossil fuels* and sell their products on a massive scale." *Id.* ¶ 104 (emphasis added); *see id.* ¶ 109 (alleging that one Defendant used "front groups to create uncertainties about basic climate change science" to "bolster production of fossil fuels"). Plaintiffs

also target quintessential lobbying activity when they allege that Defendants produced "reports" claiming "that the costs of carbon dioxide reductions[] are 'ultimately born by consumers and taxpayers,' and "making the case for the necessary role of fossil fuels," *id.* ¶¶ 122, 123, for such communications are plainly directed to lawmakers.

Attempting to sidestep *Noerr-Pennington* immunity, Plaintiffs now disclaim any desire to impose "liability for lobbying activity," and assert that "to the extent any particular promotional activity might have had dual goals of both promoting a commercial product in the marketplace and influencing policy, Plaintiffs invoke such activities for the purpose of the former, not the latter, and/or as evidence relevant to show Defendants' knowledge of the dangerous nature of their products." Oak. FAC ¶ 11. But that is not how the First Amendment works. "[E]xpression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values,'" *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982) (citation omitted), and where a defendant engages in such "constitutionally protected activity"—such as advocating against regulation—the First Amendment prohibits liability based on that conduct *even if* that conduct had dual purposes, *id.* at 916–17. Because Plaintiffs' claims turn, in part, on speech immunized by *Noerr-Pennington*, they must be dismissed.

**4.** As the Court's final question suggests, Plaintiffs' expansive theory of liability has no limiting principle. Indeed, it would apply to any supplier or user of "carbon-based fuels" whether or not that supplier or user had questioned the science of global warming or sponsored research intending to question it. Crucially, Plaintiffs' theory is even more expansive than the Court's formulation, because Plaintiffs nowhere suggest that liability requires a showing that a fossil fuel supplier or user questioned the science of global warming. If causation can be established for Defendants, whose production of fuels is alleged to account collectively for only 11 percent of industrial-based fossil-fuel emissions, Oak. FAC ¶ 94(c), it can be established for any fossil fuel supplier or user, no matter how inconsequential its contribution to global emissions. And if Defendants can be held liable for allegedly questioning the prevailing climate science or seeking to present a different viewpoint, any supplier or user of fossil fuels who similarly questioned "the science of global warming" would be exposed to liability. ECF No. 192 at 2. The liability—and joinder—issues, are potentially limitless.

**B.** **Plaintiffs' Federal Common Law Claims Have Either Been Displaced by Congress or Are Plainly Improper Under Federal Common Law Standards**

As this Court held in its order denying Plaintiffs' motion to remand, "Plaintiffs' nuisance claims—which address the national and international geophysical phenomenon of global warming—are necessarily governed by federal common law." ECF No. 134 at 3. As the Court recognized, "the geophysical problem described by the complaints, a problem centuries in the making (and studying) with causes ranging from volcanoes, to wildfires, to deforestation to stimulation of other greenhouse gases," including "the combustion of fossil fuels," "cr[y] out for a uniform and comprehensive solution." *Id.* at 4–5. The Court cautioned, however, that "[t]his is not to say that the ultimate answer under our federal common law will favor judicial relief." *Id.* at 5.[3]

Federal common law does not provide relief here because, in addition to other defects, Plaintiffs' global warming-based tort claims—whether framed as targeting greenhouse gas emissions, oil and gas extraction and production, or fossil-fuel product promotion—have been displaced by federal statute. "Federal common law is a 'necessary expedient,' and when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears." *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981) (citation omitted). Accordingly, "federal common law does not provide a remedy" "when federal statutes directly answer the federal question." *Kivalina*, 696 F.3d at 856; *see also AEP*, 564 U.S. at 424 (the test is "simply whether the 'statute speaks directly to the question' at issue"). Here, many statutes speak directly to the issues raised by Plaintiffs' claims. And to the extent their claims are not displaced by statute, they contravene federal common law principles and must be dismissed.

**1.** **Plaintiffs' claims asserting injury based on domestic greenhouse-gas emissions are displaced by the Clean Air Act**

Seeking to avoid dismissal under *AEP* and *Kivalina*, Plaintiffs disclaim any attempt "to im-

---

[3] In their Amended Complaints, Plaintiffs plead a separate cause of action for "Federal Common Law of Public Nuisance," purportedly to "conform to the Court's ruling." Oak FAC ¶ 138. But the Court did not order Plaintiffs to add any such cause of action. Rather, the Court held that Plaintiffs' so-called *state law claims* were necessarily governed by federal common law. ECF No. 134 at 4–5. Accordingly, both the newly added federal common law claims and the original public nuisance claims nominally pleaded under state law, *see id.* ¶¶ 143–48, are governed by federal law.

pose liability on Defendants for their direct emissions of greenhouse gases," Oak. FAC ¶ 11, and instead purport to bring these "claims against defendants for having put fossil fuels into the flow of international commerce." ECF No. 134 at 7. But such artful pleading cannot save Plaintiffs' claims from dismissal. True, this Court's order denying remand stated that Plaintiffs' claims are not squarely governed by the displacement rulings in *AEP* and *Kivalina* because Plaintiffs purport to seek liability based on Defendants' production and promotion of fossil fuels, rather than on their emissions. ECF No. 134 at 6–7. But the question before the Court at that time was simply whether Plaintiffs' claims arose under federal common law, not whether those claims could be sustained. *See Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 254 (2010) (the question of subject matter jurisdiction is "quite separate from the question whether the allegations the plaintiff makes entitle him to relief"). Now that the issue of displacement is squarely presented, this Court should extend *AEP* and *Kivalina* to find displacement here as well.

The global warming-based "nuisance claims asserted in *Kivalina* and *AEP*" were displaced because the Clean Air Act "'spoke directly' to the issues presented—*domestic* emissions of greenhouse gases." ECF No. 134 at 7; *see AEP*, 564 U.S. at 424–26; *Kivalina*, 696 F.3d at 857. In *AEP*, the Supreme Court held that Congress had "displace[d] federal common law" by "delegat[ing] to [the] EPA the decision whether and how to regulate carbon-dioxide emissions." 564 U.S. at 426. The Court explained that, as a result, federal courts "have no warrant to employ the federal common law of nuisance to upset the agency's expert determination" regarding the reasonable level of greenhouse gas emissions. *Id.* Thus, there is no question that Plaintiffs' claims would be displaced if they had asserted that Defendants' domestic greenhouse gas emissions were the cause of the alleged public nuisance. *See* ECF No. 108 at 2 (admitting that "the Clean Air Act displaces the federal common law of interstate pollution"); ECF No. 134 at 6.

Yet, as this Court recognized, the injuries Plaintiffs allege arise (if at all) only because third-party *users* of fossil fuels emit greenhouse gases.[4] ECF No. 134 at 1 ("Plaintiffs allege that the combustion (by others) of fossil fuels produced by defendants has increased atmospheric levels of carbon

---

[4] *E.g.*, Oak. FAC ¶¶ 74 ("[W]hen used[,] . . . fossil fuels release greenhouse gases[.]"), 75 ("[U]se of

Gibson, Dunn &
Crutcher LLP

dioxide").  Plaintiffs' derivative theory of liability, in which Defendants are allegedly liable for ena-

bling *other* persons' excessive emissions, does not distinguish this case from *AEP* or *Kivalina*.  *Ki-*

*valina* expressly held that the plaintiff's derivative theory of liability—based on allegations that de-

fendants had "conspir[ed] to mislead the public about the science of global warming"—was "depend-

ent upon the success" of the underlying emissions-based theory of injury, and was therefore displaced

by the Clean Air Act.  696 F.3d at 854, 858.  So too here.  Before this Court could hold Defendants

liable for contributing to injuries allegedly caused by domestic greenhouse gas emissions, it would

need to conclude that such emissions actually caused a public nuisance.  But Congress has empow-

ered the EPA, not federal courts, to determine the appropriate level of greenhouse gas emissions.  *See*

*AEP*, 564 U.S. at 428.  In short, even though Plaintiffs "fixate[] on an earlier moment in the train of

industry," ECF No. 134 at 6, their nuisance claims necessarily implicate the reasonableness of do-

mestic emissions and thus "cannot be reconciled with the decisionmaking scheme Congress enacted,"

*AEP*, 564 U.S. at 429.  *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 495 (1987) (Plaintiffs may not

"do indirectly what they could not do directly").  Plaintiffs' claims are thus displaced insofar as they

are based on injuries allegedly caused by domestic emissions.

In denying Plaintiffs' motion to remand, this Court "presume[d] that when congressional ac-

tion displaces federal common law, state law becomes available to the extent it is not preempted by

statute."  ECF No. 134 at 6 (citing *AEP*, 564 U.S. at 429).  But when federal common law is dis-

placed by federal statute, state law does not simply spring into life.  To the contrary, federal common

law governs in the first place precisely because the "nature of the controversy makes it inappropriate

for state law to control."  *Texas Indus.*, 451 U.S. at 641; *see also Milwaukee*, 451 U.S. at 313 n.7

("[I]f federal common law exists, it is because state law cannot be used."); *United States v. Standard*

*Oil Co.*, 332 U.S. 301, 307 (1947) (explaining that federal law, not state law, must deal "with essen-

tially federal matters," but rejecting federal claim).  Accordingly, Plaintiffs' claims, which raise the

"sort of federal interests that necessitate a uniform solution," ECF No. 134 at 5, must be dismissed in

light of Congress's decision to displace the applicable federal common law.  *See Standard Oil*, 332

_____

fossil fuels emits carbon dioxide[.]"), 83 ("[E]emissions resulting from human activities are substan-
tially increasing . . . greenhouse gases[.]" (quotation omitted)), 88 (alleging "increase in atmospheric
carbon dioxide caused by the combustion of fossil fuels").

U.S. at 309–10 ("[S]tate law" cannot "control" where "the question is one of federal policy.").

      **2.**      **Plaintiffs' claims are not cognizable under federal common law to the extent they are based on foreign emissions**

To be sure, Plaintiffs' claims are not limited to "*domestic* emissions of greenhouse gases," but extend also to "foreign emissions [that] are out of the EPA and Clean Air Act's reach." ECF No. 134 at 7. But Plaintiffs' reliance on foreign emissions does not salvage their claims; it dooms them.

There is no precedent suggesting that federal common law provides a cause of action for injuries based on foreign emissions. The Supreme Court has identified several factors that counsel in favor of exercising great caution before recognizing novel causes of action under federal common law, *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and each of these factors strongly confirms that federal common law principles do not support recognition of a novel claim of worldwide global-warming nuisance. Such a novel tort would contravene the Supreme Court's admonitions that (1) courts should "look for legislative guidance before exercising innovative authority over substantive law"; (2) the "decision to create a private right of action is one better left to legislative judgment"; (3) courts should be wary of inferring a private cause of action in the international context given "the possible collateral consequences"; (4) "the potential implications for the foreign relations of the United States of recognizing such causes should make courts particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs"; and (5) courts "have no congressional mandate" to recognize extraterritorial claims because Congress has not "affirmatively encouraged" such "judicial creativity." *Id*. at 726–28 (applying such factors to federal common law recognition of claims under international norms). In view of these cautionary factors, Plaintiffs' effort to enlist the Court in regulating foreign emissions must be rejected. Where, as here, Congress has displaced domestic emissions claims precisely because "[f]ederal judges lack the scientific, economic, and technological resources an agency can utilize in coping with issues of this order," *AEP*, 564 U.S. at 428, it would profoundly disrespect that congressional judgment to conclude that courts may do *internationally* what they may not do domestically.

Moreover, the principles that underlie the Supreme Court's recognition of domestic federal common law nuisance claims do not justify recognition of comparable claims based on the *global* effects of *foreign* emissions. As the Supreme Court explained more than a century ago, the federal

Gibson, Dunn & Crutcher LLP

common law of nuisance was needed to resolve interstate pollution disputes because the states had "surrendered" "[d]iplomatic powers and the right to make war . . . to the general government." *Missouri v. Illinois*, 180 U.S. 208, 241 (1901) ("[A]n adequate remedy can only be found in this court" given "the nature of the injury complained of."). But there is no similar justification for recognizing federal common law global-warming claims based on foreign sources of pollution. The federal government, not the states, is the appropriate entity to address issues involving foreign nations, and the Constitution gives the political branches exclusive authority to address foreign sources of pollution. *Gen. Motors*, 2007 WL 2726871, at *16; *Kivalina*, 663 F. Supp. 2d at 876–77.

The primacy of the political branches in regulating foreign conduct is reflected in the "presumption against extraterritorial application," a canon of statutory interpretation that provides that "'when a statute gives no clear indication of an extraterritorial application, it has none.'" *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (brackets omitted) (quoting *Morrison*, 561 U.S. at 255).[5] This canon "'reflects the 'presumption that United States law governs domestically but does not rule the world,''" and it "'serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.'" *Id.* The presumption also "helps ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches." *Id.* at 116. Thus, before federal courts "run interference" in the "delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed," because Congress "alone has the facilities necessary to make [such] important policy decision[s] where the possibilities of international discord are so evident and retaliative action so certain." *Benz*, 353 U.S. at 147. These concerns militate strongly against recognizing a federal common law action based on overseas fossil fuel extraction

---

[5] The Supreme Court has applied the presumption to numerous federal statutes. *See, e.g.*, *Kiobel*, 569 U.S. at 124 (Alien Tort Statute); *Morrison*, 561 U.S. at 265 (Securities Exchange Act); *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993) (Immigration and Nationality Act); *Smith v. United States*, 507 U.S. 197, 204 (1993) (Federal Tort Claims Act); *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 19–20, 22 (1963) (National Labor Relations Act); *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 146–47 (1957) (Labor Management Relations Act); *Foley Bros. v. Filardo*, 336 U.S. 281, 285, 290–91 (1949) ("Eight Hour Law"); *N.Y. Cent. R. Co. v. Chisholm*, 268 U.S. 29, 32 (1925) (Federal Employers' Liability Act).

and emissions—conduct heavily regulated by foreign governments and critical to foreign econo-mies—without Congressional authorization.

Thus, to the extent Plaintiffs have alleged federal common law claims implicating domestic emissions, they are displaced, and to the extent they have alleged claims based on foreign emissions, there is no federal common law remedy at all. Either way, Plaintiffs' claims should be dismissed.

### 3. Congress has displaced any conceivable federal common law nuisance claim based on the domestic production of fossil fuels

Even framed as a case exclusively about oil and gas *production*, Plaintiffs' claims have been displaced by the numerous federal statutes that speak "directly" to the reasonableness of that conduct.

- The Energy Policy Act of 1992 provides that "[i]t is the goal of the United States in carrying out energy supply and energy conservation research and development . . . to strengthen national en-ergy security by reducing dependence on imported oil." 42 U.S.C. § 13401. The statute directs the Secretary of Energy "to increase the recoverability of domestic oil resources," *id.* § 13411(a), and to investigate "oil shale extraction and conversion" in order "to produce domestic supplies of liquid fuels from oil shale," *id.* § 13412. It authorizes a research center to "improve the efficiency of petroleum recovery," "increase ultimate petroleum recovery," and "delay the abandonment of resources" in certain parts of the United States. *Id.* § 13415(b)–(c).

- The Energy Policy Act of 2005 declared it "the policy of the United States that . . . oil shale, tar sands, and other unconventional fuels are strategically important domestic resources that should be developed to reduce the growing dependence of the United States on politically and economi-cally unstable sources of foreign oil imports," 42 U.S.C. § 15927, and offered financial incen-tives to fossil fuel producers to increase domestic fossil fuel production. *See, e.g.*, 42 U.S.C. §§ 15903, 15904, 15909(a), 15910(a)(2)(B).

- The Mining and Minerals Policy Act of 1970 proclaimed that "it is the continuing policy of the Federal Government in the national interest to foster and encourage . . . economic development of domestic mineral resources, reserves, and reclamation of metals and minerals to help assure satis-faction of industrial, security and environmental needs." 30 U.S.C. § 21a.

- The Coastal Zone Management Act of 1972 explained that "expanded energy activity" would fur-ther the "national objective of attaining a greater degree of energy self-sufficiency." 16 U.S.C. § 1451(j).

- The Federal Land Policy and Management Act of 1976 stated that "it is the policy of the United States that . . . the public lands be managed in a manner which recognizes the Nation's need for domestic sources of minerals . . . from the public lands." 43 U.S.C. § 1701(a)(12).

- And the federal tax code has a number of provisions that subsidize the extraction and refining ac-tivities of fossil fuel companies to encourage production and use. *See, e.g.*, 26 U.S.C. §§ 263(c), 613A(c)(1), and 617.

There can be no doubt that these statutes "speak[] directly to [the] question" at issue here, *see AEP*, 564 U.S. at 424—namely, whether fossil fuel production is excessive or unreasonable given the

Gibson, Dunn & Crutcher LLP

potential threat of global warming-related harms. Whereas Plaintiffs allege that Defendants' production of fossil fuels has created an "unreasonable" interference with public rights, Oak. FAC ¶¶ 140, 145, Congress has stated in no uncertain terms that fossil fuels are essential for national security and the economy, and it has used its power to subsidize and encourage their production. "[T]he court [is] not free to 'supplement' Congress' answer [such] that [these statutes] become[] meaningless." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978). Accordingly, Plaintiffs' federal common law claims are displaced.

### 4. Plaintiffs have no conceivable federal common law nuisance claim based on "promotion" of lawful products

Plaintiffs have also described their public nuisance claims as aimed (at least in part) at Defendants' promotion and marketing activities. *See, e.g.*, Oak. FAC ¶ 5; *see also id.* ¶¶ 103, 104. But any theory of public nuisance based on misleading "promotion" of a lawful product, one necessary to daily life, has been displaced because numerous federal statutes "speak directly" to the issue of misleading advertising.

Since the Federal Trade Commission Act was implemented in 1914, "unfair or deceptive acts or practices in or affecting commerce" have been "unlawful." 15 U.S.C. § 45(a)(1). The Federal Trade Commission has interpreted this Act to prohibit "misrepresent[ing], directly or by implication, that a product, package, or service offers a general environmental benefit." 16 C.F.R. § 260.4(a). More recently, Congress has enacted two pieces of legislation that speak directly to misrepresentation in the promotion of fossil fuels. The Energy Policy Act of 2005 states that "[i]t shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 717c-1. And the Energy Independence and Security Act of 2007 makes it "unlawful for any person, directly or indirectly, to use or employ, in connection with the purchase or sale of crude oil[,] gasoline or petroleum distillates at wholesale, any manipulative or deceptive device or contrivance." 42 U.S.C. § 17301. The Act's implementing regulations expressly outlaw "the making of any untrue statement of material fact . . . that operates or would operate as a fraud or deceit upon any person," as well as "[i]ntentionally fail[ing] to state a material fact that under the circumstances renders a statement made by such person misleading." 16 C.F.R. § 317.3. These statutes and regulations speak directly to Plaintiffs' allegation

that Defendants have misrepresented the environmental impacts of fossil fuels, and therefore displace Plaintiffs' federal common law cause of action.[6]

Moreover, Plaintiffs' promotion allegations are inimical to the First Amendment—a further reason that federal common law is unavailable. As part of their public nuisance claims, Plaintiffs allege that Defendants were "affirmative[ly] advertising . . . fossil fuels and downplaying global warming risks," conduct that allegedly "encouraged continued fossil fuel consumption at massive levels[.]" Oak. FAC ¶ 103. They also seek to punish Defendants for funding scientific research, "media attacks," and a newspaper editorial. *Id*. ¶¶ 109–116. But the federal common law of nuisance has *never* been used to punish a company for its speech. And for good reason—the speech that Plaintiffs seek to punish, whether commercial advertising or political discourse, is constitutionally protected. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481–82 (1995) (The First Amendment protects "the free flow of commercial information." (citation omitted)); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) ("A consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue."); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) ([T]here is "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"). Plaintiffs may disagree with the point of view allegedly expressed by some Defendants, but "[d]iscussion of public issues . . . [is] integral to the operation of [our] system of government," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976), and "the First Amendment stands against attempts to disfavor certain subjects or viewpoints," *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). Because Plaintiffs' requested remedy would have a "'chilling' effect . . . antithetical to the First Amendment's protection of true speech on matters of public concern," *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986), the federal common law cannot provide the remedy they seek.

In short, whether Plaintiffs' nuisance claims are based on domestic emissions, production, or promotion, they are squarely displaced by statute and must be dismissed, and to the extent that they

---

[6] To the extent Plaintiffs' claims are based on alleged misstatements to shareholders or the SEC, *see, e.g.*, Oak. FAC ¶¶ 115, 120–23, they are displaced by the securities laws, which comprehensively regulate corporate communications with investors and regulators. *See* 15 U.S.C. § 77a *et seq.*; *id.* § 78a *et seq.*; 17 C.F.R. § 240.10b-5.

Gibson, Dunn &
Crutcher LLP

are based on foreign conduct, Plaintiffs have no federal common law remedy at all.[7]

## C.    Plaintiffs Have Failed to Plead Viable Claims

Dismissal is also warranted because Plaintiffs have failed to state a claim for federal common law nuisance.  Federal common law has never been extended to the "novel theory" of derivative liability asserted by Plaintiffs here.  ECF No. 134 at 5; *see AEP*, 564 U.S. at 422 ("Nor have we ever held that a State may sue to abate any and all manner of pollution originating outside its borders.").  Indeed, Plaintiffs have conceded that "[a]pplying federal common law to producer-based cases would extend the scope of federal nuisance law well beyond its original justification."  ECF No. 81 at 9.  Plaintiffs' claims also fail because the allegedly tortious conduct has been authorized by statute; Defendants are not in control of fossil fuels when they are combusted; Plaintiffs cannot prove causation; and the requested relief is unavailable and unconstitutional.

### 1.    Defendants' conduct is authorized and encouraged by law and therefore cannot be a nuisance

Federal courts have largely adopted the Restatement's definition of public nuisance as "an unreasonable interference with a right common to the general public."  Restatement § 821B(1); *see Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 328 (2d Cir. 2009), *rev'd on other grounds*, 564 U.S. 410 (2011) ("[W]e apply the Restatement definition of public nuisance to the federal common law of nuisance[.]").[8]  A defendant's conduct cannot be deemed "unreasonable" when that conduct

---

[7] Even if Plaintiffs' putative state law claims were not governed by federal common law (which they are), they would be preempted by federal statutes for the reasons described above: *First,* Congress has occupied the field of nationwide greenhouse gas regulation through the Clean Air Act.  *See AEP*, 564 U.S. at 426 ("Congress delegated to EPA the decision whether and how to regulate carbon-dioxide emissions from power plants[.]"); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) ("field preemption" exists "where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy") *Second*, Plaintiffs claims are an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Gordon*, 575 F.3d at 1060 (describing "conflict preemption").  The "reasonableness" determination Plaintiffs ask this Court to make would interfere with EPA's ability to set nationwide emissions standards, *see* 42 U.S.C. § 7411(b)(1)(A), and frustrate Congress's objective of increasing fossil fuel extraction, *see, e.g.*, 42 U.S.C. §§ 13401, 13411, 13412, 13415, 15903, 15904, 15909, 15910.  Third, Plaintiffs' claims are preempted because they implicate "uniquely federal interests" "committed by the Constitution and laws of the United States to federal control."  *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988); *see also North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 303 (4th Cir. 2010) ("*Cooper*") (noting that the Supreme Court has "admonished against the 'tolerat[ion]' of 'common-law suits that have the potential to undermine [the federal] regulatory structure'" (quoting *Ouellette*, 479 U.S. at 497).

[8] *Nat'l Sea Clammers Ass'n v. City of New York*, 616 F.2d 1222, 1234 (3d Cir. 1980), *vacated on*

has been expressly sanctioned by statute, for it is well established that, even where "it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability." Restatement § 821B cmt. f; *see also id.* cmt. e.[9] "This is especially true 'where the conduct sought to be enjoined implicates the technically complex area of environmental law.'" *Cooper*, 615 F.3d at 309 (citation omitted). Courts have thus held that nuisance claims are precluded where a statute either (i) expressly authorizes the supposedly tortious conduct, or (ii) implicitly authorizes such conduct "from the powers expressly conferred." *See Varjabedian v. City of Madera*, 20 Cal. 3d 285, 291 (1977) (citation omitted).

As discussed above, numerous federal statutes authorize, encourage, and sometimes even require the production of fossil fuels. California law also authorizes and encourages Defendants' conduct. The Public Utilities Code, for example, mandates that the Public Utilities Commission "*shall . . . encourage, as a first priority, the increased production of gas in this state*[.]" Cal. Pub. Util. Code § 785 (emphasis added). California law also permits "the owners or operators of [] wells to utilize all methods and practices known to the oil industry for the purpose of increasing the ultimate recovery of underground hydrocarbons," and declares it the "policy of this state" to maximize fossil-fuel production. Cal. Pub. Res. Code § 3106(b); *id.* § 3106(d) (directing supervisor "to encourage the wise development of oil and gas resources."). The Code directs the Secretary of the Natural Resources Agency to conduct a "scientific study on well stimulation treatments" to determine where such "treatments are likely to spur or enable oil and gas exploration and production." *Id.* § 3160(a).

Numerous other statutes and regulations authorize the extraction, production, sale, and use of fossil fuels by necessary implication. For example, persons "engaged in the business of extracting oil or gas from lands within the state," are prohibited from "refus[ing] to sell to any city or county sufficient quantities of his or her motor vehicle fuels . . . sold during the normal course of business for the

---

*other grounds*, *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981) ("[W]e are convinced that the Court would . . . look to the Restatement formulation as an appropriate source for a federal rule."); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1353 (Fed. Cir. 2001) (looking to Restatement for contours and scope of common law nuisance).

[9] *See also Cooper*, 615 F.3d at 309 ("Courts traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government.") (citation omitted); *Dina v. People ex rel. Dep't of Transp.*, 151 Cal. App. 4th 1029, 1052–53 (2007).

Gibson, Dunn &
Crutcher LLP

essential services provided by the city or county." Cal. Bus. & Prof. Code § 13410(a).[10] Because these laws implicitly authorize the conduct challenged by Plaintiffs, Defendants' extraction and production of fossil fuels "cannot be a public nuisance." *See Cooper*, 615 F.3d at 309–10 (holding that TVA's energy-generating operations could not be a nuisance because they were permitted by statute); *Farmers Ins. Exch. v. State of Cal.*, 175 Cal. App. 3d 494, 503 (1985) (release of chemicals into the atmosphere that damaged property was not a nuisance because it was authorized to prevent pests).[11]

### 2. Plaintiffs have not alleged that Defendants had sufficient control over the product allegedly causing the public nuisance

Most courts, including many that expressly rely on the Restatement, have held that an indispensable element of a public nuisance claim is that the defendant "have *control* over the instrumentality causing the alleged nuisance *at the time the damage occurs*." *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008); *id.* at 448–53 (relying on Restatement to dismiss public nuisance claims against the manufacturers of lead paint because plaintiffs failed to allege "that defendants had control over the lead pigment at the time it caused harm to children"); *In re Lead Paint Litig.*, 924 A.2d at 498–99 (relying on the Restatement to conclude that "a public nuisance, by definition, is related to conduct, performed in a location within the actor's control, which has an adverse effect on a common right").[12] This is because "liability for damage caused by a nuisance turns on whether the defendant is in control of the instrumentality alleged to constitute a nuisance, *since without control a defendant cannot abate the nuisance*." *Tioga Pub. Sch. Dist. No. 15 of Williams Cty., N.D. v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (emphasis added); *see also Nat'l Gypsum Co.*, 637 F. Supp. at 656 ("[A] basic element of the tort of nuisance is absent" because, "after the time of manufacture and sale, [defendants] no longer had the power to abate the nuisance").

---

[10] *See also* Cal. Pub. Res. Code § 6815.1; Cal. Bus. & Prof. Code § 13441; Cal. Sts. & High. Code § 2105; Cal. Code Regs. tit. 14, §§ 1740.5, 18621.

[11] Plaintiffs' *own laws* also authorize the very activities that they now label a nuisance. Oakland permits businesses such as "gas generating plant[s] [and] compressor plant[s]," *see* Oakland Mun. Code § 9.32.030, and those involved in the "sale of petroleum products," *see id.* § 17.10.470, to operate within the city. Similarly, San Francisco's Planning Code specifically envisions using land for "oil and gas exploration, development and processing." *See* San Francisco Planning Code, art. 12.

[12] *See City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540–41 (3rd Cir. 2001). Certain California courts, however, have abandoned the "control" requirement for public nuisance claims under California law. *People v. ConAgra Groc. Prods. Co.*, 17 Cal. App. 5th 51, 162–65 (2017).

Plaintiffs assert that their alleged damages were "caused by the combustion of fossil fuels," which emit carbon dioxide and other greenhouse gases, contributing to increased global temperatures. Oak. FAC ¶ 88. But far from alleging that Defendants had control over fossil fuel products at the time of combustion, Plaintiffs concede that the "*use of fossil fuel*" by others—not the Defendants' alleged extraction, production, and promotion—"is the primary source of greenhouse gas pollution that causes global warming." *Id.* ¶ 2 (emphasis added). Because Plaintiffs base their claims on Defendants' production, marketing, and sale of fossil fuels, and *not* on Defendants' use thereof or emissions, Plaintiffs have not alleged (and cannot allege) that Defendants had control over the products at the time these products allegedly created the nuisance. *See* Remand Hr'g Tr. 25:19–21 ("[O]ur claim is about the selling of products and the improper promotion of products[.]").

### 3. Plaintiffs cannot prove that Defendants' conduct caused their alleged injuries

"Causation is a necessary element of a public nuisance claim." *City of San Jose v. Monsanto Co.*, 231 F. Supp. 3d 357, 363 (N.D. Cal. 2017); *In re Exxon Valdez*, 270 F.3d 1215, 1253 (9th Cir. 2001). But causation does not include every event "without which any happening would not have occurred." Restatement § 431 cmt. a. To distinguish those causal factors for which a defendant may be held liable from the multitude of factors giving rise to any given event, courts generally require a plaintiff to prove that the defendant's conduct was both the "cause in fact" and the "proximate" cause of the alleged injury. *Osborn v. Irwin Mem'l Blood Bank*, 5 Cal. App. 4th 234, 252 (1992); *see* Dan B. Dobbs et al., Dobbs' Law of Torts § 185 (2d ed.). Plaintiffs cannot prove either element.

With respect to cause in fact, the Restatement has adopted the "substantial factor" test, under which an act will be considered to have caused the injury only where the injury would not have happened but for the act. Restatement § 432(1). Plaintiffs do not assert that their alleged injuries from sea rise would not have occurred if any Defendant had altered its behavior and stopped producing fossil fuel products, reduced production, or warned the public about the possible risks. Nor could they, as the "undifferentiated nature of greenhouse gas emissions from all global sources and their worldwide accumulation over long periods of time . . . make[] clear that there is no realistic possibility of tracing any particular alleged effect of global warming to any particular [action] by any specific person, entity, [or] group at any particular point in time." *Kivalina*, 663 F. Supp. 2d at 880; *see also*

1  *Amigos Bravos v. U.S. Bureau of Land Mgmt.*, 816 F. Supp. 2d 1118, 1135 (D.N.M. 2011) ("[C]li-

2  mate change is dependent on an unknowable multitude of [greenhouse gas] sources and sinks, and it

3  is impossible to say with any certainty that Plaintiffs' alleged injuries were the result of any particular

4  action or actions by Defendants").

5       Even if Defendants' productions were considered cumulatively, the allegations fail to demon-

6  strate that Plaintiffs' injuries would not have arisen but for Defendants' conduct.  In fact, Plaintiffs

7  concede that nearly 90% of emissions from industrial sources are *not* attributable to Defendants.

8  Oak. FAC ¶ 94(c).  Though Plaintiffs assert that Defendants are "five of the ten largest producers" of

9  fossil fuels, *id.* ¶ 92, they have not sued the third, fifth, seventh, eighth, or tenth largest producers, *see*

10  *id.* ¶ 94(b), or any one of the thousands of smaller producers that supply the vast majority of the

11  world's fossil fuels.  Because these unnamed producers would likely have increased production to

12  meet worldwide demand for fossil fuels had Defendants decreased their extraction and production ac-

13  tivities, Plaintiffs cannot prove that worldwide emissions would have been materially lower but for

14  Defendants' conduct.  *Cf. Sierra Club v. U.S. Def. Energy Support Ctr.*, 2011 WL 3321296, at *5

15  (E.D. Va. July 29, 2011) (plaintiff failed to show that "if there had been a reduction in the amount of

16  greenhouse gases emitted by producers of fuel from oil sands crude, those reductions would not have

17  been offset by increased emissions elsewhere on the planet"); *City of Chi. v. Beretta U.S.A. Corp.*,

18  821 N.E.2d 1099, 1137 (Ill. 2004) (plaintiff failed to show "that the condition would cease to exist

19  even if these particular defendants entirely ceased selling firearms.").  Plaintiffs have, therefore,

20  failed to allege facts showing that Defendants are the "cause in fact" of their injuries.[13]

21       The highly attenuated nature of Plaintiffs' claims also precludes them from adequately plead-

22  ing that Defendants were the "proximate" cause of their purported injuries.  To prove proximate cau-

23  sation, the plaintiff must demonstrate a "direct relationship between the injury and the alleged wrong-

24  doing."  *Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 963

25  (9th Cir. 1999).  These requirements apply to nuisance claims, and the court may dismiss on the

26

27  ───────────────

[13] Plaintiffs also allege that emissions from fossil fuels produced by Defendants *contributed* to global
warming.  Oak. FAC ¶ 145.  But "given the extremely attenuated causation scenario alleged in [the]
28  Complaint[s], it is entirely irrelevant whether any defendant 'contributed' to the harm because [fossil
fuel production], standing alone, is insufficient to establish injury."  *Kivalina*, 663 F. Supp. 2d at 880.

Gibson, Dunn &
Crutcher LLP

pleadings where the plaintiff fails to allege facts establishing proximate causation. *See Benefiel v. Exxon Corp.*, 959 F.2d 805, 807 (9th Cir. 1992) (affirming dismissal where alleged damages were "remote and derivative" and defendants' conduct "did not directly cause any injury" to the plaintiffs). Plaintiffs cannot establish proximate cause here because global warming claims are "dependent on a series of events far removed both in space and time from the Defendants'" alleged misconduct. *Kivalina*, 663 F. Supp. 2d at 881. Indeed, Plaintiffs seek to hold Defendants accountable for conduct that allegedly began in "*the mid Nineteenth Century*." *See* Oak. FAC ¶ 94(b) (emphasis added); *see also id.* ¶ 88. But "where a great length of time has elapsed between the actor's negligence and harm to another . . . the effect of the actor's conduct may . . . become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors which have contributed." Restatement § 433 cmt. f. Here, countless "other factors" contribute to global warming, and Defendants are "simply too far removed from the [alleged harm] to be held responsible for it." *Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S. 2d 192, 202 (N.Y. App. Div. 2003).

Under the Restatement, the plaintiff also must show that the defendant's conduct was a "substantial" factor in bringing about the alleged harm, Restatement § 431, a showing that "depends in part on whether 'the actor's conduct . . . has created a situation harmless unless acted upon by other forces for which the actor is not responsible.'" *Benefiel*, 959 F.2d at 807 (omission in original) (quoting Restatement § 433(b)). Plaintiffs do not dispute that Defendants' production of fossil fuels, which has been encouraged by every level of government, was harmless in and of itself. Plaintiffs' alleged injuries have arisen (or will arise) only because countless intervening users, including Plaintiffs themselves, combusted fossil fuels for transportation, electricity, or heat, and the greenhouse gases those users emitted mixed with the aggregated emissions of billions of other users from around the world for many decades to increase the concentration of greenhouse gases in the atmosphere. Plaintiffs' claims thus flout the "uniformly accepted principle[] of tort law" that the plaintiff must "prove more than that the defendant's action triggered a series of other events that led to the alleged injury." *Id.* Plaintiffs' "assertion that [Defendants'] emissions combined over a period of decades or centuries with other natural and man-made gases to cause or strengthen a hurricane and damage per-

Gibson, Dunn &
Crutcher LLP

sonal property is precisely the type of remote, improbable, and extraordinary occurrence that is excluded from liability." *Comer*, 839 F. Supp. 2d at 868; *see also Amigos Bravos*, 816 F. Supp. 2d at 1136; *Sierra Club*, 2011 WL 3321296, at *5; *Kivalina*, 696 F.3d at 868 (Pro, J., concurring).

### 4. The relief Plaintiffs seek is unavailable and would be unconstitutional

Dismissal is also warranted because the relief Plaintiffs seek is not available under federal common law. Although in appropriate circumstances a federal court "may grant equitable relief to abate a public nuisance that is occurring or to stop a threatened nuisance from arising," *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 781 (7th Cir. 2011), Plaintiffs do not seek an injunction. Nor could they, as their Complaints fail to identify any specific conduct in any particular location that allegedly caused the nuisance. And even if this Court were to issue a nationwide injunction prohibiting *all* fossil fuel production, such an order would not abate the alleged nuisance—though it would devastate the U.S. economy—because this Court has no power to enjoin *global* emissions.

Perhaps recognizing the futility of requesting a true equitable remedy, Plaintiffs instead ask for "an abatement fund remedy to be paid for by Defendants." Oak. FAC "Relief Requested." There is no functional difference between the purported "abatement fund"—*i.e.*, money Plaintiffs can spend as they think best—and damages. But damages can be awarded only where "significant harm" has "been actually incurred[.]" Restatement § 821B cmt. i ("[A]n award of damages is retroactive, applying to past conduct[.]"). Here, although Plaintiffs vaguely allege that global warming "has caused" sea level rise, Oak. FAC ¶ 125, they seek money primarily to prevent injuries they *expect to suffer* over the next 75 years. *Id.* ¶¶ 124–36. Thus, even if damages were available under federal common law—which is dubious[14]—these claims could not sustain a damages award.

Moreover, awarding billions in damages would violate the Constitution. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *see also State Farm*

---

[14] "[T]here is no right either historically, or through the Restatement['s] formulation, for the public entity to seek to collect money damages[.]" *In re Lead Paint Litig.*, 924 A.2d at 498–99 (citing Restatement § 821C(1)). The Supreme Court has not yet decided "whether a cause of action may be brought under federal common law by a private plaintiff, seeking damages." *Sea Clammers*, 453 U.S. at 21.

*Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."). In *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), the Court invalidated a federal statute that made coal companies retroactively liable for the medical costs of former coal miners. Justice O'Connor, writing for a four-justice plurality, observed that the Coal Act violated the Takings Clause because it "divest[ed] Eastern of property long after the company believed its liabilities . . . to have been settled[,] [a]nd the extent of Eastern's retroactive liability is substantial and particularly far reaching." *Id.* at 534. The plurality struck down the Act because it "improperly place[d] a severe, disproportionate, and extremely retroactive burden on Eastern." *Id.* at 538; *see also id.* at 539, 549 (Kennedy, J., concurring in the judgment and dissenting in part) (The statute "must be invalidated as contrary to essential due process principles" because it had "a retroactive effect of unprecedented scope.").[15] Because Defendants' fossil fuel extraction was incontrovertibly lawful when it occurred (and still is today), imposing the type of massive retroactive liability that Plaintiffs seek here would constitute a grievous violation of due process.

"Because the relief sought by [Plaintiffs] is unavailable as a matter of law, the case[s] must be dismissed." *Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988).

**D.      Plaintiffs' Claims Violate the Separation of Powers**

Plaintiffs ask this Court to decide whether the extraction and production of fossil fuels worldwide is "unreasonable" given the alleged connection to global warming and the potential that such warming will lead to future harms. But the decision they seek is not within "the proper—and properly limited—role of the courts in a democratic society." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and quotation marks omitted). Absent legislative authorization and guidance, courts are "without competence" to address matters "of high policy," such as global warming, *Diamond v. Chakrabarty*, 447 U.S. 303, 317 (1980), and they lack authority to "formulate national policies or develop standards for matters not legal in nature," *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). Matters of global concern, such as rising seas allegedly

---

[15] Courts have held that *Eastern Enterprises* "stands for a clear principle: a liability that is severely retroactive, disruptive of settled expectations and wholly divorced from a party's experience may not constitutionally be imposed." *Maine Yankee Atomic Power Co. v. United States*, 44 Fed. Cl. 372, 378 (1999); *see also Franklin Cty. Convention Facilities Auth. v. Am. Premier Underwriters*, 61 F. Supp. 2d 740, 743 (S.D. Ohio 1999); *Peterson v. Islamic Rep. of Iran*, 758 F.3d 185, 192 (2d Cir. 2014).

caused by worldwide emissions, are "committed by the Constitution to the political departments of the Federal Government." *United States v. Pink*, 315 U.S. 203, 222–23 (1942). For this reason, "the political branches have . . . made foreign policy determinations regarding the United States' role in the international concern about global warming." *Gen. Motors*, 2007 WL 2726871, at *14.[16]

Greenhouse gas emissions and responses to global warming are the subject of numerous international agreements. Plaintiffs, apparently dissatisfied with the state of these agreements, seek to impose their own normative judgments as to the proper limits for fossil fuel production and use by imposing damages on Defendants that would force them to "change [their] methods of doing business and controlling pollution to avoid the threat of ongoing liability." *Ouellette*, 479 U.S. at 495. But crippling the nation's fossil fuel producers would weaken the President's bargaining position vis-à-vis other nations, thereby "undercutting [his] diplomatic discretion and the choice he has made exercising it." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 423–24 (2003); *see also Gen. Motors*, 2007 WL 2726871, at *14 ("[B]y seeking to impose damages for the [Defendants'] lawful worldwide sale of automobiles, [plaintiffs'] nuisance claims sufficiently implicate the political branches' powers over . . . foreign policy[.]"). Accordingly, as several courts—including this one—have previously recognized, global warming-based tort claims cannot be adjudicated without dragging the Court "into precisely the geopolitical debate more properly assigned to the coordinate branches." *Gen. Motors*, 2007 WL 2726871, at *10; *see also Kivalina*, 663 F. Supp. 2d at 876–77; *Comer*, 839 F. Supp. 2d at 865.

---

[16] For several decades, Congress has engaged in robust debate about the potential harms of global warming and the economic and political consequences of regulating greenhouse gases. *The National Climate Program Act: Hearing Before the Subcomm. on the Env't & the Atmosphere of the H. Comm. on Sci. & Tech.*, 94th Cong. 29 (1976); *Global Warming: Hearing Before the Subcomm. on Toxic Substances & Envtl. Oversight of the S. Comm. on Env't & Pub. Works*, 99th Cong. 2 (1985); *Ozone Depletion, the Greenhouse Effect, and Climate Change: Hearings Before the Subcomm. on Envtl. Pollution of the S. Comm. on Env't & Pub. Works*, 99th Cong. (1986); *Global Climate Change: Hearings Before the S. Comm. on Energy & Nat. Res.*, 102d Cong. 208 (1992); *Energy Policy Act of 2005: Hearings Before the Subcomm. on Energy & Air Quality of the H. Comm. on Energy & Commerce*, 109th Cong. (2005); Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009). The EPA has similarly balanced the costs and benefits of regulating greenhouse gases. *See* Light-Duty Vehicle Greenhouse Gas Emission Standards and Corporate Average Fuel Economy Standards, 75 Fed. Reg. 25,324 (May 7, 2010); 2017–2025 Model Year Light-Duty Vehicle GHG Emissions and CAFE Standards: Supplemental Notice of Intent, 76 Fed. Reg. 48,758 (Aug. 9, 2011).

Plaintiffs' claims would also usurp Congress's "exclusive" power "to regulate interstate and foreign commerce." *La. Pub. Serv. Comm'n v. Tex. & N.O.R. Co.*, 284 U.S. 125, 130 (1931). Plaintiffs are seeking "billions" in damages, Oak. FAC ¶ 136, and the Supreme Court has repeatedly recognized that "regulation can be . . . effectively exerted through an award of damages," *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012). *See id.* ("[T]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy[.]"); *see also BMW of N. Am.*, 517 U.S. at 572 n.17 ("State power may be exercised as much by a jury's application of a state rule of law in a civil lawsuit as by a statute."). The Court should decline to become the de facto regulator of fossil fuel production, especially since the ad-hoc regulation Plaintiffs seek "would require the Court to balance the competing interests of reducing global warming emissions and the interests of advancing and preserving economic and industrial development"—precisely "the type of initial policy determination" entrusted to Congress. *Gen. Motors*, 2007 WL 2726871, at *8; *see AEP*, 564 U.S. at 427 ("Clean Air Act entrusts . . . complex balancing of questions involving "national or international policy" "to EPA in the first instance").

The claims are also ill-suited for judicial resolution because, unlike Congress, which may weigh competing policy interests, courts "must be governed by *standard*, by *rule*." *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004) (plurality). As this Court has twice recognized, there is no manageable standard for balancing the utility of using fossil fuels against the risks posed by emissions. *Kivalina*, 663 F. Supp. 2d at 874–75; *Gen. Motors*, 2007 WL 2726871, at *15. Nor is there a "manageable method of discerning the entities that are creating and contributing to the alleged nuisance" because "there are multiple worldwide sources of atmospheric warming across myriad industries and multiple countries." *Gen. Motors*, 2007 WL 2726871, at *15. There is likewise no "guidance" for "determining who should bear the costs associated with the global climate change that admittedly result from multiple sources around the globe." *Id.* Accordingly, "the allocation of fault—and cost—of global warming is a matter appropriately left for determination by the executive or legislative branch." *Kivalina*, 663 F. Supp. 2d at 877.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss these actions.

April 19, 2018

Respectfully submitted,

By: **/s/ *Jonathan W. Hughes*

Jonathan W. Hughes (SBN 186829)
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
E-mail: jonathan.hughes@apks.com

Matthew T. Heartney (SBN 123516)
John D. Lombardo (SBN 187142)
ARNOLD & PORTER KAYE SCHOLER
LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
E-mail: matthew.heartney@apks.com
E-mail: john.lombardo@apks.com

Philip H. Curtis (*pro hac vice*)
Nancy Milburn (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8383
Facsimile: (212) 715-1399
E-mail: philip.curtis@apks.com
E-mail: nancy.milburn@apks.com

*Attorneys for Defendant*
*BP P.L.C.*

By: /s/ *Theodore J. Boutrous*

Theodore J. Boutrous, Jr. (SBN 132099)
Andrea E. Neuman (SBN 149733)
William E. Thomson (SBN 187912)
Ethan D. Dettmer (SBN 196046)
Joshua S. Lipshutz (SBN 242557)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
E-mail: tboutrous@gibsondunn.com
E-mail: aneuman@gibsondunn.com
E-mail: wthomson@gibsondunn.com
E-mail: edettmer@gibsondunn.com
E-mail: jlipshutz@gibsondunn.com

Herbert J. Stern (*pro hac vice*)
Joel M. Silverstein (*pro hac vice*)
STERN & KILCULLEN, LLC
325 Columbia Turnpike, Suite 110
Florham Park, NJ 07932-0992
Telephone: (973) 535-1900
Facsimile: (973) 535-9664
E-mail: hstern@sgklaw.com
E-mail: jsilverstein@sgklaw.com

Neal S. Manne (SBN 94101)
Johnny W. Carter (*pro hac vice*)
Erica Harris (*pro hac vice*)
Steven Shepard (*pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
E-mail: nmanne@susmangodfrey.com
E-mail: jcarter@susmangodfrey.com
E-mail: eharris@susmangodfrey.com
E-mail: sshepard@susmangodfrey.com

*Attorneys for Defendant*
*CHEVRON CORPORATION*

By: **/s/ Megan R. Nishikawa

Megan R. Nishikawa (SBN 271670)
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
Email: mnishikawa@kslaw.com

George R. Morris (SBN 249930)
KING & SPALDING LLP
601 S. California Ave, Suite 100
Palo Alto, CA 94304
Telephone: (650) 422-6718
Facsimile: (650) 422-6800
Email: gmorris@kslaw.com

Tracie J. Renfroe (*pro hac vice*)
Carol M. Wood (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
Email: trenfroe@kslaw.com
Email: cwood@kslaw.com

Justin A. Torres (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4707
Telephone: (202) 737 0500
Facsimile: (202) 626 3737
Email: jtorres@kslaw.com

*Attorneys for Defendant*
*CONOCOPHILLIPS*

By: **/s/ Dawn Sestito

M. Randall Oppenheimer (SBN 77649)
Dawn Sestito (SBN 214011)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-Mail: roppenheimer@omm.com
E-Mail: dsestito@omm.com

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Jaren E. Janghorbani (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
E-Mail: twells@paulweiss.com
E-Mail: dtoal@paulweiss.com
E-Mail: jjanghorbani@paulweiss.com

*Attorneys for Defendant*
*EXXON MOBIL CORPORATION*

Gibson, Dunn &
Crutcher LLP

1    By: **/s/ Daniel P. Collins

2    Daniel P. Collins (SBN 139164)
     MUNGER, TOLLES & OLSON LLP
3    350 South Grand Avenue
     Fiftieth Floor
4    Los Angeles, California 90071-3426
     Telephone: (213) 683-9100
5    Facsimile: (213) 687-3702
     E-mail: daniel.collins@mto.com
6
     Jerome C. Roth (SBN 159483)
7    Elizabeth A. Kim (SBN 295277)
     MUNGER, TOLLES & OLSON LLP
8    560 Mission Street
     Twenty-Seventh Floor
9    San Francisco, California 94105-2907
     Telephone: (415) 512-4000
10   Facsimile: (415) 512-4077
     E-mail: jerome.roth@mto.com
11   E-mail: elizabeth.kim@mto.com

12
     *Attorneys for Defendant*
13   *ROYAL DUTCH SHELL PLC*

14   ** Pursuant to Civ. L.R. 5-1(i)(3), the elec-
     tronic signatory has obtained approval from
15   this signatory

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP