CITY OF OAKLAND
BARBARA J. PARKER, State Bar #069722
City Attorney
MARIA BEE, State Bar #167716
Special Counsel
ERIN BERNSTEIN, State Bar #231539
Supervising Deputy City Attorney
MALIA MCPHERSON, State Bar #313918
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for Plaintiffs*

CITY OF OAKLAND and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through the Oakland City
Attorney BARBARA J. PARKER

*[Other Counsel Listed on Signature Page]*

CITY AND COUNTY OF SAN FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar
#240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for Plaintiffs*

CITY AND COUNTY OF SAN FRANCISCO
and PEOPLE OF THE STATE OF
CALIFORNIA, acting by and through the San
Francisco City Attorney
DENNIS J. HERRERA

*[Other Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Oakland City Attorney,<br><br>Plaintiffs,<br><br>v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>Defendants. | Case No.: 3:17-cv-06011-WHA<br><br>**PLAINTIFS' RESPONSE IN OPPOSITION TO CONOCOPHILLIPS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Hearing Date: May 24, 2018<br>Hearing Time: 8:00 a.m.<br>Courtroom 12 (19th floor)<br>Judge: Hon. William Alsup |

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA,<br><br>        Plaintiffs,<br><br>    v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>        Defendants. | Case No.: 3:17-cv-06012-WHA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO CONOCOPHILLIPS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Hearing Date:  May 24, 2018<br>Hearing Time:  8:00 a.m.<br>Courtroom  12 (19th floor)<br>Judge:  Hon. William Alsup |

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. FACTS ..................................................................................................................1

    A. Conoco makes the business decision to produce fossil fuels at massive levels. .........1

    B. Plaintiffs have sustained serious injuries in the forum state caused by defendants' production of massive amounts of fossil fuels. ..........................................................5

III. LEGAL STANDARD ............................................................................................5

IV. ARGUMENT .........................................................................................................6

    A. This Court has specific jurisdiction over Plaintiffs' claims against Conoco. ............6

    B. Conoco's conduct subjects it to jurisdiction. .........................................................6

    C. The Cities' claims arise out of or relate to Conoco's conduct in California. .............9

    D. Conoco has not demonstrated that exercise of personal jurisdiction over it is unreasonable. ........................................................................................................13

    E. Alternatively, Plaintiffs are entitled to jurisdictional discovery. ...............................14

V. CONCLUSION .....................................................................................................14

**Page(s)**

CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................... 12

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
    169 F. Supp. 3d 1079 (D. Or. 2016) ........................................................................... 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ................................................................... 5, 6, 7, 8

*Boim v. Holy Land Found. for Relief & Dev.*,
    549 F.3d 685 (7th Cir. 2008) ................................................................................... 12

*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010) ................................................................................... 5

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017). ........................................................................................... 13

*Bui v. Golden Biotechnology Corp.*,
    2014 WL 4072112 (N.D. Cal. Aug. 14, 2014) ........................................................... 8

*California Brewing Co. v. 3 Daughters Brewing LLC*,
    2016 WL 1573399 (E.D. Cal. Apr. 19, 2016) ........................................................... 9

*California v. Gold Run Ditch & Mining Co.*,
    4 P. 1152 (Cal. 1884) ............................................................................................... 12

*Chunghwa Telecom Global v. Medcom*,
    2016 WL 5815831 (N.D. Cal. Oct. 5, 2016) ........................................................... 13

*Commc'ns Network Billing, Inc. v. ILD Telecomms., Inc.*,
    2017 WL 3499869 (E.D. Mich. Aug. 16, 2017) ......................................................... 8

*Conocophillips v. 261 E. Merrick Rd. Corp.*,
    428 F. Supp. 2d 111 (E.D.N.Y. 2006) .................................................................... 4, 5

*Cortina v. Bristol-Myers Squibb Co.*,
    2017 WL 2793808 (N.D. Cal. June 27, 2017) ......................................................... 10

*Cox v. City of Dallas*,
    256 F.3d 281 (5th Cir. 2001) ............................................................................. 11, 12

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ................................................................................................. 6

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) ..................................................................... 13

*Dubose v. Bristol-Myers Squibb Co.*,
  2017 WL 2775034 (N.D. Cal. June 27, 2017) ........................................... 10

*Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*,
  2015 WL 1529490 (E.D. Cal. Apr. 2, 2015) ............................................... 9

*Exxon Mobil Corp. v. Attorney Gen.*,
  2018 WL 1769759 (Mass. Apr. 13, 2018) ............................................. 7, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................. 11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ................................................................... 8

*Hendricks v. New Video Channel Am.*,
  2015 WL 3616983 (C.D. Cal. June 8, 2015) ............................................ 11

*Herring Networks, Inc. v. AT&T Servs., Inc.*,
  2016 WL 4055636 (C.D. Cal. July 25, 2016) ......................................... 6, 7

*Illumina, Inc. v. Qiagen NV*,
  2016 WL 3902541 (N.D. Cal. July 19, 2016) .......................................... 14

*Kabo Tool Co. v. Porauto Industrial Co.*,
  2013 WL 5528496 (D. Nev. Sep. 20, 2013) ............................................ 13

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984) ................................................................................... 9

*Laub v. United States DOI*,
  342 F.3d 1080 (9th Cir. 2003) ................................................................. 14

*Learjet, Inc. v. Oneok, Inc.*,
  715 F.3d 716 (9th Cir. 2013) ..................................................................... 9

*Lovesy v. Armed Forces Benefit Ass'n*,
  2008 WL 4856144 (N.D. Cal. Nov. 7, 2008) ............................................. 8

*Macias v. Waste Mgmt. Holdings, Inc.*,
  2014 WL 4793989 (N.D. Cal. Sept. 25, 2014) ........................................ 14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ................................................................. 11

*McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ................................................................................... 6

*Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*,
495 F.2d 213 (6th Cir. 1974) ........................................................................... 12

*Milward v. Acuity Specialty Prods. Grp.*,
969 F. Supp. 2d 101 (D. Mass. 2013) .............................................................. 12

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ............................................................................ 6

*Naiman v. TranzVia LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) ..................................................... 8

*In re Nexus 6P Products Liab. Litig.*,
2018 WL 827598 (N.D. Cal. Feb. 12, 2018) .................................................... 13

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .......................................................................... 14

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......................................................................... 11

*SA Luxury Expeditions LLC v. Latin America for Less, LLC*,
2014 WL 6065838 (N.D. Cal. Nov. 12, 2014) ................................................. 14

*Shute v. Carnival*,
897 F.2d 377 (9th Cir. 1990) ............................................................................ 10

*United States v. Chem-Dyne Corp.*,
572 F. Supp. 802 (S.D. Ohio 1983) .................................................................. 14

*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*,
2017 WL 1838955 (S.D. Cal. May 8, 2017) .................................................... 14

*Walden v. Fiore*,
134 S. Ct. 1115 (2014) ........................................................................................ 7

*Weaver v. Johnson & Johnson, Ethicon, Inc.*,
2016 WL 1668749 (S.D. Cal. Apr. 27, 2016) .................................................... 7

*Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.*,
1991 WL 280844 (C.D. Cal. July 29, 1991) .................................................... 10

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ............................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) ......................................................................................... 6

Restatement (Second) of Torts § 433B(2) ............................................................. 12

Restatement (Second) of Torts § 840E (1979) ........................................................................ 12

Restatement (Second) of Torts § 881 cmt. d ........................................................................ 12

# I.    INTRODUCTION

ConocoPhillips ("Conoco") claims that the Court lacks personal jurisdiction over it because as a holding company it was not involved with the operations of its subsidiaries and agents in the forum.  But Conoco does not act as a holding company with respect to the tortious conduct in this case (if it does so at all).  Rather, Conoco was and is the decisionmaker for its corporate family on fossil fuel production levels and managing climate change policies and risks.  Conoco's further argument that its California-based contribution to global warming must cause all of the injury to the Plaintiffs ("Cities") – is an incorrect statement of the but-for personal jurisdiction causal standard.  Courts routinely assert jurisdiction where the plaintiff's injury was produced by nationwide conduct that extends into the forum state without requiring the plaintiff to show that the injury was caused by just the slice that occurred in the forum.

# II.    FACTS

## A.    Conoco makes the business decision to produce fossil fuels at massive levels.

Conoco is a multinational oil and gas company that produces and markets oil and natural gas, and operated for many years as a vertically-integrated company that also refined and sold finished oil products.  First Amended Complaint ("FAC") ¶ 22.[1]  Conoco's most recent annual report repeatedly demonstrates that as the parent, Conoco decides companywide the level of fossil fuels to produce, including taking into account climate change risks: "ConocoPhillips is the world's largest independent exploration and production (E&P) company, based on proved reserves and production of liquids and natural gas."[2]  "We explore for, produce, transport and market crude oil, bitumen, natural gas LNG and natural gas liquids on a worldwide basis."[3]  The level of oil and gas reserves principally determines the value of the entire company: "Unless we successfully add to our existing proved reserves, our future crude oil, bitumen, natural gas and natural gas liquids production will

---

[1] The Cities' first amended complaints are nearly identical; separate citations to each FAC are provided only where necessary.

[2] Decl. of Steve W. Berman in Opposition to ConocoPhillips' Motion to Dismiss for Lack of Personal Jurisdiction ("Berman Decl."), Ex. 1 (ConocoPhillips 2017 10-K) at 1, filed concurrently herewith.

[3] *Id.* at 2.

decline, resulting in an adverse impact to our business."[4] "[F]uture environmental laws and regulations, such as limitations on greenhouse gas emissions, may impact or limit our current business plans and reduce demand for our products."[5]

Conoco, not its subsidiaries, optimizes its oil and gas portfolio to fit its strategic plan. For example, it reports that "[i]n November 2016, we announced our plan to generate $5 billion to $8 billion of proceeds over two years by optimizing our portfolio to focus on value-preserving, low cost-of-supply projects that strategically fit our development plans."[6] Conoco further states that it "accomplished several strategic milestones in 2017, including progressing our efforts to optimize our portfolio."[7] Conoco includes a standard disclaimer in its 10K: "Unless otherwise indicated, 'the company,' 'we,' 'our,' 'us' and 'ConocoPhillips' are used in this report to refer to the businesses of ConocoPhillips and its consolidated subsidiaries."[8] But it is clear that only the parent company can "optimize" a companywide "portfolio," and managing its overall portfolio undeniably takes into account "limitations on greenhouse gas emissions" as well as the company's climate change position. Conoco has only one corporate climate policy; there are not separate climate policies for each subsidiary. These statements, in context, can only refer to parent functions.

Climate change is, of course, a major risk to Conoco's business. And Conoco – not a subsidiary – submits annual responses to climate change questionnaires from a non-profit organization called CDP that runs the global disclosure system to assist companies to manage their environmental impacts.[9] Conoco's 2016 response to the CDP acknowledges that its "Board or individual/sub-set of the Board or other committee appointed by the Board" has the highest level of

---

[4] *Id.* at 21; *see also id.* at 31 (noting that in 2017, it had "full-year production excluding Libya of 1,356 thousand barrels of oil equivalent per day (MBOED)" and announced "year-end proved reserves of 5.0 billion barrels of oil equivalent (BOE).").

[5] *Id.* at 22 (emphasis added).

[6] *Id.* at 1.

[7] *Id.* at 31; *see also id.* at 18 ("Worldwide, we are contractually committed to deliver approximately 1.7 trillion cubic feet of natural gas . . . and 99 million barrels of crude oil in the future.").

[8] *Id.* at 1.

[9] https://www.cdp.net/en.

direct responsibility for climate change within the company,[10] that Conoco develops a corporate Climate Change Action Plan which "identifies company-wide risks and opportunities and adopts a consistent approach to manage the risk across the company,"[11] and that it "routinely test[s] [its] investment decisions and business strategies against a low carbon scenario in [its] strategic scenario planning process."[12] Conoco factors the "cost of carbon into [its] long range planning exercise, and [its] long range planning process considers the long-term changes to supply and demand of [its] primary products, oil and gas."[13] And its climate change strategy "cause[s] major business decisions to be made with consideration of the risks and impacts of climate change."[14] Conoco in its CDP response also takes responsibility for companywide production of fossil fuels by calculating the greenhouse gas emissions resulting from the *use of its products* by consumers based on "equity production rates publicly reported in company financial statements" and other data.[15]

Conoco has submitted a declaration from its Assistant Secretary, Christopher Dodson, attesting, *inter alia*, that ConocoPhillips has only "a single subsidiary (ConocoPhillips Company)."[16] However, Conoco's 10-K lists, as of December 31, 2017, 83 other subsidiaries around the world in addition to the U.S.-based ConocoPhillips Company.[17] Many of these Conoco subsidiaries and agents (together, "agents") carry out Conoco's fundamental decisions through production, marketing and sales of fossil fuels in and for California during the relevant time period. Several have been registered to do business in California for decades, including ConocoPhillips Company (since 1947), ConocoPhillips Alaska, Inc. (1980), ConocoPhillips Transportation Alaska, Inc. (1978), and Polar Tankers, Inc. (1979). FAC ¶ 52. Conoco recently claimed to be "Alaska's largest oil producer" and

---

[10] Berman Decl., Ex. 2 (ConocoPhillips Responses to Climate Change 2016 Information Request from Carbon Disclosure Project) at 2.

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.* at 28.

[14] *Id.*

[15] *Id.* at 39.

[16] ECF No. 185-1 ¶ 14.

[17] Berman Decl., Ex. 1 at Exh. 21.

"a leader in oil and gas exploration and development in Alaska for more than 50 years,"[18] and that the oil it produces in Alaska is transported regularly to California by a shipping entity that it "owns and operates."[19]  Through agents, Conoco previously owned or operated California port facilities for receipt of crude oil[20] and California gasoline refineries.[21]  For example, through Phillips Petroleum and Tosco Corp., it previously owned and operated the Golden Eagle refinery in Martinez/Avon from 1966 through 2000 (166,000 barrels of crude oil per day), and through Tosco Corp. and Phillips, from 1997 through 2012, Conoco owned and operated the Wilmington refinery (139,000 barrels per day), the Rodeo refinery (78,400 barrels per day), and the Santa Maria refinery (41,800 barrels per day).[22]

Through its agents, including ConocoPhillips Company, Conoco previously owned or operated numerous Conoco-branded gasoline stations in California (*i.e.*, Conoco, Phillips 66 and 76-branded).[23]  Conoco contends here, in an effort to distance itself from control over its gas stations, "that it has never entered into any agreement regarding the sale of gasoline containing proprietary Conoco additives with gasoline retailers," i.e. a supply agreement.[24]  But there is information in the public record suggesting this may not be the case: when Conoco licensed the "Exxon" trademark in New York it required delivery of minimum volumes of proprietary gasoline, i.e. a supply agreement;

---

[18] *Id.*, Ex. 3 (ConocoPhillips, Alaska Operations 2016 Snapshot); *see also* Ex. 1 (ConocoPhillips 2017 10-K) at 4.

[19] *Id.*, Ex. 3 at 15 ("ConocoPhillips owns and operates Polar Tankers").

[20] *Id.*, Ex. 4 (Terminal Information: Los Angeles, CA: ConocoPhillips LA refinery); Ex. 5 (Port of Los Angeles map).

[21] *Id.*, Ex. 6 (California Oil Refinery History).

[22] *Id.*

[23] Berman Decl., Ex. 7 (Martin Zimmerman, ConocoPhillips unhooks from gas station business, *L.A.* Times Aug. 28, 2008); Ex. 8 (Complaint ¶ 12 ("Defendants [Phillips 66 and ConocoPhillips Company] owned and operated underground storage tanks and underground storage tanks systems to store motor vehicle fuel for retail sale at no less than 560 sites or facilities located throughout California."); *see also* Ex. 9 (Kevin Max, Tosco Buys 1,740 Stations from Exxon Mobil, TheStreet (Dec. 2, 1999) (ConocoPhillips' predecessor Tosco Corp. "has been aggressively weighing its opportunities and taking advantage of some over the past few years, taking in the West Coast petroleum business of Unocal (UCL) and supplying gas to 500 BP Amoco (BPA) gas stations acquired in a refinery deal.").

[24] Dodson Decl., ¶ 8.

Conoco the parent entity even filed a lawsuit in its own name to enforce this agreement.[25]  Since this was Conoco's practice for another brand it licensed, it is reasonable to assume Conoco has used the same practice for its own brands.

**B.      The Cities have sustained severe injuries in the forum state caused by defendants' production of massive amounts of fossil fuels.**

Global warming has caused and continues to cause accelerated sea level rise in San Francisco Bay and the adjacent ocean with severe, and potentially catastrophic, consequences for the Cities and their residents.  FAC ¶ 125.  The Cities already are experiencing impacts from accelerated sea level rise, including more extensive coastal flooding during storms, periodic tidal flooding, and increased coastal erosion.  *Id.*  Sea level rise causes storm surges to be greater, extend farther inland, and cause more extensive damage – including greater inundation and flooding of public and private property in the San Francisco Bay area.  *Id.* ¶ 129; *see also* OAK FAC ¶ 130; SF FAC ¶ 131.

### III.      LEGAL STANDARD

The Cities need make only a *prima facie* showing of jurisdictional facts to satisfy their burden of demonstrating jurisdiction over Conoco, in the absence of an evidentiary hearing.[26]  The Court must take uncontroverted allegations in the complaints as true, and resolve any factual conflicts and draw all reasonable inferences in favor of the Cities.[27]

---

[25] *Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111, 126 & n.1 (E.D.N.Y. 2006) (breach of contract case against gasoline station owner: "The parties agree that [the gasoline station owner] maintained an account with ConocoPhillips for supply of petroleum products to the Premises, and that, pursuant to this arrangement, ConocoPhillips delivered, and [the owner] accepted, such products as [the owner] requested.") (quotation omitted); *see also* Berman Decl., Ex. 10 (Report on Petroleum Products Markets in the Northeast prepared for the Attorneys General of Maine, Massachusetts, New Hampshire, New York, and Vermont at 5 (Sept. 2007)) ("Refiner-marketers supply their own retail outlets with gasoline, selling their brand of gasoline directly at the retail level. In some cases, a refiner-marketer might own a gasoline station, but it may also lease the station operation to a franchisee. This retail franchise is typically supplied directly by the refiner, but is operated by the franchisee under the terms of the franchise or lease agreement. In both of these cases, the refiner-marketer directly supplies the retail station with its marketed brand of gasoline.")

[26] *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

[27] *Id.*

## IV.    ARGUMENT

### A.    This Court has specific jurisdiction over the Cities' claims against Conoco.

Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to determine the bounds of the Court's jurisdiction over a party, which authorizes its courts to exercise jurisdiction to the full extent constitutionally permitted.[28]  To exercise jurisdiction over Conoco, three requirements must be met: 1) the defendant must purposefully direct its activities toward the forum; 2) the claim must arise out of or relate to the defendant's forum-related activities; and 3) the exercise of jurisdiction must be reasonable, *i.e.*, comport with fair play and substantial justice.[29]  If the Cities meet the first two requirements, the burden shifts to Conoco to present a compelling case that the exercise of jurisdiction would be unreasonable.[30]

### B.    Conoco's conduct subjects it to jurisdiction.

Conoco claims that it does not engage in business in California, but a company is subject to jurisdiction where it takes action in the forum, *e.g.,* a "defendant's transmission of goods [into the forum state] permits the exercise of jurisdiction . . . where the defendant can be said to have targeted the forum."[31]  Alternatively, as the Supreme Court observed in *Daimler AG v. Bauman*: "Agency relationships [] . . . may be relevant to the existence of *specific* jurisdiction" because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."[32]  A parent may be subject to jurisdiction for the acts of its subsidiaries, when the latter is acting "on the principal's behalf and subject to the principal's control,"[33] or an agent's acts may be imputed to a principal for purposes of personal jurisdiction if they are ratified after the fact.[34]  For example, in *Herring Networks, Inc. v. AT&T Servs., Inc.*, the court held that if the parent company "directed

---

[28] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).

[29] *Id.* at 1068.

[30] *Id.* at 1068-69.

[31] *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011).

[32] 134 S. Ct. 746, 759 n.13 (2014).

[33] *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

[34] *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001).

and/or authorized [its subsidiary] to engage in conduct in California, those actions may be attributed to AT&T, Inc. for purposes of evaluating personal jurisdiction."[35]  And in *Weaver v. Johnson & Johnson, Ethicon, Inc.*, the court held: "A parent corporation may be amenable to specific jurisdiction in a forum state, through an agency relationship, if it itself targeted the forum or it 'purposefully availed itself of a forum by directing its agents or distributors to take action there.'"[36] Here, Conoco's subsidiaries carried out its production and climate change policy decisions through production, marketing and sales of fossil fuels in and for California.  *See supra* Section II.A.

Conoco's CDP responses make it unmistakably clear that Conoco as the parent entity is making companywide decisions on climate change.  As noted above, those responses state that Conoco the parent company is responsible for climate change decisions at the Board level and "identifies company-wide risks and opportunities and adopts a consistent approach to manage the risk across the company,"[37] and that it "routinely test[s] [its] investment decisions and business strategies against a low carbon scenario in [its] strategic scenario planning process."[38]  Conoco even factors the "cost of carbon into [its] long range planning exercise, and [its] long range planning process considers the long-term changes to supply and demand of [its] primary products, oil and gas."[39]  The Dodson declaration does not dispute any of this.

*Walden v. Fiore*[40] and *Axiom Foods, Inc. v. Acerchem International, Inc.*[41] are of no help to Conoco.  Unlike *Walden*, where it was "undisputed that no part of [defendant's] course of conduct occurred" in the forum state, here jurisdiction is appropriate, "based on intentional conduct by

---

[35] 2016 WL 4055636 (C.D. Cal. July 25, 2016); *cf. Exxon Mobil Corp. v. Attorney Gen.*, 2018 WL 1769759, at *3 (Mass. Apr. 13, 2018) (holding parent Exxon subject to specific jurisdiction in Massachusetts related to civil investigative demand "concerned primarily with Exxon's marketing and advertising of its fossil fuel products to Massachusetts consumers").

[36] 2016 WL 1668749, at *5 (S.D. Cal. Apr. 27, 2016) (quoting *Daimler*, 134 S. Ct. at 759 n.13).

[37] *Id.* at 3.

[38] *Id.*

[39] *Id.* at 28.

[40] 134 S. Ct. 1115 (2014).

[41] 874 F.3d 1064 (9th Cir. 2017).

1  [Conoco] that creates the necessary contacts with the forum."[42]  The *Axiom* court actually

2  "[a]ssum[ed], without deciding, that an agency relationship between [a parent and subsidiary] would

3  be "'relevant to the existence of *specific* jurisdiction,'" and simply held there was no jurisdiction

4  where defendant "sent one newsletter to a maximum of ten recipients located in California, in a

5  market where [the subsidiary] has no sales or clients."[43]  Here, in contrast, the "defendant's contacts

6  with the forum State itself," are extensive, long-standing, and important to its core fossil fuel

7  business.[44]

8      Conoco's other cases are also distinguishable.  In *Bui v. Golden Biotechnology Corp.*, the

9  plaintiff's conclusory allegation "without additional factual allegations" that the parent relied on its

10  subsidiary to conduct clinical trials was contradicted by the defendant's affidavit and neither the

11  parent nor the subsidiary "sold or marketed any product in the U.S."[45]  The court in *Naiman v.*

12  *TranzVia LLC* held that the same deficiencies that were fatal to plaintiffs' theory of vicarious

13  liability (*i.e.*, no evidence of a contractual relationship) also defeated personal jurisdiction.[46]  *Harris*

14  *Rutsky & Co. Insurance Services v. Bell & Clements Ltd.*, merely held that while there was

15  insufficient evidence to determine whether the alter ego or agency tests were met, it was an abuse of

16  discretion not to permit jurisdictional discovery.[47]  The Cities here allege a direct connection

---

20  [42] 134 S. Ct. at 1123-24.

21  [43] 874 F.3d at 1071 & n.5 (quoting *Daimler*, 134 S. Ct. at 759 n.13).

  [44] *See id.* at 1070 (quotation omitted).

22
23  [45] 2014 WL 4072112, at *1, 4 (N.D. Cal. Aug. 14, 2014).  *Commc'ns Network Billing, Inc. v.*
   *ILD Telecomms., Inc.*, 2017 WL 3499869 (E.D. Mich. Aug. 16, 2017), cited by Conoco, held that
   any defendant contacts with the plaintiff were fortuitous as there was no evidence that the defendant
24  intended to exploit any market for its products in Michigan.  In *Buelow v. Plaza Motors of Brooklyn,*
   *Inc.*, the sale of the car, alleged misrepresentation and damage to the car all occurred in another state
25  and the fact that the dealership knew that the *plaintiff* was moving to California did not alter the
   analysis.  2017 WL 2813179, at *4 (E.D. Cal. June 29, 2017).

26  [46] *Lovesy v. Armed Forces Benefit Ass'n*, 2008 WL 4856144, at *10 (N.D. Cal. Nov. 7, 2008),
   supports the Cities because it held that ongoing conduct in the forum permitted the court to exercise
27  jurisdiction over the defendant.

28  [47] 328 F.3d 1122, 1135 (9th Cir. 2003).

between Conoco's decision to produce fossil fuels and its subsidiaries and agents acting *in California* on its production decisions.[48]

## C. The Cities' claims arise out of or relate to Conoco's conduct in California.

The second prong of the personal jurisdiction test involves a causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action."[49] Courts do not apply this test "stringently."[50] Conoco argues that the Cities cannot satisfy this requirement because Conoco's fossil fuel activities in California did not by themselves cause *all* of the Cities' injuries. But where the plaintiff's injuries have been caused by the totality of national conduct, personal jurisdiction exists if the defendant undertook some of this conduct within the forum.

For example, in *Keeton v. Hustler Magazine, Inc.*, the Supreme Court held that a court could exercise personal jurisdiction over a non-resident tortfeasor even though "the bulk of the harm done to [the plaintiff] occurred outside" the state.[51] In *Keeton*, the defendant publisher was sued in New Hampshire by a plaintiff seeking "nationwide damages" for allegedly libelous statements made in the national publication.[52] Even though New Hampshire represented only a tiny fraction of the defendant's national sales, and even though the libelous reports were apparently investigated, written, edited, or produced elsewhere, the Court held that the defendant's actions in "carrying on a

---

[48] 2008 WL 4856144, at *10 (N.D. Cal. Nov. 7, 2008).

[49] *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742 (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015).

[50] *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085, 1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum"; sustaining jurisdiction where defendant's infringing product was purchased over the web by only three people in the forum) (quotation marks omitted); *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) ("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015) ("Despite the apparently strict language of the but-for test, the Ninth Circuit has not applied the [but-for] test stringently.").

[51] 465 U.S. 770, 780 (1984).

[52] *Id.* at 775.

'part of its general business' in New Hampshire . . . is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire."[53]

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm. For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other states.[54] The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many jurisdictions:

> What would that threshold be? If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent? The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth.[55]

The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury.[56] *Wilden Pump & Engineering Co. v. Versa-Matic Tool, Inc.*, where a California plaintiff sued a Pennsylvania manufacturer for patent infringement, reached the same result. The manufacturer's sales of the product to California were only one to three percent of its annual sales, but the court rejected an interpretation of the but-for test that would require just the California sales to cause the injury as leading to an "absurd result."[57]

---

[53] *Id.*; *see also Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

[54] 2017 WL 2775034 (N.D. Cal. June 27, 2017). The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff. *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017).

[55] 2017 WL 2775034, at *4.

[56] *Id.* at *3 (emphasis added).

[57] 1991 WL 280844, at *4 (C.D. Cal. July 29, 1991).

Copyright cases have reached the same result. In *Mavrix v. Brand Technologies*, the Ninth Circuit upheld specific jurisdiction where the defendant's website largely "court[ed] a national audience" but also was accessible to users in the forum state.[58] And in *Hendricks v. New Video Channel America*, the court held that defendants' promotion and distribution of the copyrighted material in California satisfied the causal relationship test, even though the defendants' conduct had occurred nationwide. Like *Wilden Pump*, the court interpreted the but-for test to avoid the "absurd result" that California conduct contributing to a California injury could not give rise to specific personal jurisdiction where the nature of the claim involved the defendant's nationwide injurious conduct.[59] These cases demonstrate that personal jurisdiction exists where a large and harmful course of conduct extends into the forum state; forum conduct alone need not cause the injury.

Here, Conoco engages or has engaged during the relevant time period in substantial in-state conduct to supply, refine, sell and promote its fossil fuels. Its website even "promotes its fossil fuel products by stating that it 'responsibly suppl[ies] the energy that powers modern life,'" – which is much like the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California.[60] This conduct is another causal factor in the Cities' injuries, insofar as the nuisance was caused both by production and by activities promoting additional consumption – promotions aimed in part at California, one of the largest markets for fossil fuels in the country. Conoco also formerly had numerous gas stations in California over which it exercised control with respect to promotion of fossil fuels.[61]

Moreover the personal jurisdiction analysis "depends, to a significant degree, on the specific type of tort ... at issue"[62]—which in this case is nuisance. Nuisance has a well-established causal

---

[58] 647 F.3d 1218, 1222, 1228 (9th Cir. 2011); *accord Adidas*, 169 F. Supp. 3d at 1092.

[59] 2015 WL 3616983, at *7 & n.11 (C.D. Cal. June 8, 2015).

[60] FAC ¶ 118(e); *Mavrix*, 647 F.3d at 1228.

[61] *Cf. Exxon Mobil Corp.*, 2018 WL 1769759, at *4-6.

[62] *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action").

standard applicable in multiple tortfeasor cases that emphatically does not require the plaintiff to untangle which molecules came from where. Nuisance liability only requires that a defendant "contributes" to the nuisance.[63] In a nuisance case involving multiple contributors where the pollution has mixed together, there is an indivisible injury and, absent a basis to apportion liability, each defendant is liable for the entire harm.[64] As the Restatement notes, "the fact that other persons contribute to a nuisance is not a bar to the defendant's liability for his own contribution."[65] Indeed, the burden of apportionment is on the defendant.[66] And it is no defense that the defendant's conduct by itself would not have caused the harm, even when there are a great many contributors. So long as the defendant is aware that its conduct combines with that of others to create the nuisance, the defendant may be held liable.[67] In short, the standard for causation on the merits in this multiple tortfeasor case informs the personal jurisdiction analysis and is at odds with Conoco's interpretation of the but-for test that would require all of the Cities' injuries to be caused solely by a subset of Conoco's activities.

Conoco's authorities do not suggest a different result. *Doe v. Unocal Corp.*, is inapposite because the sole basis asserted for exercising jurisdiction there was a contract defendant executed

---

[63] *Cox v. City of Dallas*, 256 F.3d 281, 292 n.19 (5th Cir. 2001).

[64] Restatement (Second) of Torts § 875.

[65] *Id.* § 840E; *see also id.* § 875.

[66] *Id.*; *Connecticut v. AEP*, 582 F.3d 309, 349 (2d Cir. 2009) ("in a federal common law of nuisance case involving air pollution, where the ambient air contains pollution from multiple sources . . . liability is joint and several"), *aff'd in rel. part, rev'd on other grounds*, 564 U.S. 410 (2011).

[67] *See, e.g.*, *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 696-97 (7th Cir. 2008) (en banc) ("pollution of a stream to even a slight extent becomes unreasonable [and therefore a nuisance] when similar pollution by others makes the condition of the stream approach the danger point.") (quotation omitted); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 823 (E.D.N.Y. 1984) ("In the pollution and multiple crash cases, the degree to which the individual defendant's actions contributed to an individual plaintiff's injuries is unknown and generally unascertainable," yet "all defendants have been held liable"); *Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*, 495 F.2d 213, 215-18 (6th Cir. 1974); *California v. Gold Run Ditch & Mining Co.*, 4 P. 1152, 1156 (Cal. 1884) (defendant's pollution alone would not have caused injury given the "vast amount" of mining previously and currently undertaken on the river by numerous others but defendant still liable for contributing to the nuisance); Restatement (Second) of Torts § 881 cmt. d ("It is also immaterial that the act of one of them by itself would not constitute a tort if the actor knows or should know of the contributing acts of the others."). The Cities have a more extended discussion of this causation issue in their brief in opposition to the motion to dismiss for lack of personal jurisdiction filed by defendant BP p.l.c.

with a resident corporation concerning a pipeline in Burma, which was not negotiated or executed in California, not governed by California law, and had nothing to do with California.[68]  And in *Bristol-Myers Squibb Co. v. Superior Court*, there was no link between the non-resident defendant's sales in California to the plaintiffs' product defect claims because the plaintiffs had not been prescribed the drugs in California, nor had they purchased or ingested them in the forum.[69]  Likewise, in *In re Nexus 6P Products Liab. Litig.*, the plaintiffs did not allege that the product defect arose as a result of the defendant's conduct with the forum, nor that they resided in the forum, had purchased the defective product in the forum or had experienced the defects in the forum.[70]

**D.**     **Conoco has not demonstrated that exercise of personal jurisdiction over it is unreasonable.**

Once the Cities establish the first two elements of specific jurisdiction, then the burden shifts to Conoco, which cannot meet its "heavy burden" under the Ninth Circuit's seven-factor test, "to present a compelling case that the exercise of jurisdiction is unreasonable."[71]  Under factor one, the extent of the defendant's purposeful interjection into the forum state, Conoco purposefully injected itself into California by deciding to produce massive amounts of fossil fuels, including for use in California, and engaging in (or authorizing) nuisance-inducing conduct, including substantial oil and gas business, within the State.  Under factor two, the burden on Conoco in defending in the forum is not heavy, given Conoco's responsibility for its corporate-wide decisions on fossil fuel production as they relate to global warming, and its predecessors and subsidiaries' substantial and ongoing oil and gas business in California over the past decades that has contributed to the Cities' injuries.[72]  Since the Court here is applying federal law, there cannot be a conflict with the sovereignty of another state

---

[68] 248 F.3d 915, 924 (9th Cir. 2001).

[69] 137 S. Ct. 1773, 1781 (2017).

[70] 2018 WL 827958, at *4 (N.D. Cal. Feb. 12, 2018).

[71] *Chunghwa Telecom Global v. Medcom*, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016).

[72] *Kabo Tool Co. v. Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013) ("While jurisdiction in Nevada may not be as convenient to the defendants, it does not present an unreasonable burden. The defendants have been conducting business in Nevada for over 10 years. If the defendants have the ability to sufficiently conduct business, they also have the ability to defend their actions in Nevada.").

(factor three).[73]  With respect to the fourth factor, the forum state's interest in adjudicating the

dispute, "California has an interest in protecting its residents,"[74] which is particularly strong here

because the Cities bring claims, in part, in their sovereign capacities to redress injuries to the Cities

and their residents.  California is the most efficient forum to resolve the controversy (factor five),

given that the injuries and some injury-inducing conduct occurred in this state.  Factor six, the

importance of the forum to the plaintiff's interest, favors California because it offers convenient and

effective relief for the Cities' nuisance claims.  Finally, as to other forums (factor seven), the "fact

that the lawsuit will continue in California with other parties tips the efficiency factor in [plaintiff's]

favor."[75]

**E.      Alternatively, the Cities are entitled to jurisdictional discovery.**

The Cities request jurisdictional discovery if necessary, which "should be granted when . . .

the jurisdictional facts are contested or more facts are needed."[76]  If the Court finds that the Cities'

allegations are insufficient to establish jurisdiction, the Cities request discovery regarding Conoco's

role as the ultimate decisionmaker with respect to levels of companywide production of fossil fuels,

including taking into account climate change, and its decisions to have its subsidiaries and agents

carry out that decision in California by producing, marketing and selling fossil fuels, including any

contractual arrangements Conoco has entered into relating to its California oil and gas activities.

### V.      CONCLUSION

The Court should deny Conoco's motion and find that Conoco is subject to jurisdiction.

---

[73] *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

[74] *Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017).

[75] *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

[76] *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v. Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016) ("there are too many factual disputes to resolve without more thorough jurisdictional discovery" against Dutch parent company); *SA Luxury Expeditions LLC v. Latin America for Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014) ("defendant's declarations dodge the key issues with artful wording"); *Macias v. Waste Mgmt. Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014) ("discovery is needed to clarify the controverted issue of personal jurisdiction").

Dated: May 3, 2018                          Respectfully submitted,

**\*\* /s/ Erin Bernstein**
BARBARA J. PARKER (State Bar #069722)
City Attorney
MARIA BEE (State Bar #167716)
Special Counsel
ERIN BERNSTEIN (State Bar #231539)
Supervising Deputy City Attorney
MALIA MCPHERSON (State Bar #313918)
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

*Attorneys for Plaintiffs*

CITY OF OAKLAND and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through Oakland City Attorney
BARBARA J. PARKER

    \*\* Pursuant to Civ. L.R. 5-1(i)(3), the electronic
    filer has obtained approval from this signatory.

**\*\* /s/ Matthew D. Goldberg**
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax.: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

*Attorneys for Plaintiffs*

CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through San Francisco City Attorney
DENNIS J. HERRERA

    \*\* Pursuant to Civ. L.R. 5-1(i)(3), the electronic
    filer has obtained approval from this signatory.

_/s/ Steve W. Berman_

STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, Washington 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Tel.: (510) 725-3000
Fax: (510) 725-3001

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Tel.: (617) 641-9550
Fax: (617) 641-9551

*Of Counsel Attorneys for Plaintiffs*