CITY OF OAKLAND
BARBARA J. PARKER, State Bar #069722
City Attorney
MARIA BEE, State Bar #167716
Special Counsel
ERIN BERNSTEIN, State Bar #231539
Supervising Deputy City Attorney
MALIA MCPHERSON, State Bar #313918
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

Attorneys for Plaintiffs
CITY OF OAKLAND and
PEOPLE OF THE STATE OF
CALIFORNIA,
acting by and through the Oakland City
Attorney BARBARA J. PARKER
[Other Counsel Listed on Signature Page]

CITY AND COUNTY OF SAN
FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar
#240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone: (415) 554-4748
Facsimile: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN
FRANCISCO and PEOPLE OF THE
STATE OF CALIFORNIA, acting by and
through the San Francisco City Attorney
DENNIS J. HERRERA
[Other Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Oakland City Attorney,<br><br>      Plaintiffs,<br><br>      v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>      Defendants. | Case No.: 3:17-cv-06011-WHA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO EXXON MOBIL CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br><br>Hearing Date: May 24, 2018<br>Hearing Time: 8:00 a.m.<br>Courtroom 12 (19th floor)<br>Judge: Hon. William Alsup |

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA,<br><br>      Plaintiffs,<br><br>      v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>      Defendants. | Case No.: 3:17-cv-06012-WHA<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO EXXON MOBIL CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Hearing Date:  May 24, 2018<br>Hearing Time:  8:00 a.m.<br>Courtroom  12 (19th floor)<br>Judge:  Hon. William Alsup |

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .....................................................................................2

        A.      Exxon makes the business decision to produce fossil fuels at massive levels, taking into account climate change. ...................................................2

        B.      Exxon engages in production, sales and promotion of fossil fuels in California. .......3

        C.      Exxon has contributed to global warming, which is causing severe injuries to the Cities. ...............................................................................................4

        D.      Exxon files suit in Texas under an expansive personal jurisdiction theory. ...............5

III.    LEGAL STANDARD ...............................................................................................6

IV.     ARGUMENT .............................................................................................................6

        A.      This Court has specific jurisdiction over the Cities' claims against Exxon. ...............6

                1.      Exxon does not challenge that it purposefully directed its activities to California. ..........................................................................7

                2.      The Cities' claims arise out of or relate to Exxon's conduct in California. ....7

        B.      Exercising personal jurisdiction over Exxon is reasonable. ......................................13

        C.      Alternatively, the Cities are entitled to jurisdictional discovery. ..............................14

        D.      Exxon's mischaracterizations of the Cities' cases are irrelevant. ..............................14

V.      CONCLUSION ........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................................ 11

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
   169 F. Supp. 3d 1079 (D. Or. 2016) ............................................................................ 7

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) .............................................................................. 6, 7

*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) (en banc) ..................................................................... 11

*Brayton Purcell LLP v. Recordon & Recordon*,
   606 F.3d 1124 (9th Cir. 2010) .................................................................................. 6

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) .......................................................................................... 13

*California Brewing Co. v. 3 Daughters Brewing LLC*,
   2016 WL 1573399 (E.D. Cal. Apr. 19, 2016) ............................................................. 7

*California v. Gold Run Ditch & Mining Co.*,
   4 P. 1152 (Cal. 1884) ............................................................................................ 11

*Castro v. ABM Indus., Inc.*,
   2018 WL 574905 (N.D. Cal. Jan. 26, 2018) .............................................................. 13

*Connecticut v. AEP*,
   582 F.3d 309 (2d Cir. 2009) .............................................................................. 10, 12

*Cortina v. Bristol-Myers Squibb Co.*,
   2017 WL 2793808 (N.D. Cal. June 27, 2017) ............................................................. 8

*Cox v. City of Dallas*,
   256 F.3d 281 (5th Cir. 2001) .................................................................................. 10

*Dubose v. Bristol-Myers Squibb Co.*,
   2017 WL 2775034 (N.D. Cal. June 27, 2017 ............................................................... 8

*Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*,
   2015 WL 1529490 (E.D. Cal. Apr. 2, 2015) ............................................................... 7

*Exxon Mobil Corp. v. Attorney Gen.*,
   2018 WL 1769759 (Mass. Apr. 13, 2018) ............................................................. 6, 10

*Exxon Mobil Corp. v. Schneiderman*,
    2018 WL 1605572 (S.D.N.Y. Mar. 29, 2018)............................................................ 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................................ 10

*Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984) .................................................................................. 5

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) .................................................................................. 13

*Hendricks v. New Video Channel Am.*,
    2015 WL 3636983 (C.D. Cal. June 8, 2015) ............................................................ 9

*Illumina, Inc. v. Qiagen NV*,
    2016 WL 3902541 (N.D. Cal. July 19, 2016) .......................................................... 14

*Kabo Tool Co. v. Porauto Industrial Co.*,
    2013 WL 5328496 (D. Nev. Sep. 20, 2013) ............................................................ 13

*Keeton v. Hustler Magazine*,
    465 U.S. 770 (1984) ................................................................................................. 8

*Laub v. United States DOI*,
    342 F.3d 1080 (9th Cir. 2003) .................................................................................. 14

*Learjet, Inc. v. Oneok, Inc.*,
    715 F.3d 716. (9th Cir. 2013) ................................................................................... 7

*Macias v. Waste Mgmt. Holdings, Inc.*,
    2014 WL 4793989 (N.D. Cal. Sept. 25, 2014).......................................................... 14

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ................................................................................................. 12

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) .................................................................................. 9

*Michael v. New Century Fin. Servs.*,
    2015 WL 1404939 (N.D. Cal. Mar. 30, 2015) .......................................................... 7

*Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*,
    495 F.2d 213 (6th Cir. 1974) .................................................................................... 11

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
    663 F. Supp. 2d 863 (N.D. Cal. 2009)...................................................................... 12

*North Sister Publishing, Inc. v. Schefren*,
    2015 U.S. Dist. LEXIS 64637 (D. Or. Apr. 6, 2015) ............................................... 14

iii

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998) .................................................................. 13

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ............................................................. 7, 10

*Pochiro v. Prudential Ins.,*
    827 F.2d 1246 (9th Cir. 1987) ................................................................... 5

*Quillan v. Cigna Healthcare of California, Inc.,*
    2016 WL 1461491 (N.D. Cal. Apr. 14, 2016) ......................................... 13

*SA Luxury Expeditions LLC v. Latin America for Less, LLC,*
    2014 WL 6065838 (N.D. Cal. Nov. 12, 2014) ........................................ 14

*Estate of Saunders v. C.I.R.,*
    745 F.3d 953 (9th Cir. 2013) .................................................................. 13

*Shute v. Carnival,*
    897 F.2d 377 (9th Cir. 1990) .................................................................... 8

*Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.,*
    2017 WL 1838955 (S.D. Cal. May 8, 2017) ........................................... 13

*Univ. of Texas SW Medical Ctr. v. Nassar*
    570 U.S. 338 (2013) ................................................................................ 11

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014) .............................................................................. 7

*Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.,*
    1991 WL 280844 (C.D. Cal. July 29, 1991) ......................................... 8, 9

**Other Authorities**

Fed. R. Civ. P. 4 ............................................................................................ 6

Restatement (Second) of Torts § 433B ....................................................... 10

Restatement (Second) of Torts § 829A ....................................................... 14

Restatement (Second) of Torts § 840E ....................................................... 10

Restatement (Second) of Torts § 881 .......................................................... 11

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27 ................ 11

Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to
    Fossil Fuel and Cement Producers, 1854–2010* ................................ 4, 12

iv

# I.    INTRODUCTION

Exxon Mobil Corporation ("Exxon") produces, imports, refines, sells and advertises fossil fuels in California.  These California-based activities are a substantial and an inextricable part of Exxon's overall contribution to global warming.  Exxon does not contest that its in-state business operations constitute purposively directing tortious activity to California.

Exxon's sole argument against personal jurisdiction – that its California-based contribution to global warming must cause all of the injury to the Plaintiffs ("Cities") – is an incorrect statement of the but-for personal jurisdiction causal standard.  Courts routinely assert jurisdiction where the plaintiff's injury was produced by nationwide conduct that extends into the forum state, without requiring the plaintiff to show that the injury was caused by just the slice that occurred in the forum. This approach to personal jurisdiction causation is particularly appropriate here, where causation on the merits is governed by a multiple-contributor rule that does not require each defendant's contribution standing alone to cause the nuisance.

Exxon's insistence that all the tortious conduct must occur in the forum is particularly odd given Exxon's pre-suit discovery petition in its home state court (Texas) against the City Attorneys and one of their outside attorneys.[1]  Exxon's petition contends that the Cities' climate lawsuits in this Court constitute an abuse of process, a conspiracy and a violation of its free speech rights.  Exxon alleges in its Texas petition that this Court "lack[s] personal jurisdiction" over Exxon and asserts that personal jurisdiction in Texas is proper because the lawsuits in this Court (and others pending before Judge Chhabria) allegedly "targeted" Exxon and other Texas-based defendants.  Exxon's position is extraordinary: it says there is jurisdiction in Texas over the city attorneys and their counsel merely because they filed a California lawsuit against defendants, some of whom are in Texas, but that there is no jurisdiction in California over Exxon even though it produces, sells, distributes and advertises fossil fuels in California.  Exxon's hypocritical position stretches the bounds of zealous advocacy.

---

[1] Exh. A to ECF No. 101 in 3:17-cv-06012-WHA.

1

**A.     Exxon makes the business decision to produce fossil fuels at massive levels, taking into account climate change.**

Exxon is a publicly traded, multinational, vertically integrated oil and gas company that explores for, produces, refines, markets, and sells oil, natural gas and fossil fuel products, and, as recently as 2009 also produced, marketed and sold coal.[2]  Exxon is one of the largest investor-owned fossil fuel corporations in the world as measured by historic production of fossil fuels.[3]  The Exxon parent company is the ultimate decisionmaker on the most fundamental decision about the company's core business, *i.e.*, the level of companywide fossil fuels to produce, considering climate change and other factors.  As Exxon states in its most recent 10-K, "ExxonMobil's success, including our ability to mitigate risk and provide attractive returns to shareholders, depends on our ability to successfully manage our overall portfolio, including diversification among types and locations of our projects."[4]  While Exxon's 10-K states that it sometimes uses terms such as "ExxonMobil" as shorthand to refer to "specific affiliates or groups of affiliates," it also states that the "precise meaning depends on the context in question."[5]  It is clear in this context that only the parent company could "manage" its "overall portfolio."  And in managing its overall portfolio, Exxon undeniably takes into account the company's climate change position.  As set forth below, Exxon has only one corporate climate policy; there are not separate climate policies for each subsidiary.  In this context, "ExxonMobil" means the parent.

Exxon submits annual responses to climate change questionnaires from a non-profit organization called CDP.[6]  In 2016, Exxon reported that the "Board or individual/sub-set of the Board or other committee appointed by the Board" is the highest level of direct responsibility for

---

[2] First Amended Complaint ("FAC") ¶ 25.  The Cities' first amended complaints are nearly identical; separate citations to each FAC are provided only where necessary.

[3] *Id*. ¶¶ 2, 94.

[4] Decl. of Steve W. Berman in Support of Plaintiffs' Response in Opposition to Exxon Mobil Corporation's Motion to Dismiss for Lack of Personal Jurisdiction ("Berman Decl."), Ex. 1 (Exxon 10-K for the year ending Dec. 31, 2017) at 3-4, filed concurrently herewith.

[5] *Id*. at 1.

[6] https://www.cdp.net/en.

1   climate change within its company, that "the Chairman of the Board and Chief Executive Officer, the
2   President and the other members of the Management Committee are actively engaged in discussions
3   relating to greenhouse gas emissions and the risks of climate change on an ongoing basis," and that
4   Exxon "require[s] all of [its] business lines to include, where appropriate, an estimate of greenhouse
5   gas-related emissions costs in their economics when seeking funding for capital investments."[7]
6   Climate change is, of course, a major risk to Exxon's business; in 1982, an Exxon internal report to
7   management warned that "[m]itigation of the 'greenhouse effect' would require major reductions in
8   fossil fuel combustion."[8]

9   **B.      Exxon engages in production, sales and promotion of fossil fuels in California.**

10          Exxon does business in California and has been registered to do business in California since
11  1972.[9]  Exxon, through its ExxonMobil Production Company, which apparently is not a separate
12  legal entity, has offices in California and produces oil in California.[10]  Exxon, through its subsidiaries
13  and agents (together, "agent"), including ExxonMobil Oil Corporation, also owns or operates port
14  facilities in California for receipt of crude oil.[11]  Until 2016, Exxon, including through agents Socony
15  Mobil Oil Co. and Mobil Oil Corp., owned and operated the Torrance refinery in California (151,000
16  barrels of crude oil per day ("bpd") capacity) and through Exxon Co. USA owned and operated the
17  Benicia refinery (145,000 bpd capacity) for 30 years until 2000.[12]  Through its agents, including
18  SeaRiver Maritime Inc., Exxon transports crude oil from Alaska to California that is used to make
19  fossil fuel products.[13]  Exxon and the other defendants created and utilize a common distribution

---

23      [7] Berman Decl., Ex. 2 (Exxon Responses to Climate Change 2016 Information Request from
        Carbon Disclosure Project) at 1-3.

24      [8] FAC ¶ 101(e); *see also id.* ¶¶ 98(b), 101(f).

25      [9] *Id.* ¶ 56.

26      [10] Berman Decl., Ex. 3.

        [11] FAC ¶ 57; Berman Decl., Ex. 4.

27      [12] FAC ¶ 57; Berman Decl., Ex. 5.

28      [13] FAC ¶ 58; Berman Decl., Ex. 6.

3

system that moves fungible and commingled gasoline from refineries through pipelines to large terminal storage tanks for delivery to consumers in California (and elsewhere).[14]

Exxon maintains a website for locating nearby Exxon or Mobil branded stations, showing more than 300 stations within 50 miles of San Francisco, Los Angeles and San Diego; many more exist elsewhere in California.[15] Exxon exercises control over gasoline product specifications at Exxon-branded retail stations, which can sell only gasoline that contains Exxon's proprietary additives.[16] Exxon offers credit cards and discounts to consumers through its interactive website to promote sales of gasoline at its branded gasoline stations.[17] Exxon advertises its fossil fuel products, including ads on its website and available for viewing in California, one of its largest domestic markets. These ads are intended to convince consumers, *inter alia*, that Exxon is "helping dramatically reduce America's emissions" through the production and sales of natural gas, a fossil fuel that is a major global warming culprit.[18]

## C. Exxon has contributed to global warming, which is causing severe injuries to the Cities.

Exxon, through its fossil fuel business, knowingly has contributed and continues to contribute, to the global warming nuisance.[19] Exxon is the second-largest cumulative producer of fossil fuels worldwide in history and is responsible for over 3 percent of total atmospheric greenhouse gases ("GHGs") (carbon dioxide and methane) from industrial sources.[20] Defendants are collectively responsible through their production, marketing and sale of fossil fuels for over 11% of all GHG pollution from industrial sources; more than half of current pollution levels from defendants' fossil fuels is attributable to production since 1980. .[21] Global warming has caused and

---

[14] FAC ¶¶ 33, 58.

[15] Berman Decl., Ex. 7.

[16] FAC ¶ 58.

[17] *Id.*

[18] *Id.* ¶ 118.

[19] *Id.* ¶¶ 2, 34, 92, 94(d), 95, 104.

[20] *Id.* ¶ 94; *see* Table 3 of Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854–2010*, Climactic Change, Jan. 2014, cited in FAC ¶ 101 n.71.

[21] *Id.* ¶¶ 92, 94(b-c).

continues to cause accelerated sea level rise in San Francisco Bay, with severe, and potentially catastrophic, consequences for the Cities.[22]

**D.  Exxon files suit in Texas under an expansive personal jurisdiction theory.**

In January, 2018, Exxon filed a pre-lawsuit discovery petition in Texas state court against the Oakland and San Francisco City Attorneys (as well as the plaintiffs in the cases pending before Judge Chhabria).[23]  In its Texas petition, Exxon asserts purported "potential claims" of abuse of process, conspiracy and First Amendment Free Speech violations, all based upon the filing of these California cases.  Exxon's petition asserts that Texas is a proper forum because this Court lacks jurisdiction over it:  "Because California courts lack personal jurisdiction over ExxonMobil, the pending California cases do not provide an appropriate forum to litigate the claims anticipated here."[24]  Exxon's personal jurisdictional theory in Texas is that the Cities' lawsuits here were "intentionally targeted at the State of Texas to encourage the Texas energy sector to adopt the co-conspirators' desired legislative and regulatory responses to climate change"; Exxon bases this allegation on the fact that the Texas-based defendants in the California lawsuits (none of whom joined Exxon's Texas proceeding) "exercise their First Amendment right in Texas to participate in the national dialogue about climate change."[25]  Although a state trial court judge ruled in Exxon's favor on personal jurisdiction,[26] that ruling is now on appeal.  After the state trial court ruling and the filing of the appeal in Texas, a federal court in New York and the Massachusetts Supreme Judicial Court both issued rulings rejecting Exxon's legal challenges to climate change investigations by state attorneys general.  In these New York and Massachusetts actions, Exxon made the same factual

---

[22] *Id.* ¶¶ 125, 130-31.

[23] Exh. A to ECF No. 101 in 3:17-cv-06012-WHA.

[24] *Id.* at 1.  *But see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 n.1 (9th Cir. 1984) ("we hold that the filing of a permissive counterclaim does not constitute a waiver of a personal jurisdiction defense asserted in the same pleading"); *Pochiro v. Prudential Ins.*, 827 F.2d 1246, 1252-53 (9th Cir. 1987) (abuse of process is compulsory counterclaim).

[25] Exh. A to ECF No. 101 in 3:17-cv-06012-WHA at ¶ 32.

[26] Berman Decl., Ex. 8 (Order on Special Appearances in Exxon Mobil Corporation, Petitioner, No. 0960297222-18 (Tarrant Cty. Dist. Ct. Tex. Mar. 14, 2018), on appeal, No. 02-18-00106-CV (Tex Ct. App. 2d)).

allegations it is now recycling in Texas, asserting a similar purported conspiracy to abuse legal authority and interfere with Exxon's free speech rights.[27]  The Massachusetts ruling upholds personal jurisdiction over Exxon based upon its advertising of its fossil fuel products in Massachusetts, its interactive website allowing consumers to locate over 300 Exxon branded gas stations in the state, and Exxon's control over the promotion of its products in the state by way of a master franchise agreement.[28]

### III.    LEGAL STANDARD

The Cities need make only a *prima facie* showing of jurisdictional facts to satisfy their burden of demonstrating jurisdiction over Exxon, in the absence of an evidentiary hearing.[29]  The Court must take uncontroverted allegations in the complaints as true, and resolve any factual conflicts and draw all reasonable inferences in favor of the Cities.[30]

### IV.    ARGUMENT

**A.    This Court has specific jurisdiction over the Cities' claims against Exxon.**

Under Rule 4(k)(1)(A), this Court applies California's long-arm statute to determine the Court's jurisdiction over a party.  This statute authorizes jurisdiction to the full extent constitutionally permitted.[31]  To exercise jurisdiction, three requirements must be met: 1) the defendant must purposefully direct its activities toward the forum; 2) the claim must arise out of or relate to the defendant's forum-related activities; and 3) the exercise of jurisdiction must be

---

[27] *See Exxon Mobil Corp. v. Schneiderman*, 2018 WL 1605572 (S.D.N.Y. Mar. 29, 2018); *Exxon Mobil Corp. v. Attorney Gen.*, 2018 WL 1769759 (Mass. Apr. 13, 2018); *see also* https://www.mass.gov/files/documents/2018/01/29/Exxon%20Mobil%20Corporation%E2%80%99s%20Declaration%20in%20Support%20of%20%20Motion%20to%20Amend%20the%20First%20Amended%20Complaint%20with%20Exhibits.pdf (attaching proposed Exxon federal court complaint setting forth same facts as in Texas petition); https://www.mass.gov/files/documents/2016/10/ni/05-memo-iso-emergency-motion.pdf (Exxon Massachusetts state court petition setting forth same facts as in Texas petition).

[28] *Exxon Mobil Corp.*, 2018 WL 1769759, at *3-7.

[29] *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

[30] *Id.*

[31] *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).

6

reasonable, *i.e.*, comport with fair play and substantial justice.[32] If the Cities meet the first two requirements, Exxon must present a compelling case that jurisdiction would be unreasonable.[33]

### 1. Exxon does not challenge that it purposefully directed its activities to California.

The Cities allege numerous intentional acts purposefully directed at, and indeed performed in, the forum, as described above. Exxon does not challenge that it intentionally directed activities at the forum. This element is not at issue here.[34]

### 2. The Cities' claims arise out of or relate to Exxon's conduct in California.

The second prong of the personal jurisdiction test involves a causal analysis. The Ninth Circuit has adopted a but-for test: "Under the 'but for' test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action."[35] Courts do not apply this test "stringently."[36] Exxon argues that the Cities cannot satisfy this requirement because Exxon's production, sales and promotion of fossil fuels in California did not by themselves cause *all* of the Cities' injuries. But where the plaintiff's injuries have been

---

[32] *Id.* at 1068.

[33] *Id.* at 1068-69.

[34] The Cities do <u>not</u> take the position here that merely directing allegedly intentional tortious activity at a plaintiff in the forum state suffices to establish personal jurisdiction. That is Exxon's position in the Texas litigation but is not the law. *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014); *Picot v. Weston*, 780 F.3d 1206, 1214-15 (9th Cir. 2015); *Michael v. New Century Fin. Servs.*, 2015 WL 1404939, at *4 (N.D. Cal. Mar. 30, 2015).

[35] *Learjet, Inc. v. Oneok, Inc.*, 715 F.3d 716, 742. (9th Cir. 2013) (quotation marks omitted), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015).

[36] *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1085, 1092–93 (D. Or. 2016) (test "should not be narrowly applied; rather, the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum"; sustaining jurisdiction where defendant's infringing product was purchased over the web by only three people in the forum) (quotation marks omitted); *California Brewing Co. v. 3 Daughters Brewing LLC*, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) ("Despite its apparently strict language, many district courts in the Ninth Circuit have not applied the 'but for' test stringently"); *Elec. Recyclers Int'l, Inc. v. Calbag Metals Co.*, 2015 WL 1529490, at *4 (E.D. Cal. Apr. 2, 2015) ("Despite the apparently strict language of the but-for test, the Ninth Circuit has not applied the [but-for] test stringently.").

caused by the totality of national conduct, personal jurisdiction exists if the defendant undertook some of this conduct within the forum.

For example, in *Keeton v. Hustler Magazine, Inc.*, the Supreme Court held that a court could exercise personal jurisdiction over a non-resident tortfeasor even though "the bulk of the harm done to [the plaintiff] occurred outside" the state.[37]  In *Keeton*, the defendant publisher was sued in New Hampshire by a plaintiff seeking "nationwide damages" for allegedly libelous statements made in the national publication.[38]  Even though New Hampshire represented only a tiny fraction of the defendant's national sales, and even though the libelous reports were apparently investigated, written, edited, or produced elsewhere, the Court held that the defendant's actions in "carrying on a 'part of its general business' in New Hampshire . . . is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire."[39]

Subsequent cases have continued to make clear that the defendant's forum-based activities need not cause the entire harm.  For example, in *Dubose v. Bristol-Myers Squibb Co.*, a resident of South Carolina sued foreign corporations in California for failure to warn and fraudulent misrepresentation with respect to a drug product that the defendants had tested at clinical trials in California and many other states.[40]  The court, applying the Ninth Circuit's but-for test and upholding jurisdiction, rejected the defendants' argument that there is a numerical threshold for in-state conduct when the injury is caused by conduct spread across many jurisdictions:

> What would that threshold be?  If 25 percent of the clinical trials were conducted in California, would that be enough? 50 percent? 75 percent?  The point is that our existing case law provides no basis for imposing an arbitrary cut-off, and the Court is disinclined to fashion a new barrier to the exercise of its jurisdiction from whole cloth.[41]

---

[37] 465 U.S. 770, 780 (1984).

[38] *Id.* at 775.

[39] *Id.*; *see also Shute v. Carnival*, 897 F.2d 377, 386 (9th Cir. 1990) (upholding personal jurisdiction where defendant had advertised in forum state but had no offices, employees or assets in the forum).

[40] 2017 WL 2775034 (N.D. Cal. June 27, 2017).  The *Dubose* court simultaneously issued an identical ruling in a companion case brought by a New York plaintiff.  *Cortina v. Bristol-Myers Squibb Co.*, 2017 WL 2793808 (N.D. Cal. June 27, 2017).

[41] 2017 WL 2775034, at *4.

8

The court held that since the California clinical trials were "*part of* the unbroken chain of events leading to plaintiff's injury" they did not have to be the sole cause of the injury.[42]  In *Wilden Pump & Engineering Co. v. Versa-Matic Tool, Inc.*, a California plaintiff sued a Pennsylvania manufacturer for patent infringement and the manufacturer's sales of the product to California were only one to three percent of its annual sales.  The court rejected an interpretation of the but-for test that would require just the California sales to cause the injury as leading to an "absurd result."[43]

Copyright cases have reached the same result.  In *Mavrix v. Brand Technologies*, the Ninth Circuit upheld specific jurisdiction where the defendant's website largely "court[ed] a national audience" but also was accessible to users in the forum state.[44]  And in *Hendricks v. New Video Channel America*, the court held that defendants' promotion and distribution of the copyrighted material in California satisfied the causal relationship test, even though the defendants' conduct had occurred nationwide.  Like *Wilden Pump*, the court interpreted the but-for test to avoid the "absurd result" that California conduct contributing to a California injury could not give rise to specific jurisdiction where the nature of the claim involved the defendant's nationwide injurious conduct.[45]  These cases demonstrate that personal jurisdiction exists where a large and harmful course of conduct extends into the forum state; forum conduct alone need not cause the injury.[46]

Here, Exxon engages or has engaged during the relevant time period in substantial in-state conduct to produce, sell and promote its fossil fuels.  Its website even "offers credit cards to consumers … to promote sales of gasoline and other products at its branded gasoline stations, including Exxon-branded retail stations in California" – which is much like the website in *Mavrix* that caused injury merely by making copyrighted materials "accessible to users" in California.[47]

---

[42] *Id*. at *3 (emphasis added)

[43] 1991 WL 280844, at *4 (C.D. Cal. July 29, 1991).

[44] 647 F.3d 1218, 1222, 1228 (9th Cir. 2011); *accord Adidas*, 169 F. Supp. 3d at 1092.

[45] 2015 WL 3616983, at *7 & n.11 (C.D. Cal. June 8, 2015).

[46] And while Exxon accuses the Cities of taking a contrary position in their motion to remand, Br. 12, the Cities have in fact been consistent:  their claims are "not dependent on any one subset of defendants' fossil fuel production activities" but stem from all of the conduct.  ECF No. 64 at 25:24 in 3:17-cv-06012-WHA.

[47] FAC ¶ 58; *Mavrix*, 647 F.3d at 1228.

9

This conduct is another causal factor in the Cities' injuries, insofar as the nuisance was caused both by production and by activities promoting additional consumption – promotions aimed in part at California, one of the largest markets for fossil fuels in the country. Exxon has numerous franchises in California over which it exercises substantial contractual control over promotion of fossil fuels.[48]

Exxon incorrectly contends that, because the Cities cannot trace greenhouse gas molecules back to Exxon, the Cities have not plausibly pleaded that even its worldwide conduct could be a cause of the Cities' injuries. ExxonMobil Corporation's Motion to Dismiss First Amended Complaint ("Br.") 11. But the personal jurisdiction analysis "depends, to a significant degree, on the specific type of tort … at issue"[49]—which in this case is nuisance. Nuisance has a well-established causal standard applicable in multiple tortfeasor cases that emphatically does not require the plaintiff to untangle which molecules came from where.

Nuisance liability only requires that a defendant "contribute" to the nuisance.[50] In a nuisance case involving multiple contributors where the pollution has mixed together, there is an indivisible injury and, absent a valid basis to apportion responsibility, each defendant is liable for the entire harm.[51] As the Restatement provides, "the fact that other persons contribute to a nuisance is not a bar to the defendant's liability for his own contribution."[52] Indeed, the burden of apportionment is on the defendant.[53] And it is no defense that the defendant's conduct by itself would not have caused the harm, even when there are a great many contributors. So long as the defendant is aware that its

---

[48] *Exxon Mobil Corp.*, 2018 WL 1769759, at *4-6.

[49] *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (analyzing purposeful direction element); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (courts may not "raise the standing hurdle higher than the necessary showing for success on the merits in an action").

[50] *Cox v. City of Dallas*, 256 F.3d 281, 292 n.19 (5th Cir. 2001).

[51] Restatement (Second) of Torts § 875.

[52] *Id.* § 840E; *see also id.* § 875.

[53] Restatement (Second) of Torts § 433B(2); *Connecticut v. AEP*, 582 F.3d 309, 349 (2d Cir. 2009) ("in a federal common law of nuisance case involving air pollution, where the ambient air contains pollution from multiple sources . . . liability is joint and several"), *aff'd in relevant part, rev'd on other grounds*, 564 U.S. 410 (2011).

conduct combines with that of others to create the nuisance, the defendant may be held liable.[54]
Exxon is thus wrong that the causation standard in nuisance puts the plaintiff to the impossible
burden of tracing individual molecules back to their source in order to prove causation. That is
simply not the law.

Exxon's authorities do not advance its cause. In *University of Texas Southwestern Medical
Center v. Nassar*, an employment discrimination case, the Court found that the plaintiff had not
proved causation on the merits. First, Exxon's reliance on this case is an implicit acknowledgement
that personal jurisdiction must be analyzed with reference to the merits causation rules.[55] Second,
Exxon's contention that *Nassar* always requires the plaintiff to show that the harm would not have
occurred in the absence of the defendant's conduct is based on selective quotation. *Nassar* said that
this is the rule "[i]n the usual course," and Exxon simply skips over the Court's express
acknowledgement of exceptions, including as set forth in the Restatement (Third) of Torts: Liability
for Physical and Emotional Harm § 27 (2010). This provision deals with multiple tortfeasors and
recognizes that there are situations in which "tortious conduct by one actor is insufficient, even with
other background causes, to cause the plaintiff's harm [but] when combined with other conduct by
other persons . . . is more than sufficient to cause the harm."[56] The Reporters' Notes provide
examples, including asbestos cases, which "have allowed plaintiff to recover from all defendants to

---

[54] *See, e.g.*, *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 696-97 (7th Cir. 2008)
(en banc) ("pollution of a stream to even a slight extent becomes unreasonable [and therefore a
nuisance] when similar pollution by others makes the condition of the stream approach the danger
point.") (quotation marks omitted); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 823
(E.D.N.Y. 1984) ("In the pollution and multiple crash cases, the degree to which the individual
defendant's actions contributed to an individual plaintiff's injuries is unknown and generally
unascertainable," yet "all defendants have been held liable"); *Michie v. Great Lakes Steel Div. Nat'l
Steel Corp.*, 495 F.2d 213, 215-18 (6th Cir. 1974); *California v. Gold Run Ditch & Mining Co.*, 4 P.
1152, 1156 (Cal. 1884) (defendant's pollution alone would not have caused injury given the "vast
amount" of mining previously and currently undertaken on the river by numerous others but
defendant still liable for contributing to the nuisance); Restatement (Second) of Torts § 881 cmt. d
("It is also immaterial that the act of one of them by itself would not constitute a tort if the actor
knows or should know of the contributing acts of the others."). The Cities have a more extended
discussion of this causation issue in their brief in opposition to the motion to dismiss for lack of
personal jurisdiction filed by defendant BP p.l.c.

[55] 570 U.S. 338, 347 (2013).

[56] Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 27 cmt. f (2010).

11

whose asbestos products the plaintiff was exposed" and observe that "[n]uisance cases were the pre-toxic substances equivalent of asbestos and other such cases, and courts resolved them similarly."[57]

Exxon also improperly relies on *Kivalina*, which found that plaintiffs did not have standing to sue greenhouse gas emitters, because the plaintiffs' injuries were supposedly not traceable to defendants' emissions.[58] Br. 4, 11. But the Ninth Circuit implicitly reversed this part of the district court's decision, by proceeding to the merits even though the standing issue was fully briefed and was a threshold jurisdictional matter. The *Kivalina* district court's analysis is also contradicted by *Massachusetts v. EPA*, which held that the defendants' contributions to global warming were sufficiently traceable to EPA's conduct: "EPA's refusal to regulate [greenhouse gas] emissions 'contributes' to Massachusetts' injuries [of coastal erosion],"[59] even though (as the dissent pointed out) the new motor vehicle emissions at issue were "a fraction of 4 percent of global emissions."[60] And an equally divided Supreme Court affirmed the Second Circuit's standing analysis in *American Electric Power Co. v. Connecticut*, holding that federal common law nuisance liability can be based on conduct by defendants that merely contributes to the creation of a nuisance.[61] If anything, the climate change case law demonstrates a valid link between global warming injuries and Exxon-size contributions. And since *Kivalina* was decided, there are now published scientific studies establishing a methodology for attributing climate change impacts to fossil fuel producers.[62] While defendants are quantitatively and qualitatively different from other contributors to global warming, just 100 "Carbon Majors" are responsible for 62% of all greenhouse gas emissions from industrial sources going back over a hundred years and for 71% of emissions since 1988.[63]

---

[57] *Id.* Reporters' Notes cmt g.

[58] *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 870 n.2 (N.D. Cal. 2009), *aff'd on other grounds*, 696 F.3d 849 (9th Cir. 2012).

[59] 549 U.S. 497, 523 (2007) (quoting Clean Air Act).

[60] *Id.* at 544 (Roberts, C.J., dissenting).

[61] *AEP*, 582 F.3d at 345, *aff'd in relevant part by an equally divided court*, 564 U.S. at 420.

[62] FAC ¶ 94(b-c).

[63] FAC ¶ 94 & n.71; Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854-2010*, Climactic Change, Jan. 2014.

12

Exxon also relies on cases where the defendant simply had no forum contacts at all related to the plaintiff's claims. In *Bristol-Myers Squibb Co. v. Superior Court*, the plaintiffs brought a product defect claim in California, but their purchase, use and injury from the product all occurred elsewhere, and the product was also designed and manufactured outside California.[64] *Glencore Grain Rotterdam B.V.* v. *Shivnath Rai Harnarain Co.*, involved a breach of contract claim where the contracts were negotiated abroad, involved foreign companies, and required performance in a foreign country; the defendant merely sold *other* goods unrelated to the contract in the forum.[65] Finally, in a footnote Exxon accuses the Cities of ignoring "corporate separateness and improperly aggregat[ing] the activities of ExxonMobil's subsidiaries and affiliates." Br. 11 n.8. But arguments "raised only in footnotes ... are generally deemed waived."[66] In any event, it simply defies belief, and the evidence set forth above, to contend that Exxon's subsidiaries are in control of the corporate family's key decisions regarding the level of global fossil fuel production and global climate policies.

**B.    Exercising personal jurisdiction over Exxon is reasonable.**

Exxon has not argued reasonableness, and thus waived it.[67] Exxon cannot meet its burden to demonstrate unreasonableness in any event. Exxon purposefully produces, markets and sells fossil fuels in California, and this also means there is no heavy burden defending here.[68] Since the Court is applying federal law, there is no conflict with the sovereignty of another state.[69] "California has an interest in protecting its residents[.]"[70] California is the most efficient forum, given that the injuries,

---

[64] 137 S. Ct. 1773, 1781 (2017).

[65] 284 F.3d 1114, 1123-24 (9th Cir. 2002). In a footnote (Br. 10 n.6), Exxon cites several district court decisions for the proposition that the defendant's conduct in the forum must be the but-for cause of the plaintiff's injury. But none of these cases considered a situation like this one, where the defendant had engaged in a national or international course of conduct that extended into the forum.

[66] *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2013); *accord Castro v. ABM Indus., Inc.*, 2018 WL 574905, at *2 (N.D. Cal. Jan. 26, 2018).

[67] *Quillan v. Cigna Healthcare of California, Inc.*, 2016 WL 1461491, at *4 n.4 (N.D. Cal. Apr. 14, 2016).

[68] *Kabo Tool Co. v. Porauto Industrial Co.*, 2013 WL 5328496, at *7 (D. Nev. Sep. 20, 2013).

[69] *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

[70] *Universal Stabilization Techns., Inc. v. Advanced BioNutrition Corp.*, 2017 WL 1838955, at *6 (S.D. Cal. May 8, 2017).

13

and some of the injury-inducing conduct, occurred here. California offers convenient relief for the Cities' claims, particularly since the Cities seek funds to perform abatement actions in California.[71]

## C. Alternatively, the Cities are entitled to jurisdictional discovery.

In the alternative, to the extent that the Court may not be inclined to deny Exxon's motion outright, the Cities should be allowed jurisdictional discovery.[72] Discovery would be appropriate, for example, regarding Exxon's role as the ultimate decisionmaker with respect to levels of companywide production of fossil fuels, its control over global climate policies, and its decisions to have its subsidiaries and agents carry out decisions regarding fossil fuel production and climate policies in California.

## D. Exxon's mischaracterizations of the Cities' cases are irrelevant.

Finally, Exxon includes a litany of arguments and mischaracterizations that are irrelevant to this motion. The Cities do *not* ask the Court to "wade into a political thicket and fundamentally reshape the energy industry as we know it," nor do the Cities seek to make "international energy policy." Br. 1. Instead, they seek an order of abatement requiring defendants to fund climate change adaptation programs for the Cities, and "do not seek to restrain Defendants from engaging in their business operations." FAC ¶¶ 11, 142, 148. There is no need to "pass judgment on the social utility" of the use of fossil fuels. Br. 1. Under the Restatement, there is no balancing of social utility in a case alleging severe harm.[73] The Cities do not seek to hold defendants "uniquely" liable but rather have alleged they are qualitatively and quantitatively different from other contributors. FAC ¶ 94.

## V. CONCLUSION

Exxon is subject to specific personal jurisdiction in this Court.

---

[71] *See, e.g., North Sister Publishing, Inc. v. Schefren*, 2015 U.S. Dist. LEXIS 64637, at *16 (D. Or. Apr. 6, 2015).

[72] *See, e.g., Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Illumina, Inc. v. Qiagen NV*, 2016 WL 3902541, at *4-5 (N.D. Cal. July 19, 2016); *SA Luxury Expeditions LLC v. Latin America for Less, LLC*, 2014 WL 6065838, at *2 (N.D. Cal. Nov. 12, 2014); *Macias v. Waste Mgmt. Holdings, Inc.*, 2014 WL 4793989, at *3 (N.D. Cal. Sept. 25, 2014).

[73] Restatement (Second) of Torts § 829A.

14

Dated: May 3, 2018                    Respectfully submitted,

\*\* */s/ Erin Bernstein*
BARBARA J. PARKER (State Bar #069722)
City Attorney
MARIA BEE (State Bar #167716)
Special Counsel
ERIN BERNSTEIN (State Bar #231539)
Supervising Deputy City Attorney
MALIA MCPHERSON (State Bar #313918)
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

Attorneys for Plaintiffs
CITY OF OAKLAND and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through Oakland City Attorney
BARBARA J. PARKER

> \*\* Pursuant to Civ. L.R. 5-1(i)(3), the electronic
> filer has obtained approval from this signatory.

\*\* */s/ Matthew D. Goldberg*
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax.: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through San Francisco City Attorney
DENNIS J. HERRERA

> \*\* Pursuant to Civ. L.R. 5-1(i)(3), the electronic
> filer has obtained approval from this signatory.

*/s/ Steve W. Berman*
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300

15

Seattle, Washington 98101
Tel.: (206) 623-7292
Fax: (206) 623-0594

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
shanas@hbsslaw.com
Tel.: (510) 725-3000
Fax: (510) 725-3001

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Tel.: (617) 641-9550
Fax: (617) 641-9551

*Of Counsel Attorneys for Plaintiffs*