CITY OF OAKLAND
BARBARA J. PARKER, State Bar #069722
City Attorney
MARIA BEE, State Bar #167716
Special Counsel
ERIN BERNSTEIN, State Bar #231539
Supervising Deputy City Attorney
MALIA MCPHERSON, State Bar #313918
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

Attorneys for Plaintiffs
CITY OF OAKLAND and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through the Oakland City
Attorney BARBARA J. PARKER
[Other Counsel Listed on Signature Page]

CITY AND COUNTY OF SAN FRANCISCO
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone:  (415) 554-4748
Facsimile:  (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN
FRANCISCO and PEOPLE OF THE STATE
OF CALIFORNIA, acting by and through the
San Francisco City Attorney
DENNIS J. HERRERA
[Other Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the Oakland City Attorney,

Plaintiffs,

v.

BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,

Defendants.

Case No.: 3:17-cv-06011-WHA

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Hearing Date:  May 24, 2018
Hearing Time:  8:00 a.m.
Courtroom  12 (19th floor)
Judge:  Hon. William Alsup

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

---

CITY AND COUNTY OF SAN FRANCISCO, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through the San Francisco City Attorney DENNIS J. HERRERA,

        Plaintiffs,

        v.

BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,

        Defendants.

Case No.: 3:17-cv-06012-WHA

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Hearing Date:  May 24, 2018
Hearing Time:  8:00 a.m.
Courtroom  12 (19th floor)
Judge:  Hon. William Alsup

---

CHEVRON CORP.,

        Third Party Plaintiff,

v.

STATOIL ASA,

        Third Party Defendant.

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION ........................................................................................... 1

4    II.     ARGUMENT ................................................................................................... 2

5            A.     The answers to the Court's questions show that the Cities' claim is
                    cognizable. ........................................................................................... 2
6
            B.     No federal statute displaces or precludes the Cities' claim. .................... 8
7
                   1.     The Clean Air Act does not displace the Cities' public
8                         nuisance claim. ........................................................................... 9

9                  2.     Federal common law reaches defendants' combined foreign
                          and domestic conduct. ............................................................... 10
10
                   3.     Energy statutes do not displace the Cities' public nuisance
11                        claim. ......................................................................................... 12

12                 4.     Advertising laws do not displace the Cities' federal
                          nuisance claim. .......................................................................... 13
13
            C.     The Cities have pled a proper federal common law public nuisance
14                 claim. ................................................................................................. 14

15                 1.     Defendants' conduct is not authorized by law. .......................... 15

16                 2.     There is no control requirement in nuisance. ............................. 17

17                 3.     The Cities have properly pled causation. ................................... 18

18                 4.     The Cities' requested relief is available and constitutional. ....... 22

19          D.     The Cities' claim does not violate the separation of powers. ................ 23

20   III.   CONCLUSION ............................................................................................. 25

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................................20

*Abbatiello v. Monsanto Co.*,
522 F. Supp. 2d 524 (S.D.N.Y. 2007) ....................................................................3, 18

*Adobe Lumber, Inc. v. Hellman*,
2008 WL 4539136 (E.D. Cal. Oct. 2, 2008) ..........................................................16, 17

*Alperin v. Vatican Bank*,
410 F.3d 532 (9th Cir. 2005) ..............................................................................23, 24

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) .............................................................................................25

*Amigos Bravos v. BLM*,
816 F. Supp. 2d 1118 (D.N.M. 2011) ......................................................................20

*Avitan v. Holder*,
2011 WL 499956 (N.D. Cal. Feb. 8, 2011) ...............................................................22

*Benefiel v. Exxon*,
959 F.2d 805 (9th Cir. 1992) ..................................................................................22

*BMW v. Gore*,
517 U.S. 559 (1996) .............................................................................................23

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) ..................................................................................20

*Boomer v. Atl. Cement*,
57 N.E.2d 870 (N.Y. 1970) ..............................................................................22, 23

*Bright v. E. Side Mosquito Abatement Dist.*,
168 Cal. App. 2d 7 (1959) .....................................................................................17

*California v. General Motors*,
2007 WL 2726871 (N.D. Cal. Sept. 17, 2007) .................................................5, 12, 24

*California v. Gold Run Ditch & Mining Co.*,
4 P. 1152 (Cal. 1884) ........................................................................................7, 19

*California v. Gold Run Ditch & Mining Co.*,
66 Cal. 138 (1884) ...........................................................................................2, 23

*Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.,*
 273 F.3d 536 (3d Cir. 2001) ...............................................................................17, 18

*Carmichael v. Kellogg, Brown & Root,*
 572 F.3d 1271 (11th Cir. 2009) .................................................................................24

*Cent. Valley Chrysler-Jeep v. Goldstene,*
 529 F. Supp. 2d 1151 (E.D. Cal. 2007) ....................................................................25

*Central Hudson Gas & Elec. v. Pub. Serv. Comm'n,*
 447 U.S. 557 (1980) ...............................................................................................7, 14

*Cerny v. Marathon Oil Corp.,*
 2013 WL 5560483 (W.D. Tex. Oct. 7, 2013)..............................................................5

*Chaser Shipping Corp. v. United States,*
 649 F. Supp. 736 (S.D.N.Y. 1986) ............................................................................24

*City of Boston v. Smith & Wesson Corp.,*
 2000 WL 1473568 (Mass. Super. Ct. July 13, 2000) ..................................................3

*City of Cincinnati v. Beretta U.S.A.,*
 768 N.E.2d 1136 (Ohio 2002) ..........................................................................3, 4, 18

*City of Evansville v. Kentucky Liquid Recycling,*
 604 F.2d 1008 (7th Cir. 1979) ...................................................................................22

*City of Harrisonville v. W. S. Dickey Clay Mfg.,*
 289 U.S. 334 (1933) ...................................................................................................23

*City of Manchester v. Nat'l Gypsum Co.,*
 637 F. Supp. 646 (D.R.I. 1986) .................................................................................17

*City of Modesto Redevelopment Agency v. Superior Court,*
 119 Cal. App. 4th 28 (2004) ...........................................................................2, 7, 18

*City of Modesto v. Dow Chem. Co.,*
 19 Cal. App. 5th 130 (2018) .........................................................................2, 13, 21

*City of San Jose v. Monsanto Co.,*
 231 F. Supp. 3d 357 (N.D. Cal. 2017)...................................................................3, 22

*City of Seattle v. Monsanto Co.,*
 237 F. Supp. 3d 1096 (W.D. Wash. 2017) ..................................................................3

*In re Civil Investigative Demand No. 2016-EPD-36,*
 2017 WL 647259 (Mass. Super. Jan. 11, 2017) ..........................................................5

*Collins v. Olin Corp.,*
 248 F.R.D. 95 (D. Conn. 2008) .................................................................................19

*Comer v. Murphy Oil USA,*
　585 F.3d 855 (5th Cir. 2009) .................................................................................5

*Comer v. Murphy Oil USA,*
　839 F. Supp. 2d 849 (S.D. Miss. 2012) ...................................................4, 5, 24

*Corrie v. Caterpillar,*
　503 F.3d 974 (9th Cir. 2007) .................................................................................4

*County of Oneida v. Oneida Indian Nation,*
　470 U.S. 226 (1985) ...............................................................................................9

*County of Santa Clara v. Atlantic Richfield,*
　137 Cal. App. 4th 292 (2006) .............................................................2, 4, 18, 22

*Cox v. City of Dallas,*
　256 F.3d 281 (5th Cir. 2001) ...............................................................................15

*Crosby v. National Foreign Trade Council,*
　530 U.S. 363 (2000) .............................................................................................25

*DaimlerChrysler v. Cuno,*
　547 U.S. 332 (2006) .............................................................................................24

*Dep't of Envtl. Prot. v. Ventron Corp.,*
　440 A.2d 455 (N.J. App. Div. 1981) .....................................................................7

*Doe v. Nestle USA,*
　766 F.3d 1013 (9th Cir. 2014) ............................................................................12

*Eastern Enters. v. Apfel,*
　524 U.S. 498 (1998) .............................................................................................23

*Evans v. Lorillard Tobacco Co.,*
　2007 WL 796175 (Mass. Super. Ct. Feb. 7, 2007) ..............................................3

*Exxon Mobil v. Schneiderman,*
　2018 WL 1605572 (S.D.N.Y. Mar. 29, 2018) .....................................................5

*Exxon Shipping Co. v. Baker,*
　554 U.S. 471 (2008) .........................................................................................9, 23

*People ex rel. Gallo v. Acuna,*
　14 Cal. 4th 1090 (1997) .......................................................................................18

*Georgia v. Tennessee Copper Co.,*
　206 U.S. 230 (1907) .........................................................................................1, 12

*Gibson v. Am. Cyanamid Co.,*
　760 F.3d 600 (7th Cir. 2014) ..............................................................................23

*Greater Westchester Homeowners Assn. v. City of Los Angeles,*
   26 Cal. 3d 86 (1979) ............................................................................................17

*Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie,*
   508 F. Supp. 2d 295 (D. Vt. 2007) ......................................................................25

*Harley v. Merrill Brick,*
   83 Iowa 73, 48 N.W. 1000 (1891) ..........................................................................7

*Ileto v. Glock Inc.,*
   349 F.3d 1191 (9th Cir. 2003) ...................................................................... *passim*

*Illinois v. Milwaukee,*
   406 U.S. 91 1972 ...........................................................................11, 15, 19, 25

*Int'l Paper Co. v. Ouellette,*
   479 U.S. 481 (1987) ..............................................................................................11

*Japan Whaling Ass'n v. Am. Cetacean Soc'y,*
   478 U.S. 221 (1986) ..............................................................................................24

*Jesner v. Arab Bank PLC,*
   2018 WL 1914663 (April 24, 2018) .....................................................................12

*Kasza v. Browner,*
   133 F.3d 1159 (9th Cir. 1998) ..........................................................................9, 14

*Kearney v. Foley & Lardner,*
   590 F.3d 638 (9th Cir. 2009) .................................................................................6

*Kiobel v. Royal Dutch Petroleum,*
   569 U.S. 108 (2013) .......................................................................................11, 12

*Korsinsky v. EPA,*
   2005 WL 2414744 (S.D.N.Y. Sept. 29, 2005) ......................................................5

*Landers v. East Texas Salt Water Disposal Co.,*
   248 S.W.2d 731 (Tex. 1952) ...........................................................................12, 19

*In re Lead Paint Litig.,*
   924 A.2d 484 (N.J. 2007) ................................................................................17, 18

*Mangiaracina v. BNSF Ry. Co.,*
   2017 WL 130250 (N.D. Cal. Jan. 12, 2017)..........................................................17

*Manzarek v. St. Paul Fire & Marine Ins.,*
   519 F.3d 1025 (9th Cir. 2008) ................................................................................2

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ..............................................................................................24

*McIndoe v. Huntington Ingalls Inc.*,
 817 F.3d 1170 (9th Cir. 2016) ..............................................................................7

*Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*,
 495 F.2d 213 (6th Cir. 1974) ...............................................................................19

*Michigan v. Army Corps of Eng'rs*,
 667 F.3d 765 (7th Cir. 2011) ...........................................................................8, 13

*Michigan v. U.S. Army Corps of Eng'gs*,
 758 F.3d 892 (7th Cir. 2014) ...............................................................................16

*Milwaukee v. Illinois*,
 451 U.S. 304 (1981) .............................................................................................14

*Missouri v. Illinois*,
 180 U.S. 208 (1901) ...............................................................................................1

*Mobil Oil v. v. Higginbotham*,
 436 U.S. 618 (1978) .......................................................................................13, 14

*In re MTBE Prod. Liab. Litig.*,
 725 F.3d 65 (2d Cir. 2013) ......................................................................3, 18, 22

*In re MTBE Prods. Liab. Litig.*,
 175 F. Supp. 2d 593 (S.D.N.Y. 2001) ....................................................................3

*Mujica v. Air Scan*,
 771 F.3d 580 (9th Cir. 2014) ...............................................................................12

*NAACP v. Claiborne Hardware*,
 458 U.S. 886 (1982) ...............................................................................................6

*Nat'l Sea Clammers Ass'n v. New York*,
 616 F.2d 1222 (3d Cir. 1980) ..............................................................................22

*New York v. Shore Realty*,
 759 F.2d 1032 (2d Cir. 1985) ..............................................................................15

*North Dakota v. Minnesota*,
 263 U.S. 365 (1923) .............................................................................................15

*Northridge Co. v. W.R. Grace & Co.*,
 205 Wis. 2d 267 (Ct. App. 1996) ................................................................3, 4, 18

*O'Connor v. Raymark Indus.*,
 518 N.E.2d 510 (Mass. 1988) ..............................................................................19

*Occidental of Umm al Qaywayn v. A Certain Cargo of Petroleum*,
 577 F.2d 1196 (5th Cir. 1978) .............................................................................24

*Ohio v. Wyandotte Chemicals Corp.*,
    401 U.S. 493 (1971) ............................................................................................................11

*Page Cty. Appliance Ctr., Inc. v. Honeywell, Inc.*,
    347 N.W.2d 171 (Iowa 1984) ............................................................................................18

*People v. ConAgra Grocery Prod.*,
    17 Cal. App. 5th 51 (2017) ........................................................................................ *passim*

*Rocky Mntn. Farmers v. Corey*,
    730 F.3d 1070 (9th Cir. 2013) ...........................................................................................25

*Salim v. Mitchell*,
    268 F. Supp. 3d 1132 (E.D. Wash. 2017) .........................................................................12

*Illinois ex rel. Scott v. City of Milwaukee*,
    1973 U.S. Dist. LEXIS 15607 (N.D. Ill. Jan. 1, 1973) ....................................................19

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*,
    702 F.3d 794 (5th Cir. 2012) ...............................................................................................5

*SF Chapter of A. Philip Randolph Inst. v. EPA*,
    2008 WL 859985 (N.D. Cal. Mar. 28, 2008) .....................................................................5

*Sierra Club v. U.S. Def. Energy Support Ctr.*,
    2011 WL 3321296 (E.D. Va. July 29, 2011) ....................................................................21

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ....................................................................................................10, 11

*In re Starlink Corn Prods. Liab. Litig.*,
    212 F. Supp. 2d 828 (N.D. Ill. 2002) ...........................................................................3, 17

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008) ..................................................................................................17

*Texas Indus., Inc. v. Radcliff Materials*,
    451 U.S. 630 (1981) ....................................................................................................10, 11

*The Lockwood Co. v. Lawrence*,
    77 Me. 297 (Me. 1885) .....................................................................................................19

*Tuosto v. Philip Morris*,
    2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...................................................................6

*United States v. Alcan Aluminum Corp.*,
    990 F.2d 711 (2d Cir. 1993) ................................................................................................7

*United States v. Alvarez*,
    567 U.S. 709 (2012) ......................................................................................................7, 14

*United States v. Philip Morris,*
    337 F. Supp. 2d 15 (D.D.C. 2004) ....................................................................6

*United States v. Philip Morris,*
    566 F.3d 1095 (D.C. Cir. 2009) .................................................................6, 14

*United States v. Pink,*
    315 U.S. 203 (1942) ......................................................................................24

*United States v. Sec. Indus. Bank,*
    459 U.S. 70 (1982) ........................................................................................23

*United States v. Texas,*
    507 U.S. 529 (1993) ........................................................................................9

*Varjabedian v. City of Madera,*
    20 Cal. 3d 285 (1977) ...................................................................................17

*Velsicol Chem. Corp. v. Rowe,*
    543 S.W.2d 337 (Tenn. 1976) .......................................................................19

*Venuto v. Owens-Corning Fiberglas Corp.,*
    22 Cal. App. 3d 116 (1971) ..........................................................................17

*Vieth v. Jubelirer,*
    541 U.S. 267 (2004) ......................................................................................24

*VIZIO, Inc. v. Klee,*
    2018 WL 1526626 (2d Cir. Mar. 29, 2018) .................................................25

*White v. Smith & Wesson Corp.,*
    97 F. Supp. 2d 816 (N.D. Ohio 2000) ............................................................3

*Williams v. Dow Chem. Co.,*
    2004 WL 1348932 (S.D.N.Y. June 16, 2004) ................................................3

*Wood v. Picillo,*
    443 A.2d 1244 (R.I. 1982) ............................................................................15

*Woodyear v. Schaefer,*
    57 Md. 1 (Md. 1881) .....................................................................................19

## STATUTES

15 U.S.C. § 2901-note .......................................................................................16

15 U.S.C. § 2931(a)(2) .......................................................................................16

28 U.S.C. § 1331 ................................................................................................11

28 U.S.C. § 1350 ...................................................................................................10

Cal. Bus. & Prof. Code § 13410(a) ......................................................................17

Cal. Bus. & Prof. Code § 13441 ...........................................................................17

Cal. Code Regs. Tit. § 1740.5 ..............................................................................17

Cal. Code Regs. Tit. § 18621 ...............................................................................17

Cal. Pub. Res. Code § 3160(a)(2) ........................................................................17

Cal. Pub. Res. Code § 6815.1 ..............................................................................17

Cal. Pub. Util. Code § 785 ...................................................................................17

Cal. Sts. & High. Code § 2105 .............................................................................17

California Civil Code section 3482 ..................................................................16, 17

Global Climate Protection Act of 1987 ...............................................................15

### OTHER AUTHORITIES

*Prosser & Keeton on Torts* § 87 (5th ed. 1984) ..................................................15

Restatement (Second) of Torts ........................................................................ *passim*

Restatement (Third) of Torts .................................................................................7

Richard Heede, *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement Producers, 1854–2010* ...........................................20

5 Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) ...............2

1

## I.    INTRODUCTION

2        Despite long knowing their fossil fuel products posed grave risks to coastal cities

3 vulnerable to sea level rise, defendants have relentlessly produced, marketed, and sold them in

4 massive quantities.  And they have done so while simultaneously engaging in large-scale

5 communications and advertising campaigns to discredit scientific research on global warming and

6 portray these fuels as environmentally responsible.  The risks are now realities.  California already

7 is experiencing impacts from accelerated sea level rise caused by global warming, including more

8 extensive coastal flooding during storms and increased coastal erosion.  These problems will only

9 get worse.

10        San Francisco and Oakland ("the Cities") have properly and sufficiently pleaded that these

11 harms constitute a quintessential public nuisance, and that defendants' intentional conduct is

12 substantially to blame.  Defendants' arguments to the contrary are unpersuasive.  The Cities do not

13 seek to restrain defendants from engaging in their business operations.  But the cost to adapt to

14 rising seas will be substantial, and the Cities should not bear them alone.  The Cities properly seek

15 an order establishing an abatement fund.

16        Defendants' other arguments in support of dismissal are equally unavailing.  This Court

17 already concluded that the Clean Air Act does not displace a federal common law claim focused on

18 the production, sale and marketing of fossil fuels – domestically or internationally – because the

19 statute has not "occupied the field" with respect to such conduct.  ECF No. 134 at 7:22.  This

20 rationale is equally true with respect to defendants' new displacement arguments, which are

21 premised on a grab-bag of additional federal laws.  Further, nothing in the federal common law

22 precludes a claim based on the combined effects of domestic and foreign use of defendants'

23 products.  In fact, as this Court already found (at defendants' urging), federal common law applies

24 *because of* the "international" nature of the issue.  *Id.* at 2:13.  Finally, the Cities' claim does not

25 violate the separation of powers but, rather, asks this Court to perform its proper function.

26        These cases, at bottom, ask this Court to apply old law to new facts.  For over a century,

27 courts have imposed nuisance liability on companies contributing to new environmental harms as

28 science has advanced.  *Georgia v. Tennessee Copper Co*, 206 U.S. 230 (1907) (acid rain); *Missouri*

1   *v. Illinois*, 180 U.S. 208, 241 (1901) (illnesses caused by microorganisms in sewage).  And they

2   have imposed such liability on the biggest contributors to a nuisance notwithstanding the "vast

3   amount" of other contributions.  *California v. Gold Run Ditch & Mining Co.*, 66 Cal. 138, 148,

4   (1884).  Defendants' conduct here fits squarely within this tradition, and the Cities have amply met

5   their pleading obligations to state a proper claim of public nuisance.  The motion should be

6   denied.[1]

7   **II.   ARGUMENT**

8   **A.   The answers to the Court's questions show that the Cities' claim is cognizable.**

9   The Court ordered the parties to address four questions in their briefing on this motion.

10  ECF No. 192.[2]  The answers show that the Cities' claim is cognizable.

11  1.   Many courts have sustained nuisance claims against the producer of an otherwise

12  lawful product, including cases where the producer engaged in misleading promotion.  California

13  state appellate decisions have sustained public nuisance claims against lead paint manufacturers

14  that engaged in improper promotion.[3]  A similar line of cases holds that chemical and chemical

15  equipment manufacturers whose products will inevitably create a nuisance or who instruct users in

16  a manner that creates a nuisance are also liable.[4]  Many other cases have sustained nuisance claims

---

18  [1] With 12(b)(6) motions, "(1) the complaint is construed in the light most favorable to the
    plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn  . .
19  . are drawn in favor of the pleader."  5 Wright & Miller, Federal Practice & Procedure § 1357 (3d
    ed. 2004, Apr. 2018 update); *accord Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (At the
20  motion-to-dismiss stage, a court "take[s] all well-pleaded factual allegations in the complaint as
    true, construing them in the light most favorable to the nonmoving party.").

21  [2] All ECF references herein are to No. 3:17-cv-06011-WHA.  "Br." refers to Defendants'
    Motion to Dismiss First Amended Complaint, ECF 225.  "FAC" refers to the Amended
22  Complaints.

23  [3] *People v. ConAgra Grocery Prod.*, 17 Cal. App. 5th 51, 68-69, 93, 164 (2017) (affirming
    public nuisance judgment where manufacturers' "[p]romotion of lead paint for interior residential
24  use necessarily implied that lead paint was safe for such use" even though science had previously
    "recognized that lead paint is toxic"), *review denied* (Feb. 14, 2018); *County of Santa Clara v.*
25  *Atlantic Richfield*, 137 Cal. App. 4th 292, 310 (2006) ("We do not believe that the fact that
    defendants were manufacturers and distributors of lead means that they may not be held liable for
26  their intentional promotion of the use of lead paint").  Internal citations, quotations, and footnotes
    omitted throughout unless otherwise indicated.

27  [4] *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal. App. 4th 28, 41-42
    (2004) (reversing summary judgment in state statutory claim incorporating nuisance law because
28  "defendant who manufactured equipment designed to discharge waste in a manner that will create a
    nuisance or who specifically instructed a user to dispose of waste in such a manner could be found

against product manufacturers involving allegations of improper promotion, even though such promotion was not a separate element but supported other issues, such as causation or intent.[5]  And still other cases have sustained nuisance claims against manufacturers, regardless of whether there was any improper promotion.[6]  Defendants identify nine cases rejecting "public nuisance claims

___

to have caused or permitted a discharge"); *City of Modesto v. Dow Chem. Co.*, 19 Cal. App. 5th 130, 146 (2018) (re-affirming and clarifying prior ruling as against chemical manufacturer defendants), *as modified on denial of reh'g* (Feb. 6, 2018), *review denied* (Apr. 25, 2018).

[5] *See, e.g.*, *In re MTBE Prod. Liab. Litig.*, 725 F.3d 65, 82, 121 (2d Cir. 2013) (affirming public nuisance verdict in groundwater pollution case against Exxon as manufacturer and supplier of gasoline containing chemical MTBE; operative complaint alleged that defendants attacked government reports about MTBE's environmental risks, *see* Fourth Amended Complaint ¶¶ 96-109 in *City of New York v. Amerada Hess Corp.*, No. 04-CV-3417 (SAS) (S.D.N.Y.)); *City of Seattle v. Monsanto Co.*, 237 F. Supp. 3d 1096, 1101, 1107 (W.D. Wash. 2017) (denying motion to dismiss public nuisance claim where defendant "was aware of PCBs' toxicity and propensity to leach, [and] it denied or misrepresented those facts to government investigators."); *City of San Jose v. Monsanto Co.*, 231 F. Supp. 3d 357, 360 (N.D. Cal. 2017) (denying motion to dismiss public nuisance claim where plaintiff alleges defendant "knew that PCBs were dangerous, concealed that knowledge, promoted the use of PCBs in a range of applications, and gave disposal instructions that were likely to cause environmental contamination"); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 541 (S.D.N.Y. 2007) (denying motion to dismiss nuisance claim where "'[w]ith full knowledge of the hazards of PCBs, Monsanto made the conscious decision to suppress and conceal these facts'") (quoting complaint); *Williams v. Dow Chem. Co.*, 2004 WL 1348932, at **6, 21 (S.D.N.Y. June 16, 2004) (denying motion for summary judgment on public nuisance claim under New York law against pesticide manufacturer involving "'distortion' of scientific research"); *In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 833-37, 847-48 (N.D. Ill. 2002) (denying motion to dismiss nuisance claims under law of ten states where seed manufacturer "instructed seed representatives to tell farmers that [the seed] was safe for human consumption" even though "[s]uch statements directly contradict the approved label," and EPA never approved the seeds' use for human consumption); *In re MTBE Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 601, 628-29 (S.D.N.Y. 2001) (denying motions to dismiss nuisance claims against MTBE manufacturers and suppliers under laws of four states where defendants "marketed and promoted the use of MTBE by misrepresenting its chemical properties," and "publicly disput[ed]" government report describing MTBE's dangers); *Evans v. Lorillard Tobacco Co.*, 2007 WL 796175, at **1, 19 (Mass. Super. Ct. Feb. 7, 2007) (denying motion to dismiss public nuisance claim where defendant "concealed and suppressed the true facts about the health hazards of smoking Newport cigarettes"); *City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, at **3, 13–14 (Mass. Super. Ct. July 13, 2000) (denying motion to dismiss public nuisance claim where defendants' advertising misled the public about firearms safety but they "knew or should have known that studies and statistics show that presence of firearms in the home increases the risk of harm and that firearms without locking devices are unsafe.").

[6] *Ileto v. Glock Inc.*, 349 F.3d 1191, 1212 (9th Cir. 2003) (reinstating public nuisance claim against a gun manufacturer); *White v. Smith & Wesson Corp.*, 97 F. Supp. 2d 816, 830 (N.D. Ohio 2000) (denying motion to dismiss public nuisance claim against gun manufacturers); *City of Cincinnati v. Beretta U.S.A.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (reinstating public nuisance claim against gun manufacturers: "under the Restatement's broad definition, a public-nuisance action can be maintained for injuries caused by a product if the facts establish that the design, manufacturing, marketing, or sale of the product unreasonably interferes with a right common to the general public"); *Northridge Co. v. W.R. Grace & Co.*, 205 Wis. 2d 267, 282 (Ct. App. 1996) (asbestos manufacturer was liable for contamination in shopping mall because "manufacturers can

based on the promotion and sale of lawful products on various grounds." Br. 4:11-28. But these state law nuisance cases—three each against gun manufactures, lead paint companies, and asbestos manufacturers—are easily distinguished from the claim here. Factually, each of the gun cases involved intervening, unforeseeable criminal conduct by third parties, a factor not present here; and none of the cases entailed an intentional, comprehensive misinformation campaign contributing to foreseeably disastrous consequences. Legally, each of the cases identified a control requirement, either as a separate element of the nuisance claim, or as an implicit component of proximate causation. But neither federal common law nor California law, both rooted in the Restatement, include such a requirement. *See* § II.C.2. This is why other courts, applying Restatement principles, have reached countervailing results when confronting similar facts. *See Ileto* and *City of Cincinnati* (re: gun manufacturers), *Santa Clara* and *ConAgra* (re: lead paint companies), and *Northridge Co*. (re: asbestos manufacturers).

　　　　2.　　The Second Circuit's detailed decision in *Connecticut v. American Electric Power Corp*. ("*AEP*"), addresses many key issues raised by a global warming nuisance case. The Supreme Court affirmed *AEP*'s holdings that standing was proper and that the case did not present a nonjusticiable political question. 582 F.3d 309, 321-49 (2d Cir. 2009), *aff'd in part, rev'd in part*, 564 U.S. 410, 420 & n.6 (2011). The Second Circuit also held (in holdings left unaddressed by the Supreme Court) that (1) the plaintiffs had pled sufficient facts to state a proper federal common law claim of public nuisance; (2) many statutes other than the Clean Air Act ("CAA") did not displace the plaintiffs' claim; and (3) the foreign affairs power did not displace the claim. *See* 582 F.3d at 349-71, 381-89. Defendants' discussion of prior case law addressing a nuisance theory in the context of global warming omits important decisions and relies upon cases that are no longer good law. Throughout their brief, defendants cite the district court opinion in *Native Village of Kivalina v. ExxonMobil Corp.*, *(see, e.g.*, Br. 24:15-19, 25:24-26), which ruled against the plaintiffs on standing and political question grounds, as if it were good law. But on appeal, the Ninth Circuit *rejected* those squarely-presented standing and political question arguments, albeit implicitly, by

---

be liable for nuisance long after they relinquish ownership or control" of product).

proceeding to the merits.  696 F.3d 849 (9th Cir. 2012); *see also Corrie v. Caterpillar*, 503 F.3d

974, 977 (9th Cir. 2007) (political question doctrine is jurisdictional).  Defendants similarly cite

*Comer v. Murphy Oil USA*, 839 F. Supp. 2d 849, 865 (S.D. Miss. 2012), but fail to mention a prior,

detailed panel opinion of the Fifth Circuit in an identical case between the same parties that,

although subsequently vacated, is persuasive authority on the issues of political question, standing

and preemption.[7]  And defendants cite *California v. General Motors*, 2007 WL 2726871 (N.D. Cal.

Sept. 17, 2007) ("*GM*"), but under *Kivalina* this political question decision, too, is no longer good

law.  Two other cases cited by defendants are irrelevant to the issues here.[8]

   3. Defendants' conduct is not protected by the *Noerr-Pennington* doctrine.  As defendants

point out, *Noerr-Pennington* "immunizes lobbying activity."  Br. 5:28.  Defendants assert that

communications campaigns with their deceptive statements as described in the amended

complaints was in fact a lobbying effort by defendants "to forestall regulation," and therefore

cannot be a basis of liability.  Br. 6:24.  But this is incorrect.

   First, defendants' deceptive statements were not designed to "forestall regulation."  All of

the statements described in the complaints were statements made to the public about fossil fuels

generally—*e.g.*, speeches to defendants' shareholders (FAC ¶ 115), advertisements (FAC ¶¶ 106,

114, 117-18), bogus scientific research (FAC ¶¶ 110-12), and glossy public reports (FAC ¶ 120).[9]

---

[7] *See Comer v. Murphy Oil USA*, 585 F.3d 855 (5th Cir. 2009), *vacated for en banc review*, 718 F.3d 460 (5th Cir. 2010) (*en banc*), *appeal dismissed for failure of quorum*, 607 F.3d 1049 (5th Cir. 2010) (*en banc*); *see also Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012) (relying on 2009 *Comer* panel opinion as good law in standing analysis).  The Fifth Circuit affirmed the 2012 dismissal of the refiled *Comer* case solely on grounds of *res judicata*.  *See* 718 F.3d 460 (5th Cir. 2013); *Cerny v. Marathon Oil Corp.*, 2013 WL 5560483, at *6 (W.D. Tex. Oct. 7, 2013) (Fifth Circuit "expressly affirmed solely on the basis of *res judicata*, and it in no way affirmed or endorsed the district court's preemption analysis").

[8] *Korsinsky v. EPA*, 2005 WL 2414744 (S.D.N.Y. Sept. 29, 2005) (*pro se* plaintiff claiming mental illness and increased risk of sinus disease from climate change lacked standing); *SF Chapter of A. Philip Randolph Inst. v. EPA*, 2008 WL 859985, at *5 (N.D. Cal. Mar. 28, 2008) (nuisance claim unripe where the "power plants have not yet been approved, and may never be").

[9] Notably, many of these statements (*i.e.*, those by defendant Exxon Mobil and by many of the front groups) are the basis for consumer and securities fraud investigations brought by the Massachusetts and New York attorneys general against Exxon Mobil.  Exxon has challenged these investigations on First Amendment grounds, claiming viewpoint discrimination, but its arguments have been rejected by state and federal courts.  These courts have held that the attorneys general are properly investigating statements made to "consumers" that were allegedly deliberately false or misleading—and hence not protected by the First Amendment.  *Exxon Mobil v. Schneiderman*, 2018 WL 1605572, at *6 (S.D.N.Y. Mar. 29, 2018); *In re Civil Investigative Demand No. 2016-*

The amended complaints also specify that the purpose of these statements was to "promote" sales of fossil fuels to "consumers."  FAC ¶ 117.[10]  Courts have held that similarly broad disinformation campaigns are not protected by *Noerr-Pennington*.

For example, in *Tuosto v. Philip Morris*, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007), the court held that *Noerr-Pennington* protected statements made directly by tobacco executives to Congress, but implicitly found that this protection did not extend to tobacco companies' advertisements and bogus science, which remained subject to potential liability.  *Id.* at *2-3, *5-6. In the federal government's racketeering case against the tobacco companies, the D.C. Circuit also rejected applying *Noerr-Pennington* to the tobacco companies' bogus science and advertisements; these statements "were intended to defraud consumers, so *Noerr-Pennington* protection does not apply."  *United States v. Philip Morris*, 566 F.3d 1095, 1124 (D.C. Cir. 2009).  Defendants' statements here are very similar, and sometimes even involve some of the same scientists for hire. FAC ¶ 110.  *Noerr-Pennington* does not protect these statements.  Moreover, whether each of defendants' many statements were "petitioning or public relations" is a "fact-intensive inquiry that can only be resolved at trial"[11]—and certainly not on a motion to dismiss.

Second, even if they were aimed at government officials, defendants' statements would not be protected, because they were deliberately false or misleading.  "Where statements are deliberately false or misleading, *Noerr-Pennington* does not apply."  *Philip Morris*, 566 F.3d at

---

*EPD-36*, 2017 WL 647259, at *4 n.2 (Mass. Super. Jan. 11, 2017), *aff'd*, *Exxon Mobil Corp. v. Attorney Gen.*, 479 Mass. 312 (2018).  Exxon has not argued in these lawsuits that the investigation targets lobbying protected by the *Noerr-Pennington* doctrine.

[10] Defendants point to allegations that the deceptive statements were intended to "bolster production of fossil fuels" or to help defendants "continue to produce fossil fuels."  Br. 6:26-28 (quoting FAC ¶¶ 104, 109).  But production can be "bolstered" without misleading regulators— *e.g.*, by promoting fossil fuels to the public and increasing demand.  The Cities also have expressly disclaimed any attempt to base liability on attempts to influence regulators.  FAC ¶ 11.

[11] *United States v. Philip Morris*, 337 F. Supp. 2d 15, 26-27 (D.D.C. 2004); *accord Kearney v. Foley & Lardner*, 590 F.3d 638, 646 (9th Cir. 2009) (plaintiff's characterizations of potentially protected statements must be accepted as true on motion to dismiss).  Defendants also contend that statements with a dual purpose—*i.e.*, made to deceive both regulators *and* the public—are protected.  But the only case they cite, *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982), held that protesters could not be liable for violence after a protest unless they actually participated in the violence; it is not about lobbying or the scope of *Noerr-Pennington*.  In any event, the tobacco cases show that defendants' statements are not "dual"; they are entirely outside *Noerr-Pennington*.

1124.  The Ninth Circuit has a similar rule against "sham" petitions, which forbids applying *Noerr-Pennington* to "intentional misrepresentations" the defendant has made to judges (and presumably to other officials).  *Kearney*, 590 F.3d at 646.  This rule is consistent with the basic proposition that the First Amendment (on which *Noerr-Pennington* is based) affords no protection to false and misleading commercial speech.  *United States v. Alvarez*, 567 U.S. 709, 723 (2012); *Central Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980).

        4.      Polluters have been arguing for over a century that they cannot be held liable in nuisance because there are too many of them or because virtually everyone living in an entire area would be liable for contributing at least some *de minimis* portion of the pollution.  And for just as long, courts have been rejecting these arguments in nuisance and other tort claims.[12]  Contrary to defendants' argument, there are limiting principles in such multiple-contributor cases.

        First, quantitatively, tort law is fully capable of separating major contributors from trivial ones.  The Restatement (Third) of Torts expressly addresses this issue as a matter of proximate cause and provides that when "an actor's negligent conduct constitutes only a trivial contribution to a causal set that is a factual cause of harm" then the "harm is not within the scope of the actor's liability."[13]  Here, defendants are among the largest contributors in the world to global warming.

---

[12] *See*, *e.g.*, *Harley v. Merrill Brick*, 83 Iowa 73, 48 N.W. 1000, 1002 (1891) (brick company could be liable in nuisance for its emissions; other contributions from individual households "might be . . . so slight and inconsequential that the law would not take notice of it"); *Gold Run*, 4 P. at 1156 (affirming nuisance liability against large contributor to nuisance even though "a vast amount of mining was done in early times, and up to this time a great deal is being done, besides that by the defendant"); *Dep't of Envtl. Prot. v. Ventron Corp.*, 440 A.2d 455, 463 (N.J. App. Div. 1981) (dismissing nuisance action against defendant because its contribution, if any, "was de minimis and, therefore, not a substantial factor in proximately causing" the injury).

[13] Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 36 (2005); *see also id.* cmt. b ("In general, this limitation will apply when the causal contribution of various actors is susceptible to being compared on a common metric, such as the quantity of comparable pollution or of toxic substances."); *accord McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1177 (9th Cir. 2016) (exposure to asbestos "based on fleeting or insignificant encounters with a defendant's product" insufficient and citing section 36 of Restatement (Third)); *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2d Cir. 1993) (contributor whose "pollutants did not contribute more than background contamination" may defeat CERCLA liability); *City of Modesto*, 19 Cal. App. 5th at 156 ("a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor but a very minor force that does cause harm is a substantial factor").

1   They are among the largest of the "Carbon Majors," *i.e.*, a group of 100 fossil fuel producers

2   whose products are responsible for 62% of all greenhouse gas emissions from industrial sources

3   and for 71% of emissions since 1988.  FAC ¶ 94.  Their contributions are each measured in the *tens*

4   *of thousands of megatons* of CO2.[14]  While defendants may not be the only non-trivial contributors

5   to global warming, the size of their contributions puts them in a select and exclusive club.

6          Second, defendants are qualitatively different from most other contributors to climate

7   change.  Defendants have long had significant "in-house scientific resources" at their disposal.  AC

8   ¶ 94(e).  And they put these resources to use, individually and through the American Petroleum

9   Institute, gaining early knowledge that fossil fuels were causing a buildup of greenhouse gases in

10  the atmosphere that would cause potentially catastrophic harms.  FAC ¶¶ 95-102.  Moreover, the

11  Cities' complaints allege much more than "question[ing]" of science.  ECF 192 at 2.  The Cities

12  allege a tobacco-like effort to *distort* consumers' understanding with a sophisticated campaign to

13  relentlessly focus on scientific "uncertainty" despite defendants' knowledge that the basic science

14  was settled, and to use *bogus* research and scientists for hire—including some of the same

15  scientists for hire used by the tobacco industry—to convince the consuming public that fossil fuels

16  and climate change generally posed no significant threat.  FAC ¶¶ 104-116.  The liability of a

17  subset of the Carbon Majors who had special resources, special knowledge, and special

18  influence—and who used it all perniciously on a massive scale—creates a limiting principle that

19  distinguishes defendants from other actors (e.g., household emitters, companies engaged in

20  deforestation, etc.).

21  **B.     No federal statute displaces or precludes the Cities' claim.**

22         The Cities have pleaded facts constituting "'an unreasonable interference with a right

23  common to the general public.'"[15]  No statute displaces or bars this claim.

24

25

26  [14] FAC ¶ 94 n.71 (citing R. Heede, *Tracing Anthropogenic Carbon Dioxide and Methane
    Emissions to Fossil Fuel and Cement Producers, 1854–2010*, Climactic Change, Jan. 2014, at 237,
    at https://link.springer.com/content/pdf/10.1007%2Fs10584-013-0986-y.pdf).

27  [15] *Michigan v. Army Corps of Eng'rs*, 667 F.3d 765, 781 (7th Cir. 2011) (federal common law
    case, quoting Restatement § 821B(1)); *AEP*, 582 F.3d at 352 (adopting Restatement definition in
28  federal nuisance); *Ileto*, 349 F.3d at 1210 & n.24 (applying Restatement under state law).

1          **1.       The Clean Air Act does not displace the Cities' public nuisance claim.**

2          This Court already has held that the CAA does not displace the Cities' federal common law

3   claim.  ECF 134 at 7:5.  It should decline defendants' invitation to reconsider this decision.  Br.

4   9:11.[16]  The Supreme Court has emphasized that displacement of federal common law occurs only

5   where Congress has spoken "*directly*" to the "*particular* issue."  *County of Oneida v. Oneida*

6   *Indian Nation*, 470 U.S. 226, 236-37 (1985).  The Court also has said that there is a presumption

7   against displacement, and that "Congress's mere refusal to legislate . . . falls far short of an

8   expression of legislative intent to supplant existing [federal] common law in that area."  *United*

9   *States v. Texas*, 507 U.S. 529, 534-35 (1993).

10          *Oneida* is instructive.  There, a Native American tribe claimed its lands had been illegally

11   occupied; defendants argued that this claim was displaced by a federal statute prohibiting transfers

12   of native lands and authorizing the President to remove forcibly illegal occupants.  The Court

13   disagreed.  Because the statute did not "address directly the problem of restoring unlawfully

14   conveyed lands to the Indians," it did not displace the federal common law claim for ejectment.

15   470 U.S. at 239.  The Court again rejected displacement in *Exxon Shipping Co. v. Baker*, 554 U.S.

16   471 (2008), where it held that the Clean Water Act did not evince an intent to "eliminate, *sub*

17   *silentio*," common law tort claims for damages from water pollution: "we see no clear indication of

18   congressional intent to occupy the entire field of pollution remedies."  *Id*. at 489.  And in *Kasza v.*

19   *Browner*, 133 F.3d 1159, 1168 (9th Cir. 1998), the court held that some "overlap" between a

20   federal statute and the common law "does not mean that [the statute] speaks directly" to the issue

21   covered by the common law rule.  *Id*.

22          This Court correctly ruled that, under the "speak directly" standard, the federal CAA does

23   not displace a public nuisance claim against fossil fuel producers because the CAA does not apply

24   outside the United States or to the production and sales of fossil fuels.  ECF 134 at 6:16-7:22.  It

25   properly distinguished cases such as *AEP* and *Kivalina*, which sought to impose liability based

26   upon emissions regulated under the CAA.  *Id*. at 7:3-5.  The Cities' choice of defendants here was

27

28          [16] This Court determined that the Cities' state law claim was displaced by federal common
law.  The Cities expressly reserve their objections and rights with respect to this ruling.

based upon evidence demonstrating which entities are most responsible and had the most knowledge.  The defendants' accusation of "artful pleading," Br. 9:3-4, thus rings hollow. Defendants' related argument that their products only cause harm when used as intended by "third parties," *id.* 9:24-25, goes to the causation issue, addressed below at § II.C.3, not displacement.

Defendants point to *Kivalina*'s rejection of a civil conspiracy claim, Br. 9:5-14, but that decision sheds no light on the issue here.  *Kivalina* rejected the civil conspiracy claim merely because (as all parties in that case agreed), civil conspiracy *requires* an underlying claim; thus, when the underlying "substantive" claim in *Kivalina* failed—for whatever reason—there no longer was anything on which the civil conspiracy claim could be based.  *Kivalina*, 696 F.3d at 858. Here, the Cities' claim is not a derivative one.  *See, e.g., Ileto v. Glock*, 349 F.3d 1191, 2010-11 & n.26 (9th Cir. 2003) (sustaining public nuisance claim against product manufacturer).

### 2.  Federal common law reaches defendants' combined foreign and domestic conduct.

The Cities' claim is not barred due to the foreign component of fossil fuel emissions from defendants' products, which combines with the domestic emissions to cause the harm.  Federal common law exists to resolve "interstate and international disputes."  *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 641 & n.13 (citing *Illinois v. Milwaukee*, 406 U.S. 91 1972) (*Milwaukee I*)).  In opposing remand, defendants themselves argued that, post-*Erie*, "there remain 'some limited areas' in which the *governing legal rules will be supplied*, not by state law, but by 'what has come to be known as federal common law,'" and that "one such area" includes "where '*the interstate or international nature of the controversy makes it inappropriate for state law to control*.'"[17]  This Court agreed.  ECF 134 at 3:10-14.

Defendants' reliance upon *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), is misplaced. *Sosa* dealt with whether or not to recognize (1) a private right of action, (2) for individuals, (3) under the law of nations as incorporated into the Alien Tort Statute (ATS), 28 U.S.C. § 1350.  The Court expressly stated that the reasons for judicial caution set forth in its opinion emanated from that very context.  542 U.S. at 725.  Here, the Cities' claim does not involve a private right of

---

[17] ECF No. 92 at 5:23-28 (quoting *Tex. Indus.*, 451 U.S. at 640-41) (first emphasis added).

1    action for individuals, the law of nations, or the ATS.  Defendants simply lift, and divorce, the

2    Court's reasons for "judicial caution" from their express context.[18]

3        Contrary to defendants' argument, Br. 11-12, the original justification for federal nuisance

4    law, i.e., that the States gave up the right to make war in exchange for the right to file suit in the

5    U.S. Supreme Court under its original jurisdiction, does not preclude applying federal common law

6    to the combined effects of the foreign and domestic uses of their products.  "Defendants confuse

7    the underlying basis for the Supreme Court's original jurisdiction over actions involving a state as

8    a party with what is necessary to state a federal common law claim."  *AEP*, 582 F.3d at 360.

9    "Thus, it is not only the character of the parties that requires us to apply federal law" but rather the

10   nature of the issue.  *Milwaukee I*, 406 U.S. at 105 n.6.  Here, as defendants have conceded, the

11   "international" nature of an issue is an affirmative reason to apply federal common law.[19]

12       Defendants are also incorrect to rely on cases dealing with the extraterritorial application of

13   statutes.  Defendants once again rely on cases interpreting the ATS, along with cases interpreting a

14   series of statutory claims that are not at issue here.  Br. 12 & n.5.  The only potentially relevant

15   statute here is the federal question statute, 28 U.S.C. § 1331, which (as defendants successfully

16   argued in their remand papers) is satisfied here because federal common law applies to "interstate

17   and international disputes implicating the conflicting rights of States or our relations with foreign

18   nations."  *Texas Indus.*, 451 U.S. at 641.  The presumption against extraterritoriality has no

19   application to cases brought by U.S. parties for injuries on U.S. territory; such claims plainly

20   "touch and concern the territory of the United States."  *Kiobel v. Royal Dutch Petroleum*, 569 U.S.

21

22        [18] *Compare* 542 U.S. at 728 ("We have no congressional mandate to seek out and define new
     and debatable *violations of the law of nations*, and modern indications of congressional

23   understanding of the judicial role *in the field* have not affirmatively encouraged greater judicial
     creativity."), *with* Br. 11:17-18 ("courts 'have no congressional mandate' to recognize

24   extraterritorial claims because Congress has not 'affirmatively encouraged' such 'judicial
     creativity'") (quoting *Sosa*, 542 U.S. at 728); *see also Sosa*, 542 U.S. at 729 ("*Erie* did not in terms

25   bar any judicial recognition of new substantive rules, no matter what the circumstances, and post-
     *Erie* understanding has identified limited enclaves in which federal courts may derive some

26   substantive law in a common law way.").

27        [19] *See also Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493, 495 (1971) (nuisance claim
     seeking an abatement fund as a result of the combined effects of defendants' domestic and foreign

28   sources of pollution "does state a cause of action" within Court's original jurisdiction); *Int'l Paper
     Co. v. Ouellette*, 479 U.S. 481, 487-88 (1987) (discussing *Milwaukee I* and *Wyandotte*).

108, 124-25 (2013).[20]  Even as to foreign plaintiffs suffering injury abroad, the presumption has been rebutted in cases where "at least some of the conduct relevant to their claims occurred in the United States."  *Mujica v. Air Scan*, 771 F.3d 580, 595 (9th Cir. 2014) (collecting cases).[21]

Finally, and in response to this Court's order (ECF No. 226), the Cities address the Supreme Court's recent decision in *Jesner v. Arab Bank PLC*, 2018 WL 1914663, at *16 (U.S. Apr. 24, 2018).  *Jesner* held that Congress did not intend for foreign corporations to be defendants in ATS suits.  This decision is inapplicable in a federal public nuisance case because corporate liability has been the norm in such cases for over a hundred years.  *See Georgia v. Tennessee Copper*, 206 U.S. 230 (1907).  The Cities' claim is not barred because of the foreign component of fossil fuel usage.[22]

### 3.    Energy statutes do not displace the Cities' public nuisance claim.

Defendants fare no better in their reliance on energy statutes that seek to reduce the United States' reliance upon foreign sources of fossil fuels and improve energy efficiency.  Br. 13-14.

Defendants wrongly contend that these energy statutes speak directly to the question at issue here, "namely, whether fossil fuel production is excessive or unreasonable given the potential threat of global warming-related harms."  Br. 13-14.  These statutes do no such thing.  The provisions invoked by defendants do not address climate change at all.  To be sure, some of these statutes touch upon the subject of climate change (in provisions defendants omit to mention), but these provisions merely require research, study, and technology development.[23]  They thus fall well short of the kind of regulatory and remedial scheme that displaces federal common law.  The

---

[20] In *Kiobel*, "all the relevant conduct took place outside the United States," 569 U.S. at 124.

[21] *See also Doe v. Nestle USA*, 766 F.3d 1013 (9th Cir. 2014) (permitting plaintiff to amend complaint "to allege that some of the activity underlying their ATS claim took place in the United States."); *Salim v. Mitchell*, 268 F. Supp. 3d 1132 (E.D. Wash. 2017) (denying summary judgment where some of the defendants' conduct occurred in the United States).

[22] Defendants also ask the Court to follow the district court political question rulings in *Kivalina* and *General Motors*.  Br. 12:4-8.  But these decisions are no longer good law.  *See* § II.D.

[23] *See, e.g.,* 42 U.S.C. § 13401 ("It is the goal of the United States *in carrying out energy supply and energy conservation research and development to . . . reduce the air, water, and other environmental impacts (including emissions of greenhouse gases)* of energy production, distribution, transportation, and utilization, through the development of an environmentally sustainable energy system.") (emphasis added).

1   Second Circuit reviewed several of these statutes in its detailed opinion in *AEP* and rejected the

2   same argument defendants recycle here.[24]  In short, the energy statutes cited by defendants do not

3   speak directly to the issue here.

4       **4.**    **Advertising laws do not displace the Cities' federal nuisance claim.**

5       The Cities' claim also is not displaced by statutes and regulations forbidding "misleading

6   advertising." Br. 14:13.  Defendants argue that, because the amended complaints include

7   allegations that defendants have deceptively promoted fossil fuels, the Cities' entire federal

8   nuisance claim is displaced by these laws and is prohibited by the First Amendment.  *Id.* at 15:2.

9   But this argument misreads the Cities' nuisance claim and the applicable law.

10       First, while promotion is one way to establish the liability of a manufacturer in public

11   nuisance under California law,[25] it is not a legally required element of a federal common law public

12   nuisance claim.  The relevance of the Cities' allegations regarding promotion is that: (a) defendants

13   influenced consumer demand for fossil fuels, which in turn is a component of the overall pattern of

14   conduct that was a "substantial factor" in causing harm to the Cities;[26] and (b) the misleading

15   nature of the defendants' promotion here goes to their knowledge that fossil fuels would cause

16   climate injuries (i.e. it is indicative of a coverup), which is relevant to intent.  But the primary

17   conduct giving rise to liability remains defendants' production and sale of fossil fuels.

18       Second, the "advertising" laws cited by defendants do not displace the Cities' nuisance

19   claim.  As discussed above, the displacement test is whether the statute "speaks directly" to the

20   question raised by the entire *claim*—not whether the law regulates a small portion of the conduct

21   used to help prove the claim.  For example, in *Milwaukee II*, a nuisance claim for water pollution

22   was displaced because the Federal Water Pollution Control Act already had "addressed the

23   problem" with a "comprehensive" water pollution regime.  And in *Mobil Oil*, a maritime wrongful

24

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

    [24] *See AEP*, 582 F.3d at 381-88; *see also id.* at 332; *Michigan*, 667 F.3d at 780 (no

26   displacement where statutes provided "no enforcement mechanism or recourse for any entity or
    party negatively affected").  The Supreme Court's *AEP* decision relied solely on the CAA.

27       [25] *People v. ConAgra Grocery Prod.*, 17 Cal. App. 5th 51, 84 (2017).

28       [26] *See Modesto*, 19 Cal. App. 5th at 156 (affirmative misrepresentations by chemical
    manufacturers was part of overall evidence that defendants causally contributed to pollution).

death claim was displaced by the Death on the High Seas Act, which was a similarly comprehensive response to the death for which the plaintiff was seeking compensation.[27]  At the other end of the spectrum is *Kasza*, where a small "overlap" between federal common law and a statute was not enough to create displacement, because the two had "different purposes."  133 F.3d at 1168-69.  *Kasza* is on point here:  the federal common law of nuisance is designed to remedy interferences with public rights and property while the statutes prohibiting misleading advertising have nothing to do with this purpose.  With such a minor "overlap," displacement is inappropriate.

Finally, the First Amendment does not protect defendants from nuisance liability.  As noted above, the First Amendment affords no protection to defendants' false and misleading commercial speech.  *United States v. Alvarez*, 567 U.S. 709, 723 (2012); *Central Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980); *Philip Morris*, 566 F.3d at 1144.  In fact, defendants implicitly admit this, because they say these same statements are covered by the marketing statutes just discussed—and of course these statutes are constitutional precisely because they attack false or misleading statements.[28]  Defendants cannot legitimately say their conduct is both proscribed by the fraud statutes and protected by the First Amendment.

## C.     The Cities have pled a proper federal common law public nuisance claim.

The parties agree that the relevant standards are provided by the Restatement (Second) of Torts ("Restatement").[29]  "A public nuisance is an unreasonable interference with a right common to the general public."  Restatement § 821B (1979).  The Restatement sweeps broadly in defining a "public right," including "the public health, the public safety, the public peace, the public comfort

---

[27] *Milwaukee v. Illinois*, 451 U.S. 304, 323 (1981); *Mobil Oil v. v. Higginbotham*, 436 U.S. 618, 625 (1978).

[28] Defendants also argue in a footnote (Br. 16:19, n.7) that the Cities' state-law claim is preempted by the CAA.  But if the claim is displaced by federal common law, there is no need to address preemption of state law.

[29] *See* Br. 16:13; *see also supra* at p.8 note 15.

1   or the public convenience."  Restatement § 821B(2)(a).[30]  Federal nuisance law also looks to state

2   law.[31]

3        "The theory of nuisance lends itself naturally to combating the harms created by environ-

4   mental problems."  *Cox v. City of Dallas,* 256 F.3d 281, 291 (5th Cir. 2001).  Nuisance actions

5   "have challenged virtually every major industrial and municipal activity which is today the subject

6   of comprehensive environmental regulation" and nuisance law forms "the common law backbone

7   of modern environmental and energy law."  *Id.*  It continues to play a vital role in environmental

8   cases despite statutory remedies.  *See, e.g.*, *New York v. Shore Realty*, 759 F.2d 1032, 1049-53 (2d

9   Cir. 1985) (granting relief under nuisance but not CERCLA).

10       Here, scientists have concluded that coastal California already is experiencing impacts from

11   accelerated sea level rise caused by global warming, including "more extensive coastal flooding

12   during storms, periodic tidal flooding, and increased coastal erosion," FAC ¶ 128.  This will only

13   get worse, and clearly constitutes an unreasonable interference with public rights and property.

14       **1.    Defendants' conduct is not authorized by law.**

15       Defendants argue that their production and sale of massive amounts of fossil fuels over

16   many decades cannot be subject to tort liability because various federal and California statutes have

17   authorized the conduct.  Br. 17:9-18:2.  But none of these statutes have fully authorized

18   defendants' tortious conduct.

19       The federal laws relied upon by Defendants, Br. 13:9-25, do no more than vaguely support

20   some aspects of fossil fuel production.  And Congress has, in other (non-regulatory) statutes,

21   expressed a countervailing policy to limit global warming.  For example, in the Global Climate

---

23       [30] The Cities have pled an intentional nuisance.  *See* Restatement § 822(a); *Prosser & Keeton on Torts* (5th ed. 1984) § 87 (intent exists where "the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow.").  The "unreasonable" element focuses on the plaintiff's harm.  *Id.* § 52 ("the intentional interference with the plaintiff's use of his property can be unreasonable even when the defendant's conduct is reasonable.  This is simply because a reasonable person could conclude that the plaintiff's loss resulting from the intentional interference ought to be allocated to the defendant."); *Wood v. Picillo*, 443 A.2d 1244, 1247 (R.I. 1982) ("liability in nuisance is predicated upon unreasonable injury rather than upon unreasonable conduct.").

28       [31] *See Milwaukee I*, 406 U.S. at 103 n.5; *North Dakota v. Minnesota*, 263 U.S. 365, 372 (1923).

1   Protection Act of 1987, Congress provided that "United States policy should seek to . . . . limit

2   mankind's adverse effect on the global climate."[32]   To the extent Congress has spoken at all about

3   climate change, it has established a general federal policy to avoid dangerous global warming.

4         Moreover, the Seventh Circuit recently applied the Restatement test cited by defendants—

5   section 821, comment f—in a federal common law public nuisance case.  *Michigan v. U.S. Army*

6   *Corps of Eng'gs*, 758 F.3d 892 (7th Cir. 2014).   There, five states sued lock operators to keep an

7   invasive carp species out of the Great Lakes.   The Court rejected an authorization defense because

8   "none of the statutes just mentioned *requires* the Corps to keep the [canals] open for navigation at

9   all times and under all circumstances."  *Id*. at 903.   Likewise here, no statute requires defendants to

10  produce and sell massive quantities of fossil fuels globally or to heavily promote those products

11  while downplaying their dangerous climate change consequences.   The Ninth Circuit similarly has

12  held that a business operating legally can become a nuisance when it is "performed in a manner

13  that unreasonably infringes on a public right."  *See Ileto*, 349 F.3d at 1214-15 (upholding nuisance

14  claim even though "gun manufacturing is legal and the sale of guns is regulated by state and

15  federal law").   Defendants' conduct is not authorized by law.

16        In citing and relying upon California statutes that purportedly promote fossil fuel

17  production, defendants implicitly invoke, but do not identify, California Civil Code section 3482,

18  which provides that "[n]othing which is done or maintained under the express authority of a statute

19  can be deemed a nuisance."  And for good reason.   The "California Supreme Court has

20  'consistently applied a narrow construction to section 3482 and to the principle therein embodied.'"

21  *Adobe Lumber, Inc. v. Hellman*, 2008 WL 4539136, at *5 (E.D. Cal. Oct. 2, 2008).   Under section

22  3482, a nuisance is immunized only where "the acts complained of are authorized by the express

23  terms of the statute under which the justification is made, or by the plainest and most necessary

24  implication from the powers expressly conferred, so that it can be fairly stated that the legislature

25

26

27

28      [32] 15 U.S.C. § 2901-note; *see also* 15 U.S.C. § 2931(a)(2) (human activity "may lead to significant global warming," with sea level rise and adverse effects on "coastal habitability.").

contemplated the doing of the very act which occasions the injury."[33]  There must be an

"unequivocal legislative intent to sanction a nuisance," and so courts routinely reject attempts to

bar nuisance claims.[34]

Nowhere in defendants' grab-bag of California statutes "does the Legislature declare" that

the production of massive amounts of fossil fuels with knowledge of catastrophic climate change

"is *not a hazard*, is *lawful*, or is *authorized by statute*."  *See ConAgra*, 17 Cal. App. 5th at 114.

Instead the statutes address in-state versus out-of-state gas production, Cal. Pub. Util. Code § 785;

expressly state a scientific study "shall" consider "potential greenhouse gas emissions," Cal. Pub.

Res. Code § 3160(a)(2); seek to minimize waste during production, *id.* § 3106(b) ("elimination of

waste"), § 3106(d) ("wise development"); or are not about fossil fuel production at all.[35]

## 2.   There is no control requirement in nuisance.

Defendants contend that control over the instrumentality causing the nuisance at the time

the damage occurs is an element of public nuisance.  Br. 18-19.  Not so.  In lieu of any such a

requirement, the Restatement instead provides: "One is subject to liability for a nuisance caused by

an activity, not only when he carries on the activity but also when he participates to a substantial

extent in carrying it on."  Restatement § 834.  This standard obviates the control requirement.[36]

Defendants rely on cases that have found a control requirement in the nuisance law of

Rhode Island, New Jersey, and North Dakota.[37]  But none of these courts derived this control

---

[33] *Varjabedian v. City of Madera*, 20 Cal. 3d 285, 291 (1977); *see also Hellman*, 2008 WL 4539136, at *5 (section 3482 is narrowly construed); *Mangiaracina v. BNSF Ry. Co.*, 2017 WL 130250, at *9 (N.D. Cal. Jan. 12, 2017) (similar).

[34] *See Greater Westchester Homeowners Assn. v. City of Los Angeles*, 26 Cal. 3d 86, 101 (1979) (airport noise nuisance claim proper even though airport operations "closely regulated by both federal and state law"); *see also Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 129 (1971) (nuisance not authorized by compliance with air quality regulations); *Bright v. E. Side Mosquito Abatement Dist.*, 168 Cal. App. 2d 7, 11 (1959).

[35] Cal. Bus. & Prof. Code §§ 13410(a), 13441; Cal. Pub. Res. Code § 6815.1; Cal. Sts. & High. Code § 2105; Cal. Code Regs. Tit. §§ 1740.5, 18621.

[36] *See In re Starlink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d at 848 (control not required under Restatement section 834).

[37] *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 449 (R.I. 2008); *City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986); *In re Lead Paint Litig.*, 924 A.2d, 484, 498-99 (N.J. 2007); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539

requirement from the Restatement.  By contrast, courts applying California nuisance law—which

essentially follows the Restatement[38]—have rejected the control requirement and held

manufacturers liable in nuisance.[39]  Other courts applying the nuisance laws of New York,

Wisconsin, Iowa, and Ohio, have similarly rejected defendants' control argument, and most did so

by expressly invoking or relying upon Restatement section 834.[40]  Moreover, the egregious facts

alleged in this case – namely, defendants' early knowledge that their products were causing a

dangerous buildup of greenhouse gases and presented a risk of catastrophe when used as intended,

and their campaign to deceive the public about this threat – readily distinguish these lawsuits from

the few cases cited by defendants where control was required.

Finally, defendants argue that without control they cannot abate the nuisance, but "liability

for nuisance does not hinge on whether the defendant . . . is in a position to abate the nuisance."

*Santa Clara*, 137 Cal. App. 4th at 306.  There are other ways for Defendants to remedy the harm.

### 3.   The Cities have properly pled causation.

Defendants are wrong in their basic contention that each defendant's contribution alone

must create the nuisance as a "but for" cause."  Br. 19:20-24.  Again, the Restatement provides that

a defendant is liable "for a nuisance caused by an activity, not only when he carries on the activity

but also when he participates to a substantial extent in carrying it on."  Restatement § 834.  And

---

(3d Cir. 2001); *In re Lead Paint Litig.*, 924 A.2d 484, 498-99 (N.J. 2007); *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 539 (3d Cir. 2001).

[38] *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1104 (1997); *Ileto*, 349 F.3d at 1211.

[39] *Ileto*, 349 F.3d at 1212-13 ("proximate or legal cause does not contain a control requirement"); *ConAgra*, 17 Cal. App. 5th at 164 ("[c]ontrol is not required in California for a public nuisance action"); *City of Modesto Redevelopment Agency*, 119 Cal. App. 4th at 38 ("liability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is whether the defendant created or assisted in the creation of the nuisance").

[40] *See In re MTBE*, 725 F.3d at 121 (New York law, affirming public nuisance verdict against Exxon as manufacturer and supplier of MTBE gasoline); *Abbatiello*, 522 F. Supp. 2d at 541 (expressly adopting Restatement section 834 in nuisance case against PCB manufacturer); *Northridge*, 556 N.W.2d at 352 ("manufacturers can be liable for a nuisance long after they relinquish ownership or control over their polluting products," relying upon Restatement section 834); *Page Cty. Appliance Ctr., Inc. v. Honeywell, Inc.*, 347 N.W.2d 171, 176-177 (Iowa 1984) (rejecting control requirement, relying on Restatement section 834); *Cincinnati*, 768 N.E.2d at 1143 (rejecting control requirement under Ohio nuisance law).

"the fact that other persons contribute to a nuisance is not a bar to the defendant's liability for his own contribution," *id.* § 840E, including in cases where the defendant's contribution is "harmless in itself, when the defendant knows that pollution by others is approaching or has reached the point where it causes or threatens serious" harm.[41]

This formulation captures an important feature of nuisance law, which authorizes liability even where the defendant's contribution to the nuisance would not alone have created the nuisance; this has been the law at least since a series of three seminal cases from the nineteenth century.[42] Numerous nuisance cases have applied this principle more recently.[43] The district court in the *Illinois v. Milwaukee* litigation did so and found liability under federal common law.[44] Judge Posner, writing for the Seventh Circuit *en banc,* relying on Prosser & Keeton, summarized the law as follows: "pollution of a stream to even a slight extent becomes unreasonable [and therefore a nuisance] when similar pollution by others makes the condition of the stream approach the danger point. The single act itself becomes wrongful because it is done in the context of what others are doing."[45] This straightforward principle negates defendants' primary causation argument, *i.e.,* that

---

[41] *Id.* cmt. b; *accord* Restatement § 881 cmt. d ("It is also immaterial that the act of one of them by itself would not constitute a tort if the actor knows or should know of [other] contributing acts"); *see also Collins v. Olin Corp.*, 248 F.R.D. 95, 104 (D. Conn. 2008) ("In fact, if Olin's conduct is found to be a substantial factor in the contamination of the properties, Olin's conduct can still be the legal cause even if other sources of contamination exist."); *O'Connor v. Raymark Indus.*, 518 N.E.2d 510, 513 (Mass. 1988) ("The substantial factor formulation is one concerning legal significance rather than factual quantum.").

[42] *California v. Gold Run Ditch & Mining Co.*, 4 P. 1152, 1156 (Cal. 1884) (defendant's pollution alone would not have caused injury given the "vast amount" of mining previously and currently undertaken on the river by numerous others but defendant still liable for contributing to the nuisance); *Woodyear v. Schaefer*, 57 Md. 1, 9 (Md. 1881) ("It is no answer to a complaint of nuisance that *a great many others* are committing similar acts of nuisance upon the stream.") (emphasis added); *The Lockwood Co. v. Lawrence*, 77 Me. 297 (Me. 1885) (same).

[43] *See, e.g., Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*, 495 F.2d 213, 215-18 (6th Cir. 1974); *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 343 (Tenn. 1976); *Landers v. East Texas Salt Water Disposal Co.*, 248 S.W.2d 731, 734 (Tex. 1952).

[44] *Illinois ex rel. Scott v. City of Milwaukee*, 1973 U.S. Dist. LEXIS 15607, at *21 (N.D. Ill. 1973) (holding it would "be impossible to impose liability on any polluter" if tracing impacts to each polluter were required), *aff'd in rel. part, rev'd in part on other grounds*, 599 F.2d 151 (7th Cir. 1979), *vacated on other grounds*, *Milwaukee II*, 451 U.S. 304.

[45] *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 696-97 (7th Cir. 2008); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 823 (E.D.N.Y. 1984) ("In the pollution and multiple crash cases, the degree to which the individual defendant's actions contributed to an individual plaintiff's injuries is unknown and generally unascertainable," yet "all defendants have

1    each defendant's contribution alone must create the nuisance.  Br. 19:20-24.

2          Defendants also say it is impossible to "trace" greenhouse gases, and hence their effects, to

3    *any* act.  Br. 19:27.  But there is no need to trace molecules of pollution back to their source.  The

4    relevant issue is whether emissions can be attributed to individual producers like defendants and

5    there is now a scientific methodology attributing climate change to fossil fuel producers.  FAC ¶

6    94(b).  This evidence shows that the production by just these five defendants is responsible for over

7    11% of all emissions from industrial sources.  FAC ¶¶ 94(c), 92.[46]  Defendants would have this

8    Court reject these scientific allegations as a matter of law, which of course would be improper:

9    causation is a classic question of fact.  *Ileto*, 349 F.3d at 1206; Restatement § 434.  In sum, the

10   Cities have alleged that defendants produced, sold and promoted fossil fuels, which were inevitably

11   burned, and which just as inevitably caused and continue to cause—by operation of scientific

12   principles—climate impacts that defendants understood decades ago presented risks of

13   "catastrophic" harm.  FAC ¶ 98(b).  This satisfies causation.

14         Defendants' main authority to the contrary is the district court decision in *Kivalina*, but this

15   decision was implicitly reversed on appeal, as discussed above.  And the Second Circuit held that

16   climate harm *is* traceable, based on the Restatement rules just described.  *AEP*, 582 F.3d at 346-47.

17   Defendants also rely on *Amigos Bravos v. BLM*, 816 F. Supp. 2d 1118 (D.N.M. 2011), where the

18   court considered two particular lease sales of federal land for oil and gas production.  But the

19   *Amigos* leases threatened an annual contribution to global warming of only 0.0009% -- thousands

20   of times less than defendants' annual (let alone cumulative) contributions.  *Id.* at 1136.

21         Defendants also argue that their fellow producers "would likely have" replaced defendants'

22   production with their own.  Br. 20:11.  But this "would have" hypothesis is not an undisputed fact.

23   It also is not relevant to the elements of a nuisance claim, which requires only that the defendant

24

25

26   been held liable"); Restatement (Third) § 27 Reporter's Note cmt. g ("Since the first asbestos case
in which a plaintiff was successful, courts have allowed plaintiffs to recover from all defendants to
whose asbestos products the plaintiff was exposed.").

27   [46] Each of defendant's individual contributions are set forth in Table 3 of Richard Heede,

28   *Tracing Anthropogenic Carbon Dioxide and Methane Emissions to Fossil Fuel and Cement
Producers, 1854–2010*, Climactic Change, Jan. 2014, cited in FAC at ¶ 101 n.71.

1   contribute to the harm while knowing that its contribution is combining with others' to cause the

2   nuisance.[47]  This argument also omits part of the Cities' allegations—namely, that defendants

3   influenced consumers via a deceptive promotional campaign.  Such conduct enhances a

4   defendant's other causal conduct.[48]

5        The proximate cause arguments fare no better.  Defendants say there is no "direct

6   relationship" between their conduct and the Cities' injuries because of gaps in "space and time."

7   Br. 21:1.  But the "direct relationship" standard comes from case law holding that a plaintiff cannot

8   recover where her injury is derivative of injury suffered by another.  *See* Br. 20:24.  The Cities'

9   injuries here are their own.  On "space and time," defendants ignore the fact that much of their

10   harmful conduct is recent and ongoing.  FAC ¶ 3.  Defendants are also wrong legally:  "where it is

11   evident that the influence of the actor's [tortious conduct] is still a substantial factor, mere lapse of

12   time, no matter how long" does not preclude proximate cause.  Restatement § 433 cmt. f.[49]  And in

13   this case, to a unique degree, time lags do not preclude causation:  defendants knew their products

14   would be burned and, once this occurred, the laws of chemistry and physics made it not just likely

15   but *inevitable* that harm would occur.  *See also AEP*, 582 F.3d at 346-47 (rejecting identical

16   argument about space and time).

17        Finally, defendants rely on a passage in the Restatement stating that courts should consider

18   "other forces for which the [defendant] is not responsible" in evaluating causation.  *Id.* § 433(b);

19   Br. 21:16.  But the comment to this section refers to the special rules on "intervening forces," and

20   these rules make it clear (as noted above) that conduct by third parties does *not* break the casual

21   chain if that third-party conduct is "normal" or "foreseeable" to the defendant.[50]  This rule has been

22

23   [47] Defendants cite New York and Illinois decisions dismissing cases against gun manufacturers, Br. 20:17, 21:12, but ignore *Ileto*, 349 F.3d at 1209-10, a Ninth Circuit case sustaining a nuisance
24   claim against gun manufacturers. *Sierra Club v. U.S. Def. Energy Support Ctr.*, 2011 WL 3321296 (E.D. Va. July 29, 2011), merely found that it was hopeless to expect that climate change would be slowed by forcing a single entity to buy a different kind of gasoline.

25   [48] *See, e.g., Modesto*, 19 Cal. App. 5th at 155-56 (holding that chemical manufacturers'
26   misleading statements were relevant to the overall causation inquiry without requiring plaintiffs to prove the misstatements directly led to specific harms).

27   [49] *Accord* 1 Dan B. Dobbs, Law of Torts (2d ed. 2011) § 208, at 720-21 ("simply … not the law" that defendant not liable "merely because time or distance" separates his act from the harm)

28   [50] *Id.* cmt. e; *id.* §§ 439, 442A, 442B, 443; *see also id.* § 834 cmts. d & f (applying to nuisance).

1     applied where gun manufacturers were sued for foreseeable third-party shootings, *Ileto*, 349 F.3d at

2     1207 n.20, and to hold gasoline producers liable for gas foreseeably spilled by someone else,

3     *MTBE*, 725 F.3d at 121.[51]  Here, defendants' fossil fuels were burned "exactly as intended" by

4     third parties, FAC ¶ 93, and a foreseeable event does not negate defendants' liability.  At bottom,

5     causation is about identifying the party "in the best position to protect against the risk of harm."

6     *Ileto*, 349 F.3d at 1207.  Knowledge, deception, promotion, production: all these factors show that

7     this position is occupied, to a unique degree, by defendants.

8              **4.      The Cities' requested relief is available and constitutional.**

9              Defendants' contention that the Cities' request for an abatement fund is somehow improper

10    misses the mark.  The burden on defendants on this issue is high, because a complaint generally is

11    not dismissed unless the plaintiff is not entitled to *any* possible form of relief.  *See Avitan v.*

12    *Holder*, 2011 WL 499956, at *8 n.7 (N.D. Cal. Feb. 8, 2011).  The Cities' abatement fund remedy

13    (the only remedy challenged by defendants) is proper.  This form of equitable relief has been

14    upheld in state law public nuisance cases,[52] and, as set forth above, the federal common law of

15    public nuisance looks to state common law.  And even if (as defendants contend) this remedy *were*

16    identical to damages, it would *still* be proper, under both the Restatement and federal common law

17    case law.[53]  The remedy is also not speculative:  sea level rise already has occurred, and the Cities

18    have incurred expenditures necessitated by defendants' past conduct.  FAC ¶¶ 131-134.

19             The Cities' claim is also constitutional.  Defendants rely on cases finding that large punitive

20    damage awards violate due process.  *See, e.g., BMW v. Gore*, 517 U.S. 559 (1996).  But the Cities

21    do not seek *any* punitive damages.  Instead, the abatement fund remedy merely seeks to protect the

22

---

23    [51]*Cf. City of San Jose*, 231 F. Supp. 3d at 363 (PCB maker liable for dumping by customers);
24    *Benefiel v. Exxon*, 959 F.2d 805, 807 (9th Cir. 1992) (rejecting liability where refiners
      unexpectedly used defendant's oil spill as a pretext to raise prices).

25    [52] *See, e.g., ConAgra*, 17 Cal. App. 5th at 134 (abatement fund); *County of Santa Clara v. Atl.*
      *Richfield Co.*, 137 Cal. App. 4th 292 (6th Dist. 2006) (same); *cf. Boomer v. Atl. Cement*, 57 N.E.2d
26    870, 874 (N.Y. 1970) (granting injunction "which was not to be effective unless the defendant
      failed to pay the amount fixed [by the court] as damages" for past and permanent harm).

27    [53] *See* Restatement § 821B cmt. b; *Nat'l Sea Clammers Ass'n v. New York*, 616 F.2d 1222,
      1234-35 (3d Cir. 1980), *rev'd on other grounds*, 453 U.S. 1 (1981); *City of Evansville v. Kentucky*
28    *Liquid Recycling*, 604 F.2d 1008, 1019 & n.32 (7th Cir. 1979).

1    Cities from harm defendants actually have caused—not to punish them in excess of this harm. *Cf.*

2    *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008) (1:1 ratio of punitive to compensatory damages

3    is acceptable). Defendants also argue that the Cities' claim would impose retroactive liability,

4    relying on *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998). But in *Eastern Enterprises* the

5    defendant "could not have anticipated" a liability retroactively imposed by legislation. *Id.* at 528-

6    29. Here, there is no retroactive legislation at issue; defendants' argument is foreclosed by

7    governing law.[54] And nuisance is one of the oldest causes of action in our system of law, and it has

8    long held parties liable for the damages caused by otherwise lawful conduct. *See, e.g., Gold Run*

9    *Ditch & Mining*. Moreover, the Cities' complaint alleges detailed facts that defendants knew of the

10   global warming harm from their products decades ago, and even considered an "energy source

11   changeover" to avoid it. FAC ¶ 98(b). There is no unfair surprise here.

12   **D.      The Cities' claim does not violate the separation of powers.**

13          Defendants' argument is an amalgamation of the political question doctrine, foreign policy

14   preemption, and the dormant Commerce Clause. These doctrines do not bar the Cities' claim.

15          1.      These lawsuits do not present political questions. Defendants imply that these

16   actions would force this Court to set "standards" or "policies" on emissions, or to make normative

17   judgments about fossil fuels.[55] But this is not true. Nuisance victims can be compensated without

18   setting any standards or policies; the Restatement expressly authorizes monetary recovery without

19   any need to assess the social utility of the activity that created the nuisance.[56] In *Alperin v. Vatican*

20   *Bank*, 410 F.3d 532 (9th Cir. 2005), the Ninth Circuit emphasized that lawsuits are not political

21   questions just because they "implicate foreign relations," touch on "controversial political issues,"

22   or even pose "Sisyphean" "litigation management difficulties." *Id.* at 537, 547, 554-55. So long as

23

24          [54] *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982) ("The principle that statutes
25   operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law
     student."); *Gibson v. Am. Cyanamid Co.*, 760 F.3d 600, 624 (7th Cir. 2014).

26          [55] *See* Br. 23:24, 25:18. *See also* Indiana Br. 10:20 (Cities' lawsuit requires imposition of a
     "regulatory scheme").

27          [56] *See* Restatement § 829A; *id.* cmt. b ("certain types of harm may be so severe as to require a
28   holding of unreasonableness as a matter of law, regardless of the utility of the conduct."); *City of*
     *Harrisonville v. W. S. Dickey Clay Mfg.*, 289 U.S. 334 (1933); *Boomer*, 257 N.E.2d 870.

there is a common-law rule of decision and no clear conflict with an affirmative federal policy or

foreign agreement, then applying the rule in complex or politically sensitive contexts "is exactly

what courts do."[57]  Here of course—and despite defendants' references to "high policy" and

"international agreements"—there is no law or international agreement immunizing defendants

from paying for the harm their products have caused.[58]  Defendants' position boils down to the sort

of hand-waving about "implications" rejected in *Alperin*.[59]

        Courts also have specifically rejected political question challenges to global warming

lawsuits.  As noted above, the Ninth Circuit's *Kivalina* decision implicitly reversed the district

court on political question, and in *AEP* the Second Circuit also rejected the argument.[60]

Defendants (and Indiana's brief) rely on the district court decisions in *Kivalina* and *Comer*, both of

which were implicitly rejected on appeal, and on *GM*, which relied on the district court decision in

*AEP*—*i.e.*, another decision that was reversed.[61]  Such claims are not "political."

        2.     There is no conflict with foreign policy.  *State laws* are preempted by U.S. foreign

policy when there is a "clear conflict" with an existing international agreement or a federal statute

vesting all diplomatic prerogatives exclusively in the President.[62]  Neither circumstance exists here.

Defendants have not identified any international agreement that the Cities' lawsuits conflict with,

---

[57] *Id.* at 551.  Indiana's amicus brief cites cases that, if anything, confirm how extraordinarily rare political questions are.  *See Occidental of Umm al Qaywayn v. A Certain Cargo of Petroleum*, 577 F.2d 1196, 1203 (5th Cir. 1978) (refusing to decide territorial dispute between two foreign states in the Persian Gulf); *Chaser Shipping Corp. v. United States*, 649 F. Supp. 736, 737 (S.D.N.Y. 1986) (refusing to determine whether CIA exercised "due care" in carrying out hostile action abroad); *Carmichael v. Kellogg, Brown & Root*, 572 F.3d 1271, 1280 (11th Cir. 2009) ("sensitive military judgments" involved in death in combat zone).

[58] Indiana's amicus brief cites (at 11:4) an EPA statement on preserving the president's prerogative to decide how to reduce greenhouse gas emissions, but EPA's statement was rejected as arbitrary and capricious in *Massachusetts v. EPA*, 549 U.S. 497, 511 (2007).

[59] *Alperin*, 410 F.3d at 558 (possibility of future policy or international agreement at odds with the plaintiff's claim does not create a political question).

[60] 582 F.3d. at 332, *aff'd*, 564 U.S. at 420 n.6.

[61] *GM*, 2007 WL 2726871, at *7-8 (N.D. Cal. Sept. 17, 2007).  The other decisions cited by defendants on the political question doctrine are inapposite.  *See DaimlerChrysler v. Cuno*, 547 U.S. 332 (2006) (standing decision); *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986) (rejecting political question argument); *United States v. Pink*, 315 U.S. 203 (1942) (direct challenge to U.S. foreign policy); *Vieth v. Jubelirer*, 541 U.S. 267, 278 (2004) (gerrymandering).

[62] *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 421 (2003) (executive agreement); *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) (federal statute on Burma sanctions).

1   or any statute that gives the president exclusive authority over emissions.  Although defendants

2   suggest that these lawsuits might (by encouraging emissions reductions) undercut the president's

3   future diplomatic leverage, any number of state and federal laws already seek to reduce greenhouse

4   gas emissions, and the State Department has recently confirmed that such reductions are consistent

5   with U.S. foreign policy.[63]  And, again, precedents right on point reject defendants' argument.[64]

6       3.      These lawsuits are not an impermissible regulation of interstate or foreign

7   commerce.  Although courts have held that *state* laws may not directly regulate interstate or foreign

8   commerce, the issue here is *federal* common law, which the Court has held applicable precisely

9   because of the interstate nature of the nuisance.  Congress can displace such lawsuits by legislation,

10  *Milwaukee I*, 406 U.S. at 107, but the Cities know of no decision in which federal common law has

11  been displaced by the mere *possibility* of legislation.  In any event, the cases applying the

12  Commerce Clause to state law show that these lawsuits do not regulate commerce extraterritorially.

13  The limit on extraterritorial effects of state legislation is "rarely" invoked successfully, and a

14  violation occurs only where the state law "directly controls commerce" in other states. [65]  But

15  defendants describe only indirect impacts on out-of-state fossil fuel production.  Such impacts exist

16  in many actions (*e.g.*, product liability); they do not violate the Commerce Clause.[66]

### III.      CONCLUSION

18      Plaintiffs respectfully request that the Court deny defendants' motion to dismiss.

19  Dated: May 3, 2018                                  Respectfully submitted,

20                                                      **\*\* /s/ Erin Bernstein**
                                                        BARBARA J. PARKER (State Bar #069722)
21                                                      City Attorney
                                                        MARIA BEE (State Bar #167716)

22

---

23  [63] https://www.state.gov/r/pa/prs/ps/2017/08/273050.htm.

24  [64] *AEP*, 582 F.3d at 330-32; *Cent. Valley Chrysler-Jeep v. Goldstene*, 529 F. Supp. 2d 1151, 1183-88 (E.D. Cal. 2007); *Green Mt. Chrysler Plymouth Dodge Jeep v. Crombie*, 508 F. Supp. 2d 295, 396 (D. Vt. 2007).

25  [65] *Rocky Mtn. Farmers v. Corey*, 730 F.3d 1070, 1101 (9th Cir. 2013) (rarely successful in Supreme Court).

26  [66] *See id.* at 1103 (sustaining regulation that "encourage[d] ethanol producers to adopt less carbon-intensive policies" out of state, but did not directly control production); *VIZIO, Inc. v. Klee*, 2018 WL 1526626, at *5 (2d Cir. Mar. 29, 2018) (law imposing disposal costs on manufacturers based on national market share had "upstream pricing impact," but was merely one of many laws "affecting pricing decisions in other States").

Special Counsel
ERIN BERNSTEIN (State Bar #231539)
Supervising Deputy City Attorney
MALIA MCPHERSON (State Bar #313918)
Attorney
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Tel.: (510) 238-3601
Fax: (510) 238-6500
Email: ebernstein@oaklandcityattorney.org

Attorneys for Plaintiffs
CITY OF OAKLAND and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through Oakland City Attorney
BARBARA J. PARKER

     ** Pursuant to Civ. L.R. 5-1(i)(3), the
     electronic filer has obtained approval from this
     signatory.

** /s/ *Matthew D. Goldberg*
DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD P. FLYNN, State Bar #184186
Chief Deputy City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ROBB W. KAPLA, State Bar #238896
Deputy City Attorney
MATTHEW D. GOLDBERG, State Bar #240776
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Tel.: (415) 554-4748
Fax.: (415) 554-4715
Email: matthew.goldberg@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO and
PEOPLE OF THE STATE OF CALIFORNIA,
acting by and through San Francisco City Attorney
DENNIS J. HERRERA

     ** Pursuant to Civ. L.R. 5-1(i)(3), the
     electronic filer has obtained approval from this
     signatory.

/s/ *Steve W. Berman*
STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 Eighth Ave. Suite 3300
Seattle, Washington 98101

1

Tel.: (206) 623-7292
Fax: (206) 623-0594

2

3

SHANA E. SCARLETT (State Bar #217895)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
shanas@hbsslaw.com
Tel.: (510) 725-3000
Fax: (510) 725-3001

4

5

6

MATTHEW F. PAWA (*pro hac vice*)
mattp@hbsslaw.com
BENJAMIN A. KRASS (*pro hac vice*)
benk@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1280 Centre Street, Suite 230
Newton Centre, Massachusetts 02459
Tel.: (617) 641-9550
Fax: (617) 641-9551

7

8

9

10

11

*Of Counsel Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28