IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF OAKLAND, a Municipal Corporation, and THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Oakland City Attorney BARBARA J. PARKER,<br><br>Plaintiffs,<br><br>v.<br><br>BP P.L.C., a public limited company of England and Wales, CHEVRON CORPORATION, a Delaware corporation, CONOCOPHILLIPS, a Delaware corporation, EXXON MOBIL CORPORATION, a New Jersey corporation, ROYAL DUTCH SHELL PLC, a public limited company of England and Wales, and DOES 1 through 10,<br><br>Defendants<br><br>AND RELATED CASE. | No. C 17-06011 WHA<br><br>and<br><br>No. C 17-06012 WHA<br><br>**ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

## INTRODUCTION

In these "global warming" actions asserting claims for public nuisance, certain defendants move to dismiss for lack of personal jurisdiction. For the following reasons, the motions to dismiss are **GRANTED**.

## STATEMENT

For purposes of these motions, the jurisdictional facts are not in dispute. Defendants Exxon Mobil Corporation, BP p.l.c., Royal Dutch Shell plc, and ConocoPhillips are four of the

five largest investor-owned producers of fossil fuels worldwide as measured by the greenhouse-gas emissions generated from the fossil fuels they produced. They are collectively (along with non-moving defendant Chevron Corporation) responsible for over eleven percent of the carbon and methane pollution that has accumulated in the atmosphere since the Industrial Revolution (Amd. Compl. ¶ 94).[1]

Plaintiffs' allegations concerning the amount of emissions attributable to each defendant rely on a study by Richard Heede. Heede estimated each defendant's contribution by multiplying the defendant's fossil fuel production volume by certain "combustion emission factors." Based on these calculations, Heede arrived at the following estimates:

| DEFENDANT | CONTRIBUTIONS TO GLOBAL EMISSIONS |
|---|---|
| EXXON | 3.22% |
| BP | 2.47% |
| ROYAL DUTCH SHELL | 2.12% |
| CONOCOPHILLIPS | 1.16% |

BP is a public limited company registered in England and Wales with headquarters in England. BP does not operate in California but several of BP's subsidiaries do. These subsidiaries produce oil and natural gas in California, own or operate port facilities in California to receive crude oil, ship crude oil from Alaska to California, license the ARCO trademark to gasoline stations in California, and promote gasoline sales through credit card offers and gasoline discounts. Elsewhere in the United States, BP subsidiaries produce fossil fuels, own refineries and pipelines, and market gasoline through BP-branded stores (*id*. ¶¶ 16–18, 35–50).

ConocoPhillips is a Delaware corporation with its principal place of business in Texas. ConocoPhillips operates as a holding company and does not itself have any active operations. Prior to 2012, certain of ConocoPhillips' subsidiaries and their predecessors owned and operated

---

[1] Oakland and San Francisco's first amended complaints are nearly identical; separate citations to each FAC are provided only where necessary.

2

refineries in California. ConocoPhillips' subsidiaries have also owned or operated gasoline stations and port facilities for the receipt of crude oil in California. Currently, ConocoPhillips' subsidiaries produce oil in Alaska and ship some of that oil to California (*id.* ¶¶ 22–24, 52–55).

Exxon Mobil is a New Jersey corporation with its principal place of business in Texas. Exxon's subsidiaries produce oil in California, own or operate port facilities for the receipt of crude oil in California, and transport crude oil to California. Exxon subsidiaries previously owned and operated two refineries here. Exxon-branded gasoline stations are located throughout the state, including in the Bay Area. Exxon offers credit cards to consumers through its website to promote sales of gasoline and other products at its gas stations, including gas stations in California (*id.* ¶¶ 25–27, 56–59).

Royal Dutch Shell is a holding company registered in England and Whales and headquartered in the Netherlands. Through its subsidiaries, Royal Dutch Shell produces oil and gas in California, owns or operates port facilities in California for receipt of crude oil, owns and operates a refinery in California, transports crude oil through a pipeline within California, and owns and operates gasoline terminals in California (*id.* ¶¶ 28–30, 60–73).

Defendants have allegedly long known the threat fossil fuels pose to the global climate. Nonetheless, defendants continued to produce fossil fuels in large amounts while engaging in widespread advertising and communications campaigns meant to promote the sale of such fossil fuels. These campaigns portrayed fossil fuels as environmentally responsible and essential to human well-being. These campaigns also downplayed the risks of global warming by emphasizing the uncertainties of climate science or attacking the credibility of climate scientists (*id.* ¶¶ 95–123).

In September 2017, Oakland and San Francisco brought these related actions in California Superior Court. After defendants removed the actions to this district, an order dated February 27, 2018, denied plaintiffs' motions to remand. In addition to moving to dismiss these actions pursuant to FRCP 12(b)(6), BP, ConocoPhillips, Exxon, and Royal Dutch Shell moved to dismiss

3

for lack of personal jurisdiction. Royal Dutch Shell also moved to dismiss for lack of sufficient service of process (Dkt. Nos. 1, 134, 219–22).[2]

The undersigned judge held oral argument on the various motions to dismiss on May 24. The following day, an order denied plaintiffs' request for jurisdictional discovery as to Exxon, but granted jurisdictional discovery as to BP, ConocoPhillips, and Royal Dutch Shell on the ground that Exxon had not challenged the jurisdictional facts alleged in the amended complaints while the other defendants had made such challenges by submitting declarations in support of their respective motions. BP, ConocoPhillips, and Royal Dutch Shell later withdrew their fact declarations and those portions of the FRCP 12(b)(2) motions which relied on those declarations. In addition, Royal Dutch Shell waived service of summons in these actions, thereby mooting its FRCP 12(b)(5) motion (Dkt. Nos. 256, 259, 273–74, 281–82).

An order dated June 25 granted defendants' motion to dismiss pursuant to FRCP 12(b)(6). At the Court's request, the parties filed a joint submission regarding whether or not the pending FRCP 12(b)(2) motions needed to be reached. The parties agreed that in light of the June 25 dismissal order the undersigned judge had discretion over whether or not to reach the FRCP 12(b)(2) motions prior to entering judgment. Nevertheless, Exxon, BP, ConocoPhillips, and Royal Dutch Shell all requested a decision on their pending motions prior to entry of judgment (Dkt. Nos. 283–85). This order accordingly addresses those defendants' narrowed motions to dismiss pursuant to FRCP 12(b)(2).

**ANALYSIS**

Personal jurisdiction can be either general or specific. General jurisdiction refers to the authority of the court to exercise jurisdiction even where the cause of action is unrelated to the defendant's contacts with the forum. Specific jurisdiction, by contrast, exists when a suit arises out of or is related to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). Only specific jurisdiction is at issue here.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."

---

[2] All docket numbers herein refer to the docket in Case No. C 17-06011 WHA.

4

*Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). The Supreme Court has emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

For a court to exercise specific jurisdiction over a nonresident defendant, three requirements must be met: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which "arises out of or relates to" the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

Defendants do not dispute the first prong of this jurisdictional test. Although defendants do not themselves conduct business activities in California, plaintiffs point to significant activities of defendants' alleged agents and subsidiaries — such as the transportation and sale of gas to California consumers — which amount to the purposeful direction of activities towards the forum. Defendants do not concede that these activities are attributable to them under a jurisdictional analysis, but argue that plaintiffs still fail to demonstrate specific jurisdiction even assuming these forum contacts can be imputed.

With respect to the second prong of the jurisdictional test, the required causal analysis is met if "but for" the contacts between the defendant and the forum state, the plaintiff's injury would not have occurred. *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051–52 (9th Cir. 1997). The question is therefore whether or not plaintiffs' alleged harm — namely, the effects of global warming-induced sea level rise — would have occurred even absent each defendant's respective *California-related* activities. It is manifest that global warming would have continued in the absence of all California-related activities of defendants. Plaintiffs have therefore failed to adequately link each defendants' alleged California activities to plaintiffs' harm.

5

The gravamen of the amended complaints is that defendants — all alleged to be multinational oil and gas companies — have contributed to global warming through the worldwide production and sale of fossil fuels. From all that appears in the amended complaints, however, this worldwide chain of events does not depend on a particular defendant's contacts with California. Rather, whatever sales or events occurred in California were causally insignificant in the context of the worldwide conduct leading to the international problem of global warming. As earlier orders have pointed out, plaintiffs' nuisance claims depend on a global complex of geophysical cause and effect involving all nations of the planet. Ocean rise, as far as plaintiffs contend, would have occurred even without regard to each defendant's California contacts.

True, district courts in the Ninth Circuit have declined to apply the "but for" test "stringently." *See, e.g.*, *Cal. Brewing Co. v. 3 Daughters Brewing LLC*, No. 15-cv-02278, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) (Judge Kimberly Mueller). Nonetheless — and although plaintiffs list significant fossil-fuel-related activities that defendants have allegedly conducted in California — plaintiffs fail to sufficiently explain how these "slices" of global-warming-inducing conduct causally relate to the worldwide activities alleged in the amended complaints. And, notably, nowhere do plaintiffs contend that sea level rise would not occur absent defendants' California contacts. Instead, plaintiffs argue that defendants' mere contributions to global warming through their California activities can subject them to personal jurisdiction in California. But that is not the causal test for personal jurisdiction applied in this circuit. Because plaintiffs have failed to show that defendants' conduct is a "but for" cause of their harm, as required by the second prong of the jurisdictional analysis, this order does not address whether or not the third prong of the jurisdictional test is met.

In arguing for personal jurisdiction, plaintiffs assert that where injuries have been caused by "the totality of a defendant's national conduct," personal jurisdiction exists so long as the defendant undertook some of the relevant conduct within the forum. Plaintiffs rely primarily on two decisions, neither of which is applicable here. In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), a New York resident sued Hustler Magazine in New Hampshire, claiming that she

6

had been libeled in five issues of a magazine distributed throughout the country, including in New Hampshire. In concluding that specific jurisdiction was present, the Supreme Court "relied principally on the connection between the circulation of the magazine in New Hampshire and damage allegedly caused within the State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1782. *Keeton* noted that "[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement." 465 U.S. at 776 (emphasis in original). Accordingly, the defendant's forum conduct was clearly the but-for cause of the plaintiff's forum injury, irrespective of further injury that may have been incurred outside the forum. *Keeton* therefore "held that there was jurisdiction in New Hampshire to consider the full measure of the plaintiff's claim." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1782. Here, plaintiffs' alleged injury would occur within the forum. Lacking, however, is a causal chain sufficiently connecting plaintiffs' harm and defendants' California activities.[3]

Plaintiffs next cite to *Dubose v. Bristol-Myers Squibb Co.*, No. 17-cv-00244, 2017 WL 2775034 (N.D. Cal. June 27, 2017) (Judge Jon Tigar), where the plaintiff brought a products liability action against prescription drug manufacturers and distributors. Because some of the clinical trials for the pharmaceutical at issue were conducted in California, Judge Tigar concluded that the defendants' California conduct was "part of the unbroken chain of events leading to Plaintiff's alleged injury." *Id.* at *3. In the instant case, by contrast, plaintiffs point to no unbroken chain of events connecting defendants' forum activities to rising sea levels. Plaintiffs are correct that they need not show each defendant's contributions would have alone created the alleged nuisance. But nowhere do plaintiffs assert that sea rise would not have occurred had any defendant reduced or refrained from fossil fuel production in California (or elsewhere in the United States).

Finally, plaintiffs advocate for a less stringent standard of "but for" causation in light of the liability rules underlying public nuisance claims. Such an argument has been rejected by our court of appeals, which has instructed that "liability is not to be conflated with amenability to suit in a particular forum." *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.

---

[3] For this same reason, plaintiffs' IP infringement cases are inapposite. There, infringing acts within the forum state directly caused injury in that state, and therefore the "but for" test was met even though additional infringing acts occurred outside of the forum.

7

1996). "Personal jurisdiction has constitutional dimensions," and therefore the policy goals underlying a cause of action "cannot override the due process clause, the source of protection for non-resident defendants." *Ibid.*

In the alternative, plaintiffs contend that personal jurisdiction over BP and Royal Dutch Shell is permissible pursuant to FRCP 4(k)(2), which permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws." FRCP 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted). The due process analysis under FRCP 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the defendant and the forum state, the court considers contacts with the nation as a whole. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). For the same reasons discussed above, however, plaintiffs do not satisfy this third requirement. Even taking plaintiffs' allegations as true, they have failed to show that BP or Royal Dutch Shell's national conduct was a "but for" cause of their harm.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss pursuant to FRCP 12(b)(2) are **GRANTED**.

**IT IS SO ORDERED.**

Dated: July 27, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE